IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INMATES OF THE PENNSYLVANIA          :          CIVIL ACTION
DEPARTMENT OF CORRECTIONS,

                    Plaintiffs          :

        v.          :

THE PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al.,          :

                    Defendants          :          No. 02-2687

<u>ORDER</u>

      AND NOW, this      day of      , 2004, upon consideration of

defendants' motion to dismiss plaintiffs' Second Amended Class Action Complaint,

and plaintiffs' response thereto (if any), it is hereby ORDERED that said motion is

GRANTED.  Plaintiffs' Second Amended Class Action Complaint is hereby

DISMISSED.

                    BY THE COURT:

                    _____

                    EDUARDO C. ROBRENO, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INMATES OF THE PENNSYLVANIA          :          CIVIL ACTION
DEPARTMENT OF CORRECTIONS,

                Plaintiffs          :

   v.          :

THE PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al.,          :

              Defendants          :          No. 02-2687


DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED CLASS ACTION COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants move to dismiss plaintiffs' Second Amended Class Action Complaint.  The Court should dismiss plaintiffs' complaint for the following reasons:

1.  To the extent plaintiffs seek issuance of a court order enjoining defendants "from denying parole [or] denying a favorable recommendation for parole," they must file a petition for writ of habeas corpus rather than a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983").

2.  The Eleventh Amendment bars all plaintiffs' claims -- regardless of the relief sought -- against the DOC and the Parole Board, as well as plaintiff Wolfe's claims for damages against defendants Beard, Klem, Boris, Vaughn, DiGuglielmo, Wildenstein, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster and White in their official capacities.  Similarly, the DOC, the Parole Board, and the individual defendants in their official capacities are not

"persons" subject to suit under Section 1983.

3.  To the extent Wolfe seeks Section 1983 damages against defendants Beard, Klem, Vaughn, DiGuglielmo, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster and White,  such claims fail as a matter of law because Wolfe alleges no facts showing that said defendants were personally involved in, or knew of and acquiesced in, any violation of his constitutional rights; furthermore, he cannot recover damages under a theory of respondeat superior liability under Section 1983.

4.  Plaintiffs fail to state a cognizable claim under the Fifth Amendment or the Substantive Due Process Clause of the Fourteenth Amendment:

a) As a matter of law, a prisoner's participation in a sex offender program which requires an admission of guilt does not amount to self-incrimination.

b) Plaintiffs do not allege the deprivation of any protected liberty interest or fundamental right which would trigger the protection of the Substantive Due Process Clause; furthermore, considering whether a prisoner has participated in a sex offender program as a factor for parole is not arbitrary and capricious.

5.  Plaintiffs' retaliation claims fail as a matter of law, because:

a) Denying parole to a convicted sex offender who refused to participate in a sex offender program is not an adverse action made on account of constitutionally protected activity.

b) Defendants' refusal to parole Wolfe or grant him a positive

recommendation for parole because of his refusal to participate in the sex offender treatment program *predate* the filing of his lawsuit.

6.  Wolfe's Ex Post Facto claims for declaratory relief and damages are barred by the rule of  Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny; habeas, not Section 1983, provides the only available relief; and, in any event, Wolfe's Ex Post Facto claims fail as a matter of law, because even prior to the 1996 amendment, the Parole Board consistently denied inmates parole based on their failure to complete a sex offender program.

7.  Defendants in their individual capacities are entitled to qualified immunity from Wolfe's damage claims, because it is not clearly established that denying an inmate parole or a positive recommendation for parole on account of the inmate's failure to participate in a sex offender treatment program violates the inmate's rights under the Fifth Amendment, the Substantive Due Process Clause of the Fourteenth Amendment, or the Ex Post Facto Clause.

This motion is supported by the attached memorandum of law.

WHEREFORE, Commonwealth defendants respectfully request the Court to

enter an order granting this motion to dismiss and granting any such further relief

as is proper and just.

GERALD J. PAPPERT
ATTORNEY GENERAL


BY:     s/ Beth Anne Smith
        Beth Anne Smith
        Senior Deputy Attorney General
        Identification No. 47162

        Susan J. Forney
        Chief Deputy Attorney General
        Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | No. 02-2687 |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
<u>TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT</u>

<u>INTRODUCTION</u>

Plaintiff Jessica Elaine Wolfe, a biological male who self-identifies as a woman,[1] is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), who is presently incarcerated at the State Correctional Institution at Graterford ("Graterford"). Wolfe commenced this case, which is styled as a class action, pursuant to 42 U.S.C. § 1983 ("Section 1983") on behalf of himself and other inmates in DOC custody, claiming violations of the First, Fifth, and Fourteenth Amendments. The gravamen of plaintiffs' Second Amended Class Action Complaint is that the DOC sex offender treatment programs, which allegedly require prisoners to admit their guilt in sex crimes, amount to coerced self-

