**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| "JESSICA ELAINE WOLFE©" on behalf of herself and all similarly situated INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : : : : : | CIVIL CLASS ACTION |
| Plaintiff | : : | |
| v. | : : | |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, JEFFREY BEARD, WILLIAM J. WOLFE, MARILYN S. BROOKS, DONALD KELCHER, MARTIN DRAGOVICH, FRANK D. GILLIS, HARRY E. WILSON, THOMAS LAVAN, ROBERT SHANNON, DAVID DiGUGLIELMO, LOUIS S. FOLINO, L.P. BENNING, GEORGE PATRICK, KENNETH D. KYLER, FREDRIC ROSENMEYER, JOSEPH F. DESUTA, SHIRLEY MOORE, BARRY JOHNSON, WILLIAM S. STICKMAN, RANDALL BRITTON, JOE CHESNEY, FRANK TENNIS, JOHN PALAKOVICH, RAYMOND J. SOBINA, RAYMOND J. COLLERAN, EDWARD KLEM, DONALD VAUGHN NEAL K. MECHLING, SR., PENNSYLVANIA BOARD OF PROBATION AND PAROLE, WILLIAM WARD, BENJAMIN MARTINEZ, ALLEN CASTOR, BARBARA DESCHER, MICHAEL L. GREEN, NICHOLAS MULLER, JEFFREY R. IMBODEN, GARY R. LUCHT, SEAN R. RYAN, MICHAEL M. WEBSTER, LLOYD A. WHITE, BRENDA WILDENSTEIN, MS. BORIS, | : : : : : : : : : : : : : : : : : : : : : : : : : | |
| Defendants. | : : : | No. 02-2687 |

**<u>ORDER</u>**

AND NOW this _____day of _____, 2004, it is hereby ordered that the Defendants' Motion to Dismiss the Second Amended Class Action Complaint for failure to state a claim pursuant to F.R.C.P. 12(b)(6) is **DENIED**.  **IT IS FURTHER ORDERED** that Plaintiff shall file a corrected Complaint within ten days that deletes all references to claims against the Pennsylvania Department of Corrections or the Pennsylvania Board of Probation and Parole.

_____
Eduardo C. Robreno, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| "JESSICA ELAINE WOLFE©" on behalf of herself and all similarly situated INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : : : : : | CIVIL CLASS ACTION |
| Plaintiff | : : | |
| v. | : : | |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, JEFFREY BEARD, WILLIAM J. WOLFE, MARILYN S. BROOKS, DONALD KELCHER, MARTIN DRAGOVICH, FRANK D. GILLIS, HARRY E. WILSON, THOMAS LAVAN, ROBERT SHANNON, DAVID DiGUGLIELMO, LOUIS S. FOLINO, L.P. BENNING, GEORGE PATRICK, KENNETH D. KYLER, FREDRIC ROSENMEYER, JOSEPH F. DESUTA, SHIRLEY MOORE, BARRY JOHNSON, WILLIAM S. STICKMAN, RANDALL BRITTON, JOE CHESNEY, FRANK TENNIS, JOHN PALAKOVICH, RAYMOND J. SOBINA, RAYMOND J. COLLERAN, EDWARD KLEM, DONALD VAUGHN NEAL K. MECHLING, SR., PENNSYLVANIA BOARD OF PROBATION AND PAROLE, WILLIAM WARD, BENJAMIN MARTINEZ, ALLEN CASTOR, BARBARA DESCHER, MICHAEL L. GREEN, NICHOLAS MULLER, JEFFREY R. IMBODEN, GARY R. LUCHT, SEAN R. RYAN, MICHAEL M. WEBSTER, LLOYD A. WHITE, BRENDA WILDENSTEIN, MS. BORIS, | : : : : : : : : : : : : : : : : : : : : : : : : : : | |
| Defendants. | : : | No. 02-2687 |

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

Alston v. Parker, 363 F.3d 229 (3d Cir. 2004), cert. denied sub. nom, Adamson v.
   Mazzuca, 124 S. Ct. 2033 (2004)....................................................................14, 16, 17

Bordenkircher v. Hayes, 434 U.S. 373 (1978)....................................................................23

Boyd v. Ward, 802 A.2d 705 (Pa. Commw. Ct. 2002)........................................................32

Cal. Dep't of Corr. V. Morales, 514 U.S. 499 (1995) .........................................................30

Commonwealth v. Long, 533 Pa. 388, 625 A.2d 630 (1993) ..............................................20

Commonwealth v. Rodgers, 372 A.2d 771 (1977) ..............................................................20

Donhauser v. Goord, No. 01-cv-1535, 2004 U.S. Dist. LEXIS 6657 (N.D.N.Y.
   Apr. 15, 2004).................................................................................................................23

Edwards v. Balisok, 520 U.S. 641 (1997)...................................................................7, 8, 10

Garrity v. New Jersey, 385 U.S. 493 (1967)........................................................................21

Georgevich v. Strauss, 772 F.2d 1078 (3d Cir. 1985) ......................................................... 8

Goodwin v. Elkins & Co., 730 F.2d 99 (3d Cir. 1984).........................................................17

Hafer v. Melo, 502 U.S. 21 (1991) ......................................................................................14

Hart v. Pa. Bd. of Prob. & Parole, 82 Fed. Appx. 276, 278 (3d Cir. 2003).......................30

Heck v. Humphrey, 512 U.S. 477 (1994) ......................................................................32, 33

Hindes v. FDIC, 137 F.3d 148 (3d Cir. 1998)D .......................................................... 12-13

Hodgin v. Agents of Montgomery County, 619 F. Supp. 1550 (E.D. Pa. 1985)...............16

Idaho v. Coeur  d'Alene Tribe, 521 U.S. 261 (1997)..................................................... 13-14

James v. State, 75 P.3d 1065 (Alaska Ct. App. 2003) .........................................................20

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994).......................5

Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 807 (3d
 Cir. 2003) ................................................................................................14

Kentucky v. Graham, 473 U.S. 159 (1985) ......................................................14

Koslow v. Pennsylvania, 302 F.3d 161 (3d Cir. 2002), cert. denied, 537 U.S.
 1232 (2003)..............................................................................................13

Leamer v. Fauver, 288 F.3d 532 (3d Cir.  2002) .............................................6-7, 9-10, 11

Lefkowitz v. Turley, 414 U.S. 70 (1973)...........................................................18

Linden v. SAP Am., Inc., No. 03-cv-3125, 2004 U.S. Dist. LEXIS 8598 (E.D. Pa.
 May 7, 2004) ............................................................................................24

Marks v. United States, 430 U.S. 188 (1977) ..............................................22, 24

McGautha v. California, 402 U.S. 183 (1971)...................................................23

McKune, 536 U.S. at 38........................................................................22, 24, 26

McKune v. Lile, 536 U.S. 24 (2002) ...................................18, 21, 22, 23, 24, 26

Mickens-Thomas v. Vaughn, 217 F. Supp. 2d 570 (3d. Cir. 2002)...................34

Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir.), cert. denied, 124 S. Ct. 229
 (2003), subsequent appeal at and remanded by 355 F. 3d 294 (3d Cir. 2004) ......30, 31

Mickens-Thomas v. Vaughn, NO. 99-6161, 2000 U.S. Dist. LEXIS 20859 (E.D.
 Pa. August 21, 2000)................................................................................34

Mitchell v. United States, 526 U.S.  314 (1999).......................................... 20-21

Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997).................................................10

Nellom v. Luber, No. 02-2190, 2004 U.S. Dist. LEXIS 7103 (E.D.  Pa. March 14,
 2004) ...................................................................................................32, 33

Ohio Adult Parole Authority v. Woodard, 532 U.S. 272 (1998) .......................23

Pension Benefit Guar. Corp. v. White Consolidated Indus., Inc., 998 F.2d 1192
 (3d Cir. 1993)...........................................................................................17

Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, Linden v. SAP Am., Inc., No.
 03-c 2004 U.S. Dist. LEXIS 8598 (E.D. Pa. May 7, 2004) .........................24

Preiser v. Rodriguez, 411 U.S. 475 (1973) ..................................................7, 10

<u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001) ........................................................27, 28, 29

<u>Reina v. United States</u>, 364 U.S. 507 (1960) ................................................................. 19-20

<u>Robb v. Philadelphia</u>, 733 F.2d 286 (3d Cir. 1984) .........................................................5, 17

<u>Searcy v. Simmons</u>, 299 F.3d 1220 (10th Cir. 2002) ...........................................................22

<u>Spencer v. Vaughn</u>, No 96-2420, 1996 U.S. Dist. LEXIS 13669 (E.D. Pa. Sept. 19, 1996) .....................................................................................................5, 17, 26

<u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215 (3d Cir. 2003) ......................................................24-25

<u>United States v. Frierson</u>, 945 F.2d 650 (3d Cir. 1991) ................................................18, 20

<u>United States v. Romero</u>, 249 F.2d 371 (2d Cir. 1957)— .....................................................19

<u>Watkins v. Pa. Bd. of Prob. & Parole</u>, No. 02-cv-2881, 2002 U.S. Dist. LEXIS 23504 (E.D. Pa. Nov. 25, 2002) ......................................................................................34

<u>Weston v. Pennsylvania</u>, 251 F.3d 420 (3d Cir. 2001) ..........................................................5

<u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989) ................................................13

<u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) ............................................................6, 11, 12

## CONSTITUTIONS

U.S. Const. amend. V ............................................................................................................18

U.S. Const. art. I § 9, cl. 3, § 10, cl. 1 ..............................................................................30

## STATUTES and RULES

61 Pa. Stat. Ann. § 331.1, <u>et seq</u> ......................................................................................30

Fed. R. Civ. P 56(c) ............................................................................................................16

## <u>INTRODUCTION</u>

Defendants have asserted many bases for the dismissal of both the class and individual claims asserted in the Second Amended Class Action Complaint, none of which compels dismissal of any claim.  The argument below tracks the order of Defendants' argument: this introduction seeks to provide an overall roadmap to the claims and the reasons why each one survives.

