IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSICA ELAINE WOLFE, on          :          CIVIL ACTION
behalf of herself and all         :          NO. 02-2687
similarly situated INMATES        :
OF THE PENNSYLVANIA DEP'T          :
OF CORRECTIONS,                    :
                                   :
        Plaintiffs,                :
                                   :
        v.                         :
                                   :
THE PENNSYLVANIA DEP'T OF          :
CORRECTIONS, ET AL.,               :
                                   :
        Defendants.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        AUGUST 27, 2004


Plaintiff Jessica Elaine Wolfe, on behalf of herself
and all similarly situated inmates of the Pennsylvania Department
of Corrections ("DOC"),[1] brings this 42 U.S.C. § 1983 action
against numerous individual and institutional defendants
(collectively "defendants"), alleging violations of the
prohibition against self-incrimination protected by the Fifth and
Fourteenth Amendments of the Constitution, retaliation for the
exercise of constitutional rights in violation of the First,
Fifth, and Fourteenth Amendments, and violations of Article I of

_____

[1]     Wolfe and the members of the putative class will be
collectively referred to as "plaintiffs".

the Constitution (the "Ex Post Facto" clause).[2]  Presently before
the Court is defendants' motion to dismiss the complaint.  For
the reasons that follow, the motion will be granted in part and
denied in part.

I.    BACKGROUND[3]

     A.    Allegations of the Putative Class.

          Plaintiffs allege that at all relevant times to this
action, inmates of the Pennsylvania state prison system, upon
arriving at their designated correctional institutions, are
provided with a "Prescriptive Program Plan" detailing a series of
DOC "Recommended Actions" ("RAs").  These RAs are explained as
"suggested programs and/or kinds of behavior which may help you
[the inmate] with weakness and/or problem areas."  Inmates are

─────────────────────

     [2]     The defendants are the DOC, Jeffrey Beard, William J.
Wolfe, Marilyn S. Brooks, Donald Kelcher, Martin Dragovich, Frank
D. Gillis, Harry E. Wilson, Thomas Lavan, Robert Shannon, David
DiGuglielmo, Louis S. Folino, L.P. Benning, George Patrick,
Kenneth D. Kyler, Frederic Rosenmeyer, Joseph F. Desuta, Shirley
Moore, Barry Johnson, William S. Stickman, Randall Britton, Joe
Chesney, Frank Tennis, John Palakovich, Raymond J. Sobina,
Raymond J. Colleran, Edward Klem, Donald Vaughn, Neal K.
Mechling, Sr., the Pennsylvania Board of Probation and Parole,
William Ward, Benjamin Martinez, Allen Castor, Barbara Martinez,
Allen Castor, Barbara Descher, Michael L. Green, Nicholas Muller,
Jeffrey R. Imboden, Gary R. Lucht, Sean R. Ryan, Michael M.
Webster, Lloyd A. White, Brenda Wildenstein, and Ms. Boris.

     [3]     Plaintiffs makes the following factual allegations in
second amended class complaint.  For present purposes the Court
will accept these facts as true and draw all reasonable
inferences therefrom in favor of the plaintiffs.

told that participation in the RAs is voluntary, but that the RAs
nonetheless "must" be completed before the expiration of their
minimum sentences or the inmates risk being denied parole.  One
such RA, the one at issue here, is the Sex Offender Treatment
Program, known among the inmate population as the "SOP Program."
The SOP Program consists of three phases and includes "a full
disclosure phase."  As stated in paragraph 44 of the second
amended class complaint:

> Upon information and belief, full disclosure
> requires inmates to discuss past sexual
> behavior in the presence of other inmates --
> from first sexual encounters through the
> present, including any uncharged, potentially
> prosecutable conduct that could subject
> inmates to further criminal prosecution -- as
> well as conduct underlying conviction, even
> when there is an appeal or petition for
> collateral relief pending.

2d Amend. Compl., at 10.

Plaintiffs are presently incarcerated in the
Commonwealth's correctional institutions operated by the DOC,
have served their minimum sentences, and are thus eligible for
parole.  Based on what they believe to be DOC policy to withhold
parole recommendations to inmates who fail or refuse to
participate in the DOC program, plaintiffs allege that they have
been systematically and arbitrarily denied parole by the
Pennsylvania Board of Probation and Parole (the "Parole Board").

B.    Plaintiff Wolfe's Individual Allegations.

According to the second amended class complaint, Wolfe

3

came under the custody and care of the DOC following a plea agreement in July of 1996, and was sentenced in accordance with the guidelines in place at that time.  While at SCI-Mahoney, one DOC's facilities, Wolfe received her first individualized Prescriptive Program Plan on November 20, 1996.  Included among the RAs in her plan was the SOP Program.  Wolfe claims that she did not participate in the program because of its full disclosure requirement.  On June 25, 1997, June 23, 1998, and again on July 16, 1999, Wolfe was provided Prescriptive Program Plan reviews stating that she had been misconduct-free during the relevant period, but that she refused participation in the SOP Program. At the suggestion of her unit manager between the second and third of these reviews, Wolfe attended three orientation phase sessions of the SOP Program.

