IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | No. 02-2687 |

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT

Defendants Castor, Descher, Green, Imboden, Lucht, Martinez, Muller, Ryan, Shannon, Ward, Webster, White, and Wildenstein ("answering defendants") hereby answer plaintiff's second amended complaint[1] as follows:

INTRODUCTION

1-4.  These introductory paragraphs consist of conclusions of law and claims for relief, to which no response is required.  To the extent these paragraphs contain factual allegations, such allegations are denied.

PARTIES

5.  Admitted.

6.  Denied.  By Memorandum and Order entered August 30, 2004, the Court dismissed the Pennsylvania Department of Corrections ("DOC") as a defendant in this case.  The remainder of this paragraph consists of conclusions of law, to which no response is required.

---

[1] The full title of plaintiff's pleading is "Second Amended Class Action Complaint."

7. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed Jeffrey Beard as a defendant in this case. The remainder of this paragraph consists of conclusions of law, to which no response is required.

8. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed Edward Klem as a defendant in this case. The remainder of this paragraph consists of conclusions of law, to which no response is required.

9. Admitted to the extent that during the relevant time period, Brenda Wildenstein held the position of A-Unit Manager at SCI-Mahanoy. The remainder of this paragraph consists of conclusions of law, to which no response is required.

10. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed Ms. Boris as a defendant in this case. The remainder of this paragraph consists of conclusions of law, to which no response is required.

11. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed David DiGuglielmo as a defendant in this case. The remainder of this paragraph consists of conclusions of law, to which no response is required.

12. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed Donald T. Vaughn as a defendant in this case. The remainder of this paragraph consists of conclusions of law, to which no response is required.

13. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed the Superintendents listed in this paragraph as defendants in this case. The remainder of this paragraph consists of conclusions of law, to which no response is required.

14. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed the Pennsylvania Board of Probation and Parole ("Parole Board") as a defendant in this case. The remainder of this paragraph consists of conclusions of law, to which no response is required.

15-16. Admitted, to the extent that until the expiration of his term, William Ward held the position of Secretary of the Parole Board, and that he was succeeded in that position by Benjamin Martinez. Martinez currently holds the position of Parole Board Hearing Examiner. The remainder of these paragraphs consist of conclusions of law, to which no response is required.

17. Admitted, to the extent that Allen Castor is a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

18. Admitted, to the extent that Michael L. Green is a Parole Board member and is expected to be appointed as Acting Secretary of the Parole Board. The remainder of this paragraph consists of conclusions of law, to which no response is required.

19. Admitted, to the extent that Jeffrey R. Imboden is a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

20. Admitted, to the extent that Gary R. Lucht is a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

21. Admitted, to the extent that Sean R. Ryan is a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

22. Admitted, to the extent that Michael M. Webster is a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

23. Admitted, to the extent that Lloyd A. White is a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

24. Admitted, to the extent that Barbara K. Descher was a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

25. Admitted, to the extent that Nicholas P. Muller was a Parole Board member. The remainder of this paragraph consists of conclusions of law, to which no response is required.

JURISDICTION AND VENUE

26-27. These paragraphs consist of conclusions of law and allegations as to jurisdiction and venue, to which no response is required.

CLASS ACTION ALLEGATIONS

28-33. Denied. By Memorandum and Order entered August 30, 2004, the Court dismissed the purported class claims in this case. Further, these paragraphs consist of conclusions of law, to which no response is required. To the extent these paragraphs consist of factual allegations, such allegations are denied.

SUBSTANTIVE CLASS ALLEGATIONS

34. Paragraphs 1 through 33, above, are incorporated herein by reference.

35. Denied and/or denied as stated. By way of further answer, Plaintiff Wolfe is presently incarcerated in a state correctional institution of the DOC. Because he has served his minimum sentence he is eligible for *consideration* for parole. The remainder of this paragraph consists of conclusions of law, to which no response is required.

36. Denied and/or denied as stated. By way of further answer, at present, when a male inmate is initially received into the DOC, he is classified at the Diagnostic and Classification

4

Center ("DCC") at SCI-Camp Hill. The overall diagnostic and classification process occurs over a four to six week period. At the DCC, reception staff review the identification of committing authorities and the newly committed inmate; review the commitment documents and Act 84 information for accuracy; and compute the sentence structure. Inmates are photographed and fingerprinted, assigned to corrections counselors, and assigned cells based upon preliminary custody level determinations. All inmates receive orientation to the DOC, during which basic rules and procedures are explained. Inmate handbooks are issued. Initial medical screening takes place to rule out obvious medical problems, emotional stress and TB. Staff also administer personality inventories, IQ tests, academic achievement tests, and the TCU Screening Instrument which determines the presence and level of drug and alcohol abuse. Interviews by corrections counselors, psychologists, drug and alcohol treatment specialists, chaplains, educators and medical staff further define the inmate's need for security and treatment. The custody level and needs assessment are completed through the Pennsylvania Additive Classification Tool ("PACT").

37. Answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, which are therefore denied.

38. Admitted in part and denied and/or denied as stated. By way of further answer, inmates are first introduced to DOC rules and regulations at the DCC. The remainder of this paragraph is admitted.

39. Denied. The Prescriptive Program Plan form utilized by the DOC during the relevant time period speaks for itself.

40. Denied and/or denied as stated. By way of further answer, each inmate is told that all "Recommended Actions" listed in his "Prescriptive Program Plan" are voluntary and that

5

completion of said actions is a factor that will be considered by prison officials in determining whether to recommend a favorable institutional recommendation for parole. It is specifically denied that completion of prescriptive programs is the only factor in obtaining a favorable parole recommendation from the state correctional institution. The remainder of this paragraph consists of a conclusion of law, to which no response is required.

    41-45. Denied and/or denied as stated. By way of further answer, on information and belief, the SOP begins with an orientation phase. If the inmate admits his guilt concerning his sex offense, he graduates to SOP therapy, where disclosure is required. Answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in these paragraphs, which are therefore denied.

    46. Admitted to the extent that Plaintiff Wolfe refused to participate in the SOP.

    47. Denied. By way of further answer, an inmate's refusal to participate in or failure to complete prescriptive programs, indicating that he has not made an effort at rehabilitation, is a factor considered by DOC officials and employees when considering whether or not to recommend parole, but it is not the only factor.

    48-49. These paragraphs consist of conclusions of law, to which no response is required. To the extent these paragraphs contain factual allegations, such allegations are denied.

SUBSTANTIVE INDIVIDUAL ALLEGATIONS

    50. Paragraphs 1 through 49, above, are incorporated herein by reference.

    51. Denied and/or denied as stated. By way of further answer, after Plaintiff Wolfe pled guilty to rape, corruption of minors and two counts of simple assault, he was convicted and sentenced to incarceration at a state correctional institution.

52. Denied and/or denied as stated. By way of further answer, the inmate record of each inmate in DOC custody includes a form, entitled Sentence Status Summary, which sets forth that inmate's conviction and sentence, among other things. Wolfe's sentence was correctly marked as "indefinite" meaning that he received a minimum sentence and a maximum sentence. Specifically, he was sentenced to five to fifteen years' incarceration at a state correctional institution.

53. Admitted in part and denied and/or denied as stated, in part. Admitted, to the extent that Wolfe was transferred to SCI-Mahanoy on November 19, 1996. The remainder of this paragraph is denied and/or denied as stated. By way of further answer, Wolfe entered the DOC at the Western DCC, Pittsburgh on July 28, 1996; he was transferred to the Central DCC, Camp Hill on August 6, 1996; and he was transferred from SCI-Mahanoy to SCI-Graterford on December 13, 2001.

54-55. Denied and/or denied as stated. By way of further answer, Wolfe received a Prescriptive Program Plan dated November 19, 1996 at SCI-Mahanoy. The remainder of these paragraphs is denied. The Prescriptive Program Plan dated November 19, 1996 speaks for itself.

56. Denied and/or denied as stated. On information and belief, Wolfe refused to participate in the SOP because of its requirement that he admit his guilt as to his rape offense.

57. Defendant Wildenstein: admitted. The remaining answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, which is therefore denied.

58. Denied and/or denied as stated. The Prescriptive Program Plan dated July 25, 1997 speaks for itself. By way of further answer, the Plan indicated that as of July 23, 1998, Wolfe was misconduct free, received positive work and housing reports, was currently enrolled in stress

7

and anger management, was on a waiting list for drug and alcohol programs, had no involvement in SOP, and maintained contact.

59. Denied and/or denied as stated. By way of further answer, as a result of the DNA Detection of Sexual and Violent Offenders Act, a blood sample was obtained from Wolfe on February 23, 1998 to be sent to the Pennsylvania State Police for analysis and profiling. It is specifically denied that Wolfe was "illegally" classified as a violent offender. By way of further answer, Wolfe pled guilty to and was convicted of rape, corruption of minors, and simple assault (two counts).

60. Denied and/or denied as stated. The Prescriptive Program Plan dated July 23, 1998 speaks for itself. By way of further answer, the Plan recommended that Wolfe maintain a misconduct-free record during the review period, maintain positive work and housing reports, participate in a stress and anger management group, follow through with recommended drug and alcohol programs, participate in a sexual offenders program, and maintain contact with the mental health support staff. The Plan indicated that as of July 16, 1999, Wolfe had a clear conduct record during the review period, above average work and housing reports, completed stress and anger management class, was currently enrolled in drug and alcohol therapy group, was on the waiting list for basic sexual offender education class, and maintained contact with the mental health support group.

