# EXHIBIT C



Not Reported in F.Supp.2d  
2001 WL 41127 (E.D.Pa.)  
**(Cite as: 2001 WL 41127 (E.D.Pa.))**

Page 1

**H**  
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.  
Michael B. SIMON, Plaintiff,  
v.  
William F. WARD, Allen Castor, Barbara Descher, Richard Kipp, Gary Lucht,  
Benjamin Martinez, Nicholas Muller, Sean Ryan, Michael Webster, Conway Bushey,  
James W. Riggs, and Martin F. Horn, Defendants.  
No. CIV. A. 99-1554.

Jan. 16, 2001.

MEMORANDUM

REED.

*1 Plaintiff Michael B. Simon, a former prisoner in the custody of the Pennsylvania Department of Corrections, brought this § 1983 action against members of the Pennsylvania Board of Probation and Parole ("parole board"), defendants William F. Ward, Allen Castor, Barbara Descher, Richard Kipp, Gary Lucht, Benjamin Martinez, Nicholas Muller, Sean Ryan, Michael Webster, Conway Bushey, and James W. Riggs (collectively, "parole board defendants"), and the Secretary of the Pennsylvania Department of Corrections, Martin F. Horn, alleging that they failed to properly credit him for time served and thereby caused him to remain incarcerated and in custody for more than 200 additional days. Plaintiff avers that the defendants violated his civil rights under the Double Jeopardy Clause of the Fifth Amendment, the Cruel and Unusual Punishment Clause of the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment.

Defendants now ask this Court to dispose of this action summarily. [FN1] The parole board defendants have filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Document No. 17).

Defendant Horn has filed a motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure (Document No. 18). All defendants have filed a motion to stay discovery pending the outcome of this decision (Document No. 16). For the following reasons, the motion for judgment on the pleadings will be denied in part, the motion for summary judgment will be denied without prejudice, and the motion to stay discovery will be denied as moot.

FN1. This Court denied defendants' motions to dismiss for improper venue and transfer in a decision early this year. See *Simon v. Ward,* 80 F.Supp.2d 464 (E.D.Pa.2000).

*Background*

According to the complaint, Michael B. Simon was arrested and detained on August 26, 1992, on drug charges, and, following a guilty plea, was subsequently convicted in the Court of Common Pleas of Pennsylvania for criminal conspiracy and delivery of a controlled substance. He was sentenced to 36-72 months on the conspiracy conviction and concurrent sentences of 1-2 years on three counts of delivery of a controlled substance. Simon then was transferred to the custody of the Department of Corrections. Simon appealed his sentence.

Simon was paroled on March 12, 1996, and remained under the supervision of the parole board thereafter. One month after he was paroled, the Superior Court of Pennsylvania ruled in his favor on appeal, vacated his sentence, and remanded the case for re-sentencing. On August 14, 1996, the Common Pleas judge, following the instructions of the Superior Court, re-sentenced Simon to a term of 21-60 months on each of the four drug counts, resulting in a longer sentence than he had received initially. [FN2] The Common Pleas judge therefore recommitted plaintiff to the custody of the Department of Corrections. The circumstances of plaintiff's re-commitment following his August 14,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 41127 (E.D.Pa.)
(Cite as: 2001 WL 41127 (E.D.Pa.))

Page 2

1996, sentencing are the central issue in this case.

> FN2. Thus, plaintiff found himself in the unusual circumstance of being re-incarcerated after having been paroled and having committed no new crime or technical parole violation.

Plaintiff alleges in his complaint that he was improperly given credit for only 40 months of pre-sentence incarceration, from August 26, 1992 (the date of his arrest) until December 26, 1995. Plaintiff avers that the December 1995 date was arbitrary and unrelated to his incarceration, and that the date should have been March 12, 1996, the date of his parole. Thus, plaintiff claims that he was short-changed by two months and 17 days on his time served prior to re-sentencing. Plaintiff also contends that he was denied credit for time served during his period of parole, from March 12, 1996 to August 14, 1996. He alleges that Horn and the parole defendants were responsible for ensuring that he received credit for time served and failed to do so.

*Defendant Horn's Motion for Summary Judgment*

*2 In his motion for summary judgment, defendant Horn disavows any knowledge of, involvement in, or responsibility for plaintiff's predicament. Horn asserts in his brief and affidavit that plaintiff cannot possibly show that he was involved in the setting of plaintiff's sentence, and that the sentencing court and the parole board made all decisions related to the length of plaintiff's incarceration. Drawing no conclusions as to whether plaintiff could prove the allegations in his complaint, I agree with plaintiff that Horn's motion is premature. Plaintiff stated in his complaint that Horn had knowledge of plaintiff's claim of entitlement to credit for time served and of the circumstances of plaintiff's sentence. (Complaint, at ¶ 49, 50, 51, 53.) As he has requested, plaintiff shall be given an opportunity to gather evidence to support these claims. The Court will consider a renewed motion for summary judgment at the close of discovery.

