# EXHIBIT D

LEXSEE 2004 US DIST LEXIS 7103

FRANK NELLOM v. HARVEY LUBER, et al.

CIVIL ACTION NO. 02-2190

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2004 U.S. Dist. LEXIS 7103*

March 18, 2004, Decided

**SUBSEQUENT HISTORY:** Appeal dismissed without opinion by *Nellom v. Luber, 2004 U.S. App. LEXIS 27498 (3d Cir. Pa., Dec. 17, 2004)*

**DISPOSITION:** Defendants' motion to dismiss granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] FRANK NELLOM, Plaintiff, Pro se, GRATERFORD, PA.

For HARVEY LUBER, FRED JACOBS, SEAN RYAN, BARBARA DESCHER, WILLIAM F. WARD, MARTIN HORN, JEFFREY A. BEARD, THOMAS JAMES, DONALD T. VAUGHN, Defendants: JOHN O.J. SHELLENBERGER, OFFICE OF THE ATTORNEY GENERAL, PHILADELPHIA, PA.

**JUDGES:** R. Barclay Surrick, Judge.

**OPINIONBY:** R. Barclay Surrick

**OPINION:**

### MEMORANDUM & ORDER

SURRICK, J.

Frank Nellom ("Plaintiff") is a pro se prisoner who is currently incarcerated at the Pennsylvania State Correctional Institution at Graterford ("Graterford"). He alleges that the Defendants--a parole agent, certain members of the Pennsylvania Board of Probation and Parole ("Parole Board"), and Department of Corrections ("DOC") officers--deprived him of his constitutional rights under *42 U.S.C. § § 1983* and *1985*. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 13). For the reasons that follow, we will grant Defendants' Motion. n1

   n1 Plaintiff has been prolific in his filings with this Court. He seems to have adopted the Civil Action Number of this case as the vehicle by which he will bring all of his complaints about his treatment by the criminal justice system to the attention of the Court. We have read all of the filings, and those which obviously have no relevance to this particular lawsuit have not been considered in this decision.

[*2]

### I. FACTS

Plaintiff alleges the following facts, which for purposes of the Motion to Dismiss are taken as true. After serving eighty-six months of a twenty-year maximum sentence, Plaintiff was released on parole on June 7, 1994. n2 (Compl., Doc. No. 7, at 1.) Plaintiff then held employment positions at Girard Medical Center, Drexel University, and Delaware Valley Energy, Inc. (Id.) In 1997, Plaintiff purchased a home, obtained custody of his child, started his own general contracting business, and allowed his girlfriend, Shirla Smith, and her family to temporarily move into his home due to problems in their own home. (Id.) By March 1998, Plaintiff's business employed seven individuals, and had been awarded $ 100,000 in contracts with the Philadelphia Housing Authority. (Id.)

> n2 On October 20, 1987, Plaintiff was convicted of robbery, and on December 14, 1987, Plaintiff was convicted of rape and involuntary deviate sexual intercourse ("IDSI"). *Commonwealth of Pa. v. Nellom, 388 Pa. Super. 314, 565 A.2d 770, 772 (Pa.Super. 1989).* Plaintiff appealed his rape and IDSI convictions to the Superior Court of Pennsylvania. (Id.) On appeal, Plaintiff's conviction was vacated and remanded for a new trial. (*Id. at 777.*) Ultimately, Plaintiff was convicted of rape and sentenced to not less than six years nor more than twenty years in prison. Subsequent appeals were denied by the Superior Court of Pennsylvania, *Commonwealth v. Nellom, 425 Pa. Super. 648, 620 A.2d 540, 620 A.2d 542 (Table)* (Pa. Super. 1992), and by the Supreme Court of Pennsylvania, *Commonwealth v. Nellom, 535 Pa. 632, 631 A.2d 1005 (Table)* (Pa. 1993).

[*3]

On June 30, 1998, Parole Agent Harvey Luber, a Defendant to this lawsuit, along with another agent, Paul Scott, recovered two weapons and ammunition from Plaintiff's home. Plaintiff was returned to prison for violation of parole. (Id.) In his arrest report, Luber stated that his search of Plaintiff's home had been routine and was designed to ensure there were no parole violations in the home. Plaintiff had a preliminary hearing before the Parole Board on July 9, 1998. Defendant Fred Jacobs, a member of the Parole Board, presided. (Compl., Doc. No. 7 at 1-2.)

Plaintiff's full parole hearing took place on September 3, 1998. At this hearing, Defendant Jacobs, and Defendant Sean Ryan, also a Parole Board member, presided. (Id. at 2.) Plaintiff alleges that prior to the start of this hearing, Luber, Jacobs, Scott, and Ryan conferenced privately prior to calling him "and the others" into the hearing room. (Id.) At the hearing, Smith testified that on June 24, 1998, she placed two weapons and ammunition in a locked box in Plaintiff's bedroom without his knowledge. Smith also stated that she showed the weapons and ammunition to Luber at Plaintiff's home on June 25, 1998, but later [*4] removed the weapons and put them back in her home. She further testified that at Luber's direction, she returned the weapons and ammunition to Plaintiffs' home, and again hid them in his bedroom on June 29, 1998. (Compl., Doc. No. 7 at 2.) Plaintiff alleges that Luber left the weapons with Smith at Plaintiff's home on June 25, 1998. He also alleges that the charged parole violation "was in fact a set up," and that Luber "had also been set up by Smith to lie and deceive." (Id. at 2-3.) After considering the testimony of both Smith and Luber, the Parole Board revoked Plaintiff's parole on September 3, 1998, and sentenced him to serve six months back time. (Id. at 6.) n3

> n3 We note that on October 17, 2002, Luber declared under oath that he "found the weapons in the home of Frank Nellom on June 30, 1998" and "Shirla Smith had never shown [Luber] these weapons." (Def. Luber's Answers to Pl.'s Questions.)