---

[1] Wolfe is a genitally intact male, incarcerated in an all-male prison, who pleaded guilty to and was convicted of the rape of his 8 year old stepdaughter. <u>See</u> Wolfe's Petition for Writ of Mandamus and attached transcript at pp. 9-10, filed by Wolfe in <u>Wolfe v. Court of Common Pleas</u>, No. 103-WM-2002 (W.D. Pa.). Accordingly, defendants and the undersigned counsel refer to Wolfe by the masculine pronoun.

incrimination in violation of the Fifth Amendment and the deprivation of a
fundamental right in violation of the Substantive Due Process Clause of the
Fourteenth Amendment.  Wolfe also asserts a violation of the Ex Post Facto Clause
and a retaliation claim under Section 1983 and the First Amendment.  Plaintiffs, as
a class, seek declaratory and injunctive relief.  Wolfe also seeks compensatory and
punitive damages.

Commonwealth defendants now move to dismiss plaintiffs' Second Amended
Class Action Complaint in its entirety.  Even assuming for purposes of this motion
only that plaintiffs' allegations are true, plaintiffs fail to state any claim upon which
relief may be granted.  The complaint, therefore, should be dismissed.


RELEVANT FACTUAL ALLEGATIONS

For purposes of this motion only, plaintiffs' allegations must be deemed true.
Plaintiffs have all served their minimum terms of imprisonment and are now
eligible for parole consideration.  Second Amended Class Action Complaint, ¶ 28.
They have been denied parole, and/or a positive recommendation for parole, for
their refusal to participate in the DOC's sex offender treatment program requiring
full disclosure of, and admission to, past sexual behavior.  Id. at ¶ 28, 46-48.

Wolfe was placed in DOC custody as a result of a plea agreement made in
July 1996, after which he was given an "indefinite" sentence[2] of five to fifteen years.

―――――――――――――

[2]Wolfe apparently believes that an "indefinite" sentence means indeterminate
or unfixed.  He is mistaken.  As the Commonwealth Court of Pennsylvania has

<u>See</u> Second Amended Class Action Complaint, ¶ 52; Petition for Writ of Mandamus, p. 1, included in Exhibit 1 hereto.

Beginning in November 20, 1996, Wolfe received Prescriptive Program Plans which included, under "Recommended Actions," the DOC's sex offender treatment program.  Second Amended Complaint, ¶¶ 55, 60, 62, 68, 75, 85.   Defendant Wildenstein, a Unit Manager at the State Correctional Institution at Mahanoy, informed Wolfe early on that if he refused to participate in the sex offender treatment program, his chance of parole would be "narrowed."  Id., ¶ 66.  Nevertheless, except for one brief period (<u>see</u> Id., ¶¶ 61-64), Wolfe has consistently refused to participate in the sex offender treatment program because of its full disclosure requirement.  Id., ¶¶  56, 65, 67.  Consequently, prison officials have consistently refused to give him a favorable recommendation for parole until he completed the sex offender treatment program,  Id., ¶¶ 71, 86, and the Parole Board has denied him parole "based solely on his refusal to participate in the Sex Offender Program."  Id., ¶ 89; <u>see also</u> ¶ 91.

---

explained, an indefinite sentence is "[a] sentence to incarceration with a spread of time between a minimum date of parole eligibility and a maximum discharge date." <u>Stewart v. Pennsylvania Board of Probation and Parole</u>, 714 A.2d 502, 506 (Pa. Commw. 1998)(quoting Black's Law Dictionary (6th ed. 1990)).  In his Petition for Writ of Mandamus, Wolfe admitted that he is serving a "five year minimum, fifteen year maximum" sentence.  <u>See</u> Exhibit 1, Petition for Writ of Mandamus, ¶ 3.

ARGUMENT

    Standard for Dismissal Under Fed.R.Civ.P. 12(b)(6)

    Under Fed.R.Civ.P. 12(b)(6), dismissal of a complaint for failure to state a claim is appropriate where it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations contained in the complaint. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). On considering a motion to dismiss, the district court must accept all allegations in the complaint as true and draw any reasonable inferences from such allegations in plaintiff's favor. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391 (3d Cir. 1994). *The court may consider not only the complaint, but also matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case.* Id., at 1384 n.2; see also Fed.R.Civ.P. 10(c)(copy of any written instrument attached as an exhibit to a pleading is a part thereof for all purposes). Furthermore, documents attached to a defendant's motion to dismiss, which are referred to in the complaint, are considered part of the pleadings and therefore may also be relied on by the Court. See Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002).