Plaintiff has asserted claims on behalf of herself and a class of similarly situated inmates for injunctive relief, under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution, to halt Defendants' policy of conditioning a recommendation or consideration of parole upon completion of a Sex Offenders Treatment Program ("SOTP") that requires participants to admit guilt for crimes for which they still have a pending appeal and crimes for which they have not yet been charged.  <u>See</u> Second Amended Class Action Complaint ("Sec. Am. Compl.") at Count I, Count II.  Defendants seek dismissal of these claims on the asserted grounds that:

(1) the claims should have been brought as thousands of actions for habeas corpus instead (Defs. Mot. to Dis. at ¶ 1);

(2) the Eleventh Amendment bars such claims as asserted against the Department of Corrections, the Parole Board, and the individual Defendants in their official capacities (Defs. Mot. to Dis. at ¶ 2);

(3) conditioning parole on an admission of guilt does not violate the Fifth Amendment and Plaintiffs have no substantive due process right to be free from compulsion in violation of the Fifth Amendment in the context of parole proceedings (Defs. Mot. to Dis. at ¶ 4); and

(4) the lack of a substantive right bars Plaintiffs' claims for retaliation (Defs. Mot. to Dis. at ¶ 5).

As set forth below, Count I and Count II of the Second Amended Complaint should not be dismissed because the relief sought is proper in a class action under 42 U.S.C. § 1983 rather than in individual habeas petitions (section A); the individual Defendants in their official capacities

are proper defendants in those counts (section B); and Plaintiffs' substantive allegations state viable claims under the Fifth and Fourteenth Amendments to the Constitution, as well as 42 U.S.C. § 1983 (sections D and E). Defendants are correct that the Second Amended Complaint improperly names the Department of Corrections and the Board of Probation and Parole as defendants; because the deletion of those defendants does not alter the substantive claims or affect their viability, Plaintiff respectfully requests the opportunity to file a corrected Complaint that removes any reference to those defendants.

Plaintiff has also asserted claims for declaratory relief and damages on her own behalf under 42 U.S.C. § 1983, the First, Fifth and Fourteenth Amendments and Ex Post Facto Clause of the United States Constitution. Sec. Am. Compl. at Counts III, IV, V and VI. Defendants seek dismissal of these claims on the asserted grounds that:

(1) the Eleventh Amendment bars damage claims against the individual Defendants in their official capacities (Defs. Mot. to Dis. at ¶ 2);

(2) the complaint does not detail the participation of each individual Defendant in the conduct and decisions from which Ms. Wolfe's individual claims arise (Defs. Mot. to Dis. at ¶ 3);

(3) Ms. Wolfe's Fifth Amendment and substantive due process claims are without merit (Defs. Mot. to Dis. at ¶ 4);

(4) the lack of a substantive right bars Ms. Wolfe's claims for retaliation, and the denial of parole to Ms. Wolfe predated the filing of her initial complaint (Defs. Mot. to Dis. at ¶ 5);

(5) Ms. Wolfe's ex post facto claim should be brought in a petition for habeas relief and fail independently because the Parole Board conditioned parole on completion of the SOTP prior to the change in parole review standards in 1996 (Defs. Mot. to Dis. at ¶ 6); and

(6) the individual Defendants are entitled to qualified immunity from any claim for damages by Ms. Wolfe because the right of an inmate to be free from compelled self-incrimination in the parole context was not clearly established at the time of the Defendants' actions (Defs. Mot. to Dis. at ¶ 7).

As set forth below:

- Counts III through VI should not be dismissed because they are properly brought against the individual Defendants in their individual capacities, not in their official capacities (section B), because discovery could reveal facts consistent with the allegations of the complaint that would support Ms. Wolfe's claims against the individual Defendants (section C), and because discovery could reveal facts that would deprive the individual Defendants of their right to assert the defense of qualified immunity (section G);

- Counts III and IV should not be dismissed because the Fifth and Fourteenth Amendments do bar the conditioning of parole on compelled self-incrimination and the retaliation for the assertion of an inmate's Fifth Amendment rights (sections D and E);

- Count V should not be dismissed because it is grounded in the alleged failure of the Parole Board to apply the proper standard in considering Ms. Wolfe's request for parole and not simply the Board's reliance upon Ms. Wolfe's refusal to complete the SOTP, and only discovery will reveal whether the Board applied the correct standard in considering Ms. Wolfe's request for parole (section F); and

- Count VI should not be dismissed because it is grounded in the named Defendants' decision to impose new conditions to parole upon Ms. Wolfe as a result of the filing of this lawsuit, not upon the initial decision to deny parole because of her refusal to complete the SOTP (section E).

In short, Defendants Motion to Dismiss should be denied in its entirety.

## Statement of Facts

Ms. Wolfe, like her fellow class members, is incarcerated in a Pennsylvania state correctional institution operated by the Department of Corrections ("DOC"). Also like her fellow class members, Ms. Wolfe has served her minimum sentence and is, therefore, eligible for parole. Sec. Am. Compl. at ¶ 35.

Ms. Wolfe entered the custody of the Pennsylvania Department of Corrections as a result of a plea agreement in July of 1996, and was sentenced in accordance with the guidelines in place at that time. Sec. Am. Compl. at ¶ 51. She received a "Prescriptive Program Plan" ("Plan")

detailing a series of DOC "Recommended Actions,"[1] including the Sex Offender Treatment Program ("SOTP")  Sec. Am. Compl. at ¶¶ 38, 41.

The SOTP requires each inmate to admit to the sexual crime for which he or she was convicted—even if that conviction is the subject of an appeal or other post-conviction relief proceeding that might result in a new trial—and to provide detailed accounts of all sexual encounters including any uncharged, potentially prosecutable conduct which could subject inmates to further criminal prosecution.  Id. at ¶¶ 42, 43.  Because of these requirements, Ms. Wolfe and class members have declined to participate in the SOTP.

Ms. Wolfe has had numerous Prescriptive Program Plan reviews during her incarceration, each of which noted her flawless behavioral and compliance record, except for her refusal participate in the SOTP.  Sec. Am. Compl. at ¶¶ 54, 58, 60, 62, 68, 75, 85.  She has informed Defendants that she refuses to participate in the SOTP due to her pending efforts to overturn her conviction.  Id. at ¶¶ 57, 65.  That refusal has resulted in repeated denials of institutional recommendations, and granting of requests, for parole.  Id. at ¶¶ 72, 73, 74, 86, 88.  Moreover, her refusal to participate in the SOTP has caused additional adverse action to be levied against her, such actions which include a detrimental change in her custody level.  Id. at ¶¶ 75-78.

The Parole Board has not clearly stated the standard it has applied in considering Ms. Wolfe's requests for parole.[2]  Sec. Am. Compl. at ¶¶ 73, 74.  Ms. Wolfe believes that the Parole Board members have applied the improper standard of review in those decisions.

---

[1] Recommended Actions are "suggested programs and/or kinds of behavior which may help [each inmate] with weakness and/or problem areas."  Sec. Am. Compl. at ¶ 39.

[2] Pursuant to the Parole Act between its passage in 1941 and its amendment in December 1996, a prisoner could be denied parole for public safety concerns but only if those concerns together with other relevant factors outweighed, by a preponderance, the liberty interests of the inmate. The Board was required to issue "a brief statement of the reasons for the board's action" (former

(continued…)

After she initiated this action, Ms. Wolfe was not only denied parole for a second time, but also was told that she would have to complete new requirements in order to be considered for parole in the future—requirements never imposed before she filed suit. Sec. Am. Compl. at ¶ 90. Ms. Wolfe believes, and therefore avers, that this action was taken in retaliation for her decision to pursue legal relief for Defendants' violation of her constitutional rights. Id.

## STANDARD OF REVIEW

"In deciding a motion to dismiss . . . the court must 'accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant.'" Spencer v. Vaughn, No 96-2420, 1996 U.S. Dist. LEXIS 13669, at *2 (E.D. Pa. Sept. 19, 1996) (quoting Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)) (additional citation omitted). It is inappropriate to dismiss a complaint unless it "appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Id. at *2-3 (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Jordan, 20 F.3d at 1261; Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984)) (emphasis added). Rule 8 of the Federal Rules of Civil Procedure dictates that a plaintiff need not describe in detail the facts upon which her claim is based, "but must merely provide a statement sufficient to put the opposing party on notice of the claim." Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001). Ms. Wolfe, on behalf of herself and the putative Class, has stated allegations meriting relief; therefore, the Defendants' Motion must fail.

---

(..continued)

61 P.S. § 331.22). On December 18, 1996, the Parole Act was amended to stress, first and foremost, the public safety, to the disadvantage of the remaining liberty interest of inmates.

## ARGUMENT

**A.    This Action Was Properly Filed Pursuant to 42 U.S.C. § 1983.**

Defendants' assertion that, because of the relief sought in the Second Amended Class

Action Complaint, Plaintiffs must file petitions for habeas relief, as opposed to this action

brought under section 1983, is erroneous.  Plaintiffs have not—as Defendants imply—asked the

Court to, without qualification, enjoin Defendants from denying parole or recommending the

denial of parole for any person—in other words, Plaintiffs seek no relief that necessarily impacts

the fact or duration of confinement.  Mem. Of Law in Supp. Of Defs. Mot. to Dis. at 5.  Rather,

Plaintiffs have requested that the Court enjoin Defendants from basing their denials of

recommendation for or parole on participation in a prescriptive program that violates the Fifth

and Fourteenth Amendments to the Constitution.  This request for prospective injunctive relief is

a broad challenge to prison policy and procedure.  It does not ask the Court to invalidate any

individual judgment of the Parole Board or individual sentence, and is therefore brought, both

properly and practically,[3] as a section 1983 claim.  See Wolff v. McDonnell, 418 U.S. 539, 554-

555, 573 (1974).  The relief requested by Plaintiffs here simply is to remove unconstitutional

barriers that function to preclude real consideration for parole, not to compel parole for any

individual.  Such relief is not, as Defendants deem it, a habeas remedy.