In October of 1999, Wolfe sent her unit manager, defendant Brenda Wildenstein, an "Inmate's Request to Staff Member" form indicating that she no longer intended to continue in the SOP Program.  In response, the unit manager informed Wolfe, in writing, that "if you do not participate -- irregardless of where -- your likelihood of being granted parole is narrowed."  On July 19, 2000, Wolfe received her fourth Prescriptive Program Plan review, which stated that she maintained a misconduct-free record during the relevant review

4

period, but refused participation in the SOP Program.[4]

On January 8, 2001, a hearing by prison officials was held to consider institutional recommendation for parole for Wolfe. At this hearing, Wolfe was told by the officials that she would not be paroled unless she completed the assigned Prescriptive Program Plan.

Wolfe first appeared before the Parole Board on March 14, 2001. About a week later, on March 22, 2001, Wolfe learned that she was denied parole. The "Green Sheet" (apparently a memorialization of the Parole Board decision prepared after the hearing) indicated that the next review would take place in April 2002 and explained that completion of the Prescriptive Program Plan would be considered at the next review. The Green Sheet also stated the Parole Board's finding that "the fair administration of justice cannot be achieved through your release on parole." On July 16, 2001, Wolfe was provided her fifth Prescriptive Program Plan review, which stated that Wolfe had been misconduct-free during the review period, but refused participation in the SOP Program.

At some point, Wolfe was informed by her prison

---

[4]    Upon completion of her minimum term of incarceration, Wolfe claims that she participated in several interviews, staff meetings and underwent psychological evaluations. After Wolfe completed the psychological evaluations, she was told to sign a "Mental Health Consent Document" to complete the pre-parole process. Wolfe claims that her parole was conditioned upon signing this document.

counselor that her security status would be increased from level 2 to level 3.[5]  The change in security status altered Wolfe's living conditions by, among other things, restricting her phone use, preventing her from keeping a refrigerator and cooking supplies in her cell, preventing Wolfe from receiving clearance to work outside the confines of the prison, and preventing her eligibility for a transfer to a prison located closer to Wolfe's friends and family.  When Wolfe inquired as to why her security designation had changed, she was informed, in a letter from defendant Ms. Boris, that "[i]t is not the DOC policy to punish inmates for doing good, but you are non-compliant with your Prescriptive Program Plan and therefore your custody level is affected."  After filing a formal inmate grievance, defendant Robert Shannon, the prison superintendent, responded that plaintiff "must maintain Program Compliance to be a CL-2 inmate."

In July of 2002, Wolfe was transferred from SCI-Mahanoy to SCI-Graterford, another institution within the DOC system. She received another Prescriptive Program Plan review on July 22, 2002.  Almost identical to the other reviews, this review stated that Wolfe did not receive any misconducts, but refused participation in the SOP Program.  The following day, Wolfe

---

[5]    The second amended class complaint does not make clear when plaintiff was informed of this change in security status, except to note that she was informed of the change "at the yearly review."

6

received a staff interview for SCI-Graterford's recommendation for parole.  Wolfe was told that her institutional records were remarkable, but that they would not be recommending approval for parole because of Wolfe's failure to participate in the SOP Program.

Plaintiff again appeared before the Parole Board on September 4, 2002 and several weeks later, on September 24, 2002, plaintiff was informed that she was denied parole once more.  The Green Sheet of the hearing stated that "the fair administration of justice cannot be achieved through your release on parole." The next date for parole review was scheduled for sometime in September of 2004.

Count I of the second amended complaint, brought by the putative class, seeks declaratory and injunctive relief for violations of the prohibition against self-incrimination protected by the Fifth and Fourteenth Amendments of the U.S. Constitution.  Count II, also brought on behalf of the class, seeks declaratory and injunctive relief for retaliation for the exercise of plaintiffs' rights under the Fifth Amendment, in violation of the Fourteenth Amendment (styled in the complaint as a "substantive due process" claim).  Count III, brought by Wolfe, individually, seeks damages and punitive damages for violations of the prohibition against self-incrimination protected by the Fifth and Fourteenth amendments to the U.S. Constitution.  Also

brought by Wolfe, individually, count VI (counts IV-V are skipped
in the second amended complaint) seeks damages and punitive
damages for retaliation for the exercise of Wolfe's Fifth
Amendment right against self-incrimination, in violation of the
Fourteenth Amendment (also styled a "substantive due process"
claim).  Count VII seeks damages and punitive damages for
violations of Article I of the Constitution, the "Ex Post Facto
clause" and Count VIII seeks damages and punitive damages for
retaliation in violation of the First Amendment; both counts VII
and VIII are brought by Wolfe, individually.