61. Denied and/or denied as stated. By way of further answer, defendant Wildenstein believes that Wolfe approached her. It is possible, but not certain, that Wildenstein made the statement attributed to her. The remaining answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, which is therefore denied.

62. Denied and/or denied as stated. The Prescriptive Program Plan dated July 16, 1999 speaks for itself.

63-65. Answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in these paragraphs, which are therefore denied.

66. Denied and/or denied as stated. By way of further answer, Wildenstein may have written the statement attributed to her, but is not certain. The remaining answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, which is therefore denied.

67. Denied and/or denied as stated. By way of further answer, Wildenstein is not certain whether Wolfe made this statement. The remaining answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, which is therefore denied.

68. Denied and/or denied as stated. By way of further answer, the Prescriptive Program Plan dated July 19, 2000 speaks for itself.

69. Denied as stated. By way of further answer, around the time Wolfe completed his minimum sentence and became eligible for parole consideration, psychological and psychiatric evaluations were made and a staffing took place.

70. Denied. By way of further answer, consent forms must be signed prior to psychological and psychiatric evaluations. Answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of this paragraph, which is therefore denied.

71. Denied and/or denied as stated. By way of further answer, a staffing (not a hearing) took place as to whether to recommend an institutional recommendation for Wolfe's parole. The

SCI-Mahanoy employees who participated in the staffing included defendant Wildenstein, the Unit Manager; Tamara Boris, the counselor; and Corrections Officer Gormley.

    72. Denied.

    73-74. Denied and/or denied as stated. The Notice of Board Decision (or "green sheet") dated March 20, 2001 speaks for itself. By way of further answer, the Parole Board decision stated, "Following an interview and review of your file, the Pennsylvania Board of Probation and Parole has determined that the fair administration of justice cannot be achieved through your release on parole. You are therefore refused parole and ordered to: Be reviewed in or after April, 2002. At your next review, the Board will review your file and consider: Whether you have participated in/successfully completed a treatment program for sex offenders. Whether you have received/maintained a favorable recommendation for parole from the Department of Corrections. Whether you have received/maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s).

    75. Denied and/or denied as stated. The Prescriptive Program Plan dated July 16, 2001 speaks for itself. By way of further answer, under the Results Achieved section, the Plan stated, "The inmate has received above average housing reports and has not received any misconducts. He has maintained contact with the Mental Health Department for medication and therapy as prescribed. However, the inmate has refused Sexual Offender Programming as prescribed. The inmate is currently on the waiting list for a block job."

    76. Denied and/or denied as stated. By way of further answer, as of September 16, 1996, Wolfe was classified as a Custody Level 3 according to the PACT System. He was subsequently reclassified to Custody Level 2. On July 16, 2001 he was reclassified to Custody Level 3 for a number of reasons, including the nature of his offense, the heinousness of his crime,

10

psychological issues, his failure or refusal to comply with his Prescriptive Program Plan, and his need for closer supervision. Generally, custody level 1 inmates require the least security and custody level 5 inmates require the most security, however, changing a custody level from 2 to 3 is not harmful to the inmate, nor is it punitive or retaliatory. Answering defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of this paragraph, which is therefore denied.

    77-78. Denied.

    79. Answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, which is therefore denied.

    80. Denied and/or denied as stated. By way of further answer, Wolfe appealed the response of his official inmate grievance concerning the change in his custody level by filing an inmate request slip to defendant Shannon, the Superintendent of SCI-Mahanoy. In response, Shannon wrote, "In preparing a response to this appeal, I have reviewed your initial grievance, the grievance response and this appeal. The following comments are provided: Unit Manager Wildenstein's response to initial appeal is accurate and correct. You must maintain Program Compliance to be a CL-2 inmate. You have not done so. Grievance appeal is, therefore, denied." The remaining answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, which is therefore denied.

    81-82. Denied.

    83-86. Answering defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, which are therefore denied.

11

87-88. Denied and/or denied as stated. By way of further answer, the Notice of Board Decision dated September 24, 2002 provides, "Following an interview and review of your file, the Pennsylvania Board of Probation and Parole has determined that the fair administration of justice cannot be achieved through your release on parole. Your are therefore refused parole and ordered to: Be reviewed in or after September, 2004. At your next interview, the Board will review your file and consider: Whether you have successfully completed a treatment program for sex offenders. Whether you have received a favorable recommendation for parole from the Department of Corrections. Whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive programs."

89-90. Denied.