*Parole Board Defendants' Motion for Judgment on the Pleadings*

The parole board defendants seek judgment on the pleadings on the basis of absolute immunity, claiming that they cannot be liable for damages under § 1983 for conduct arising out of the performance of their duties as quasi-judicial officers. [FN3]

> FN3. The standard for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially identical to the standard for Rule 12(b)(6), see *Churchill v. Star Enters.*, 183 F.3d 184, 190 n. 5 (3d Cir.1999), and therefore, my inquiry on this motion focuses on whether the complaint states a claim upon which relief may be granted, taking all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the plaintiff. *See* Fed.R.Civ.P. 12(b)(6); *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

Under rare circumstances, when required by public policy, a public official is entitled to absolute immunity from § 1983 damages for her official acts. *See Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Among those rare circumstances requiring absolute immunity is the performance of judicial acts. *See Stump v. Sparkman,* 435 U.S. 349, 355-56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The Court of Appeals for the Third Circuit has held that parole officers are "quasi-judicial officials" and are therefore entitled to absolutely immunity when they are engaged in adjudicatory duties. *See Wilson v. Rackmill,* 878 F.2d 772, 775 (3d Cir.1989); *Harper v. Jeffries,* 808 F.2d 281, 284 (3d Cir.1986); *Thompson v. Burke,* 556 F.2d 231, 236-38 (3d Cir.1977). However, parole officers are not entitled to absolute immunity for acts taken in their executive, administrative, or ministerial capacities. *See Wilson,* 878 F.2d at 775-76; *Jones v. Johnson,* 402 F.Supp. 992, 997 (E.D.Pa.1975) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 239 n. 4, 250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *cf. Acierno v. Cloutier,* 40 F.3d 597, 611 (3d Cir.1994) (discussing legislative immunity) (quoting *Jodeco, Inc. v. Hann,* 674 F.Supp. 488, 494-95 (D.N.J.1987)).

The Court of Appeals for the Third Circuit has labored mightily to define the distinction between

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2001 WL 41127 (E.D.Pa.)  
(Cite as: 2001 WL 41127 (E.D.Pa.))

Page 3

judicial acts and executive/ministerial acts. In its inaugural decision on the matter, the court of appeals suggested that one could identify adjudicatory acts as those that were an "integral part of the judicial process." *Thompson,* 556 F.2d at 237. More recently, the court of appeals articulated the following standard for identifying adjudicatory acts:

> With respect to the first inquiry, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Our task is to "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," such as administrative acts.

*3 *Gallas v. Supreme Court,* 211 F.3d 760, 768 (3d Cir.2000) (quoting, sequentially, *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) and *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). [FN4]

> FN4. *Gallas* also suggested that another factor in determining whether an act was entitled to absolutely immunity was whether the act was taken in the "clear absence of all jurisdiction," *Gallas,* 211 F.3d at 768, however, it is clear that the board had the authority to calculate plaintiff's credit for time served and that doing so improperly, while perhaps a basis for liability, was not done in the clear absence of all jurisdiction.

More specifically, the court of appeals has held in the parole board context that hearing evidence; making recommendations as to whether to parole a prisoner; and making decisions to grant, revoke or deny parole are adjudicatory acts for which the actor is entitled to absolute immunity. *See Wilson,* 878 F.2d at 776; *Harper,* 808 F.2d at 284. However, the court of appeals has held that no immunity attaches when a parole officer is engaged in executive and administrative action such as (1) investigating allegations of parole violations and crimes, *see Wilson,* 878 F.2d at 776; (2) typing and signing warrants for arrest of parole violators, *see id.;* (3) assisting police in initiating police investigations of crimes committed by parolees, *see*

*id.;* (4) providing false information that a parolee violated the terms of parole or committed a crime, *see Harper,* 808 F.2d at 283-84; (5) performing the "general responsibilities of a parole or probation officer, *see id.;* (6) presenting information to the parole board about a parole violation, *Thompson,* 556 F.2d at 238-39; or (7) conducting a warrantless search of a parolee's residence without probable cause, *see Shea v. Smith,* 966 F.2d 127- 130-31 (3d Cir.1992). [FN5] District courts within the Third Circuit also have held that executive/ministerial duties include carrying out a mandatory statutory duty such as verifying information in a parolee's record, *see Jones,* 402 F.Supp. at 998, and, for probation officers, gathering information to prepare a presentence report, *see Bieros v. Nicola,* 839 F.Supp. 332, 335 (E.D.Pa.1993). [FN6]

> FN5. List adapted from *Friedland v. Fauver,* 6 F.Supp.2d 292, 304- 05 (D.N.J.1998).

> FN6. In the judicial context, the Supreme Court focuses its analysis on the functions protected by absolute immunity. *See Forrester,* 484 U.S. at 228. Thus, a judge is not entitled to judicial immunity when, for example, he discharges a subordinate, *see id.* at 229 (qualified immunity at most), selects jurors, *see Ex Parte Virginia,* 100 U.S. (10 Otto) 339, 348, 25 L.Ed. 676 (1880) (no immunity), or promulgates a code of conduct for attorneys, *see Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 731, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (legislative immunity).