Plaintiff was denied reparole on March, 17, 1999 (by Jacobs), April 26, 2000 (by Barbara Descher), [*5] in June 2001 (by Descher), and in June 2002. (Id.) Plaintiff Alleges that on June 11, 2002, he received a pass for his parole hearing, but asked that it be postponed, pending the outcome of his state and federal cases, which were related to his parole revocation in 1998 and the subsequent reparole denials. (Id. at 6-7). Plaintiff claims that the request was granted and he was not summoned for the interview, but on June 26, 2002, he received a decision stating that based on both his interview with the Parole Board, and his two prior convictions, he was to serve out the remainder of his sentence for refusing to admit to the violation which led to revocation of his parole in 1998. (Id. at 7.)

Since September 3, 1998, Plaintiff has filed at least fifteen civil actions seeking relief from what he alleges was the unlawful revocation of his parole and subsequent denials of reparole. (Id. at 7.) n4 Plaintiff claims that the Parole Board's handling of his situation has caused Plaintiff and his daughter psycho-emotional pain and suffering, loss of income, home, and business, damage to his personal and business credit, and suits from his creditors. (Compl., Doc. No. 7 at 8.)

> n4 According to Plaintiff, he has filed these actions in the Court of Common Pleas of Dauphin County, the Court of Common Pleas of Philadelphia County, the Commonwealth Court of Pennsylvania, the Superior Court of Pennsylvania, and this Court.

[*6]

Plaintiff alleges that in 1996, the Parole Board and the Pennsylvania Commission on Crime and Delinquency, pursuant to a contractual agreement under the Federal Violent Offenders Incarceration and Truth in Sentencing Incentive Grants Program, adopted an inter-office policy which requires all prisoners to serve at least eighty-five percent of their maximum sentence. (Id. at 8-9.) In addition, Plaintiff alleges that in July of 1996,

Martin Horn, the Commissioner of the DOC, promulgated a new Pre-Release Policy. (Id. at 10.) Jeffrey Beard continued to use this Pre-Release Policy when he took over Martin Horn's position. Pursuant to this policy, Plaintiff claims he was processed for placement in the Pre-Release Community Corrections Center eight times between January 1999 and June 27, 2002, and that the institutional staff and Superintendent approved him for placement the last two times. However, these placement approvals were subsequently denied by a process through the DOC Central Office. The DOC told Plaintiff that the reasons for the denials were confidential. (Id.)

## II. NATURE AND STAGE OF PROCEEDINGS

Plaintiff initiated the instant action, which was originally [*7] assigned to the Honorable Norma L. Shapiro, on April 17, 2002. After a series of amendments, Plaintiff filed what was subsequently identified as Plaintiff's Second Amended Complaint (Doc. No. 7) on August 14, 2002 ("Complaint"). Defendants responded to Plaintiff's Second Amended Complaint by filing a Motion to Dismiss. The case was reassigned to this judge on October 18, 2002. Since being reassigned, Plaintiff has filed a number of additional documents, which will be addressed in this Memorandum.

In addition, Plaintiff filed a petition for writ of habeas corpus in this Court on September 24, 2001, which was assigned to the Honorable Mary A. McLaughlin. In that petition, Plaintiff claimed that his parole was revoked in violation of his constitutional rights. Plaintiff's petition was denied. Plaintiff filed an Application for Judgment on the Pleadings on October 10, 2002, and an Application for Reargument on October 18, 2002. Judge McLaughlin denied Plaintiff's Applications, and Plaintiff subsequently requested a certificate of appealability. The Third Circuit denied that request on February 12, 2003. Plaintiff petitioned the Supreme Court of the United States for writ of certiorari. [*8] The Supreme Court denied Plaintiff's petition on October 6, 2003.

## III. LEGAL STANDARD

When considering a motion to dismiss a complaint for failure to state a claim under *Rule 12(b)(6)*, n5 this Court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them. Dismissal under *Rule 12(b)(6)* . . . is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)* (citing *Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988))*; see *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989)*. For this reason, district courts strongly disfavor *Rule 12(b)(6)* motions. *Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1965)*; *Kuromiya v. United States, 37 F. Supp. 2d 717, 722 (E.D.Pa. 1999)*. A court will only dismiss a complaint if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *H.J. Inc., 492 U.S. at 249-50* [*9] (quoting *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984))*; *Neitzke v. Williams, 490 U.S. 319, 326-327, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1984)*. Nevertheless, a court need not credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)*.

> n5 *Rule 12(b)(6)* provides that:
>
> > Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted...
>
> *FED. R. CIV. P. 12(b)(6)*.

A pro se complaint, "however inartfully pleaded," is subject to more liberal review than a district court's review of pleadings prepared by lawyers. *Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)*. [*10] In liberally construing a pro se plaintiff's pleadings, we will "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer, 293 F.3d 683, 687 (3d Cir. 2002)*. This more liberal standard of construction means that a pro se complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines, 404 U.S. at 520-21*.

## IV. DISCUSSION

**A. Pennsylvania's Statute of Limitations Bars All Claims Brought Under § § *1983 and 1985* that Occurred Prior to April 17, 2000**

Defendants argue that because Plaintiff commenced the instant lawsuit on April 17, 2002, the relevant statute of limitations for personal injury and civil rights claims,

Case 2:02-cv-02687-ER   Document 83-5   Filed 03/15/2005   Page 5 of 13

Page 4
2004 U.S. Dist. LEXIS 7103, *

*42 PA. CONST. STAT. § 5524*, bars all of Plaintiff's § *1983* claims arising out of events that took place prior to April 17, 2000. Plaintiff does not dispute the fact that Pennsylvania's two-year statute of limitations applies. Plaintiff contends, however, that these claims are not time barred because he initially [*11] filed a § *1983* action against Luber, Jacobs, Ryan, and the Parole Board, et al., on June 29, 2000, in state court, but "because the [state] court would not render a decision on the complaint," he removed the action to federal court. (Pl.'s Resp. to Defs.' Mot. to Dismiss at 2). On June 6, 2003, Judge McLaughlin dismissed that action for failure to prosecute, and the case was terminated. (02-mc-0076, Doc. No. 3.)