4

<u>To the Extent Plaintiffs Seek Issuance of a Court Order Enjoining
Defendants From Denying Parole or Recommending Denial of Parole,
Plaintiffs Must File a Petition for Writ of Habeas Corpus Rather than a
Complaint Pursuant to Section 1983</u>

In Count I of the Second Amended Class Action Complaint, plaintiffs as a

class seek injunctive relief under Section 1983, asserting that defendants' refusal to

recommend or grant parole to inmates who refuse to participate in the DOC's sex

offender treatment program amounts to coerced self-incrimination in violation of

the Fifth Amendment.   Plaintiffs specifically seek an Order enjoining defendants

"from denying parole [or] recommending denial of parole."  <u>See, e.g.</u>, Second

Amended Class Action Complaint, p. 19, Wherefore Clause, subparagraph C.

Habeas, not Section 1983, is plaintiffs' only available recourse.

While Section 1983 and habeas corpus both allow inmates to challenge

unconstitutional conduct by state officials, the two are not co-extensive in either

purpose or effect.  <u>Leamer v. Fauver</u>, 288 F.3d 532, 540 (3d Cir. 2002).  Habeas

relief is limited to the discharge of the prisoner or his admission to bail.  Id. (citing

"Powers of Congress and the Court Regarding the Availability and Scope of

Review," 114 Harv. L. Rev. 1551, 1553 (2001)).  Section 1983, on the other hand, is

"a species of tort liability."  <u>Leamer</u>, 288 F.3d at 540 (quoting <u>Smith v. Holtz</u>, 87

F.3d 108, 111 (3d Cir. 1996)).  It provides a right of action against any state actor

for violating another's constitutional rights.  <u>Leamer</u>, 288 F.3d at 540 (citing 42

U.S.C. § 1983).

Arguably, a deprivation of rights which necessarily impacts on the fact or

length of incarceration might be brought as either a habeas action or a Section 1983 action.  Leamer, 288 F.3d at 540.  But "[i]n a series of decisions, the Supreme Court has made it clear that for those cases, the narrower remedy, the habeas petition, is the only available avenue of relief."  Id.

In Count I,  the remedy that plaintiffs seek is an order enjoining defendants from denying them parole or recommending denial of parole.  This remedy "is, in actuality, a habeas remedy."  Id., at 541.  Accordingly, plaintiffs must proceed by way of filing a writ of habeas corpus.  Id.  See also Mickens-Thomas v. Vaughn, 321 F.3d 374, 393 (3d Cir. 2003)(remanding habeas action to the parole board for a new hearing based on previous parole guidelines).

The Eleventh Amendment Bars All Plaintiffs' Claims -- Regardless of the Relief Sought -- Against the DOC and the Parole Board, as Well as Plaintiff's Wolfe's Claims for Damages Against Defendants Beard, Klem, Boris, Vaughn, Diguglielmo, Wildenstein, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster and White in Their Official Capacities.  Similarly, the DOC, the Parole Board, and the Individual Defendants in Their Official Capacities Are Not "Persons" Subject to Suit under Section 1983

In Counts I and II of the Second Amended Class Action Complaint, plaintiffs seek declaratory and injunctive relief against, among others, the DOC and the Parole Board.  In Counts III, VI, VII, and VIII, Wolfe seeks damages against the individual defendants, apparently in their official (as well as individual) capacities. The Eleventh Amendment bars all of these claims.

The Eleventh Amendment provides:

6

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The United States Supreme Court has consistently held that the Eleventh Amendment bars the federal courts from entertaining suits by private parties against states, state agencies, and state officials in their official capacities unless the state has consented to the filing of such suit.  <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234, 241 (1985); <u>Edelman v. Jordan</u>, 415 U.S. 651, 662 (1974). The Eleventh Amendment bar "extends to suits against departments or agencies of the state having no existence apart from the state." <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 25 (3d Cir. 1981) (citing <u>Mt. Healthy City Board of Education v. Doyle</u>, 429 U.S. 274, 280 (1977)). This immunity applies to suits asserting violations of civil rights where the state is named as a defendant.  <u>Laskaris</u>, 661 F.2d at 26.  Unless a state has waived its Eleventh Amendment immunity or Congress has abrogated it, a state cannot be sued directly in its own name *regardless of the relief sought*. <u>Alabama v. Pugh</u>, 438 U.S. 781, 781-82 (1978)(per curiam).