### 1.    The Increased Likelihood of Parole Does Not Automatically Transform Plaintiffs' Claims into Ones For Habeas Corpus Relief.

Although granting Plaintiffs' relief might increase the probability of class members

receiving favorable parole determinations, the increased likelihood of release "does not, in itself,

---

[3] Though not specifically addressed by Defendants therein, their motion to dismiss presumes
that, rather than proceed with this class action pursuant to section 1983, it would be more
appropriate for the vast number of potential class members to flood the court with individual
habeas petitions alleging identical claims.

transform the action into one for habeas corpus." <u>Leamer v. Fauver</u>, 288 F.3d 532, 543 (3d Cir. 2002) (citing <u>Georgevich v. Strauss</u>, 772 F.2d 1078, 1087 (3d Cir. 1985)).  <u>Leamer</u>, discussed in greater detail below, is only the latest in an ensemble of cases establishing this proposition.

In <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 476 (1973), a group of state prisoners lost their good-time credits following institutional disciplinary proceedings.  Claiming credits were unconstitutionally taken way and seeking their restoration, each brought a section 1983 action in conjunction with a habeas corpus action.  <u>Id.</u>  In differentiating between 1983 and habeas actions, the Supreme Court enunciated the following rule: "[W]hen a state prisoner is <u>challenging the very fact or duration</u> of his physical imprisonment, <u>and the relief he seeks is a determination that he is entitled to immediate release or a speedier release</u> from that imprisonment, his sole federal remedy is a writ of habeas corpus."  <u>Id.</u> at 500 (emphasis added).  The <u>Preiser</u> court, overturning the judgment of the appeals court below, held that habeas was the  appropriate remedy because each inmate request for the restoration of good time credits essentially was a request for a determination that an inmate was "entitled to immediate release or a speedier release."  <u>Id.</u> Because, if granted, the requested relief of reinstated good time credits would necessarily result in earlier release, the court determined that the action was one grounded in habeas law.

This reasoning was affirmed by the high court twenty-five years later in <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997).  In <u>Balisok</u>, plaintiff, an inmate of a Washington state prison, was found guilty in a prison disciplinary proceeding of prison rule infractions and sentenced to the loss of thirty days of previously-earned good-time credits.  <u>Id.</u>  Aware of the limitations set forth by the court in <u>Presier</u>, plaintiff brought a section 1983 claim challenging only the procedures used in his disciplinary proceeding as a violation of his due process rights; he sought a declaration that those procedures were unconstitutional and an injunction to prevent future violations, but he did not request restoration of the lost good-time credits.  <u>Id.</u> at 642.  Despite the

plaintiff's efforts to avoid the effect of the rule established by <u>Presier</u>, the Supreme Court nonetheless held that a ruling in plaintiff's favor would necessarily imply the invalidity of the deprivation of his good-time credits and lead to their restoration.  Therefore, the court held that habeas was the appropriate vehicle for the inmate's action.  <u>Id.</u> at 646.

Our court of appeals has adhered to the rationale of <u>Preiser</u> and <u>Balisok</u> in distinguishing actions brought pursuant to section 1983 from those via habeas corpus.  <u>See</u> <u>Georgevich v. Strauss</u>, 772 F.2d 1078, 1087 (3d Cir. 1985).  In <u>Georgevich</u>, a class of inmates serving sentences of less than two years for state convictions brought a section 1983 action against a class of state court judges.  <u>Id.</u>  Plaintiffs claimed that they were denied equal protection because they had not received the same due process as similarly situated prisoners in county prisons.  <u>Id.</u>  On appeal, the Third Circuit held that the district court erred in holding the state inmates' suit must be brought pursuant to habeas corpus.  <u>Id.</u>  Employing the rule enunciated by the <u>Preiser</u> court, the Third Circuit in <u>Georgevich</u> held that, because plaintiffs' claim relates only to process, and not to the actual duration of confinement, it was properly brought as a § 1983 action:

> The district court acknowledged that Georgevich did not challenge the outcome of any parole decisions already made, but instead sought declaratory and injunctive relief to challenge the manner in which decisions were made. The court nonetheless declined to make the "fine" distinction between the two types of challenges, finding that plaintiffs' action was "obviously directed towards enhancement of their chances of eventually securing release from imprisonment." … [H]owever, the fact that a prisoner's success in the litigation might increase the chance for early release does not, in itself, transform the action into one for habeas corpus. Georgevich does not ask for release on parole, but merely seeks uniform application of due process procedures to all members of the class.

<u>Georgevich</u>, 772 F.2d at 1086 (internal citation omitted).

The relief sought by Ms. Wolfe and the putative class members is similar to that sought in <u>Georgevich</u>, not the relief sought in <u>Balisok</u> and <u>Presier</u>.  The relief sought here does not challenge parole decisions already made, will not lead to automatic restoration of an entitlement

to an immediate or speedier release, and does not foreclose Defendants' ability to deny parole in the future for any number of reasons unrelated to the Sex Offender Treatment Program.

The Third Circuit's decision in <u>Leamer</u>, relied upon by Defendants, builds on <u>Balisok</u>, <u>Presier</u> and <u>Georgevich</u>, and therefore supports Plaintiffs' position that this action was properly filed pursuant to 42 U.S.C. § 1983.

Plaintiff in <u>Leamer</u> was placed in the restricted activities program ("RAP"), confining him such that he was unable to participate in therapy required for parole.  288 F.3d at 537.  Leamer filed a section 1983 claim requesting the court to declare the prison's refusal to provide him with therapy unconstitutional, and an injunction preventing the defendants from "denying [p]laintiff his mandated treatment and requisite parole eligibility therefrom."  <u>Id.</u>  The district court dismissed the claim.  On appeal, the Third Circuit concluded that plaintiff's action properly had been brought pursuant to section 1983.  In distinguishing between actions under 1983 and habeas, the <u>Leamer</u> court enunciated a test slightly different in language from that set forth in by the Supreme Court in <u>Presier</u> and <u>Balisok</u>, but consistent in effect:

> The operative test under <u>Preiser</u> and its progeny is not whether Leamer would, if successful, be able to appear before the Parole Board. It is whether a favorable determination of Leamer's challenge would <u>necessarily imply that he would serve a shorter sentence</u>, which, as the District Court recognized, would not be the case. In fact, elsewhere in its opinion, the District Court noted: "the situation of inmates incarcerated at ADTC is unique in that their eligibility for parole is directly linked to their progression in therapy. Unless an inmate/patient is 'cured' he will serve the maximum sentence."

> The District Court concluded that this characteristic is what brought Leamer's case squarely within <u>Balisok</u>; actually, as we see it, this is what squarely distinguishes it from <u>Balisok</u>. Whatever the decision on the § 1983 claim, Leamer's release date will not change; it is precisely because he does not "earn credits" to which he can claim entitlement that his RAP status does not determine the date of release.

Leamer, 288 F.3d at 543 (emphasis added).  Thus, under Leamer, unless "the deprivation of

rights is such that it necessarily impacts the fact or length of detention," section 1983 is the

appropriate vehicle by which to bring the constitutional challenges at issue here.  Id. at 540.[4]

Wolfe's Fifth Amendment claim regarding the sex offender program is comparable to the

challenge brought by Leamer.  Both cases highlight the sometimes complex interplay between

rights guaranteed under the Constitution and the denial of parole.  The Leamer court suggested

that plaintiff's RAP confinement, which precluded the possibility of therapy, was only deemed to

infringe on a liberty interest, and thereby gain protection under the law, because the therapy was

linked to a significant hardship—denial of parole.  Id. at 544.  "Only successful therapy can

shorten his incarceration. Therapy is thus an inherent and integral element of the scheme, and its

deprivation is clearly a grievous loss not emanating from the sentence."  Id. at 544-45.  Similarly

---

[4] In concluding that only challenges that necessarily imply plaintiffs serve a shorter sentence
must be brought by way of a habeas petition, the Leamer court relied, in part, on the Ninth
Circuit's decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997).  In Neal, two individual
inmates brought separate 1983 claims against Hawaii's Sex Offender Treatment Program
(SOTP), under which they were labeled "sex offenders" and their eligibility for parole was
conditioned on their participation in the SOTP.  Id. at 819.  The inmates challenged the
determination that they were sex offenders as a violation of due process.  Id.  In considering the
challenge, the Ninth Circuit wrote:

> The only benefit that a victory in this case would provide [plaintiffs], besides the
> possibility of monetary damages, is a ticket to get in the door of the parole board,
> thus only making them eligible for parole consideration according to the terms of
> their sentences. If [plaintiffs] win, it will in no way guarantee parole or necessarily
> shorten their prison sentences by a single day. The parole board will still have the
> authority to deny the inmates' requests for parole on the basis of any of the grounds
> presently available to it in evaluating such a request. A victory in this case would
> not alter the calculus for the review of parole requests in any way. Because the
> inmates' challenge in this case does not necessarily imply the invalidity of their
> convictions or continuing confinement, it is properly brought under § 1983.