II.  DISCUSSION

     A. <u>Applicable Standard for a Motion to Dismiss.</u>

          In considering a motion to dismiss under Rule 12(b)(6),
the court must accept as true all factual allegations made in the
complaint and all reasonable inferences that can be drawn
therefrom.  <u>Ranson v. Marrazzo</u>, 848 F.2d 398, 401 (3d Cir.
1988).  The motion should be granted only if "no relief could be
granted under any set of facts which could be proved." <u>Id.</u>

     B.   <u>Habeas Corpus Versus § 1983.</u>

<u>      </u>     To the extent that plaintiffs seek an order from the
Court enjoining defendants "from denying parole [or] recommending
the denial or parole," <u>see</u> counts I and II, defendants argue that
the claims are barred by the Supreme Court's decision in <u>Heck v.</u>

8

Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383
(1994).  Specifically, quoting Leamer v. Fauver, 288 F.3d 532,
542 (3d Cir. 2002), defendants argue that "whenever the challenge
ultimately attacks the 'core of habeas' -- the validity of the
continued conviction or the fact or length of the sentence -- a
challenge, however denominated and regardless of the relief
sought, must be brought by way of a habeas corpus petition."

Plaintiffs claim that they are not challenging the fact
or length of their sentences. Instead, plaintiffs argue that the
challenge presented here is to prison policy and procedure that
prevents inmates from receiving fair consideration for parole.
Because enjoining the Parole Board from denying parole based on
the failure of an inmate to participate in the SOP Program would
not necessarily result in a shorter sentence for Wolfe or the
putative class, plaintiffs believe that their lawsuit is properly
brought as a § 1983 action.

As recognized by the Third Circuit, there is often a
"fine" distinction between § 1983 challenges and habeas petitions
brought by prisoners, Georgevich v. Strauss, 772 F.2d 1078, 1087
(3d Cir. 1985), and under certain circumstances, as the Third
Circuit has recognized, "there is an overlap in the factual and
legal issues inherent in the § 1983 and habeas corpus actions,"
Harper v. Jeffries, 808 F.2d 281, 285 (3d Cir. 1986).  To fully
consider this difficult issue, the Court shall briefly review the

9

interplay between these two types of inmate actions as borne out
in decisions by the Supreme Court and Third Circuit.

In Preiser v. Rodriguez, 411 U.S. 475, 478-81, 93 S.
Ct. 1827, 36 L. Ed. 2d 439 (1973), the Supreme Court considered
the appeals of three New York state inmates under § 1983 alleging
that their good-conduct-time credits had been denied
unconstitutionally.  Because the inmates
 sought restoration of their good-time credits as a remedy and
because such a remedy would result in their immediate release
from physical custody, the Court found that the inmates were
alleging illegal physical confinement; thus, the Court found that
the inmates' suit fell squarely within the "traditional scope of
habeas corpus."  Id. at 487.  The Court held that "when a state
prisoner is challenging the very fact or duration of his physical
confinement, and the relief he seeks is a determination that he
is entitled to immediate release or a speedier release from that
imprisonment, his sole remedy is a writ of habeas corpus." Id. at
500.

Two decades later, in Heck v. Humphrey, 512 U.S. at
484, an Indiana state inmate brought a § 1983 action alleging
that various defendants, acting under color of state law, had
maliciously prosecuted the inmate.  Unlike the inmates in
Preiser, the inmate in Heck did not seek injunctive relief or
release from custody and instead, sought compensatory and

10

punitive monetary damages.  Id. at 479.  The Court framed the

issue as "whether money damages premised on an unlawful

conviction could be pursued under § 1983."  Id. at 480 n.2.

Because allowing the inmate to pursue his claim would permit a

collateral attack on the conviction, the Court held that a § 1983

action, which sought to "recover damages for allegedly

unconstitutional conviction or imprisonment, or for other harm

caused by actions whose unlawfulness would render a conviction or

sentence invalid," could not proceed unless the inmate first

established that his "conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a

state tribunal authorized to make such a determination, or called

into question by a federal court's issuance of a writ of habeas

corpus." Id. at 486-87.  The Court noted that claims brought by

an inmate that would "necessary imply the invalidity of his

conviction or sentence" must be dismissed unless the inmate can

demonstrate that the conviction or sentence has been invalidated.

Id. at 487.  In situations where a judgment in favor of the

plaintiff would not demonstrate the invalidity of any outstanding

judgment, however, the Court noted that the action should be

allowed to proceed under § 1983. Id.

        In Edwards v. Balisok, 520 U.S. 641, 643-44, 117 S. Ct.

1584, 137 L. Ed. 2d 906 (1997), decided several years after Heck,

a Washington state inmate, who had been denied good-time credits

11

after a disciplinary hearing, brought a § 1983 action alleging that the procedures used in his disciplinary hearing violated his due process rights.  Similar to the instant complaint, the inmate plaintiff requested a declaration that the procedures employed by state officials violated due process and sought compensatory and punitive damages, and an injunction to prevent future violations. Id. at 643.  According to the Supreme Court, the distinction between Balisok and Heck, was that in Balisok, the inmate "posited that the procedures were wrong, but not necessarily that the result was."  Id. at 645.  However, because challenging the procedures would "necessarily imply" the illegality of the punishment, the Court found the distinction to be without a difference and held that the inmate's damages claim was not cognizable under § 1983.  Id. at 648.  As for the request for prospective injunctive relief, the Court found that "[o]rdinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983." Id.