91. This paragraph consists of conclusions of law, to which no response is required.

92.-99. Denied. To the extent these paragraphs consist of conclusions of law, no response is required.

100. Admitted, to the extent that Wolfe was sentenced in July 1996. The remainder of this paragraph is denied. To the extent this paragraph consists of conclusions of law, no response is required.

101. This paragraph consists of conclusions of law, to which no response is required.

102. Denied. It is specifically denied that answering defendants retroactively applied new parole guidelines to Wolfe. By way of further answer, under the old parole guidelines, a convicted sex offender's participation in sex offender treatment was a factor in determining whether to recommend, or grant, parole. To the extent this paragraph consists of conclusions of law, no response is required.

COUNT I

103.  Paragraphs 1 through 102, above, are incorporated herein by reference.

104-07.  Denied.  Furthermore, by Memorandum and Order entered August 30, 2004, the Court dismissed Count I, therefore no response is required.

WHEREFORE, defendants request the Court to enter judgment in their favor and grant them costs and any such further relief as is proper and just.

COUNT II

108.  Paragraphs 1 through 107, above, are incorporated herein by reference.

109-13.  Denied.  Furthermore, by Memorandum and Order entered August 30, 2004, the Court dismissed Count II, therefore no response is required.

WHEREFORE, defendants request the Court to enter judgment in their favor and grant them costs and any such further relief as is proper and just.

COUNT III

114.  Paragraphs 1 through 113, above, are incorporated herein by reference.

115-19.  Denied.  Furthermore, by Memorandum and Order entered August 30, 2004, the Court dismissed Count III, therefore no response is required.

WHEREFORE, defendants request the Court to enter judgment in their favor and grant them costs and any such further relief as is proper and just.

COUNT VI

120.  Paragraphs 1 through 119, above, are incorporated herein by reference.

121-26.  Denied.  Furthermore, by Memorandum and Order entered August 30, 2004, the Court dismissed Count VI, therefore no response is required.

WHEREFORE, defendants request the Court to enter judgment in their favor and grant them costs and any such further relief as is proper and just.

COUNT VII

127.  Paragraphs 1 through 126, above, are incorporated herein by reference.

128-32.  These paragraphs consist of conclusions of law, to which no response is required.  To the extent these paragraphs contain any factual allegations, such allegations are denied.

WHEREFORE, defendants request the Court to enter judgment in their favor and grant them costs and any such further relief as is proper and just.

COUNT VIII

133.  Paragraphs 1 through 132, above, are incorporated herein by reference.

134-36.  These paragraphs consist of conclusions of law, to which no response is required.  To the extent these paragraphs contain any factual allegations, such allegations are denied.

WHEREFORE, defendants request the Court to enter judgment in their favor and grant them costs and any such further relief as is proper and just.

AFFIRMATIVE DEFENSES

1.  Plaintiff fails to state a claim upon which relief may be granted.

2. The Eleventh Amendment bars plaintiff's damage claims against defendants in their official capacities; similarly, defendants in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983.

3. Plaintiff cannot recover for emotional injury because he fails to allege any physical injury as required by the Prison Litigation Reform Act.

4. Answering defendants are entitled to qualified immunity from plaintiff's damage claims.

5. Parole Board defendants Castor, Descher, Green, Imboden, Lucht, Martinez, Muller, Ryan, Ward, Webster, and White are entitled to absolute immunity from plaintiff's damage claims.

6. Plaintiff's claims for declaratory relief are barred by the rule of <u>Heck v. Humphrey</u> and progeny.

WHEREFORE, defendants request the Court to enter judgment in their favor and grant them costs and any such further relief as is proper and just.

GERALD J. PAPPERT
ATTORNEY GENERAL

BY: <u>s/ Beth Anne Smith</u>
    Beth Anne Smith
    Senior Deputy Attorney General
    Identification No. 47162

    Susan J. Forney
    Chief Deputy Attorney General
    Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

CERTIFICATE OF SERVICE

I, Beth Anne Smith, Senior Deputy Attorney General, hereby certify that defendants' answer to plaintiff's second amended complaint was filed electronically on September 29, 2004 and is available for viewing and downloading from the ECF system. I further certify that a true and correct copy of said document was served on the same date by electronic mail notification to:

    Mary Catherine Roper, Esquire
    Drinker Biddle & Reath LLP
    18th & Cherry Streets
    One Logan Square
    Philadelphia, Pa 19103-6996

                              GERALD J. PAPPERT
                              ATTORNEY GENERAL

            BY:    s/ Beth Anne Smith
                          Beth Anne Smith
                          Senior Deputy Attorney General
                          Identification No. 47162

                          Susan J. Forney
                          Chief Deputy Attorney General
                          Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130