The acts at issue in this case are the parole board's failures to (1) report or award credit for his time served while on parole, (2) correct or ensure the correction of the length of his pre-sentence incarceration; and (3) grant him a hearing on parole following his August 14, 1996, sentencing. (Complaint, at ¶ 70.) I conclude that the third failure, the granting of a hearing, is part and parcel of considering whether to grant or deny parole, and thus is a judicial act entitled to absolute immunity. *See Thompson v. Duke,* 882 F.2d 1180, 1184 (7th Cir.Ill.1989) ("In the judicial context, scheduling a case for hearing is part of the routine procedure in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 41127 (E.D.Pa.)
(Cite as: 2001 WL 41127 (E.D.Pa.))

Page 4

any litigated matter. However, the fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function."), *cert. denied,* 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990).

I also conclude that the former two omissions regarding the failure to ensure plaintiff's credit for time served and the failure to correct the inaccurate assessment of his pre-sentence incarceration, as alleged in plaintiff's complaint, were executive and administrative in nature, not judicial. The first two omissions do not involve "truly judicial acts" or conduct integral to the judicial process, and are not of the same ilk as parole board conduct typically found to trigger absolute immunity such as hearing evidence or denying or revoking parole. Rather, the omissions involve a failure to properly assess, calculate, report, and process his credit for time served; quintessential administrative and executive functions that are, apparently, mandated by statute. [FN7] Under the circumstances alleged here, I conclude that absolute immunity does not attach and the parole defendants may be subject to liability under § 1983 for a failure to ensure that plaintiff received credit for his time served while on parole and received the appropriate amount of credit for his pre-sentence incarceration. *See Jones,* 402 F.Supp. at 998 (a parole board member's failure to perform an act required by statute is a ministerial act that does not give rise to absolute immunity).

> FN7. Despite the unusual circumstances of this case--the recommitment of a parolee who had neither violated the conditions of parole nor committed another crime--there is a Pennsylvania statute that addresses the analogous situation of the recommitment of parole violators, 61 Pa.C.S. § 331.21a (b). When a parolee has committed no new crime and is recommitted for a technical parole violation (the closest analogy to this case), the statute provides that the prisoner *shall be given credit* for the time served on parole in good standing ... and may be reentered to serve the remainder of his original sentence of sentences. Said remainder *shall be computed by the board* ... and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board.
> 61 Pa.C.S. § 331.21a (b) (emphasis added). I read this statute to require the board, when presented with a recommitted parolee who has committed no crime during his parole, to ensure that the parolee receives credit for the time served on parole and to properly calculate that parolee's remaining sentence. Plaintiff alleges facts that are nearly identical to those contemplated in the statute, and thus, I conclude that the board was required by law to ensure that plaintiff received the appropriate amount of credit for time served on parole and credit for pre-sentence incarceration.

*4 In closing, I wish to make clear the limited scope of my holding today. I have been presented with a motion for judgment on the pleadings by the parole defendants that raises only the issue of absolute immunity, and have held that the parole defendants are not entitled to such immunity. The parties have not argued, and therefore have not considered, the issues of whether plaintiff's complaint states a claim on the merits; whether qualified immunity attaches to defendants' conduct; whether the United States Supreme Court case *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), controls here; or whether plaintiff can produce sufficient evidence to present a genuine issue of material fact on the merits of his claims. Consideration of those issues will be reserved for a later stage of the case. [FN8]

> FN8. I also note that both the parole board defendants and Horn have pointed the finger at one another in this case, each suggesting that the other is responsible for the mishap alleged by the plaintiff. However, because the summary judgment motion is premature and because the parole defendants have raised only the issue of absolute immunity, I do not address the merits of what parties bore responsibility for Simon's alleged injuries.

An appropriate Order follows.

ORDER
AND NOW, this 16th day of January, 2001, upon

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 41127 (E.D.Pa.)
(Cite as: 2001 WL 41127 (E.D.Pa.))

Page 5

consideration of the motion of defendant Martin F. Horn for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Document No. 18); the motion of William F. Ward, Allen Castor, Barbara Descher, Richard Kipp, Gary Lucht, Benjamin Martinez, Nicholas Muller, Sean Ryan, Michael Webster, Conway Bushey, and James W. Riggs (collectively, "parole board defendants") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Document No. 17); and the motion of all defendants to stay discovery (Document No. 16), and the responses of plaintiff Michael B. Simon, and having concluded, for the reasons stated in the foregoing memorandum, that the motion for summary judgment is premature and that the parole board defendants are not entitled to absolute immunity, IT IS HEREBY ORDERED that

(1) the motion of defendant Martin Horn F. for summary judgment is DENIED WITHOUT PREJUDICE;

*5 (2) the motion of the parole board defendants is DENIED; and

(3) the motion to stay discovery is DENIED.

It is FURTHER ORDERED that the parties are to work together to complete discovery and to submit a joint report to Magistrate Judge M. Faith Angell on the status of discovery no later than February 15, 2001.

2001 WL 41127 (E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.