A plaintiff may bring a § *1983* action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See *42 U.S.C. § 1983*; *West v. Atkins, 487 U.S. 42, 48-49, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988)*. A plaintiff may bring a claim under the civil rights conspiracy statute, *42 U.S.C. § 1985(3)*, if he alleges:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation [*12] of any right or privilege of a citizen of the United States.

*Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253-54 (3d Cir. 1999)* (quoting *Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997))*.

A plaintiff may not seek relief under either § *1983* or § *1985*, however, if the statute of limitations for the civil rights action has run. Because neither § *1983* nor § *1985* contains a statute of limitations, we must "use the statute of limitations for the state where the federal court sits unless its application would conflict with the Constitution or with federal law." *Lake v. Arnold, 232 F.3d 360, 368 (3rd Cir. 2000)*. For statute of limitations purposes, civil rights claims brought pursuant to §§ *1983 and 1985* are best characterized as personal injury actions. Id. The Third Circuit has therefore held that actions brought under §§ *1983 and 1985*, originating in Pennsylvania, are governed by *42 PA. CONS. STAT. § 5524*, which mandates a two-year statute of limitations. Id. The two-year limitations period begins to run from the time that a person either knows or has reason to know of the injury that is the basis of the claim. See [*13] *Elliott, Reihner, Siedzikowski & Egan, P.C. v. Pa. Employees Benefit Trust Fund, 161 F. Supp. 2d 413, 420-21 (E.D. Pa. 2001)*. Federal courts must also apply the applicable tolling principles in determining whether the state limitations period has run. *Lake, 232 F.3d at 368*.

Courts considering the implication of a state court action on the statute of limitations for a federal action have held that a plaintiff's federal action is not tolled by the filing of an earlier state suit. n6 *Falsetti v. Local Union No. 2026, United Mine Workers of Am., 355 F.2d 658, 661-62 (3d Cir. 1966)* (applying a state statute in the absence of a federal statute of limitations, and finding that the running of the state statute of limitations against an action in federal court was not tolled by commencement of an unsuccessful suit in state court). See also *Ammlung v. City of Chester, 494 F.2d 811 (3d Cir. 1974)* (applying Falsetti for the proposition that "the running of a Pennsylvania statute of limitations against a federal cause of action is not tolled under Pennsylvania concepts of tolling by the commencement of a similar suit in state [*14] court"); *Frieman v. USAir Group, Inc., 1994 U.S. Dist. LEXIS 18585, No. CIV.A.93-3142, 1994 WL 719643* at *1 (E.D. Pa. Dec. 22, 1994) (following *Falsetti*); *Royal Glob Ins. Cos. v. Hauck Mfg. Co., 233 Pa. Super. 248, 335 A.2d 460, 462 (Pa. Super. 1975)* (same); *Maxwell Downs, Inc. v. City of Phila., 162 Pa. Commw. 300, 638 A.2d 473, 475 (Pa. Commw. 1994)* (citing Royal Globe's reliance on Falsetti in concluding that a plaintiff could not bring a § *1983* action in state court after federal § *1983* action was dismissed, despite Pennsylvania's "saving clause," *42 PA. CONST. ST. ANN. § 5535*--which allows a plaintiff to commence a new civil action within one year if it is the same as the original cause of action that was timely commenced and then terminated). Therefore, Plaintiff's earlier actions in state court cannot toll the statute of limitations for Plaintiff's §§ *1983 and 1985* claims. Accordingly, all §§ *1983 and 1985* claims in the instant action, which involve events that took place prior to April 17, 2000, (Counts I, II, III, IV, and V of Statement of Claim Count-I), are dismissed as untimely. Those events include Plaintiff's arrest for violation of [*15] his parole on June 30, 1998; Plaintiff's preliminary hearing on July 9, 1998; Plaintiff's full parole hearing on September 3, 1998; and Plaintiff's first denial of parole on March 17, 1999. n7

> n6 In Plaintiff's Response to Defendants' Second Supplement to their Motion to Dismiss with Memorandum of Law (Doc. No. 27), Plaintiff argues that the statute of limitations tolled his federal claims because the present

Case 2:02-cv-02687-ER    Document 83-5    Filed 03/15/2005    Page 6 of 13

Page 5
2004 U.S. Dist. LEXIS 7103, *

lawsuit was simply "transferred to this Court" from the state court. As discussed, Plaintiff's assertion is legally incorrect. In addition, Plaintiff filed the instant lawsuit on April 17, 2002, and this case did not originate in state court.

n7 Based on our analysis, no § 1985 claims remain. Even if Plaintiff's claims were not barred by the statute of limitations, however, we note he has failed to state a claim under § 1985(3), since he has failed to allege a conspiracy motivated by a racial or class based discriminatory animus. *Ridgewood Bd. of Educ., 172 F.3d at 253-54*.

**B. [*16] Many of the Statutes Upon Which Plaintiff Relies Do Not Afford Him Relief in the Instant Action**

In his Complaint, Plaintiff alleges violations of numerous Pennsylvania criminal statutes, as well as a number of federal statutes. "An alleged violation of state law . . . does not state a claim under *section 1983*." *Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992)*. Plaintiff also seeks relief under *18 U.S.C. §§ 241* and *242*, the criminal analogue of *42 U.S.C. § 1983*. These federal statutes do not give rise to a civil action. See, e.g., *Taxacher v. Torbic, 2000 U.S. Dist. LEXIS 15193, 2000 WL 641616* at *14 (W.D. Pa. Feb. 23, 2000) (noting that there is no private cause of action under *18 U.S.C. § 241*); *Leveto v. Lapina, 2000 U.S. Dist. LEXIS 1972, 2000 WL 331902* at *20 (W.D. Pa. Feb. 5, 2000) (noting that there is no private cause of action under *18 U.S.C. § 242*). See also *Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)* ("Only the United States as prosecutor can bring a complaint under *18 U.S.C. §§ 241-242*."). Accordingly, all of Plaintiff's claims brought [*17] under *18 U.S.C. §§ 241* and *242* are dismissed.