The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment.  "By statute Pennsylvania has specifically withheld consent to be sued." <u>Laskaris</u>, 661 F.2d at 25 (citing 42 Pa.C.S.A. § 8521(b)).  Indisputably, the DOC and the Parole Board are creatures of state law.  <u>See</u> 71 P.S. §§ 61, 65. And, it is long-settled that Sections 1983 does not abrogate the states' Eleventh Amendment immunity.  <u>See</u> <u>Edelman v. Jordan</u>, <u>supra</u>.  The DOC, the Parole

Board, and their officials in their official capacities are therefore immune from suit.

See Laskaris, 661 F.2d at 25-26 (citing Edelman v. Jordan, supra); Seeney v.

Kavitski, 866 F.Supp. 206, 209-10 (E.D. Pa. 1994).

Similarly, Wolfe's Section 1983 damage claims against the individual

defendants in their official capacities are legally deficient under those statutes.  An

essential element of any claim under Section 1983 is that the alleged wrongdoing

was committed by a "person."  A state, its agencies, and its officials acting in their

official capacities are not "persons" subject to liability under Section 1983.  Will v.

Michigan Department of State Police, 491 U.S. 58, 71 (1989).

For these reasons, plaintiffs' claims against the DOC and the Parole Board,

and Wolfe's damage claims against the individual defendants in their official

capacities, must be dismissed.

> To the Extent Wolfe Seeks Section 1983 Damages Against Defendants Beard,
> Klem, Vaughn, Diguglielmo, Ward, Martinez, Castor, Descher, Green,
> Imboden, Kipp, Lucht, Muller, Ryan, Webster and White,  Such Claims Fail
> as a Matter of Law Because Wolfe Alleges No Facts Showing That Said
> Defendants Were Personally Involved In, or Knew of and Acquiesced In, Any
> Violation of His Constitutional Rights; Furthermore, He Cannot Recover
> Damages under a Theory of Respondeat Superior Liability under Section
> 1983.

As noted above, in Counts III, VI, VII, and VIII, Wolfe seeks damages against

individual defendants.  Such claims are grounded on Section 1983, which provides a

right of action for claimed violations of a person's civil rights.  However, it is well-

established that a state official cannot be held liable under Section 1983 unless he

participated in or had personal knowledge of and acquiesced in the alleged

wrongdoing.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Liability under Section 1983 "requires a causal link to, and direct responsibility for, the alleged deprivation of rights."  <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990).  The fact that a named defendant holds a supervisory position is does not give rise to an actionable claim.  There can be no recovery on a theory of vicarious or <u>respondeat superior</u> liability under Section 1983.  <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1082 (3d Cir. 1976).

Applying the foregoing principles to the facts of this case, Wolfe's Section 1983 damage claims against the individual defendants are legally deficient under Section 1983.

With respect to defendants Beard, Klem, DiGuglielmo, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster and White, Wolfe simply lists their names in the caption of the complaint and alleges their respective positions within the DOC or the Parole Board - nothing more.  He gives no indication that they participated in or had personal knowledge of and acquiesced in any constitutional wrongdoing.   He simply identifies them by their titles and describes their official duties.  A complaint that contains no notice to defendants of any wrongdoing is legally deficient and must be dismissed.  <u>See, e.g.</u>, <u>Black v. Lane</u>, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994)(proper to dismiss complaint that alleges no specific act or conduct of defendant and is silent as to that defendant except for name appearing in caption); <u>Dove v. Fordham University</u>, 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999), <u>aff'd</u>, 210 F.3d 354 (2d Cir. 2000)(table); <u>Hodgin v. Agents of</u>

Montgomery County, 619 F.Supp. 1550, 1554 (E.D. Pa. 1985)(plaintiff cannot maintain action against defendant whose name is not mentioned in statement of facts and is nowhere alleged to have participated in any violation of plaintiff's rights).   Wolfe's damage claims against these defendants are therefore patently frivolous and must be dismissed.

     With respect to defendants Shannon and Vaughn, Wolfe alleges that they were Superintendents, respectively, of SCI-Mahanoy and SCI-Graterford.  He further suggests that as such, they are responsible for the wrongdoing of their subordinates.  But as noted above, a plaintiff cannot proceed on a theory of respondeat superior or vicarious liability under Section 1983.  Rode, supra.  A corrections official's mere failure to respond to an inmate's grievance to the inmate's satisfaction does not give rise to a viable Section 1983 claim.  Greer v. DeRobertis, 568 F.Supp. 1370, 1375 (N.D. Ill. 1983); cf. Griffin v. Spratt, 768 F.Supp. 153, 158 (E.D. Pa. 1991), rev'd in part on other grounds, 969 F.2d 16 (3d Cir. 1992).