Neal v. Shimoda, 131 F.3d at 824 (latter emphasis added).  The facts and outcome of Neal make
clear that the principles underlying the Ninth Circuit's conclusion that the action was properly
filed under 1983 are consistent with those employed by our own court of appeals and the U.S.
Supreme Court.  See generally Preiser; Balisok; and Leamer.

here, Plaintiffs enjoy a constitutional interest—specifically, the right against self-incrimination—in refusing participation in the full disclosure SOTP only because it is linked to a severe penalty—denial of parole.  Just as Leamer's due process action could not have stood if determinations of parole eligibility were not linked to his RAP confinement and related denial of therapy, Ms. Wolfe's Fifth Amendment claims hinge on the SOTP's link to determinations of suitability for parole.

Here, as in <u>Leamer</u>, the Plaintiffs' claims do not fall within the "core of habeas."  <u>Id.</u>  Indeed, in no way does the relief sought here "necessarily imply that [Plaintiffs will] serve a shorter sentence": 1) Plaintiffs' requested relief would not require that Wolfe or other members of class be released any sooner; 2) a favorable ruling only would permit Plaintiffs to have a fair shot at receiving parole the next time they receive a hearing not mandate their release; and 3) all members of the class eligible for parole going forward could still be denied release for reasons wholly unrelated to participation in the SOTP program.

## 2.    Class Actions Challenging Prison Policies And Procedures Are Properly Brought Under Section 1983

Class actions, like this one, that seek prospective injunctive relief challenging prison polices and procedures and that do not affect the validity of any judgment that have already occurred are properly styled as section 1983 claims.  <u>Wolff</u>, 418 U.S. at 573.

In <u>Wolff</u>, a class of prisoners challenged the policies, practices, and procedures of Nebraska Prisons that had resulted in the loss of good-time credits.  <u>Id.</u> at 553-54.  The plaintiffs, in their suit for damages, alleged that the policies of the prison administration were flawed in general, not as applied to a particular inmate.  <u>Id.</u>  The Supreme Court held that "a declaratory judgment [declaring the prison procedures unconstitutional] as a predicate to a damages award would not be barred by <u>Preiser</u>."  <u>Id.</u> at 554-555.  It added that, "because under [<u>Preiser</u>,] only an

injunction restoring good-time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." Id. Because Plaintiffs' claims constitute broad attacks on the policies, practices, and procedures of the Pennsylvania prison authorities, section 1983 applies. As did the class in Wolff, Plaintiffs here seek prospective relief only and do not suggest that the problems were unique to Jessica Wolfe, the class representative.

Not only is the law clear that section 1983 exists as the proper means by which to challenge the DOC's sex offender program as applied to the defined class, but, as a practical matter, the Defendants' suggestion that habeas corpus is the more appropriate method of pursuing constitutional claims on behalf of a potentially vast class is absurd. Defendants' argument, if accepted, would require countless putative class members to file individual petitions for relief containing virtually identical claims, thereby inundating Pennsylvania district courts. This runs contrary to considerations of judicial economy and undermines the very notion of class actions as a conduit for the adjudication of issues common to numerous individuals.

**B.    Under Ex parte Young, Plaintiffs' Claims for Prospective Injunctive Relief Against Defendants in their Official Capacities are not Barred by the Eleventh Amendment; Plaintiff Jessica Wolfe's Claims for Damages Also Survive Dismissal Because They Are Pleaded Against Individual Defendants in Their Individual Capacities.**

The "the well-established exception of Ex [p]arte Young" makes plain that Plaintiffs' claims for prospective injunctive relief against individual Defendants in their official capacities are not precluded by the Eleventh Amendment. Hindes v. FDIC, 137 F.3d 148, 165 (3d Cir. 1998) ("The Amendment, however, does not bar such suits … where the Ex parte Young

exception applies.") (citing <u>Young</u>, 209 U.S. 123 (1908).[5]  In <u>Young</u>, the Supreme Court found

that a state official who acts in contravention of federal law or the Constitution acts <u>ultra</u> <u>vires</u>

and is therefore not entitled to enjoy the state's immunity from suit.  Termed the "Young

fiction", this exception "allows courts to avoid entering judgments directly against the state while

permitting individual actions against officials violating federal law."  <u>Koslow v. Pennsylvania</u>,

302 F.3d 161, 177 n.20 (3d Cir. 2002), <u>cert. denied</u>, 537 U.S. 1232 (2003).   In <u>Koslow</u>, the

parties disputed the applicability of the <u>Ex parte Young</u> exception to an inmate's ADA

prospective claim for injunctive relief against SCI-Graterford Superintendent Vaughn.  <u>Id.</u> at

179.   The Court of Appeals held that official-capacity suits do exist as valid alternatives to plead

actions against entities for which an officer is an agent, and that Vaughn could be sued in his

official capacity.  <u>Id.</u> at 178 (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985)

("official-capacity actions for prospective relief are not treated as actions against the State.")).

   "[T]he Supreme Court has said, 'Both prospective and retrospective relief implicate

Eleventh Amendment  concerns, but the availability of prospective relief of the sort awarded in

<u>Ex parte Young</u> gives life to the Supremacy Clause.  Remedies designed to end a continuing

violation of federal law are necessary to vindicate the federal interest in assuring the supremacy

of that law.'"  <u>Koslow</u>, 302 F.3d at 178 (quoting <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985)).

Here, Plaintiffs' have requested the type of injunctive, "forward-looking" relief cognizable under

<u>Ex parte Young</u> against various individual Defendants in their official capacities.  <u>Idaho v. Coeur</u>

---

[5] Defendants are correct, however, that Plaintiff Jessica Wolfe's claims, in Counts I and II, against the DOC and the Parole Board are not proper because a state may not be sued in federal court under § 1983 for either damages or injunctive relief, because a state is clearly not a "person" for purposes of that statute.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 64-71 (1989).  Because the elimination of those defendants will not affect the substance of Counts I and II, however, Plaintiff seeks leave to file a corrected Complaint that removes any reference to those defendants in lieu of partial dismissal of those claims.

d'Alene Tribe, 521 U.S. 261, 281 (1997) (noting that when the relief sought is prospective injunctive relief, the request "is ordinarily sufficient to invoke the Young fiction"), and therefore Plaintiffs' official-capacity claims against those named individual Defendants survive dismissal.

Defendants are correct that Ms. Wolfe's claims for damages could not properly be pleaded against the individual defendants in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169 & n.17 (1985). But those claims are pleaded properly against the individual defendants in their individual capacities. Hafer v. Melo, 502 U.S. 21 (1991). The Second Amended Complaint does not purport, and was not intended, to assert damages claims against the individual defendants in their official capacities; if that requires further clarification, Plaintiff should be permitted to do so in a corrected Complaint.

**C.    Plaintiff Has Sufficiently Pleaded The Individual Defendants' Participation In the Events, Policies And Procedures On Which She Bases Her Individual Claims For Damages.**

Plaintiff Wolfe's allegations, as pled in the Second Amended Complaint, unquestionably are sufficient, at this early stage of the proceedings. to state a claim against the individual defendants named in Counts III-VI. As explained by the Court of Appeals:

> Plaintiffs may be unaware of the identities and roles of relevant actors and, owing to their incarceration or institutionalization, unable to conduct a pre-trial investigation to fill in the gaps. But by itself, this lack of knowledge does not bar entry into a federal court. The principles of notice pleading and the liberal discovery rules allow for meritorious claims to proceed even if a confined prisoner cannot adduce all the necessary facts at the outset. For instance, our cases permit the naming of fictitious defendants as stand-ins until the identities can be learned through discovery.

Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004), cert. denied sub. nom, Adamson v. Mazzuca, 124 S. Ct. 2033 (2004); see also Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 807 (3d Cir. 2003) ("[I]f a complaint is properly pleaded, the concern for lack of evidence is only germane after an opportunity for discovery.").

Defendants incorrectly state that Plaintiff merely identifies certain defendants by their titles and provides descriptions of their official duties, without indicating participation in, or knowledge of, constitutional wrongdoing.  See Mem. Of Law in Supp. Of Defs. Mot. to Dis. at 9-10.  That argument mischaracterizes Plaintiff's allegations, which The averments as set forth by Plaintiff in her Second Amended Complaint reveal this statement to be a serious mischaracterization.  Defendant Beard is alleged to bear responsibility for the development, implementation and administration of all correctional programs within the Commonwealth of Pennsylvania.  See Sec. Am. Compl. at ¶ 7.  These programs include the Sex Offender Program, and such policies are alleged to include the systematic denial of parole recommendations to inmates who refuse to forfeit their right against self-incrimination by participating in the sex offender programs offered at those institutions.  Id. at ¶¶ 71-72, 86, 115-119.  Plaintiff has further alleged that Defendants Klem, Vaughn and DiGuglielmo,[6] current and former superintendents of SCI-Mahanoy and SCI-Graterford, were or are responsible for the implementation and administrations of all correctional policies and programs at that institution. Id. at ¶¶ 8, 11-12.  Again, these programs include the Sex Offender Program and such policies are alleged to include the systematic denial of parole recommendations to inmates who refuse to forfeit their right against self-incrimination by participating in the sex offender programs offered at those institutions.  Id. at ¶¶ 71-72, 86, 115-119.  Plaintiff has also levied claims against members of the Parole Board, in one instance alleging that their retroactive application of

---

[6] Defendants also reference, in the body of their argument, Defendant Robert Shannon, and state that Plaintiff identified him as the superintendent of SCI-Mahaony.  Mem. Of Law in Supp. Of Defs. Mot. to Dis. at 10.  However, in paragraph 13 of the Second Amended Complaint, Plaintiff identifies Robert Shannon as the superintendent of SCI-Frackville, and, upon information and belief, Mr. Shannon does hold that position.  Therefore, Ms. Wolfe did not name Superintendent Shannon as a defendant in his individual capacity.

inapplicable parole guidelines in the context of her request for parole violated the Ex Post Facto

Clause.  Although Plaintiff is unable at this juncture to provide exhaustive details, that is not

surprising at the outset of litigation, before any substantive discovery.  The Court of Appeals has

made clear that the "principles of notice pleading and the liberal discovery rules allow for

meritorious claims to proceed even if a confined prisoner cannot adduce all the necessary facts at

the outset."  Alston, 363 F.3d at 233.