Our Court of Appeals addressed the reach of Balisok in Leamer. 288 F.3d at 543.  In Leamer, a New Jersey inmate challenged his continued placement in the prison "Restricted Activities Program," which deprived the inmate of various benefits, including participation in therapy sessions for sex offenders, which thereby foreclosed the possibility of parole for

12

the inmate. Id. at 535-37.  The inmate requested declaratory and injunctive relief, as well as damages. Id. at 537.  While acknowledging that a favorable ruling might allow plaintiff to appear before the parole board, the Leamer court noted that a "favorable determination would not necessarily imply that [plaintiff] would serve a shorter sentence." Id. at 543 (emphasis in original).  Because release was not preordained, the Third Circuit held that the claims were properly raised as a § 1983 action.  Id. at 543-44.  In the decision, the Court noted that "the fact that a prisoner's success in the litigation might increase the chance for early release does not, in itself, transform the action into one for habeas corpus." Id. at 543 (citing Georgevich, 772 F.2d at 1087).

Here, plaintiffs argue that the case does not fall within the core of habeas because in no way does the relief sought, i.e., the prospective invalidation of certain policies and procedures of the DOC and the Parole Board, "necessarily imply" that plaintiffs will receive a shorter sentence.  The argument has merit.  A ruling favorable to Wolfe and the members of the putative class would not "necessarily imply" invalidating a sentence or conviction because, as the relief sought is in the future, there is no undischarged sentence or conviction to invalidate.  See Balisok, 520 U.S. at 648.  Moreover, plaintiffs ask only that the Parole Board no longer consider, in its future

decision-making calculus, a program alleged to be
constitutionally infirm.  "Ordinarily, the Board's decision to
parole or deny parole to a prisoner is based on the consideration
of many factors, with no one factor being dispositive." <u>Mickens-
Thomas v. Vaughn</u>, 321 F.3d 364, 393 (3d Cir. 2003).  Thus,
success in this litigation by no means guarantees release for
plaintiffs.  Under both the pre-1996 and current parole statutes,
a variety of factors are considered by the Parole Board in making
parole decisions. <u>See</u> <u>id</u>.

        Illustrative is <u>Neal v. Shimoda</u>, 131 F.3d 818, 824 (9th
Cir. 1997), a § 1983 case involving similar challenges to
Hawaii's sex offender treatment program, where the Ninth Circuit
agreed that:

> If [plaintiffs] are successful in their
> challenge of the SOTP and their labeling as
> sex offenders, that decision will not
> undermine the validity of their convictions
> or continuing confinement at all. The only
> benefit that a victory in this case would
> provide [plaintiffs], besides the possibility
> of monetary damages, is a ticket to get in
> the door of the parole board, thus only
> making them eligible for parole consideration
> according to the terms of their sentences. If
> [plaintiffs] win, it will in no way guarantee
> parole or necessarily shorten their prison
> sentences by a single day. The parole board
> will still have the authority to deny the
> inmates' requests for parole on the basis of
> any of the grounds presently available to it
> in evaluating such a request.  A victory in
> this case would not alter the calculus for
> the review of parole requests in any way.
> Because the inmates' challenge in this case
> does not necessarily imply the invalidity of

their convictions or continuing confinement,
it is properly brought under § 1983.

Neal was cited with approval by the Third Circuit in Leamer, and
its reasoning is consistent with the framework established by the
Supreme Court for analyzing cases at the intersection of § 1983
actions and petition habeas corpus.  Thus, because plaintiffs are
seeking to invalidate the DOC's and the Parole Board's policies
and procedures prospectively, and because a ruling in plaintiffs'
favor would not "necessarily imply" a shorter sentence or
release, plaintiffs' Fifth Amendment claims are properly before
the Court as a § 1983 action.[6]

   C. Fifth Amendment Self-Incrimination Claims.

         The Fifth Amendment, made applicable to the States by
the Fourteenth Amendment, provides that "[n]o person . . . shall
be compelled in any criminal case to be a witness against
himself." U.S. Const. amend. V.  The right "does not terminate at
the jailhouse door, but the fact of a valid conviction and the
ensuing restrictions on liberty are essential to the Fifth
Amendment analysis."  McKune v. Lile, 536 U.S. 24, 36, 122 S. Ct.
2017, 153 L. Ed. 2d 47 (2002)(Kennedy, J., plurality).  The Fifth
Amendment implications of inmate sex offender treatment programs,
which like the one challenged by plaintiffs require an inmate to
admit responsibility for past sexual crimes and provide details

---

         [6]    Similarly, Wolfe's Ex Post Facto clause claim is
properly before the Court.

about the inmate's sexual history, have been discussed at length
by the Supreme Court.