**C. Remaining Claims**

1. Claims Against Parole Board Defendants Jacobs, Ryan, Descher, and Ward

Liberally construing Plaintiff's Complaint, Plaintiff asserts that (1) the decisions of Defendants Jacobs, Ryan, Descher, and Ward (the "Parole Board Defendants") to revoke Plaintiff's parole and to deny re-parole violated Plaintiff's constitutional rights to due process and equal protection; (2) Defendants' delay in granting reparole hearings, as well as their failure to grant Plaintiff a reparole hearing interview, violated Plaintiff's rights to due process and equal protection; and (3) the Parole Board Defendants' actions constituted retaliation against Plaintiff for his efforts to seek legal relief in the courts.

*a. Challenges to the Parole Board Defendants' Adjudicatory Decisions Regarding Parole*

We find that the Parole Board Defendants' decisions to revoke parole and to deny subsequent reparole are subject to absolute immunity, and that, in any event, Plaintiff's claims seeking monetary damages for those decisions under *42 U.S.C. § 1983* are barred under the Supreme Court's [*18] decision in *Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)*.

*1) Absolute Immunity*

Defendants argue that the Parole Board Defendants are entitled to absolute immunity from suit because their alleged decisions were adjudicatory in nature. Plaintiff counters that his claims do not merely challenge the Parole Board Defendants' decisions but rather allege that these decisions indicate "an acceptance of Luber's criminal misconduct" and a purpose to protect Luber from the consequences of his conduct; therefore, the Parole Board Defendants are entitled to only qualified, as opposed to absolute, immunity. We find that to the extent Plaintiff's claims attack the Parole Board's decisions, the Parole Board Defendants are entitled to absolute immunity.

The Third Circuit has held that parole officers are entitled to absolute immunity from suit when they engage in adjudicatory duties. *Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989)*. When acting in their executive or administrative capacities, however, "parole officers are entitled only to a qualified, good faith immunity." Id. (citing *Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986)*. [*19] In determining whether the Parole Board Defendants' actions are entitled to absolute immunity:

> We must examine the allegations of [the Plaintiff's] complaint to discern whether [he] alleged that the . . . defendants performed adjudicatory duties, entitling them to absolute immunity, or executive and administrative duties, entitling them to qualified or good faith immunity. In order for the defendants to succeed on a *Rule 12(b)(6)* dismissal based on absolute immunity, the allegations of appellant's complaint must indicate the existence of absolute immunity as an affirmative defense; the defense must clearly appear on the face of the complaint.

*Wilson, 878 F.2d at 775-76*. Furthermore, the relevant inquiry is "the 'nature' and 'function' of the act, not the 'act itself,'" regardless of how suspicious the act itself

Case 2:02-cv-02687-ER    Document 83-5    Filed 03/15/2005    Page 7 of 13

Page 6
2004 U.S. Dist. LEXIS 7103, *

may be. *Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992)*.

A recent district court opinion summarized parole officers' entitlement to absolute immunity:

> The Third Circuit holds that a parole board member or parole or probation officer is entitled to absolute immunity when he engages in certain adjudicatory [*20] acts such as [those where he]: (1) hears evidence; (2) makes recommendations as to whether to parole a prisoner; or (3) makes decisions as to whether to grant, revoke, or deny parole.

*Breslin v. Brainard*, 2002 U.S. Dist. LEXIS 21845, No. CIV.A. 01-*CA-7269, 2002 WL 31513425*, at *7 n.10 (E.D. Pa. Nov. 1, 2002) (citing *Wilson, 878 F.2d at 776*). n8 See also *Thompson v. Burke, 556 F.2d 231, 238 n.13 (3d Cir. 1977)* (noting that parole board members' adjudicatory functions include their ability to affect the length or terms of imprisonment, as well as the times when convicts may be paroled or discharged).

> n8 The Breslin court also noted that courts within the Third Circuit have held that:
>
> > no absolute immunity attaches when a parole officer (1) investigates allegations of parole violations and crimes, . . . (2) types and signs warrants for the arrests of parole violators, . . . (3) assists police initiating investigations of crimes committed by parolees, . . . (4) provides false information that a parolee violated the terms of parole or committed a crime, . . . (5) performs the general responsibilities of a parole or probation officer, . . . (6) presents information to a parole board about a parole violation, . . . (7) conducts a warrantless search of a parolee's residence without probable cause, . . . (8) carries out a mandatory statutory duty such as verifying information in a parolee's record, . . . or (9) gathers information to prepare a presentence report.

> Id. (citations omitted).

[*21]

Presently, Plaintiff's challenge of the Parole Board Defendants' decisions denying his re-parole in May 2000, June 2001, and June 2002, and his challenge of their stated reasons for denying re-parole in June 2002, are attacks on adjudicatory decisions. The possibility that, as Plaintiff believes, the Parole Board Defendants conspired against him does not alter the analysis. Even if the instant facts are not above suspicion, we are required to examine the nature and function of the act, and not the act itself. *Kulwicki, 969 F.2d at 1465* (holding that a public official was absolutely immune from allegations that he conspired with others to deprive the plaintiff of his constitutional rights). As such, the Parole Board Defendants' decisions denying reparole, and their reasons supporting those decisions, are protected by absolute immunity, since these actions represent adjudicatory functions.