     For these reasons, Wolfe's Section 1983 damage claims against defendants Beard, Klem, Vaughn, Diguglielmo, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster and White in their individual capacities must be dismissed as legally deficient under Section 1983.

<u>Plaintiffs Fail to State a Cognizable Claim under the Fifth Amendment or the
Substantive Due Process Clause of the Fourteenth Amendment, or for
Retaliation Under Section 1983 and the Fifth Amendment</u>

The gravamen of the Second Amended Class Action Complaint is defendants'
policy of denying parole, or recommending denial of parole, on account of an
inmate's refusal to participate in a sex offender treatment program which requires
an admission of guilt amounts to coerced self-incrimination in violation of the Fifth
Amendment.  <u>See</u> Counts I and III.  Plaintiffs also assert that such policy violates
the Substantive Due Process Clause of the Fourteenth Amendment and constitute
retaliation under Section 1983 and the Fifth Amendment.  <u>See</u> Counts II and VI.
None of these claims can succeed.

<u>Fifth Amendment - Self-Incrimination</u>

As a matter of law, a prisoner's participation in a sex offender program
which requires an admission of guilt does not amount to self-incrimination.  In
<u>McKune v. Lile</u>, 536 U.S. 24 (2002), the Supreme Court held in a plurality decision
that a prison clinical rehabilitation program does not violate the privilege against
compelled self-incrimination if the adverse consequences for refusal to participate
are related to prison objectives, and do not constitute atypical and significant
hardships in relation to prison life.  536 U.S. at 37-38.  Since <u>McKune</u> was decided,
the Third Circuit has rejected an inmate's argument that the DOC effectively
punished him for remaining silent by forcing him to choose between maintaining

11

his innocence and participating in a treatment program necessary for parole recommendation.  Thorpe v. Grillo, 2003 WL 22477890, *3 (3d Cir. 2003).  As the Third Circuit pointed out, "[t]he DOC's policy did not force [the inmate] to incriminate himself in a criminal trial."  Id. (citing Chavez v. Martinez, 538 U.S. 760 (2003)).   Moreover, refusal to participate in the program did not extend the inmate's term of incarceration or automatically deprive him of consideration for parole.  Thorpe, at *3.  Wolfe's bald and conclusory allegation (actually, argument) that defendants have extended his sentence by denying him parole is unworthy of consideration: the pleadings show that he is serving a five to fifteen year sentence, and nothing in the complaint suggests that his maximum term has been increased.  Furthermore, his own allegations show that he has been considered for parole, repeatedly.  Second Amended Class Action Complaint, ¶¶ 73, 74, 87, 88.  Obviously, the mere fact of having to serve one's prison sentence, even right up to the maximum date, cannot be considered an atypical or significant hardship in relation to the ordinary incidents of prison life.  *Even time in solitary confinement is not considered an atypical or significant hardship.*  See Sandin v. Connor, 515 U.S. 472 (1995)(disciplinary custody is not atypical or significant hardship); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997)(15 months in administrative custody is not atypical or significant hardship).  The "hardships" listed by Wolfe that have resulted from the change in his custody level, such as longer or more frequent phone calls, a more comfortable cell, use of a refrigerator and cooking supplies, outside work clearance, and eligibility for a transfer closer to family and friends, are all

part and parcel of the ordinary incidents of prison life.   In any case, an inmate's

loss of privileges does not amount to an atypical or significant hardship.  <u>See, e.g.,</u>

<u>Sandin</u>, <u>supra</u> (conditions experienced by inmate were did not present "a dramatic

departure from the basic conditions of [his] indeterminate sentence" since they were

virtually identical to those experienced by an inmate in disciplinary or

administrative custody); <u>Griffin</u>, <u>supra</u> (same).

Unquestionably, a sex offender treatment program is rationally related to

legitimate penological objectives.  As the Supreme Court has stated, "[s]ex offenders

are a serious threat in this Nation." <u>McKune</u>, 536 U.S. at 32.  Their victims are

usually juveniles.  Id.  Because the rate of recidivism for convicted sex offenders is

so high, the States have a vital interest in rehabilitating them.  Id., at 33.

Therapists and prison officials "widely agree that clinical rehabilitative programs

can enable sex offenders to manage their impulses and in this way reduce

recidivism." Id.  "An important component of those rehabilitation programs

requires participants to confront their guilt and accept responsibility for their

misconduct." Id.  Denial of guilt seriously impedes successful treatment: "Research

indicates that offenders who deny all allegations of sexual abuse are three times

more likely to fail in treatment than those who admit even partial complicity." Id.