Although Defendants cite the applicable standard for considering a motion to dismiss,

their contentions regarding the sufficiency of Plaintiff's allegations against the aforementioned

individuals conveniently ignore the applicable principles.  The single case from this district

Defendants cite in support of their assertion—Hodgin v. Agents of Montgomery County, 619 F.

Supp. 1550, 1554 (E.D. Pa. 1985)—is irrelevant and inappropriately invoked.  In Hodgin, the

court was faced with a defense motion for summary judgment, not a motion to dismiss.  Because

the pro se plaintiff, an inmate at Graterford, provided no memorandum in response to the

defendants' motion, the court treated his complaint as an affidavit in opposition to summary

judgment.  Id. at 1552.  Based on the complaint and limited record submissions, the court

granted, in part, summary judgment; it reasoned that "[s]upervisory officials 'cannot be held

liable under § 1983 unless there has been some showing that they were either directly involved

in, or had knowledge of and acquiesced in, the constitutional violations.'"  Id. at 1554 (quoting

Hodgin v. Roth, 536 F. Supp. 454, 460 (E.D. Pa. 1982).  The standard for summary judgment—

whether the admissible evidence demonstrates a genuine issue of material fact—is well settled.

Fed. R. Civ. P 56(c).  It also has no place in the court's consideration of the instant motion to

dismiss.

The law is unambiguous: "the district court must accept all allegations in the complaint as

true and draw any reasonable inferences from such allegations in Plaintiff's favor."  Mem. Of

Law in Supp. Of Defs. Mot. to Dis. at 4 (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38

F.3d 1380, 1391 (3d Cir. 1994).  Plaintiff's claims for all forms of relief against various

Defendants in their individual capacities must survive the motion to dismiss; Plaintiff has

sufficiently alleged knowledge and participation in the constitutional violations complained of.

Where greater specificity is required, Plaintiff should be afforded the opportunity to develop

additional facts through discovery.  Alston, 363 F.3d at 233; Jurimex Kommerz Transit, 65 Fed.

Appx. at 807.[7]

D.    **Plaintiff, on Behalf of Herself and the Class, Has Stated Claims Under 42**
      **U.S.C. § 1983 and The Fifth Amendment (Counts I and III).**

Despite Defendants' efforts to shift the focus of this motion to evidence of Ms. Wolfe's

individual history, the proper question before the Court is whether it "appears beyond doubt that

plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief."

Spencer, 1996 U.S. Dist. LEXIS 13669, at *2; Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir.

1984)) (emphasis added).  The question, therefore, is not whether Ms. Wolfe can succeed on her

claims, but whether she has sufficiently pleaded that the Defendants violated her rights and those

of other inmates, along with those of the Class members', under the Fifth and Fourteenth

---

[7]      In yet another effort to "try this case on the pleadings," Defendants have made repeated,
irrelevant and inflammatory references to the record of Plaintiff's criminal conviction.  In
considering a motion under Fed. R. Civ. P. 12(b)(6), the Court may consider an exhibit or
matters of public record only when such exhibit or public fact bears some relevance to the
allegations set forth in the complaint.  "[A] court may consider an undisputedly authentic
document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims
are based on the document."  Pension Benefit Guar. Corp. v. White Consolidated Indus., Inc.,
998 F.2d 1192, 1196 (3d Cir. 1993) (emphasis added).  See also Goodwin v. Elkins & Co., 730
F.2d 99, 113-14 (Becker, J. concurring) (3d Cir. 1984) (holding that only when a document is
actually and necessarily relied upon in the allegations of a complaint, and its authenticity is
conceded, the document may be considered by the court on a motion under Fed. R. Civ. P.
12(b)(6)).  There is no excuse for the Defendants' gratuitous use, in the body of its argument, in
its footnotes, and via an exhibit which includes excerpts from Ms. Wolfe's plea colloquy, of facts
wholly unrelated to the claims at issue.

Amendments by seeking to compel participation in sex offender programs requiring full disclosure of past sexual behavior, including both uncharged, potentially prosecutable conduct, as well as offenses for which an inmate has been sentenced but which remain the subject of appellate or collateral relief proceedings.   She unquestionably has met that standard.

The Fifth Amendment provides, "No person … shall be compelled in any criminal case to be a witness against [her]self."  U.S. Const. amend. V.  The Supreme Court has made clear that protection from compulsion extends beyond the confines of a courtroom—"[t]he Amendment not only protects the individual against being involuntarily called as a witness against [her]self in a criminal prosecution but also privileges [her] not to answer official questions put to [her] in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [her] in future criminal proceedings."  Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).  When a person is protected by the privilege, she "may rightfully refuse to answer unless and until [she] is protected at least against the use of [her] compelled answers and evidence derived therefrom in any subsequent criminal case in which [she] is a defendant."  Id. at 78.  "Prison inmates – including sex offenders – do not forfeit the privilege at the jailhouse gate."  McKune v. Lile, 536 U.S. 24, 55 (2002) (Stevens, J., dissenting).

The privilege against involuntarily appearing as a witness against oneself also does not cease with conviction and sentence if there remains the possibility of incrimination in future criminal proceedings, such as a retrial after a successful appeal.  None of the handful of cases commonly cited for the proposition that privilege ceases over transactions for which a person has been convicted actually holds such.  The court's opinion in United States v. Frierson, 945 F.2d 650 (3d Cir. 1991) (affirming district court's holding that defendant's right against self-incrimination was not violated by that court's refusal to grant an acceptance of responsibility downward departure based on defendant's guilty plea, where the court articulated other bases for

the denial of departure), is illustrative. Therein, the Court of Appeals raised, but declined to resolve, the question whether an individual retains the right not to discuss her crime of conviction during the pendency of a direct appeal. Id. at 663 ("We leave this issue for another day."). The court referred to the "traditional rule … that a convicted defendant has no Fifth Amendment privilege with respect to the acts constituting the offense of conviction," id., but neither of the two cases cited by the court in support of that proposition—Reina v. United States, 364 U.S. 507, 513 (1960), and United States v. Romero, 249 F.2d 371, 375 (2d Cir. 1957)—so hold.

In Romero, a Second Circuit case decided almost fifty years ago, the court claimed it "is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify," 364 U.S. at 375, but cited to only a single case in support that proposition—United States v. Cioffi, 242 F.2d 473 (2d Cir. 1957), another Second Circuit case which does not serve as binding precedent on this Court.

In Reina, the Supreme Court cited Romero, but did not itself hold that conviction of an offense extinguished the convicted person's privilege against self-incrimination with respect to that offense; rather, its treatment of the issue plainly was limited to the dicta contained in following passage:

> The petitioner urges that in any event he should not have been ordered to answer the grand jury's questions unless he first received a "general pardon or amnesty" covering the unserved portion of his sentence and his fine. . . . Yet the petitioner in his brief says that "the ordinary rule is that once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime . . . ." There is indeed weighty authority for that proposition. United States v. Romero, 249 F.2d 371; 8 Wigmore, Evidence (3d ed. 1940), § 2279; cf. Brown v. Walker, [161 U.S. 591, 597-600 (1896) (upholding a federal immunity statute passed in the name of the Commerce Clause and construed that statute to apply to state prosecutions)].

364 U.S. at 512-513.  Neither <u>Reina</u> nor <u>Romero</u> confirm the existence of a "traditional" or "well

established" rule.  Nor can such a rule be found elsewhere.  To the contrary, myriad more recent

decisions acknowledge danger inherent in compelling an individual awaiting appeal, or post-

conviction habeas relief, to speak.  As noted by the Third Circuit in <u>Frierson</u>:

> some courts have been receptive to recognizing a Fifth Amendment right after
> conviction so long as the case is on direct appeal. <u>See</u> <u>Frank v. United States</u>, 347
> F.2d 486, 491 (D.C. Cir. 1965) ("the Government may not convict a person and
> then, pending his appeal, compel him to give self-accusatory testimony relating to
> the matters involved in the conviction"); <u>see also</u> McCormick on Evidence, § 121,
> at 290 (3d ed. 1984) ("the mere fact of conviction does not remove the danger of
> incrimination" because accused may "fear that compelled disclosures might
> consequently incriminate him in a reprosecution following invalidation of his
> present conviction").
>
> In a similar vein, Judge Kozinski has recently suggested that the acceptance of
> responsibility determination in a case where the defendant did not take the stand
> at trial should be postponed until direct appeals are completed.  <u>See</u> <u>United States</u>
> <u>v. Aichele</u>, 941 F.2d 761 (9th Cir. 1991) (Kozinski, J., dissenting).

<u>Frierson</u>, 945 F.2d at 663.  <u>See also</u> <u>Commonwealth v. Long</u>, 533 Pa. 388, 625 A.2d 630 (1993)

(citing the Pennsylvania Supreme Court's earlier holding that "the weight of authority permits a

witness whose conviction has not been finalized on direct appeal to invoke the privilege against

self-incrimination and refuse to testify about the subject matter which formed the basis of his

conviction.").  <u>Id.</u> at 397-398 (quoting <u>Commonwealth v. Rodgers</u>, 372 A.2d 771, 780 (1977));

<u>James v. State</u>, 75 P.3d 1065, 1069 (Alaska Ct. App. 2003) (finding that there can be no

requirement of admission of guilt as part of sex offender treatment that was a condition of

probation, because James had a PCRA appeal pending and because if he admitted offenses he

had previously testified he did not commit he could be prosecuted for perjury).