In McKune, an inmate sought an injunction against
prison officials preventing the withdrawal of certain privileges
based on the inmate's failure to participate in a sex offender
treatment program (made mandatory by order of prison officials),
not unlike the program at issue in the instant case.  The program
at issue required plaintiff to accept responsibility for the sex
crime he was charged with and to complete a sexual history form.
536 U.S. at 30-31.  The inmate, in a § 1983 suit, alleged that
the program violated his Fifth Amendment right against self-
incrimination.  The Supreme Court, in a plurality opinion, found
that the "consequences in question here -- transfer to another
prison cell where television sets are not placed in each inmate's
cell, where exercise facilities are not readily available, and
where work and wage opportunities are more limited -- are not
ones that compel a prisoner to speak about his past crimes
despite a desire to remain silent." Id. at 36.  Applying the
standard used for due process violations in the prison context
found in Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293,
132 L. Ed. 418 (1995), the plurality found that "[a] prison
clinical rehabilitation program, which is acknowledged to bear a
rational relation to a legitimate penalogical objective, does not
violate the privilege against self-incrimination if the adverse

16

consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of life." Id. at 37-38.

Justice O'Connor, in her concurrence, disagreed with the standard to be applied for compulsion cases, but agreed that "the alterations in respondent's prison conditions as a result of his failure to participate in the [program] were not so great as to constitute compulsion for the purposes of the Fifth Amendment privilege against self-incrimination." Id. at 48-49.

To the extent that Wolfe, in her individual claim, asserts her Fifth Amendment claim based on the change in her security status and concomitant change in living conditions (i.e., restrictions on plaintiff's phone, cooking utensil, work, and transfer privileges), McKune appears to preclude, as a matter of law, such a claim unless Wolfe can establish more "atypical and significant hardships" than those before the Supreme Court. The hardships alleged by Wolfe here are no more severe that the hardships claimed by the inmate in McKune, which included "restrictions on the personal property respondent can keep in his cell, a reduction in his visitation privileges, a reduction in the amount of money he can spend in the canteen, and a reduction in the wage he can earn through prison employment."  536 U.S. at 50 (O'Connor, J., concurring).

17

Unlike the instant case, however, eligibility for parole was not affected in <u>McKune</u>, and the question of whether or not the denial of parole based on an inmate's failure to participate in a sex offender treatment program violated the Fifth Amendment was not addressed by the Supreme Court. <u>Id</u>. at 38.  Nonetheless, both the First and Tenth Circuits, applying <u>McKune</u>, have found that sex offender treatment programs, which require inmates to divulge their sexual histories, do not violate the Fifth Amendment even though the failure to participate in the programs places parole or good-time credits at stake. <u>See</u> <u>Ainsworth v. Stanley</u>, 317 F.3d 1, 5 (1st Cir. 2002)(parole at stake and affirming district court's dismissal of claim by applying the standard established in <u>Turner v. Safley</u>, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)); <u>Searcy v. Simmons</u>, 299 F.3d 1220, 1226 (10th Cir. 2002)(good-time credits at stake and affirming district court's grant of summary judgment in favor of defendants by finding no compulsion under the circumstances).

Recently, the Third Circuit has weighed in on the issue, albeit in a non-precedential opinion.  In <u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215, 217 (3d Cir. 2003), the same SOP Program at issue here was the subject of a Fifth Amendment self-incrimination challenge and Fourteenth Amendment substantive due process challenge.  The inmate plaintiff also alleged retaliation (as does Wolfe in this case) as a result of invoking his Fifth

18

and First Amendment privileges.  Id. at 220.  The district court entered summary judgment in favor of defendants on all the claims. Id. at 217-218.  The Third Circuit affirmed finding: (1) no constitutional right to parole, thereby foreclosing the inmates substantive due process claim, id. at 219; (2) no Fifth Amendment self-incrimination violation because the inmate was not automatically denied consideration of parole (citing McKune) and because the inmate was not forced to incriminate himself at trial, id. at 219; and (3) that the statute of limitations barred the retaliation claim, id. at 220.  Because Thorpe is a non-precedential Third Circuit opinion, it is not binding on this Court.  However, the Court finds the analysis used by the Third Circuit persuasive and will apply its reasoning to the instant case.

Unlike Ainsworth and Searcy, which relied primarily on the McKune opinion, the Third Circuit panel in Thorpe had the benefit of the intervening Supreme Court decision in Chavez v. Martinez, 538 U.S. 760, 769, 123 S. Ct. 1994, 155 L. Ed. 984 (2003), where a plurality of the Supreme Court found that "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness."  In Chavez, plaintiff brought a § 1983 action following an altercation, during which plaintiff was shot several times by the police and was severely injured.  Id. at

19

764.    While receiving treatment from medical personnel, the
plaintiff admitted to a patrol supervisor that he took the gun
from one of the police officer's holsters and pointed it at the
police.   Plaintiff also admitted to the use of heroine.   At no
time prior to making the admissions was plaintiff given
Miranda warnings.   Although never charged with a crime, plaintiff
brought suit against the patrol supervisor maintaining that the
officer's actions, in questioning plaintiff without first
providing Miranda warnings, violated plaintiff's Fifth Amendment
right against self-incrimination.   Id. at 764-765.