*2) Section 1983*

In addition, to the extent that Plaintiff seeks both injunctive relief and damages under § *1983* arising out of the Parole Board Defendants' decisions to revoke parole and deny reparole, such claims are not cognizable. These claims, which are based on the Parole [*22] Board Defendants' decisions, necessarily challenge the fact or length of Plaintiff's confinement. To the extent that Plaintiff seeks injunctive relief regarding the duration of his sentence, he may pursue such claims only in a petition for writ of habeas corpus. *Johnson v. Paparozzi, 219 F. Supp. 2d 635, 640-41 (D.N.J. 2002)*. To the extent that Plaintiff seeks monetary damages for these actions under § *1983*, the Supreme Court's decision in *Heck, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364*, and the cases that have followed, bar Plaintiff's claims.

Defendants argue that because the Complaint does not allege that any of the Parole Board's decisions have been reversed in appellate or collateral proceedings, under *Heck, 512 U.S. at 477*, no action for damages under § *1983* may obtain. In response, Plaintiff contends that his claims are focused not on the Parole Board Defendants' decisions, but that their decisions amounted to knowledge of Luber's criminal liability, a failure to exercise their duty to Plaintiff, and retaliation against Plaintiff for instituting legal action regarding his confinement.

The Heck Court held that in order to recover damages for unconstitutional [*23] conviction or imprisonment, a § *1983* plaintiff "must prove that the conviction or sentence has been reversed on direct

Case 2:02-cv-02687-ER Document 83-5 Filed 03/15/2005 Page 8 of 13

Page 7
2004 U.S. Dist. LEXIS 7103, *

appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *512 U.S. at 486-87*. Courts in the Third Circuit have applied Heck to circumstances involving questions of eligibility for parole. In *Benson v. N.J. State Parole Bd.*, the court found that a pro se petition alleging that a prisoner was denied timely parole was, under Heck, a matter for habeas corpus review and not cognizable under § 1983 despite plaintiff's request for damages. *947 F. Supp. 827, 832 (D.N.J. 1996)*. The court concluded that the prisoner's § 1983 petition alleging that he was denied timely parole necessarily "seeks to attack the duration of his sentence in his § 1983 suit," and that since "his claim that the Parole Board acted illegally has not been vindicated in either a state appellate proceeding or federal habeas proceeding," his § 1983 suit had to be dismissed. *Id. at 833*. See also *Paparozzi, 219 F. Supp. at 641-42* [*24] (recognizing the applicability of Heck to parole decisions).

In this case, as in *Benson* and *Heck*, Plaintiff attacks the decisions of the Parole Board Defendants which affected his duration of confinement. However, Plaintiff has not alleged that these decisions have been invalidated on appeal or in a collateral proceeding. In fact, Plaintiff's federal habeas petition was denied by the district court, (01-cv-5304; Doc. No. 25), the Third Circuit, (01-cv-5304; Doc. No. 33), and the Supreme Court, *Nellom v. Vaughn, 157 L. Ed. 2d 170, 124 S. Ct. 236 (2003)*. Therefore, under Benson and Heck, Plaintiff's § 1983 claim for damages against the Parole Board Defendants must be dismissed.

Plaintiff again suggests that his Complaint does not attack the Parole Board Defendants' decisions, but rather alleges these decisions demonstrate a knowledge of Luber's criminal behavior, a failure to exercise their duty to Plaintiff, and retaliation for Plaintiff's decision to seek legal relief for his incarceration. As the relevant case law indicates, because these claims necessarily attack the duration of his confinement, absent a showing that the Parole Board's decisions [*25] have been invalidated on appeal in a collateral proceeding such as a habeas corpus action, Plaintiff cannot seek damages for these claims under § 1983.

*b. Challenges to the Parole Board's Application of Parole Procedures*

A claim is cognizable under § 1983 to the extent that a plaintiff is neither seeking an earlier parole eligibility date nor challenging the parole board's decision with regard to parole. See *Paparozzi, 219 F. Supp. 2d at 641-42* (citing *Salaam v. Consovoy, 2000 U.S. Dist. LEXIS 19971*, No. CIV.A. 99-*CV*-5692, 2000 WL 33679670, at *2 (D.N.J. Apr. 14, 2000)). "For example, when a dispute 'goes only to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to an earlier parole eligibility date, plaintiff's claim may proceed under *42 U.S.C. § 1983*.'" *Paparozzi, 219 F. Supp. 2d at 642* (emphasis added) (quoting *Johnson v. Fauver, 786 F. Supp. 442, 445 (D.N.J. 1992)*, aff'd, *970 F.2d 899 (3d Cir. 1992)*). See also *Heck, 512 U.S. at 482-83* (noting that a suit alleging [*26] that the State used the "wrong procedures" as opposed to issuing the "wrong result" is cognizable under § 1983).

Construing Plaintiff's Complaint liberally, it alleges that the Parole Board Defendants delayed Plaintiff's reparole hearings and denied him an interview for his June 2002 reparole hearing, despite later stating that the decision to deny him parole was based in part on an interview. Based on these factual allegations, Plaintiff seeks relief against the Parole Board Defendants on the grounds that these actions violated Plaintiff's rights to due process and equal protection, and constituted a conspiracy to retaliate against Plaintiff's efforts to seek legal relief.

*1) Due Process*

A protected liberty interest subject to the protections of due process under § 1983 "may arise from only one of two sources: the *Due Process Clause* or the laws of a state." *Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999)* (citing *Hewitt v. Helms, 459 U.S. 460, 466, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983)*). Because Plaintiff has no protected liberty interest in parole under either the *Due Process Clause of the Constitution* or Pennsylvania law, this due process [*27] claim must fail.