(citations omitted).

In this case, the pleadings show that Wolfe pleaded guilty to the rape of an

eight year old girl, and for that offense was sentenced to five to fifteen years.  He

13

now apparently denies his guilt and refuses to accept any responsibility for an act he admitted to.[3]  His refusal to participate in the DOC's sex offender treatment program therefore raises the concern, expressed in <u>McKune</u>, that he will commit another sex offense following his release.

Because the denial of parole or a favorable recommendation for parole is not an atypical and significant hardship in relation to the ordinary incidents of prison life (indeed, the result is simply serving one's sentence in prison, nothing more)[4], and because the policy of denying parole or a favorable recommendation for parole to an inmate who refuses to participate in a sex offender treatment program is rationally related to the legitimate penological objectives of rehabilitation and reducing recidivism, Counts I and III of the Second Amended Class Action Complaint should be dismissed.

<u>14th Amendment - Substantive Due Process and</u>

---

[3]<u>See</u> colloquy in transcript, at 11, attached to Wolfe's Petition for Writ of Mandamus, attached hereto at Exhibit 1:

> Court: So why are you pleading guilty to these two case?
> Wolfe: I did it.

[4]Under Pennsylvania law, a prisoner's sentence is his maximum sentence, not his minimum sentence, and prisoners have no right, constitutional or otherwise, to be released upon the expiration of their minimum sentences. <u>Cohen v. Horn</u>, 1998 WL 834101, at *6 (E.D.Pa.1998). Stated another way, an inmate in Pennsylvania has no constitutionally protected liberty interest in being released from incarceration prior to expiration of his or her <i>maximum</i> sentence.  <u>Maloy v. Vaughn</u>, 1998 WL 426561, *2 (E.D. Pa. July 28, 1998)(citing, <u>inter alia</u>, <u>Weaver v. Pennsylvania Board of Probation and Parole</u>, 668 A.2d 776, 780 (1997); <u>U.S. ex rel. Schiano v. Luther</u>, 954 F.2d 910, 916 (3d Cir. 1996)(same)).

<u>5th Amendment - Retaliation</u>

In Counts II and VI of the Second Amended Class Action Complaint, plaintiffs maintain that the DOC and Parole Board policy of requiring sex offenders to participate in sex offender treatment or risk a negative parole decision violates their rights under the Substantive Due Process Clause of the Fourteenth Amendment and amounts to retaliation under the Fifth Amendment (i.e., an adverse action made because plaintiffs engaged in their right to refrain from self-incrimination).   Neither of these claims can succeed.

The substantive component of the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986).  However, the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994).  Thus, the protections of substantive due process are generally reserved for matters relating to marriage, family, procreation, and the right to bodily integrity.  Id.  Even in cases such as the denial of parole where an inmate does not have a protected liberty interest (and consequently no viable procedural due process claim)[5], "substantive

---

[5]Neither the U.S. Constitution nor Pennsylvania law creates a protected liberty interest in being paroled before the expiration of the imposed sentence. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1 (1979); *Reider v. Board of Probation and Parole,* 514 A.2d 967, 971 (Pa.Cmwlth. 1986). In Pennsylvania, parole is left to the sound discretion of the Pennsylvania

due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, political beliefs or such frivolous factors as the color of one's eyes." Bonilla v. Vaughn, 1998 WL 480833, *9 (E.D. Pa. Aug. 14, 1998).

In Bonilla, the district court held that the criteria used by the Parole Board to decide whether to grant or deny parole, *including participation in prescriptive programs*, was not erroneous, arbitrary, or capricious. The court reasoned that under Pennsylvania law, the Parole Board, "in exercising its discretion, is expressly directed to investigate the 'mental and behavior condition and history' of the parole applicant and to consider the 'character of the offense committed.'" 1998 WL 480833, *10 (quoting 61 Pa.C.S.A. § 331.19). As the court found, these criteria are rationally related to the legitimate goals of rehabilitation and deterrence. Id.

As discussed above, even the requirement to confess to one's own criminal wrongdoing is rationally related to the goal of rehabilitation. See McKune v. Lile, 122 S.Ct. 2017, 2024 (2002)(noting important component of sex offender treatment programs requires participants to confront their past and accept responsibility for their misconduct). A negative parole decision that results from a convicted sex offender's refusal to participate in a treatment program, even a program that requires him to admit his guilt, is not arbitrary or capricious. It does not offend substantive due process.

---

Board of Probation and Parole. *Reider*, 514 A.2d at 971.