So long as an admission of guilt as to the crime of one's conviction can visit further

adverse consequences upon an inmate—in the context of an appeal or petition for collateral

relief—there still is "further incrimination to be feared."  <u>Mitchell v. United States</u>, 526 U.S.

314, 326 (1999) (stating that only when "no adverse consequences can be visited upon the convicted person by reason of further testimony" can fears of further incrimination be assuaged). Moreover, the second component to the DOC's sex offender programs—which demands that inmates subject themselves to potential future incrimination by discussing all aspects of their past sexual conduct, including uncharged conduct—also leaves "further incrimination to be feared." Both aspects of the sex offender programs promulgated by the DOC implicate Plaintiff's rights under the Fifth Amendment.

Determining whether a violation of the right against compelled self-incrimination has occurred hinges upon "whether the accused was deprived of [her] 'free choice to admit, to deny, or to refuse to answer,'" Garrity v. New Jersey, 385 U.S. 493, 496 (1967); in other words, whether she was compelled to speak. More specifically, the paramount inquiry in the context of challenges to institutional sex offender programs asks whether the consequences of refusing to admit to one's crime of conviction or to past behavior that might subject one to future prosecution "were so great as to constitute compulsion for the purposes of the Fifth Amendment privilege against self-incrimination." McKune v. Lile, 536 U.S. 24, 49 (2002) (O'Connor, J., concurring) (likening the analysis employed when investigating allegations of Miranda violations—"whether the pressure imposed in such situations rises to a level where it is likely to 'compel' a person"—to that applicable when an inmate refuses to incriminate herself).

Denials of recommendations and grants of parole, along with the extended terms of incarceration that flow from those denials, are penalties significant enough so as to constitute compulsion. See generally McKune (holding that plaintiff, faced only with the threat of a transfer to another facility and a loss of privileges for his non-participation in a sex offender program, as opposed to denial of parole or extended incarceration, was not compelled for purposes of the Fifth Amendment because the potential consequences were not so great as to

constitute compulsion).  Defendants incorrectly assert that under <u>McKune</u> and the Court of

Appeals' unpublished opinion in <u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215 (3d Cir. 2003), Plaintiff

can allege no set of facts entitling her to relief.  To the contrary.  Although the plurality decision

issued by the court in <u>McKune</u> rendered the legal standard defining the contours of the

compulsion inquiry imprecise[8]; without ambiguity, <u>all nine justices agreed</u> that those penalties

facing a plaintiff like Ms. Wolfe—the threat of parole denial and extended incarceration—could

constitute compulsion:

> In the present case, respondent's decision … did not <u>extend his term of
> incarceration</u>. Nor did his decision affect his <u>eligibility for good-time credits or
> parole</u>.  Respondent instead complains that if he remains silent about his past
> crimes, he will be transferred from the medium-security unit - where the program
> is conducted - to a less desirable maximum-security unit.

<u>McKune</u>, 536 U.S. at 38 (Kennedy, J., plurality) (emphasis added).

> The <u>penalties potentially faced in these cases</u> -- <u>longer incarceration</u> and
> execution -- <u>are far greater than those we have already held to constitute</u>

---

[8] Though agreeing that the threats levied against McKune were not tantamount to compulsion
and concurring in the judgment, Justice O'Connor expressly <u>disagreed</u> with the standard for
evaluating compulsion employed by the plurality.  <u>See McKune</u>, 536 U.S. at 48 ("I agree with
Justice Stevens [dissenting] that the Fifth Amendment compulsion standard is broader than the
'atypical and significant hardship' standard we have adopted for evaluating due process claims in
prisons.") (internal citation omitted).

       When no single rationale explains the result of a divided Supreme Court, lower courts are
to interpret the holding as the "position taken by those Members who concurred in the judgments
on the <u>narrowest</u> grounds."  <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977) (emphasis added).
Therefore, Justice O'Connor's concurrence stands as <u>McKune's</u> holding.  <u>Id.</u>; <u>see also</u> <u>Searcy v.
Simmons</u>, 299 F.3d 1220, 1225 (10th Cir. 2002) ("we view [Justice O'Connor's] concurrence as
the holding of the Court in <u>McKune</u>").

       Defendants spend almost four full pages of their motion to dismiss arguing that the denial
of parole or a recommendation does not constitute "an atypical and significant hardship," Mem.
Of Law in Supp. Of Defs. Mot. to Dis. at 12, 13, and 14 (quoting test espoused in <u>Sandin v.
Conner</u>, 515 U.S. 472 (1995)), but, as stated directly above, that is not the proper test under
<u>McKune</u>.  Justice O'Connor could not have been clearer: "I do not agree that the standard for
compulsion is the same as the due process standard we identified in <u>Sandin</u> . . . ."  <u>McKune</u>, 536
U.S. at 54.  Defendants analysis of these facts pursuant to that test is inapposite.

> unconstitutional compulsion in the penalty cases. Indeed, the imposition of such outcomes as a penalty for refusing to incriminate oneself would surely implicate a "liberty interest."

Id. at 52 (O'Connor, J., concurring) (emphasis added) (distinguishing penalties like extended incarceration and citing in support cases in which the Supreme Court has held lesser penalties tantamount to compulsion); McGautha v. California, 402 U.S. 183(1971); Bordenkircher v. Hayes, 434 U.S. 373 (1978), and Ohio Adult Parole Authority v. Woodard, 532 U.S. 272 (1998)).

> The plurality and Justice O'Connor hold that the consequences stemming from respondent's invocation of the privilege are not serious enough to constitute compulsion. The threat of transfer to Level I and a maximum-security unit is not sufficiently coercive in their view -- either because the consequence is not really a penalty, just the loss of a benefit, or because it is a penalty, but an insignificant one. I strongly disagree.

Id. at 75 (Stevens, J., dissenting) (finding penalties less severe than eligibility for parole and extended incarceration to constitute compulsion).

The justices' statements not only highlight the factual distinctions between McKune, whose holding applied only to threats regarding loss of privileges and institutional transfers, and the action before this Court, see Donhauser v. Goord, No. 01-cv-1535, 2004 U.S. Dist. LEXIS 6657, at *13 (S.D.N.Y. Apr. 15, 2004) (denying defendants' motion to dismiss plaintiff's Fifth Amendment claim insofar as it related to the loss of good time credits because "McKune was not factually on point"), but also forecast the Supreme Court's treatment of a case such as this, which involves threats of undeniably severe penalties including extended incarceration and denial of parole.

Our Court of Appeals has, on only one occasion since McKune was decided in 2002, addressed the Supreme Court's unsettled plurality decision.  In Thorpe v. Grillo, a brief

unpublished opinion,[9] the Third Circuit relied, in part, on McKune to affirm the district court's grant of summary judgment in favor of defendants against plaintiff's allegations regarding the sex offender program; its analysis of the complex decision in McKune was limited to a single parenthetical, see Thorpe, 80 Fed. Appx. at 219 (describing the McKune plurality's holding as "characterizing compulsion under the Fifth Amendment as hinging on the automatic nature and severity of the threatened punishment").  With all due respect to the panel charged with considering Mr. Thorpe's claims, its cursory characterization of the plurality's holding in McKune, and by extension, its inference that there exists no Fifth Amendment violation unless an inmate is automatically denied consideration for parole, misreads McKune.[10]  To be sure, McKune is concerned with the severity of threatened penalties, chief among them denial of parole; however, whether one is automatically denied parole for exercising her rights against self-incrimination or effectively denied recommendations and grants of parole for taking such action, the Supreme Court has not foreclosed relief for such actions under the Fifth Amendment.  See McKune, 536 U.S. at 38 (Kennedy, J., plurality); id. at 52 (O'Connor, J., concurring).

        Moreover, Defendants' reliance on Thorpe is inappropriate at this stage of the proceedings.  The Thorpe panel reviewed a grant of summary judgment, not a motion to dismiss – the panel affirmed the district court's holding that the record demonstrated that "the DOC's

---

[9] Rule 5.3 of the Internal Operating Procedures of the United States Court of Appeals for the Third Circuit dictates that an unpublished opinion "is designated as not precedential."  As explained by Rule 5.7: "The court by tradition does not cite to its not precedential opinions as authority.  Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing."  See also Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 381 (3d Cir. 2000); Linden v. SAP Am., Inc., No. 03-cv-3125, 2004 U.S. Dist. LEXIS 8598, at *12 (E.D. Pa. May 7, 2004) ("unpublished opinions lack precedential value").

[10]  Arguably, its reliance on the standard articulated by the plurality is wholly misplaced, as Thorpe fails to account for Justice O'Connor's concurrence in McKune, which, as stated above, represents McKune's holding.  See Marks v. United States and Searcy v. Simmons, supra.

policy did not automatically deprive [Thorpe] of consideration for parole," and therefore affirmed the grant of summary judgment. <u>Thorpe</u>, 80 Fed. Appx. at 219. The <u>Thorpe</u> panel did not hold—and could not hold, consistent with <u>McKune</u>—that the denial of parole never constitutes sufficient compulsion to make out a Fifth Amendment claim. The key question, therefore—whether the Defendants' actions have, without exception, barred Plaintiff and similarly situated inmates from what would otherwise be successful applications for parole—is the question to be answered under both <u>Thorpe</u> and <u>McKune</u>.