Looking to the text of the Fifth Amendment, four
Justices found that "the mere use of compulsive questioning,
without more," does not violate the Constitution.   Id. at 767
(Thomas, J., plurality).   In the opinion of the plurality, "a
violation of the constitutional right against self-incrimination
occurs only if one has been compelled to be a witness against
himself in a criminal case." Id. at 770 (emphasis in original).
Justice Souter, joined by Justice Breyer, concurred in the
judgment of the plurality and agreed that an action for damages
under § 1983 was not cognizable under the facts presented.   Id.
at 779 (Souter, J., concurring).   However, Justice Souter did not
go as far as the plurality holding that the Fifth Amendment
protected only the courtroom use of compelled testimony, finding
instead that "I do not . . . believe that [plaintiff] can make

20

the 'powerful showing,' subject to a realistic assessment of
costs and risks, necessary to expand protection of the privilege
against compelled self-incrimination to the point of civil
liability he asks us to recognize here."  Id. at 778.

The law in this Circuit anticipated the Chavez
plurality opinion.  In Renda v. King, 347 F.3d 550, 559 (3d Cir.
2003), the Third Circuit found that "it is the use of a coerced
statement during a criminal trial . . . that violates the
Constitution".  While both Chavez and Renda involved situations
where the Fifth Amendment claim arose out of the failure of the
police to provide Miranda warnings, the rule that emerges from
these cases may not be so limited.  Indeed, in Thorpe, the Third
Circuit relied on both Chavez and Renda to affirm the district
court's dismissal of an inmate's § 1983 challenge to the
Pennsylvania SOP Program on Fifth Amendment self-incrimination
grounds.[7]  See 80 Fed. Appx. 215 at 219.

Moreover, unlike the sex offender treatment program at
issue in McKune, where the inmate's participation was "ordered"

_____

[7]     The Seventh Circuit has also recently applied Chavez
under facts not implicating Miranda's prophylactic protections
(i.e., custodial police interrogations).  In Allison v. Snyder,
332 F.3d 1076, 1080 (7th Cir. 2003), a Fifth Amendment self-
incrimination claim was brought by numerous plaintiffs
challenging an Illinois program diverting charged criminal
defendants to civil confinement for treatment.  Treatment
involved group therapy and the admission of guilt to the charged
offenses.  The Seventh Circuit interpreted Chavez to preclude
damages in a § 1983 action absent the use of compelled statements
in a criminal proceeding. Id. at 1080.

by prison officials, 536 U.S. at 30, participation in the DOC SOP

Program is "voluntary." See 2d Amend. Compl., at 9.  A voluntary

decision to participate in the SOP Program and comply with the

disclosure requirement does not rise to constitutional infirmity

simply because some of the consequences of participation are

unpleasant -- consequences that plaintiffs are aware of from the

outset when the decision is made.  See Forsythe v. Walters, 38

Fed. Appx. 734, 736 (3d Cir. 2002)(finding that conditioning

acceptance into a prison pre-release program upon an admission of

guilt did not amount to compulsion because the program was

voluntary and because parole is a benefit, not a right).  The

Supreme Court has sharply crystallized the nature of this choice:

> Prison context or not, [plaintiffs'] choice
> is marked less by compulsion than by choices
> the [Supreme] Court has held give no rise to
> a self-incrimination claim.  The 'criminal
> process, like the rest of the legal system,
> is replete with situations requiring the
> making of difficult judgments as to which
> course to follow.  Although a defendant may
> have a right, even of constitutional
> dimensions, to follow whichever course he
> chooses, the Constitution does not by that
> token always forbid requiring him to
> choose.'"

McKune, 536 U.S. at 41 (Kennedy, J. plurality)(quoting McGautha

v. California, 402 U.S. 183, 213, 91 S. Ct. 1454, 28 L. Ed. 2d

711 (1971)).

Therefore, because the SOP Program is voluntary and the

consequences of participating in the program, although

22

unpleasant, do not rise to the level of constitutional infirmity and because the program does not compel the inmates to incriminate themselves in a criminal proceeding, plaintiffs' Fifth Amendment and Fourteenth Amendment self-incrimination claim fails.

    D.    <u>Fifth and Fourteenth Amendments Retaliation Claim.</u>

        Because they have exercised their purported right not to incriminate themselves in the SOP Program, plaintiffs as a class and Wolfe, individually, claim that defendants have taken adverse action against them and that this constitutes a violation of their constitutional substantive due process protections.

        "To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property [or liberty] interest to which the Fourteenth Amendment's due process protection applies." <u>Woodwind Estates, Ltd. v. Gretkowski</u>, 205 F.3d 118, 123 (3d Cir. 2000), <u>abrogated on other grounds</u>, <u>United Artists Theater Circuit, Inc. v. Township of Warrington</u>, 316 F.3d 392 (3d Cir. 2003). As acknowledged by plaintiffs, there is no protected liberty interest in the grant of parole. <u>See</u> <u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u>, 442 U.S. 1, 10-11, 99 S. Ct. 2100, 60 L. Ed. 2d 668. Accordingly, plaintiffs' substantive due process claims (indicated as count II and count VI in the second amended class complaint) will be

dismissed.[8]

    E.   <u>First Amendment Retaliation Claim.</u>

The First Amendment retaliation claim is brought by Wolfe.  To establish retaliation, she must establish that (1) she engaged in constitutionally protected activities, (2) that she suffered an "adverse action" at the hands of prison officials, and (3) that there is a causal link between the exercise of her constitutional right and the adverse action taken against her. <u>Rauser</u>, 241 F.3d at 333-334.  Here, Wolfe alleges that "defendants have sought to impose new prerequisites for parole upon Plaintiff because of Plaintiff's pursuit of administrative and legal relief from Defendants' efforts to compel her to participate in the sex offender's program in violation of her constitutional rights."  2d Amend. Compl., at 16.