It is well settled that there is no constitutionally created liberty interest in parole. See, e.g., *Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979)* ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Nelson v. Miranda,1997 U.S. Dist. LEXIS 6345*, No. CIV.A. 96-*CV*-2854, 1997 WL 327381, *4-5 (E.D. Pa. May 6, 1997) ("The Constitution, itself, does not create a legitimate claim of entitlement to parole or a parole hearing."); *Rodgers v. Sci-Frackvill, 916 F. Supp. 474, 476 (E.D. Pa. 1996)* ("The *14th amendment* does not provide that every prisoner has a right to be paroled, or that *any* expectation of parole is a constitutionally protected liberty interest.") (emphasis in original). See also *Bd. of Pardons v. Allen, 482 U.S. 369, 373, 96 L. Ed. 2d 303, 107 S. Ct. 2415 (1987)* (observing that the presence of a parole system alone does not create a constitutionally protected liberty interest in parole).

Nor does the law of Pennsylvania create a liberty interest in parole release or a parole [*28] hearing that would be subject to the protections of the *Due Process Clause*. Federal and state courts have consistently held that the granting of parole is not a constitutionally protected liberty interest under Pennsylvania law. See *Nelson, 1997 U.S. Dist. LEXIS 6345,* [WL] at *5 ("Pennsylvania law has not created a protectible liberty interest in [a] parole hearing."); *Rodgers, 916 F. Supp. at 476-77* (finding that the *Pennsylvania Probation and Parole Act* does not create a constitutionally protected liberty interest in the granting of parole); *Reider v. Commonwealth of Pa., Bd. of Prob. and Parole, 100 Pa. Commw. 333, 514 A.2d 967, 971 (Pa. Commw. Ct. 1986)* ("Under Pennsylvania law, a prisoner has no constitutionally protected liberty interest in the expectation of being released from confinement prior to the expiration of the maximum term of the imposed sentence. . . . The mere possibility of parole affords no constitutional rights to prisoners.") (emphasis in original) (citations omitted).

Since Plaintiff has no constitutionally protected liberty interest in either being granted parole or having a parole hearing, his claim for a due process [*29] violation based on the delays he experienced in receiving a hearing and on his lack of a parole hearing interview necessarily must fail. In Sandin v. Conner, the Supreme Court addressed the issue of how to identify due process rights in prison regulations. The Court held that states may create liberty interests protected by the *Due Process Clause*, but "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the *Due Process Clause* of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *515 U.S. 472, 483, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995)*. See also *Nelson, 1997 U.S. Dist. LEXIS 6345,* [WL] at *5 ("Because plaintiff has no liberty interest in obtaining parole under Pennsylvania law, he cannot contest the unconstitutionality of procedural devices attendant to parole decisions, such as rescheduling parole hearings."). n9 In the instant case, Plaintiff's denial of parole and/or a parole hearing do not impose atypical hardship that exceeds the ordinary incidents of prison life.

---

n9 We note that the DOC attempted to explain the parole process to Plaintiff. On February 13, 2002, Thomas L. James, Special Assistant to the Secretary of Corrections sent Plaintiff the following letter:

Dear Mr. Nellom:

I am in receipt of your recent letter to Secretary Beard regarding your return to prison and the alleged actions of the parole agent. Please be advised that this is a courtesy response subsequent to my discussion with Secretary Beard about your request and no further correspondence will be addressed to you on this issue.

I will be very clear with you on the position taken in this matter. First of all, not withstanding your claim of innocence, the Department of Corrections has no, absolutely no jurisdiction over the operation or decision making of the parole board. Secretary Beard cannot override or intervene in the management of that agency.

Secondly, you were released to the supervision of the Parole Board and while you may have been housed in a Department facility, the supervision of your placement in the community was under the authority of the parole agent, not the Department of Corrections. It is of no consequence, that you consider yourself to be a model parolee since the parole board obviously does not concur with that assessment.

Third and finally, it is not the Department's responsibility to question the guilt or innocence of your activity while in the community. Moreover, since you are well past your minimum release date, the Department has no statutory authority to place you in a Community Corrections Center without the approval of the parole board.

I trust that this clarifies the Department's stance on this matter.

(Letter from James to Nellom of 2/13/02.)

[*30]

2) *Equal Protection*

Case 2:02-cv-02687-ER    Document 83-5    Filed 03/15/2005    Page 10 of 13

Page 9
2004 U.S. Dist. LEXIS 7103, *

An equal protection claim arises when an individual alleges that he has received treatment that is different from others who are similarly situated. *Paparozzi, 219 F. Supp. 2d at 643*. "To bring a successful claim under *42 U.S.C. § 1983* for a denial of equal protection, [a plaintiff] must prove the existence of purposeful discrimination." *Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)* (citing *Batson v. Kentucky, 476 U.S. 79, 93, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986))*. Specifically, a plaintiff must demonstrate that he "'received different treatment from that received by other individuals similarly situated.'" *Andrews, 895 F.2d at 1478* (quoting *Kuhar v. Greensburg-Salem School Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980))*.

Here, Plaintiff apparently attempts to make an equal protection claim regarding the Parole Board Defendants' application of parole procedures. However, Plaintiff has not made any factual allegations related to the parole procedures that support a claim of equal protection. He has neither alleged purposeful discrimination nor that [*31] he has received different treatment than others. Thus, any claim that the Parole Board Defendants unconstitutionally denied him his equal protection rights must be dismissed.

### 3) Unconstitutional Retaliation

Plaintiff's Complaint alleges that the Parole Board Defendants unconstitutionally retaliated against his efforts to seek various forms of legal relief in the courts by delaying reparole hearings and denying him an interview for his June 2002 reparole hearing, despite later stating that the decision to deny him parole was based in part on this interview that did not occur.

In order to state a claim for retaliation under *§ 1983*, a plaintiff must satisfy a three-prong test. Specifically, a plaintiff must allege that (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) he suffered some "adverse action" at the hand of the prison officials; and (3) his exercise of the constitutional right was a substantial or motivating factor which led to the adverse action by prison officials. *Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)*. Plaintiff alleges that the Parole Board Defendants violated his *First Amendment* rights when they [*32] retaliated against his efforts to seek legal relief. This allegation satisfies the first prong. However, Plaintiff fails to satisfy the second and third prongs.