Plaintiffs also maintain that the negative parole decisions made on account of their refusal to participate in the sex offender treatment program amounts to retaliation in violation of the Fifth Amendment. To state a viable retaliation claim, a plaintiff must allege facts showing that defendants took an adverse action against him because he engaged in constitutionally protected activity. Given the holdings of McKune and Thorpe, it is clear that participation in a sex offender treatment program does not amount to self-incrimination under the Fifth Amendment; it therefore follows that refusal to participate in such a program is not constitutionally protected. Accordingly, plaintiffs' Fifth Amendment retaliation claims fail as a matter of law.

For these reasons, the Court should dismiss Counts II and VII of the Second Amended Class Action Complaint.

<u>Wolfe's Ex Post Facto Claim Fails as a Matter of Law</u>

In Count VII of the Second Amended Class Action Complaint, Wolfe asserts that defendants' application of the December 1996 amendment to Section 331.1 of Pennsylvania parole statute (codified at 61 Pa.C.S.A. § 331.1) to his July 1996 conviction amounted to a violation of the Ex Post Facto Clause. Pursuant to Section 1983, he seeks declaratory relief and damages, including punitive damages. Such claims cannot succeed.

First, because Wolfe is seeking declaratory relief and damages, his ex post

facto claims are barred by the rule of  Heck v. Humphrey, 512 U.S. 477 (1994) and

its progeny.  In Heck, the Supreme Court held that in considering a Section 1983

claim against a state actor, the district court must "consider whether a judgment in

favor of the plaintiff would necessarily imply the invalidity of his conviction or

sentence."  Id., at 486.  If it would, the claim is barred unless and until the

conviction is reversed or otherwise held to be invalid.  Id., at 487.  The rule of Heck

extends to claims seeking declaratory relief.  Edwards v. Balisok, 520 U.S. 641

(1997).  It also extends to parole decisions.  Nellom v. Luber, No. 02-2190, 2004 WL

816922 (E.D.Pa. Mar 18, 2004).   Where a plaintiff attacks a decision of parole

board officials which affected his duration of confinement, but has not shown that

the parole decision was subsequently invalidated on appeal or in a collateral

proceeding, his Section 1983 claim is barred by Heck and its progeny and must be

dismissed.  Nellom, 2004 WL 816922, *8.

Furthermore, because Wolfe's ex post facto claim challenges the duration of

his confinement, only habeas relief is available.  Leamer, supra, 288 F.3d at 541;

Mickens-Thomas v. Vaughn, 321 F.3d 374, 393 (3d Cir. 2003)(remanding habeas

action to the parole board for a new hearing based on previous parole guidelines).

Finally, Wolfe's ex post facto claim fails on the merits.  The Ex Post Facto

Clause "forbids the enactment of any law which imposes a punishment for an act

'which was not punishable at the time it was committed; or imposes additional

punishment to that then prescribed.'"  Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir.

18

2001)(quoting <u>Weaver v. Graham</u>, 450 U.S. 24, 28 (1981)).  Here, Wolfe alleges that

he was denied parole "based solely on [his] refusal to participate in the Sex Offender

Program."  Second Amended Class Action Complaint, ¶ 89.  But even prior to the

December 1996 amendment, the Parole Board has repeatedly denied inmates parole

based on their failure to complete a sex offender program.  <u>See</u> <u>Weaver v.</u>

<u>Pennsylvania Board of Probation and Parole</u>, 688 A.2d 766 (Pa. Commw.

1997)(claims relating to Aug. 31, 1995 parole board decision); <u>Eldridge v.</u>

<u>Pennsylvania Board of Probation and Parole</u>, 688 A.2d 273 (Pa. Commw.

1997)(claims relating to Sept. 14, 1995 parole board decision); <u>Ramos v. Vaughn</u>,

No. 94-2596, 1995 WL 386573 (E.D. Pa. Jun. 27, 1995).  And, Wolfe admits that he

has never obtained the DOC's favorable recommendation for parole.  An

unfavorable recommendation from prison staff was a significant factor under pre-

1996 guidelines.  <u>See</u> <u>Mickens-Thomas</u>, 321 F.3d at 379 n.8.

    In sum, Wolfe's consistent refusal to participate in the DOC's sex offender

treatment program would have warranted the denial of his parole prior to the

December 1996 amendment to the parole statute.  Accordingly, his ex post facto

claim fails as a matter of law.