Plaintiff has clearly alleged that the actions of the Defendants <u>do</u> automatically deprive her and similarly situated inmates of meaningful consideration for parole, and therefore states a claim. She has pled, on behalf of herself and members of the putative class, that the Defendants have imposed sanctions including denials of parole recommendations, denials of parole grants, and extended incarceration, to penalize inmates for refusing to participate in sex offender programs requiring self-incrimination.[11] Specifically, on behalf of the Class, she has averred that completion of the sex offender treatment programs promulgated by the Pennsylvania DOC is contingent upon full disclosure of past sexual behavior, including an inmate's crime of conviction (despite the pendency of an appeal or petition for collateral relief) as well as any uncharged, potentially prosecutable conduct. <u>See</u> Sec. Am. Compl. at ¶¶ 43-44. Ms. Wolfe, on behalf of the class, has pled further that it is the policy of both the DOC and the Parole Board, without exception, to withhold recommendations and grants of parole to inmates who exercise their rights not to participate in sex offender programs requiring such incriminating disclosures,

---

[11] As set forth in the Second Amended Class Action Complaint, Ms. Wolfe seeks declaratory and injunctive relief on behalf of the class and, on behalf of herself individually, all damages permitted under 42 U.S.C. § 1983, as well as punitive damages.

id. at ¶¶ 46-49.  Such penalties are so great as to constitute compulsion.  See McKune, 536 U.S. at 38 (Kennedy, J., plurality); id. at 52 (O'Connor, J., concurring).

On behalf of herself individually, Ms. Wolfe has alleged that after refusing to participate in the DOC sex offender program, and informing Defendant Wildenstein that that decision was based on the potentially incriminating nature of the program, she subsequently was denied favorable recommendations for parole by the DOC, and twice denied parole by the Board, despite maintaining a misconduct-free record over her more than eight years in prison.  See Sec. Am. Compl. at ¶¶ 56-58, 60, 62, 67-68, 71-75, 85-91.  Plaintiff has alleged that these denials, and the resulting extended incarceration she continues to suffer, flow directly from her decision not to complete the sex offender program requiring incriminating disclosures, id. at ¶¶ 71-72, 86, 89, 91. Conditioning parole determinations on participation in a program requiring full disclosure of past sexual behavior is tantamount to compulsion.   McKune, 536 U.S. at 38 (Kennedy, J., plurality); id. at 52 (O'Connor, J., concurring).

Perhaps, after discovery, Defendants will be able to establish that Plaintiff is incorrect, and that their policies with respect to the SOTP do not amount to an automatic deprivation of consideration for parole, but that is not a question to be decided on a motion under Fed. R. Civ. P. 12(b)(6), when "the court must 'accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant.'"  Spencer, 1996 U.S. Dist. LEXIS 13669, at *2.  Plaintiff has stated a claim under the Fifth Amendment. [12]

---

[12] Paragraph 4(b) and paragraph 5 of Defendants' Motion to Dismiss both address Plaintiff's retaliation claims.  For the sake of clarity, Plaintiff will address all of her retaliation claims in section E of this argument.

E.    **Plaintiff Has Stated Claims For Retaliation, on Behalf of Herself and the Class, Under 42 U.S.C. § 1983 and The Fourteenth Amendment (Counts II, IV) and, On Her Own Behalf, Under 42 U.S.C. § 1983 and the First Amendment (Count VI).**

Ms. Wolfe also has stated a claim that Defendants have violated both her and the class members' substantive due process rights, as protected under the Fourteenth Amendment, by retaliating against inmates who refuse to participate in sex offender programs that would compel self-incrimination in violation of the Fifth Amendment. Such retaliatory adverse action includes, but is not limited to, denial of parole recommendations and grants, as well as extended incarceration. See Sec. Am. Compl. at ¶¶ 47-49.

In addition, Ms. Wolfe has pleaded a proper claim that Defendants violated her substantive due process rights by taking adverse action against her in retaliation for her filing of this suit. See Sec. Am. Compl. at ¶¶ 87-90.

Defendants argue that Plaintiff cannot state a Substantive Due Process claim without establishing that Defendants' actions were "arbitrary and capricious" because she has no "right" to be paroled, but they are wrong: "the law of this circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (reversing district court's grant of summary judgment to defendants on plaintiff's retaliation claim).[13] The relevant question is whether he was denied those privileges in retaliation for exercising a constitutional right. Id. Plaintiff acknowledges that there is no independent liberty interest in the grant of parole; but, that does not mean that parole may be denied in retaliation for the assertion of a constitutional right.

---

[13] For this reason, Defendants' entire discussion of Plaintiff's Fourteenth Amendment claim at pages 15 through 16 of their Memorandum—which deals entirely with the "arbitrary and capricious" standard and does not address a single retaliation case—is inapposite.

In order to state a claim of unconstitutional retaliation, Ms. Wolfe need only plead that: 1) the conduct which led to the alleged retaliation was constitutionally protected, id. (internal citation omitted); 2) adverse action was taken that was sufficiently severe to deter a person of ordinary firmness from exercising her constitutional rights, id. (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); and 3) causation, specifically that the constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline, id. at 333-334.

In Rauser, shortly before his parole review, plaintiff was issued a Prescriptive Program Plan requiring completion of a series of behavioral programs before the DOC would recommend his release. 241 F.3d at 332. Among the programs plaintiff was required to complete were Alcoholics Anonymous ("AA") and/or Narcotics Anonymous ("NA"); both programs are centered on a belief in a Supreme Being and require participants to accept God as a treatment for their addictions. Plaintiff objected to continuing in AA/NA on the basis of his own religious beliefs, but the DOC refused to consider recommending him for parole unless he participated in AA or NA. Plaintiff filed suit, alleging that the DOC retaliated against him for his insistence on religious freedom by: transferring him far from his home and family; changing his job classification from the highest level attainable to the lowest possible designation; and refusing to recommend him for parole. Id.

In dismissing the plaintiff's retaliation claim, the district court held that plaintiff enjoyed no constitutional protection against retaliation because he possessed no protected liberty interest in early parole, prison wages, or a specific place of confinement. Id. On appeal, the court held that the relevant question was not whether plaintiff had a protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right. The court found that plaintiff's refusal to participate in a religious program was protected by the First Amendment, and that plaintiff had produced evidence he was denied

parole, transferred to a distant prison where his family could not visit him regularly, and penalized financially, thereby establishing he suffered some "adverse action" at the hands of the prison officials.  In addition, plaintiff successfully demonstrated a temporal proximity between his conduct and the adverse action.  Whereas, the defendant offered no evidence to suggest that these actions were taken for any other reason, penologically legitimate or otherwise.  Id. at 334.

As in Rauser, Ms. Wolfe has pleaded a proper retaliation claim, on behalf of herself and the putative class members, by alleging that she and other inmates have been systematically denied parole recommendations and parole (and that she has suffered other adverse consequences) as a result of their refusal to incriminate themselves in the SOTP.  Therefore, Counts II and IV of the Second Amended Complaint should not be dismissed.

Similarly, Ms. Wolfe has pleaded a proper claim of First Amendment retaliation by alleging that "[u]pon information and belief, Defendants have sought to impose new prerequisites for parole upon Plaintiff because of Plaintiff's pursuit of administrative and legal relief from Defendants' efforts to compel her to participate in the sex offender's program in violation of her constitutional rights."  Sec. Am. Compl. at ¶ 90.  See Rauser, 241 F.3d at 333.  As with the claim that Defendants have retaliated against her and the class for refusing to submit to unconstitutional self-incrimination, Ms. Wolfe's First Amendment retaliation claims requires that she plead that: 1) the conduct which led to the alleged retaliation was constitutionally protected; 2) adverse action was taken that would deter a person of ordinary firmness from exercising her constitutional rights; and 3) causation, specifically that her constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline.  Rauser, 241 F.3d at 333-334.  Ms. Wolfe has alleged that Defendants have retaliated against her by erecting new barriers to her parole (particularly additional prescriptive programs).  See Sec. Am. Compl. at ¶ 90.  Plaintiff has averred that her filing of this lawsuit was a substantial or

motivating factor behind those actions.  Therefore, Count VI of the Second Amended Complaint should not be dismissed.

**F.    Ms. Wolfe Has Sufficiently Pled That Defendants Violated the Ex Post Facto Clause of the United States Constitution by Retroactively Applying an <u>Amended Parole Standard to Her Applications For Parole</u>.**

The United States Constitution forbids Congress and the states from enacting ex post facto laws.  U.S. Const. art. I § 9, cl. 3, § 10, cl. 1.  The relevant Ex Post Facto Clause instructs: "No State shall . . . pass any . . . ex post facto Law . . . ."  <u>Id.</u>  The Supreme Court of the United States has interpreted that clause to prohibit "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."  <u>Cal. Dep't of Corr. V. Morales</u>, 514 U.S. 499, 504 (1995) (quotations omitted).  The Court of Appeals for the Third Circuit has interpreted that same clause to prohibit application of Pennsylvania's parole guidelines, 61 Pa. Stat. Ann. § 331.1, <u>et seq.</u>, as amended in December of 1996, to a plaintiff like Ms. Wolfe, sentenced in July, 1996.  <u>See</u> <u>Mickens-Thomas v. Vaughn</u>, 321 F.3d 374 (3d Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 229 (2003), <u>subsequent appeal at and reman'd by</u> 355 F.3d 294 (3d Cir. 2004); <u>see also</u> <u>Hart v. Pa. Bd. of Prob. & Parole</u>, 82 Fed. Appx. 276, 278 (3d Cir. 2003) ("<u>Mickens-Thomas</u>, therefore, is the law of this Circuit.").