Defendants only argument for dismissal of this claim is

---

[8]    Relying on <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001), plaintiffs argue that they need not establish a protected interest to sustain a substantive due process claim.  <u>Rauser</u> is inapposite.  <u>Rauser</u> held that, in order to establish adverse action in a retaliation claim, a plaintiff need show a "protected liberty interest in the privileges he was denied" but that "he was denied those privileges in retaliation for exercising a constitutional right."  <u>Id.</u> at 333.  There is nothing in <u>Rauser</u> to suggest that a substantive due process claim can proceed without establishing a protected liberty interest.  In any event, <u>Rauser</u> requires, as a threshold matter, that plaintiff "prove that the conduct which led to the retaliation was constitutionally protected." <u>Id</u>.  As discussed above in Part II (C) of this memorandum, there are no Fifth Amendment rights implicated in plaintiffs' refusal to participate in the SOP Program.

that the alleged adverse action, negative parole recommendations,
predated the filing of this lawsuit and that, therefore, there
can be no causal link with Wolf's protected activity.  Def. Mem.,
at 20.  However, Wolfe alleges retaliation not only in response
to her seeking legal relief, but also administrative relief.
Further, she alleges that "new prerequisites" were imposed as a
result of her protected acts.  Thus, at this point, it cannot be
said that "no relief could be granted under any set of facts
which could be proved." Ranson, 848 F.2d at 401.

    F.    Wolfe's Ex post Facto Clause Claim.

        Wolfe's Ex Post Facto clause claim challenges the
retroactive application of the December of 1996 amendments to the
Pennsylvania parole statute.  The December 1996 parole statute
places a special emphasis on public safety as a factor for
determining parole eligibility. 61 P.S. § 331.1.  As noted by the
Third Circuit in Mickens-Thomas,

        The record is convincing that after 1996, the
        Board applied to the public safety interest
        far greater weight.  The evidence here
        demonstrates that since 1996, the Board has
        given special weight to the risk to public
        safety. Pre-1996, a prisoner could be denied
        parole because of public safety concerns only
        if those concerns together with other
        relevant factors outweighed, by a
        preponderance, the liberty interests of the
        inmate.  The 1996 policy change placed first
        and foremost the public safety to the
        disadvantage of the remaining liberty
        interest of the prisoner.

321 F.3d at 385.  As was the case with the petitioner in Mickens-

Thomas, Wolfe claims that the December 1996 parole statute has been retroactively applied to her (she was convicted in July of 1996) and that this application (with its emphasis on public safety) has disadvantaged Wolfe because she was denied parole.

A new law or policy violates the Ex Post Facto clause (1) when it is retrospective, i.e., when it applies to events occurring before its enactment, and (2) when it disadvantages the offender affected by it. Id. at 384. Based on the allegations contained in the complaint, the Court finds that Wolfe has sufficiently pled an Ex Post Facto clause violation in the complaint.

Defendants only argument with respect to the merits of Wolfe's Ex Post Facto clause claim is that even prior to the December 1996 amendment, the Parole Board repeatedly denied inmates parole based on their failure to complete a sex offender program. Def. Mem., at 19. First, this assertion is a factual issue that is best suited for the discovery process to confirm or negate. Second, "to state that [it] was always a consideration does not mean that the Board gave it the same weight after 1996 in the decisional equation." Mickens-Thomas, 321 F.3d at 384-385. Thus, the Ex Post Facto claim will not be dismissed on the merits.

Also, this claim is cognizable under § 1983 and need not be brought as a habeas petition, as argued by the defendants.

26

"[W]hen a dispute 'goes only to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to an earlier parole eligibility date, plaintiff's claim may proceed under 42 U.S.C. § 1983.'" Johnson v. Paparozzi, 219 F. Supp. 2d 635, 642 (D. N.J. 2002)(quoting Johnson v. Fauver, 786 F. Supp. 442, 445 (D.N.J. 1992), aff'd, 970 F.2d 899 (3d Cir. 1992)).

      G.   The Role of the Individual Defendants.

      Finally, defendants contend that plaintiffs' claims are legally deficient because the complaint gives no indication as to what role or involvement each defendant had in violating plaintiffs' constitutional rights.  As to the defendants, who hold supervisory positions in the DOC or Parole Board, defendants argue that there is no respondeat superior liability under § 1983.

      Following the dismissal of the self-incrimination and substantive due process claims, the two claims that remain in this action are Wolfe's First Amendment retaliation claim and her Ex Post Facto clause claim.  With respect to the retaliation claim, Wolfe alleges that "Defendants have sought to impose new prerequisites for parole upon Plaintiff because of Plaintiff's pursuit of administrative and legal relief from Defendants' efforts to compel her to participate in the [SOP Program]."