Plaintiff states that he was scheduled for a reparole interview on June 11, 2002, but "because civil action related to his parole revocation in 1998, and reparole denials following [that revocation,] were pending in both the Commonwealth Court and this Court," (Compl., Doc. No. 7 at 6), he requested postponement of his interview. Plaintiff claims that the interview was postponed, but that he subsequently "received a decision from the Board stating that following his interview the Board had decided to have him serve the balance of his sentence until November 29, 2007, for refusing to admit to the violation which was used to revoke his parole in 1998." (Id. at 7.)

With regard to the second prong, Plaintiff has failed to show that "he suffered some 'adverse action' at the hands of [Parole Board] officials." *Rauser, 241 F.3d at 333*. Plaintiff claims that Defendants delayed his Parole Board hearings and did not schedule an interview before denying his request for parole. However, Plaintiff admits that [*33] he requested the delay, pending the outcome of related litigation. As a result, Plaintiff cannot now come to the Court, claiming that Defendants retaliated against him when they accommodated his request. As to Plaintiff's allegation that he was denied parole without an interview, we note that Pennsylvania statute states that the "hearings of applications shall be held by the board whenever in its judgment hearings are necessary." *61 P.S. § 331.22*. This authority, coupled with Plaintiff's own request that he not receive a hearing at the scheduled time, precludes Plaintiff from now alleging that he suffered an adverse action at the hands of the Parole Board Defendants.

Moreover, Plaintiff cannot show that the Parole Board Defendant's actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights *Rauser, 241 F.3d at 333* (citations omitted). Since the Plaintiff's parole was revoked, it cannot reasonably be suggested that he has been deterred from exercising his constitutional rights. This is evidenced by the multitude of motions Plaintiff has filed, in this and other jurisdictions. Plaintiff has freely exercised his *First* [*34] *Amendment* rights to access the courts.

Evening assuming that Plaintiff satisfied that second prong of the retaliation claim against the Parole Board Defendants, he would be unable to satisfy the third prong. Plaintiff's bald assertions that Defendants denied his parole in order to retaliate for the exercise of his *First Amendment* rights, without more, cannot satisfy the third prong, even at this stage of the proceedings given the record that Plaintiff has created with his pleadings. In Rauser, the court put the burden of proving causation on the plaintiff, but explained that the analysis did not end there. "Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *241 F.3d at 334*. In the instant case, the decision in question - whether to deny Plaintiff's parole - was

Case 2:02-cv-02687-ER   Document 83-5   Filed 03/15/2005   Page 11 of 13

Page 10
2004 U.S. Dist. LEXIS 7103, *

justified by the Parole Board's statement that they would review his case prior to expiration of his maximum sentence if Plaintiff [*35] "successfully completed a treatment program for sex offenders." n10 We are satisfied that, regardless of Plaintiff's decision to exercise his constitutional rights, the Parole Board's would have made the same decision to deny Plaintiff's parole, and that this decision was reasonably related to a legitimate penological interest. Because Plaintiff fails to properly allege a claim of retaliation, we will dismiss this count.

n10 A letter from Kathleen Zwierzyna, Board Secretary to the Pennsylvania Board of Probation and Parole, dated June 26, 2002, states:

Client Name: Frank Nellom Parole No.: 8124T

Institution: SCI - Graterford
Institution No: BN5856

As recorded on 06/26/2002 the Board of Probation and Parole rendered the following decision in your case:

Following an interview and review of your file, the Pennsylvania Board of Probation and Parole has determined that the fair administration of justice cannot be achieved through your release on reparole. You are therefore refused parole and ordered to:

Serve your unexpired maximum sentence, 11/29/2007 - Will be reviewed earlier, if recommended by the Department of Corrections/County Prison Staff and you have: Successfully completed a treatment program for sex offenders.

Your denial of both convictions and refusal to accept responsibility for your actions indicate that you have not been rehabilitated and continue to be a danger to the safety of the community.

(Letter from Zwierzyna to Nellom of 6/26/02.)

[*36]

2. Claims Against DOC Defendants Horn, Beard, James, and Vaughn

Plaintiff claims that DOC Defendants Horn, Beard, James, and Vaughn failed in their duty to create a lawful pre-release policy, and were arbitrary and capricious in their decisions to deny Plaintiff placement in a pre-release facility. Defendants argue that (1) because Plaintiff has no constitutionally protected liberty interest in pre-release, his due process claims must fail; and (2) Plaintiff has not demonstrated that his right to equal protection has been violated. Plaintiff counters that (1) a prisoner need not allege the presence of a suspect classification or infringement upon a fundamental right in order to state a claim under the *Equal Protection Clause*; (2) he does have a protected interest in pre-release because Pennsylvania has authorized pre-release via statute; and (3) the policy in place violates Pennsylvania statutory authority on pre-release.

Under the above statute of limitations analysis, we agree with Defendants that all denials of pre-release placement that occurred prior to April 17, 2000 are barred by Pennsylvania's two-year statute of limitations. For those denials after April 17, 2000, we [*37] will address Plaintiff's due process and equal protection arguments.

*a. Due Process Claims*

As discussed earlier, a liberty interest subject to the protections of due process under *§ 1983* "may arise from only one of two sources: the *Due Process Clause* or the laws of a state." *Asquith, 186 F.3d at 409* (citing *Hewitt, 459 U.S. at 466*).