    <u>Wolfe's First Amendment Retaliation Claim Fails as a Matter of Law</u>

    In Count VIII of the Second Amended Class Action Complaint, Wolfe claims

that defendants retaliated against him for filing this lawsuit, in violation of the

First Amendment.  Again, to state a viable retaliation claim under Section 1983, a

plaintiff must allege facts showing that defendants took adverse action against him because he engaged in constitutionally protected activity.  Undeniably, filing a lawsuit is constitutionally protected.  In this case, however, Wolfe's claim fails because the alleged adverse action — i.e., the negative parole recommendation which resulted from his refusal to participate in the sex offender treatment program - *predated* the filing of his lawsuit, which was filed on May 3, 2002.  Wolfe admits that defendants consistently informed him that his refusal to take part in the sex offender treatment program diminished his chances for parole, and they consistently gave him negative recommendations for parole or denied him parole long before May 3, 2002.  See Second Amended Class Action Complaint, ¶¶ 54-75.  Because Wolfe's own allegations show no causal connection between the filing of his lawsuit and defendants' alleged adverse actions, his First Amendment retaliation claim fails as a matter of law and must be dismissed.

### Individual Commonwealth Defendants Are Entitled to Qualified Immunity

A state official is immune from damage claims brought under Section 1983 if a reasonable person in that position could have believed that his or her actions were proper in light of the existing law.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Qualified immunity is a complete defense to suit and the issue should be resolved at the earliest possible stage of litigation.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  An allegation of malice is insufficient to defeat the qualified immunity defense, as long as the official acted in an objectively reasonable manner.  Malley v.

Briggs, 475 U.S. 335, 341 (1986).  Qualified immunity should be denied only if, in light of the existing law, the unlawfulness should have been apparent.  Anderson, 483 U.S. at 640.  A defendant is entitled to immunity if, on an objective basis, a "reasonably competent officer" would have reached the same conclusion as the defendant.  Id.

"[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized."  Malley, 475 U.S. at 341.  Even if the official's conduct violated the plaintiff's constitutional rights, the official is immune from liability if his conduct resulted from a mistake in judgment.  Id.; see also Hunter v. Bryant, 502 U.S. 228-29 (1991).

Neither the Supreme Court nor the Third Circuit has ever held that a sex offender program which requires inmates to admit guilt violates the inmate's Fifth Amendment right to be free from compelled self incrimination, or his Fourteenth Amendment right to substantive due process.  Reasonable officials in the individual defendants' positions therefore could have believed the sex offender treatment program was a lawful means of rehabilitation.  Reasonable officials could have believed it was lawful to deny a prisoner parole for refusing to participate in the sex offender program, particularly where, as here, the inmate's rape conviction was based on his guilty plea.  Compare Weaver v. Pennsylvania Board of Probation and Parole, 688 A.2d 766, 775 (Pa. Commw. 1997)(despite existence of corrections 12-step rehabilitation program, prisoner has no claim to parole where he has not taken steps to lessen danger he poses to society).  Because there is no clearly established

21

law that the sex offender program described in plaintiffs' complaint violates the

Fifth or Fourteenth Amendments, and because the individual defendants' actions

were objectively reasonable, they are entitled to qualified immunity as a matter of

law.  See Kerr v. Farrey, 95 F.3d 472, 480-81 (7th Cir. 1996)(granting prison officials

qualified immunity because reasonable prison officials would not have known that

forcing an inmate to observe a Narcotics Anonymous program violated the

Establishment Clause); Jones, 1993 WL 719562, *8 (official's actions in establishing

and implementing an alcohol treatment program modeled on Alcoholics

Anonymous's Twelve Steps did not violate clearly established law of which a

reasonable person would have known).

CONCLUSION

For all the reasons stated above, plaintiffs' Second Amended Class Action

Complaint should be dismissed in its entirety.


                                GERALD J. PAPPERT
                                ACTING ATTORNEY GENERAL


BY:    s/ Beth Anne Smith
          Beth Anne Smith
          Senior Deputy Attorney General
          Identification No. 47162

          Susan J. Forney
          Chief Deputy Attorney General
          Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

23

<u>CERTIFICATE OF SERVICE</u>

I, Beth Anne Smith, Senior Deputy Attorney General, hereby certify that Commonwealth defendants' motion to dismiss plaintiffs' second amended class action complaint was filed electronically and is available for viewing and downloading from the ECF system.  I further certify that a true and correct copy of said document was served on May 11, 2004 by electronic mail notification to:

        Mary Catherine Roper, Esquire
        Drinker Biddle & Reath Llp
        18th & Cherry Streets
        One Logan Square
        Philadelphia, Pa 19103-6996

                        GERALD J. PAPPERT
                        ATTORNEY GENERAL

      BY:    <u>s/ Beth Anne Smith</u>
                        Beth Anne Smith
                        Senior Deputy Attorney General
                        Identification No. 47162

                        Susan J. Forney
                        Chief Deputy Attorney General
                        Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

24