In <u>Mickens-Thomas</u>, the court was tasked with deciding whether retroactive application of Pennsylvania's 1996 parole statute amendment, expressing for the first time that "the board shall first and foremost seek to protect the safety of the public," 61 Pa. Stat. Ann. § 331.1, violated the Ex Post Facto Clause.  The court, answering the question in the affirmative, held that Pennsylvania's change to the parole statute significantly altered the manner in which the Parole Board weighed public safety in making parole decisions:

> The record is convincing that after 1996, the Board applied to the public safety interest far greater weight. The evidence here demonstrates that since 1996, the Board has given special weight to the risk to public safety. Pre-1996, a prisoner

could be denied parole because of public safety concerns only if those concerns together with other relevant factors outweighed, by a preponderance, the liberty interests of the inmate. The 1996 policy change placed first and foremost the public safety to the disadvantage of the remaining liberty interest of the prisoner.

. . . .

We conclude, then, that prior to 1996, the Board's concern for potential risks to public safety could not be the sole or dominant basis for parole denial under the existing Guidelines. Considerations of public safety were already incorporated into its Guidelines analysis; the Board had to point to 'unique' factors as a basis for its rejection of the Guidelines. Moreover, the Board had to weigh all factors, militating for and against parole, and make its decision on the totality of the factors pertinent to parole, and give appropriate weight to the interests of the inmate. Heavy foot application on one factor could not have been the basis of granting or rejecting parole. Policy declarations in and after 1996 demonstrate that Board stance shifted and that, indeed, post-1996 considerations of public safety became the dominant concern of the Board.

Mickens-Thomas, 321 F.3d at 385-386. Despite the fact that plaintiff Mickens-Thomas had commenced serving his time in 1964 and had had his life sentence commuted by the governor, he repeatedly was denied parole on bases such as the "assaultive instant offense," and his "very high assaultive behavior potential"; following his third appearance, the Board again refused to release him, stating that "the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through [] release on parole." Id. at 382.

The Court of Appeals concluded that the Parole Board had "appeared to rely exclusively on the nature of the underlying offense and the potential danger to the public if Thomas were released," id. at 389, thereby retroactively applying the parole statute as amended in late 1996 in violation of the Ex Post Facto clause. The district court was directed to remand the matter to the Parole Board because, the Third Circuit determined, Mickens-Thomas was entitled to a new parole hearing consistent with pre-1996 parole guidelines. Id. at 393. So too is Plaintiff Jessica Wolfe.

Plaintiff has been seen by the Board and denied parole twice since entering the DOC in mid-1996. By "Green Sheets" dated March 20, 2001, and September 24, 2002, Plaintiff was

informed that the Parole Board had "determined that the fair administration of justice cannot be achieved through your release on parole." Sec. Am. Compl. at ¶ 74, 87-88. This ambiguous and cursory explanation does not comport with the directives of Pennsylvania's parole guidelines. See Boyd v. Ward, 802 A.2d 705 (Pa. Commw. Ct. 2002) (advising an inmate that the fair administration of justice could not be achieved through the release of the inmate on parole does not meet minimal statutory requirements of a statement of reasons for its denial). It is not clear that the Parole Board denied Ms. Wolfe parole on bases other than those embodied by the 1996 amendments to 61 P.S. § 331.1, with its predominant emphasis on public safety. The facts may reveal the Board's determination did indeed hinge on the application of post-amendment factors, in which case the Plaintiff would be entitled to a re-adjudication of her parole determination applying the parole guidelines as they existed before the 1996 amendments. The unsettled factual issues make this claim inappropriate for dismissal.[14]

Plaintiff's claims under the Ex Post Facto Clause are not deterred by Heck v. Humphrey, 512 U.S. 477 (1994), as Defendants assert. Heck functions to prevent damages claims under section 1983 when an inmate seeks "to recover damages for unconstitutional conviction or imprisonment." Nellom v. Luber, No. 02-2190, 2004 U.S. Dist. LEXIS 7103, at *22-23 (E.D.

---

[14] Defendants' argument that Plaintiff's ex post facto claim is frivolous because the Parole Board denied parole to inmates that refused to complete the SOTP even before the 1996 parole statute amendments, misses the point. Ms. Wolfe's ex post facto claim is neither derivative of nor dependent on her claim that she has been denied parole solely because of her refusal to participate in the SOTP – rather, it is a free-standing claim that the Parole Board has applied the wrong standard in considering her requests for parole. The Parole Board's reliance upon her refusal to participate in the SOTP may be relevant to that claim, because that reliance may be evidence that the Parole Board impermissibly looked solely to public safety considerations in denying her parole. But whether the Parole Board applied the proper standard will not turn solely or even chiefly on the resolution of Ms. Wolfe's claim concerning the SOTP.

Pa. March 14, 2004).  Under such circumstances, claims are barred unless and until the conviction is reversed or otherwise held to be invalid.  <u>Heck</u>, 512 U.S. at 487.

Plaintiff here, however, is not attacking the constitutionality of her <u>conviction or sentence</u>.  She is attacking the retroactive application of guidelines deeming public safety the paramount concern in parole determinations.  Complaining of the existence of unconstitutional policies and programs that affect security status or eligibility for parole simply is not tantamount to attacking the validity of an underlying conviction.  And, it is only the latter which is addressed, and prohibited, by <u>Heck</u> and its progeny.

Moreover, as the <u>Heck</u> court itself noted, a suit alleging that the state used the "wrong procedures" as opposed to issuing the "wrong result" is cognizable under § 1983.  <u>Nellom</u>, 2004 U.S. Dist. LEXIS 7103 at *25-26 (quoting <u>Heck</u>, 512 U.S. at 482-83).

> A claim is cognizable under § 1983 to the extent that a plaintiff is neither seeking an earlier parole eligibility date nor challenging the parole board's decision with regard to parole. <u>See</u> <u>Paporozzi</u>, 219 F. Supp. 2d at 641-42 (citing <u>Salaam v. Consovoy</u>, 2000 U.S. Dist. LEXIS 19971, No. CIV.A. 99-CV-5692, 2000 WL 33679670, at *2 (D.N.J. Apr. 14, 2000)). 'For example, when a dispute "goes only to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to an earlier parole eligibility date, plaintiff's claim may proceed under 42 U.S.C. § 1983."' <u>Paporozzi</u>, 219 F. Supp. at 642 (quoting <u>Johnson v. Fauver</u>, 786 F. Supp. 442, 445 (D.N.J. 1992), <u>aff'd</u>, 970 F.2d 899 (3d Cir. 1992)).

<u>Id.</u> at *25.

Finally, Defendants' argument that Ms. Wolfe's ex post facto claim can only be brought by way of a petition for habeas relief is incorrect.  It is certainly true that the <u>Mickens-Thomas</u> case was brought by way of habeas petition, but Mickens-Thomas actually sought habeas relief – that is, an order to release him on parole: "On November 26, 1996, petitioner filed a petition for a writ of mandamus in the Pennsylvania Commonwealth Court seeking release on parole or, in the alternative, an order compelling the Parole Board to consider petitioner's parole application."

Mickens-Thomas v. Vaughn, No. 99-cv-6161, 2000 U.S. Dist. LEXIS 20859, at *3-4 (E.D. Pa. Aug. 21, 2000); see also Mickens-Thomas v. Vaughn, 217 F. Supp. 2d 570, 580 (3d. Cir. 2002) ("Petitioner argues that where the Board intentionally evaded a court mandate or acted in bad faith, the court may order immediate release."). Ms. Wolfe does not seek and order compelling her release, but seeks declaratory relief—a finding that the Parole Board erred in the standard it applied—and any damages she can prove resulted from that error. Sec. Am. Compl. at Count V. As explained at length in section A of this argument, a challenge to parole board proceedings that does not seek release, or that will not necessarily result in release or a shortening of the period of incarceration is properly brought under 42 U.S.C. § 1983 rather than in a petition for habeas relief.

Defendants' arguments in favor of dismissal of Count V of the Second Amended Complaint fall short; Plaintiff has sufficiently averred facts in support of her claim.

## G.   Defendants' Assertion of Qualified Immunity is Premature at the Pleading Stage and Does Not Justify Dismissal.

Defendants assertion of qualified immunity is premature. "[D]efendants have the burden to prove that they are protected by qualified immunity. . . . Thus, taking the allegations in the [Second] Amended Complaint and all reasonable inferences as true, the issue of qualified immunity should not be decided on a motion to dismiss." Watkins v. Pa. Bd. of Prob. & Parole, No. 02-cv-2881, 2002 U.S. Dist. LEXIS 23504, at *39-40 (E.D. Pa. Nov. 25, 2002) (denying motion to dismiss racial discrimination charge against parole board on grounds of qualified immunity) (citations omitted). Moreover, Defendants' qualified immunity argument addresses only Plaintiff's Fifth Amendment claim, and not her additional ex post facto, First Amendment and substantive due process claims. The time to consider the defense of qualified immunity is after Plaintiff has had the opportunity to discover the facts that support her allegations.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests that this Court deny Defendants' Motion to Dismiss the Second Amended Class Action Complaint.

Respectfully submitted,

_____
Mary Catherine Roper
Attorney I.D. No. 71107
Sandra L. Moser
Attorney I.D. No. 89443

DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700 (Phone)
(215) 988-2757 (Fax)
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Sandra L. Moser, hereby certify that on June 11, 2004, I caused a true and correct copy

of the foregoing document to be served upon counsel of record for all defendants, by causing

said copies to be delivered to counsel by U.S. Mail, first-class, postage prepaid, to the following:

Beth Anne Smith
Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-2130
(215) 560-2130 (Phone)
Attorney for Defendants

_____
MaryCatherine Roper
Attorney I.D. No. 71107
Sandra L. Moser
Attorney I.D. No. 89443

DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700 (Phone)
(215) 988-2757 (Fax)
Attorneys for Plaintiffs