Aside from the filing of the instant complaint, the only legal or administrative action taken by Wolfe, as alleged in the complaint, is her inmate request, sent to defendant Brenda Wildenstein in October of 1999 and her grievance, reviewed by Superintendent Robert Shannon, apparently submitted sometime in 2002.  When the facts are viewed in a light most favorable to Wolfe, the only other named defendants who may have had a role in "impos[ing] new prerequisites for parole" are the individual Parole Board members named in the complaint, defendants Castor, Green, Imboden, Lucht, Ryan, Webster, White, Descher, and Muller. No personal involvement by the superiors is alleged with respect to the retaliation claim. Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Therefore, as to the retaliation claim, the other named defendants will be dismissed.

Turning to the Ex Post Facto clause claim, the only defendants alleged to have any personal involvement in parole decisions are the individual Parole Board members. Further, while there is no respondeat superior liability under § 1983, "[a]llegations of personal direction or of actual knowledge and acquiescence" may establish personal involvement by the superiors, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.

28

1988).[9]  Because Wolfe's Ex Post Facto

clause claim relates to established Parole Board policies, it can

not be said that under no set of facts can Wolfe establish that

the two chairpersons of the Pennsylvania Board of Probation and

Parole named as defendants in the complaint, William Ward and

Benjamin Martinez, had actual knowledge or acquiesced to the

policies.  However, this same knowledge cannot be imputed to the

Commissioner of the DOC and the various superintendents of the

DOC named in the complaint.  Thus, these DOC defendants are

dismissed from this action.

H.    The Eleventh Amendment.

Defendants also argue that the Eleventh Amendment bars

the instant action.  This argument is without merit because under

Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714

(1908), Wolfe can vindicate her constitutional rights against

defendants, in their official capacities, by asserting claims of

prospective injunctive relief.  See Koslow v. Pennsylvania, 302

F.3d 161, 177 n.20 (3d Cir. 2002), cert. denied, 537 U.S. 1232,

123 S. Ct. 1353, 155 L. Ed. 2d 196 (2003).[10]  To the extent that

---

[9]     There is no heightened pleading requirement for civil
rights cases under § 1983.  Alston v. Parker, 363 F.3d 229, 233
(3d Cir. 2004)(citing Leatherman v. Tarrant County Narcotics
Intelligence & Coordination Unit, 507 U.S. 163, 113 S. Ct. 1160,
122 L. Ed. 2d 517 (1993)).

[10]    However, at present the two remaining counts seek only
damages.

Wolfe seeks damages against the defendants in their individual capacities, the Eleventh Amendment does not apply.  Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).

Accordingly, Wolfe may seek prospective injunctive relief against the defendants, in their official capacities, and damages against defendants, in their individual capacities.[11]

I.   Qualified Immunity.

Finally, defendants have raised the defense of qualified immunity with respect to plaintiffs' Fifth Amendment claims.  For the reasons discussed above, the Fifth Amendment claim is dismissed.  Defendants make no argument with respect to the other constitutional claims.[12]

III. CONCLUSION/SUMMARY

In view of the above, counts I, II, III, and VI of the second amended complaint are dismissed.  The remaining claims are

_____

[11]   Plaintiffs acknowledge that the claims against the DOC and the Parole Board (counts I and II) are not proper because these are not "persons" for the purposes of § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  The issue is moot because, as discussed herein, counts I and II are dismissed.

[12]   Although not raised in defendants' motion to dismiss, counsel for defendants asserted the defense of absolute immunity on behalf of the Parole Board defendants during the hearing on the motion.  Hearing Tr., at 13.  Because the issue was not briefed and because of the "fact-intensive nature of the inquiry," Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 428 (3d Cir. 2003), the Court will not dismiss the claims on this ground at this stage.

Wolfe's Ex Post Fact clause claim against the individual members
of the Parole Board and the chairpersons of the Parole Board
(count VII) and Wolfe's First Amendment retaliation claim against
Brenda Wildenstein, Robert Shannon, and the individual members of
the Parole Board (count VIII).  All other named defendants are
dismissed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSICA ELAINE WOLFE, on        :        CIVIL ACTION
behalf of herself and all       :        NO. 02-2687
similarly situated INMATES      :
OF THE PENNSYLVANIA DEP'T        :
OF CORRECTIONS,                  :
                                 :
        Plaintiffs,              :
                                 :
        v.                       :
                                 :
THE PENNSYLVANIA DEP'T OF        :
CORRECTIONS, ET AL.,             :
                                 :
        Defendants.              :

ORDER

_____**AND NOW**, this **27th day** of **August 2004**, for the reasons

provided in the accompanying memorandum, it is **ORDERED** that

defendants' motion to dismiss the complaint (doc. no. 58) is

**GRANTED IN PART** and **DENIED IN PART**.

        It is **FURTHER ORDERED** that counts I, II, III, and VI of

the second amended complaint are **DISMISSED WITH PREJUDICE**.

        **AND IT IS SO ORDERED**.

                                        _____

                                        **EDUARDO C. ROBRENO, J.**