*1. Due Process Clause*

The Supreme Court has held that "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the *Due Process Clause* does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt, 459 U.S. at 468* (quoting *Montanye v. Haymes, 427 U.S. 236, 242, 49 L. Ed. 2d 466, 96 S. Ct. 2543 (1976))*. Thus, under the *Due Process Clause*, the Third Circuit has observed that a prisoner "does not have a liberty interest in remaining in a preferred facility within a state's prison system." *Asquith, 186 F.3d at 410* (citing *Montanye, 427 U.S. at 242*). Accordingly, the Third Circuit has concluded that [*38] a prisoner who had lived in a strictly monitored halfway house did not have a liberty interest in remaining there, noting that because the halfway house amounted to institutional confinement, "[the plaintiff's] removal from the halfway house did not trigger the protections of the *Due Process Clause.*" *Asquith, 186 F.3d at 411*.

Plaintiff claims that the DOC Defendants improperly denied him the opportunity to be removed from Graterford and placed in the Pre-Release Community Corrections Center. Although Plaintiff may be disappointed in being denied such an opportunity, this denial represents a degree of confinement that is within the sentence originally imposed upon him--a twenty-year prison sentence. Thus, the *Due Process Clause* does not protect Plaintiff's interest in being transferred to his preferred facility.

2. *Pennsylvania Law*

We do not reach the question of whether Plaintiff had a state-created liberty interest in being transferred to the Pre-Release Community Corrections Center, n11 because we find that even if Plaintiff did have such an interest, the DOC Defendants did not violate it when they chose not to place him in the pre-release facility. "[A] [*39] prisoner is deprived of a state-created liberty interest only if the deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Asquith, 186 F.3d at 412* (quoting *Sandin, 515 U.S. 472, 484, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995)*). In determining whether the DOC Defendants violated any state-created liberty interest, the relevant inquiry is not to compare the prisoner's own life as it would have been in the new facility with how it is in the current facility, but rather to "compare the prisoner's liberties after the alleged deprivation with the normal incidents of prison life." *Asquith, 186 F.3d at 412*.

       n11 However, we note that Pennsylvania statute states: "Satisfying the eligibility criteria for prerelease transfer does not mean the inmate will automatically be permitted to participate in prerelease programs. Other considerations such as the staff's evaluation of the inmate's progress, the relevancy of the particular prerelease program to the inmate's reintegration, the safety of the community and the victim of the inmate's crime and the availability of space will be taken into consideration." 37 PA. CODE § 94.3(b).

[*40]

The DOC Defendants' decision to not place Plaintiff in the pre-release facility had no impact on his liberties when compared to the normal incidents of prison life. The result of the denial was only that Plaintiff was required to remain an inmate at Graterford. As the Third Circuit stated in Asquith, "even if [the plaintiff's] life in prison is 'fundamentally different' from life at the halfway house, ... [that] does not permit us to compare the prisoner's own life before and after the deprivation." *Id. at 412*. Accordingly, we conclude that because Plaintiff is still within the confines of this sentence, Defendants could not have violated any state-created liberty interest by denying Plaintiff placement in a pre-release facility.

   b. *Equal Protection*

As hereinabove discussed, an equal protection claim arises when an individual alleges that he has received treatment that is different from others who are similarly situated. *Paparozzi, 219 F. Supp. 2d at 643*. "To bring a successful claim under *42 U.S.C. § 1983* for a denial of equal protection, [a plaintiff] must prove the existence of purposeful discrimination. [*41] " *Andrews, 895 F.2d at 1478* (citing *Batson, 476 U.S. at 93*). Specifically, a plaintiff must demonstrate that he "'received different treatment from that received by other individuals similarly situated.'" *Andrews, 895 F.2d at 1478* (quoting *Kuhar, 616 F.2d at 677 n.1*).

Plaintiff has made no factual allegations that support a claim of equal protection. Plaintiff has neither alleged purposeful discrimination nor that he has received different treatment than others. Thus, Plaintiff's claim for equal protection must be dismissed. n12

       n12 Plaintiff relies on *Wright v. Cuyler, 517 F. Supp. 637 (E.D. Pa. 1981)* for the proposition that he has stated an equal protection claim against the DOC Defendants under *§ 1983*. (Pl.'s Resp. to Defs.' Mot. to Dismiss at 6.) However, Wright only supports the necessity that Plaintiff allege that he received treatment different from others similarly situated. In Wright, the court concluded "if a prisoner 'is denied a privilege *enjoyed by his fellow inmates* he has stated a complaint cognizable under the federal Constitution.'" *517 F. Supp. at 643* (emphasis added). Plaintiff has made no such allegation.

[*42]

3. Policy Requiring Prisoners to Serve Eighty-five Percent of Sentence

Plaintiff also alleges that in 1996, the Parole Board and the Pennsylvania Commission on Crime and Delinquency, pursuant to a contractual agreement under the Federal Violent Offenders Incarceration and Truth in Sentencing Incentive Grants Program, adopted an inter-office policy which requires all prisoners to serve at least eighty-five percent of their maximum sentence. Plaintiff argues that such actions amount to a conspiracy between these two state organizations, apparently to keep him incarcerated, and that as such, the actions constitute

deprivations of his due process and equal protection rights.

To the extent that Plaintiff seeks relief against these organizations, his § 1983 claim must fail. These organizations cannot be sued, as they are not "persons" within the meaning of § 1983. *Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977)*. In any event, Plaintiff has not stated a claim with respect to either due process or equal protection regarding this alleged change in policy. As discussed earlier, Plaintiff has no constitutionally protected liberty interest, under either the U.S. [*43] Constitution or Pennsylvania law, in the expectation of being released prior to the end of a period of confinement. Thus, his due process claim must fail. In addition, as with his other equal protection claims, Plaintiff has neither alleged purposeful discrimination nor that he has received different treatment than others.

Therefore, he fails to state a claim for denial of equal protection.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted.

An appropriate Order follows.

### ORDER

AND NOW, this 18th day of March, 2004, upon consideration of Defendants' Motion to Dismiss, (Doc. No. 13), and all papers filed in support thereof or opposition thereto, it is hereby ORDERED that Defendants' Motion is GRANTED.

IT IS SO ORDERED.

BY THE COURT:

R. Barclay Surrick, Judge