# EXHIBIT E

LEXSEE 2005 U.S. LEXIS 2204

**REGINALD A. WILKINSON, DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, ET AL., PETITIONERS v. WILLIAM DWIGHT DOTSON ET AL.**

No. 03-287

SUPREME COURT OF THE UNITED STATES

2005 U.S. LEXIS 2204

December 6, 2004, Argued
March 7, 2005, Decided

**NOTICE:** [*1]

The LEXIS pagination of this document is subject to change pending release of the final published version.

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT. *Dotson v. Wilkinson, 329 F.3d 463, 2003 U.S. App. LEXIS 9555 (6th Cir.) (6th Cir. Ohio, 2003)*

**DISPOSITION:** Affirmed and remanded.

**LexisNexis(R) Headnotes**

**SYLLABUS:** Respondents Dotson and Johnson are Ohio state prisoners. After parole officials determined that Dotson was not eligible for parole and that Johnson was not suitable for parole, they brought separate actions for declaratory and injunctive relief under *42 U.S.C. § 1983*, claiming that Ohio's parole procedures violate the Federal Constitution. In each case, the Federal District Court concluded that a *§ 1983* action does not lie and that the prisoner would have to seek relief through a habeas corpus suit. The Sixth Circuit ultimately consolidated the cases and reversed, finding that the actions could proceed [*2] under *§ 1983*.

*Held:* State prisoners may bring a *§ 1983* action for declaratory and injunctive relief challenging the constitutionality of state parole procedures; they need not seek relief exclusively under the federal habeas corpus statutes. Pp. 3-10.

(a) Ohio argues unsuccessfully that respondents' claims may only be brought in federal habeas (or similar state) proceedings because a state prisoner cannot use a *§ 1983* action to challenge "the fact or duration of his confinement," *e.g., Preiser v. Rodriguez, 411 U.S. 475, 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827*, and respondents' lawsuits, in effect, collaterally attack their confinements' duration. That argument jumps from a true premise (that in all likelihood the prisoners hope their suits will help bring about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief). This Court's case law makes clear that the connection between the constitutionality of the prisoners' parole proceedings and release from confinement is too tenuous here to achieve Ohio's legal door-closing objective. From *Preiser* to *Edwards v. Balisok, 520 U.S. 641, 137 L. Ed. 2d 906, 117 S. Ct. 1584*, this Court has developed an exception from [*3] *§ 1983*'s otherwise broad scope for actions that lie "within the core of habeas corpus," *Preiser, supra, at 487, 36 L. Ed. 2d 439, 93 S. Ct. 1827*, i.e., where a state prisoner requests present or future release. *Section 1983* remains available for procedural challenges where success *would not necessarily* spell immediate or speedier release for the prisoner, *e.g., Wolff v. McDonnell, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963*, but the prisoner cannot use *§ 1983* to obtain relief where success *would necessarily* demonstrate the invalidity of confinement or its duration, *e.g., Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364*. Here, respondents' claims are cognizable under *§ 1983*, i.e., they do not fall within the implicit habeas exception. They seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson)

and parole suitability (Johnson). See *Wolff, supra, at 554-555, 41 L. Ed. 2d 935, 94 S. Ct. 2963*. Neither prisoner seeks an injunction ordering his immediate or speedier release into the community. See, *e.g., Preiser, supra, at 500, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. And as in *Wolff*, a favorable judgment will not "necessarily imply the invalidity of [their] convictions or sentences. [*4] " *Heck, supra, at 487, 129 L. Ed. 2d 383, 114 S. Ct. 2364*. Success for Dotson does not mean immediate release or a shorter stay in prison; it means at most new eligibility review, which may speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which parole authorities may, in their discretion, decline to shorten his prison term. Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus." *Preiser, supra, at 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. Finally, the prisoners' claims for *future* relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core. See *Balisok, supra, at 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584*. Pp. 3-8.

(b) Ohio's additional arguments -- (1) that respondents' *§ 1983* actions cannot lie because a favorable judgment would "necessarily imply the invalidity of [their] sentences," *Heck, supra, at 487, 129 L. Ed. 2d 383, 114 S. Ct. 2364* (emphasis added), which sentences include particular state parole procedures; and (2) that a decision for them would violate principles of federal/state comity by opening the door to federal [*5] court without prior exhaustion of state-court remedies -- are not persuasive. Pp. 8-10.

*329 F.3d 463*, affirmed and remanded.

**JUDGES:** BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, SCALIA, SOUTER, THOMAS, and GINSBURG, JJ., joined. SCALIA, J., filed a concurring opinion, in which THOMAS, J., joined. KENNEDY, J., filed a dissenting opinion.

**OPINIONBY:** BREYER

**OPINION:**

JUSTICE BREYER delivered the opinion of the Court.

Two state prisoners brought an action under *42 U.S.C. § 1983* claiming that Ohio's state parole procedures violate the Federal Constitution. The prisoners seek declaratory and injunctive relief. The question before us is whether they may bring such an action under Rev. Stat. § 1979, *42 U.S.C. § 1983*, the Civil Rights Act of 1871, or whether they must instead seek relief exclusively under the federal habeas corpus statutes. We conclude that these actions may be brought under *§ 1983*.

I

The two respondents, William Dotson and Rogerico Johnson, are currently serving lengthy terms in Ohio prisons. Dotson began to serve a life sentence in 1981. The parole board rejected his [*6] first parole request in 1995; and a parole officer, after reviewing Dotson's records in the year 2000, determined that he should not receive further consideration for parole for at least five more years. In reaching this conclusion about Dotson's parole eligibility, the officer used parole guidelines first adopted in 1998, after Dotson began to serve his term. Dotson claims that the retroactive application of these new, harsher guidelines to his preguidelines case violates the Constitution's *Ex Post Facto* and *Due Process* Clauses. He seeks a federal-court declaration to that effect as well as a permanent injunction ordering prison officials to grant him an "immediate parole hearing in accordance with the statutory laws and administrative rules in place when [he] committed his crimes." App. 20 (Dotson Complaint, Prospective Declaratory and Injunctive Relief, P 3).

Johnson began to serve a 10- to 30-year prison term in 1992. The parole board considered and rejected his first parole request in 1999, finding him unsuitable for release. In making this determination, the board applied the new 1998 guidelines. Johnson too claims that the application of these new, harsher guidelines [*7] to his preguidelines case violated the *Constitution's Ex Post Facto Clause*. He also alleges that the parole board's proceedings (by having too few members present and by denying him an adequate opportunity to speak) violated the Constitution's *Due Process Clause*. Johnson's complaint seeks a new parole hearing conducted under constitutionally proper procedures and an injunction ordering the State to comply with constitutional due process and *ex post facto* requirements in the future.

Both prisoners brought *§ 1983* actions in federal court. In each case, the Federal District Court concluded that a *§ 1983* action does not lie and that the prisoner would have to seek relief through a habeas corpus suit. *Dotson v. Wilkinson*, No. 3:00 CV 7303 (ND Ohio, Aug. 7, 2000); *Johnson v. Ghee*, No. 4:00 CV 1075 (ND Ohio, July 16, 2000). Each prisoner appealed. The Court of Appeals for the Sixth Circuit ultimately consolidated the two appeals and heard both cases en banc. The court found that the actions could proceed under *§ 1983*, and it reversed the lower courts. *329 F.3d 463, 472 (2003)*. Ohio parole officials then petitioned for certiorari, and we granted review. [*8]

## II

This Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez, 411 U.S. 475, 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973)*; see also *Wolff v. McDonnell, 418 U.S. 539, 554, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974)*; *Heck v. Humphrey, 512 U.S. 477, 481, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)*; *Edwards v. Balisok, 520 U.S. 641, 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584 (1997)*. He must seek federal habeas corpus relief (or appropriate state relief) instead.

Ohio points out that the inmates in these cases attack their parole-eligibility proceedings (Dotson) and parole-suitability proceedings (Johnson) only because they believe that victory on their claims will lead to speedier release from prison. Consequently, Ohio argues, the prisoners' lawsuits, in effect, collaterally attack the *duration* of their confinement; hence, such a claim may only be brought through a habeas corpus action, not through § 1983.

The problem with Ohio's argument lies in its jump from a true premise (that in all likelihood the prisoners hope these actions will help bring about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief). A [*9] consideration of this Court's case law makes clear that the connection between the constitutionality of the prisoners' parole proceedings and release from confinement is too tenuous here to achieve Ohio's legal door-closing objective.

The Court initially addressed the relationship between § 1983 and the federal habeas statutes in *Preiser v. Rodriguez, supra*. In that case, state prisoners brought civil rights actions attacking the constitutionality of prison disciplinary proceedings that had led to the deprivation of their good-time credits. *Id., at 476, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. The Court conceded that the language of § 1983 literally covers their claims. See § 1983 (authorizing claims alleging the deprivation of constitutional rights against every "person" acting "under color of" state law). But, the Court noted, the language of the federal habeas statutes applies as well. See *28 U.S.C. § 2254(a)* (permitting claims by a person being held "in custody in violation of the Constitution"). Moreover, the Court observed, the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally "has been accepted [*10] as the specific instrument to obtain release from [unlawful] confinement." *Preiser, 411 U.S., at 486, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. Finally, habeas corpus actions require a petitioner fully to exhaust state remedies, which § 1983 does not. *Id., at 490-491, 36 L. Ed. 2d 439, 93 S. Ct. 1827*; see also *Patsy v. Board of Regents of Fla., 457 U.S. 496, 507, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982)*.

These considerations of linguistic specificity, history, and comity led the Court to find an implicit exception from § 1983's otherwise broad scope for actions that lie "within the core of habeas corpus." *Preiser, 411 U.S., at 487, 36 L. Ed. 2d 439, 93 S. Ct. 1827*.

Defining the scope of that exception, the Court concluded that a § 1983 action will not lie when a state prisoner challenges "the fact or duration of his confinement," *id., at 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827*, and seeks either "immediate release from prison," or the "shortening" of his term of confinement, *id., at 482, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks "the very duration of . . . physical confinement," *id., at 487-488, 36 L. Ed. 2d 439, 93 S. Ct. 1827*, and thus lies at "the core of habeas corpus," [*11] *id., at 487, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. Therefore, the Court held, the *Preiser* prisoners could not pursue their claims under § 1983.

In *Wolff v. McDonnell, supra*, the Court elaborated the contours of this habeas corpus "core." As in *Preiser*, state prisoners brought a § 1983 action challenging prison officials' revocation of good-time credits by means of constitutionally deficient disciplinary proceedings. *418 U.S., at 553, 41 L. Ed. 2d 935, 94 S. Ct. 2963*. The Court held that the prisoners could not use § 1983 to obtain restoration of the credits because *Preiser* had held that "an injunction restoring good time improperly taken is foreclosed." *418 U.S., at 555, 41 L. Ed. 2d 935, 94 S. Ct. 2963*. But the inmates *could* use § 1983 to obtain a declaration ("as a predicate to" their requested damages award) that the disciplinary procedures were invalid. *Ibid*. They could also seek "by way of ancillary relief[,] an otherwise proper injunction enjoining the *prospective* enforcement of invalid prison regulations." *Ibid*. (emphasis added). In neither case would victory for the prisoners necessarily have meant immediate release or a shorter period of incarceration; the prisoners attacked [*12] only the "wrong procedures, not . . . the wrong result (*i.e.*, [the denial of] good-time credits)." *Heck, supra, at 483, 129 L. Ed. 2d 383, 114 S. Ct. 2364* (discussing *Wolff*).

In *Heck*, the Court considered a different, but related, circumstance. A state prisoner brought a § 1983 action for damages, challenging the conduct of state officials who, the prisoner claimed, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence. *512 U.S., at 479, 129 L. Ed. 2d 383, 114 S. Ct. 2364*. The Court pointed to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id., at 486, 129 L. Ed. 2d 383, 114 S. Ct. 2364*. And it held that

where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *id.*, *at 481-482, 129 L. Ed. 2d 383, 114 S. Ct. 2364*, a § 1983 action will not lie "unless . . . the conviction or sentence has already been invalidated," *id., at 487, 129 L. Ed. 2d 383, 114 S. Ct. 2364*. The Court then added that, where the § 1983 action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment . . ., the action should be allowed to proceed." *Ibid.* [*13]

Finally, in *Edwards v. Balisok, supra,* the Court returned to the prison disciplinary procedure context of the kind it had addressed previously in *Preiser* and *Wolff.* Balisok sought "a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations." *520 U.S., at 643, 137 L. Ed. 2d 906, 117 S. Ct. 1584.* Applying *Heck,* the Court found that habeas was the sole vehicle for the inmate's constitutional challenge insofar as the prisoner sought declaratory relief and money damages, because the "principal procedural defect complained of," namely deceit and bias on the part of the decisionmaker, "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits." *520 U.S., at 646, 137 L. Ed. 2d 906, 117 S. Ct. 1584.* Hence, success on the prisoner's claim for money damages (and the accompanying claim for declaratory relief) would "necessarily imply the invalidity of the punishment imposed." *Id., at 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584.* Nonetheless, the prisoner's claim for an injunction barring *future* [*14] unconstitutional procedures did *not* fall within habeas' exclusive domain. That is because "ordinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits." *Ibid.*

Throughout the legal journey from *Preiser* to *Balisok,* the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement -- either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks -- not where it simply "relates to" -- "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at 5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate . . . to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier [*15] release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok,* like *Wolff,* demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) -- no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Applying these principles to the present case, we conclude that respondents' claims are cognizable under § 1983, *i.e.,* they do not fall within the implicit habeas exception. Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson). See *Wolff, supra, at 554-555, 41 L. Ed. 2d 935, 94 S. Ct. 2963.* [*16] Neither respondent seeks an injunction ordering his immediate or speedier release into the community. See *Preiser, 411 U.S., at 500, 36 L. Ed. 2d 439, 93 S. Ct. 1827; Wolff, supra, at 554, 41 L. Ed. 2d 935, 94 S. Ct. 2963.* And as in *Wolff,* a favorable judgment will not "necessarily imply the invalidity of [their] convictions or sentences." *Heck, supra, at 487, 129 L. Ed. 2d 383, 114 S. Ct. 2364.* Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term. See *Ohio Rev. Code Ann. § 2967.03* (Lexis 2003) (describing the parole authority's broad discretionary powers); *Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Auth. 929 F.2d 233, 236 (CA6 1991)* (same); see also Tr. of Oral Arg. 18 (petitioners' counsel conceding that success on respondents' claims would not inevitably lead to release). Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core [*17] of habeas corpus." *Preiser, 411 U.S., at 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827.* Finally, the prisoners' claims for *future* relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core. See *Balisok, supra, at 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584.*

The dissent disagrees with our legal analysis and advocates use of a different legal standard in critical part because, in its view, (1) a habeas challenge to a sentence

(a "core" challenge) does not necessarily produce the prisoner's "release" (so our standard "must be . . . wrong"), see *post*, at 1-2, 4; and (2) *Heck*'s standard is irrelevant because *Heck* concerned only damages, see *post*, at 4. As to the first, we believe that a case challenging a sentence seeks a prisoner's "release" in the only pertinent sense: It seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement; the fact that the State may seek a *new* judgment (through a new trial or a new sentencing proceeding) is beside the point. As to the second, *Balisok* applied *Heck*'s standard and addressed a claim seeking not only damages, but also a separate declaration [*18] that the State's procedures were unlawful. See *520 U.S., at 643, 647-648, 137 L. Ed. 2d 906, 117 S. Ct. 1584*.

### III

Ohio makes two additional arguments. First, Ohio points to language in *Heck* indicating that a prisoner's § 1983 damages action cannot lie where a favorable judgment would "necessarily imply the invalidity of his conviction *or sentence*." *512 U.S., at 487, 129 L. Ed. 2d 383, 114 S. Ct. 2364* (emphasis added). Ohio then argues that its parole proceedings are part of the prisoners'"sentences" -- indeed, an aspect of the "sentences" that the § 1983 claims, if successful, will invalidate.

We do not find this argument persuasive. In context, *Heck* uses the word "sentence" to refer not to prison procedures, but to substantive determinations as to the length of confinement. See *Muhammad v. Close, 540 U.S. 749, 751, n. 1, 158 L. Ed. 2d 32, 124 S. Ct. 1303 (2004) (per curiam)* ("The incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction"). *Heck* uses the word "sentence" interchangeably with such other terms as "continuing confinement" and "imprisonment." *512 U.S., at 483, 486, 129 L. Ed. 2d 383, 114 S. Ct. 2364*; see also *Balisok, supra, at 645, 648, 137 L. Ed. 2d 906, 117 S. Ct. 1584* (referring to the [*19] invalidity of "the judgment" or "punishment imposed"). So understood, *Heck* is consistent with other cases permitting prisoners to bring § 1983 challenges to prison administrative decisions. See, *e.g., Wolff, 418 U.S., at 554-555, 41 L. Ed. 2d 935, 94 S. Ct. 2963; Muhammad, 540 U.S., at 754, 158 L. Ed. 2d 32, 124 S. Ct. 1303*; see also *ibid.*, (rejecting "the mistaken view . . . that *Heck* applies categorically to all suits challenging prison disciplinary proceedings"). Indeed, this Court has repeatedly permitted prisoners to bring § 1983 actions challenging the conditions of their confinement -- conditions that, were Ohio right, might be considered part of the "sentence." See, *e.g., Cooper v. Pate, 378 U.S. 546, 12 L. Ed. 2d 1030, 84 S. Ct. 1733 (1964) (per curiam); Wilwording v. Swenson, 404 U.S. 249, 251, 30 L. Ed. 2d 418, 92 S. Ct. 407 (1971) (per curiam)*. And this interpretation of *Heck* is consistent with *Balisok*, where the Court held the prisoner's suit *Heck*-barred not because it sought nullification of the disciplinary procedures but rather because nullification of the disciplinary procedures would lead necessarily to restoration of good-time credits and hence the shortening of the prisoner's sentence. *520 U.S., at 646, 137 L. Ed. 2d 906, 117 S. Ct. 1584.* [*20]

Second, Ohio says that a decision in favor of respondents would break faith with principles of federal/state comity by opening the door to federal court without prior exhaustion of state-court remedies. Our earlier cases, however, have already placed the States' important comity considerations in the balance, weighed them against the competing need to vindicate federal rights without exhaustion, and concluded that prisoners may bring their claims without fully exhausting state-court remedies so long as their suits, if established, would not necessarily invalidate state-imposed confinement. See Part II, *supra*. Thus, we see no reason for moving the line these cases draw -- particularly since Congress has already strengthened the requirement that prisoners exhaust state administrative remedies as a precondition to any § 1983 action. See *42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524, 152 L. Ed. 2d 12, 122 S. Ct. 983 (2002)*.

For these reasons, the Sixth Circuit's judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

**CONCURBY:** SCALIA

**CONCUR:**

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring. [*21]

I join the Court's opinion, which in my view reads *Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)*, and *Edwards v. Balisok, 520 U.S. 641, 137 L. Ed. 2d 906, 117 S. Ct. 1584 (1997)*, correctly. And I am in full agreement with the Court's holding that "because neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of habeas corpus'" and both may be brought under Rev. Stat. § 1979, 42 U.S.C. § 1983. *Ante*, at 8. I write separately to note that a contrary holding would require us to broaden the scope of habeas relief beyond recognition.

*Preiser v. Rodriguez, 411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973)*, and the cases that follow it hold that Congress, in enacting § 1983, preserved the habeas corpus statute as the sole authorization for

challenges to allegedly unlawful confinement. *Id., at 489-490, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. At the time of § *1983*'s adoption, the federal habeas statute mirrored the common-law writ of habeas corpus, in that it authorized a single form of relief: the prisoner's immediate release from custody. See Act of Feb. 5, 1867, § 1, 14 Stat. 386. Congress shortly thereafter amended the statute, authorizing federal habeas [*22] courts to "dispose of the party as law and justice require," Rev. Stat. § 761. The statute reads virtually the same today, *28 U.S.C. § 2243* ("dispose of the matter as law and justice require"). We have interpreted this broader remedial language to permit relief short of release. For example, when a habeas petitioner challenges only one of several consecutive sentences, the court may invalidate the challenged sentence even though the prisoner remains in custody to serve the others. See *Peyton v. Rowe, 391 U.S. 54, 67, 20 L. Ed. 2d 426, 88 S. Ct. 1549 (1968); Walker v. Wainwright, 390 U.S. 335, 336-337, 19 L. Ed. 2d 1215, 88 S. Ct. 962 (1968) (per curiam)*. Thus, in *Preiser* we held the prisoners' § *1983* action barred because the relief it sought -- restoration of good-time credits, which would shorten the prisoners' incarceration and hasten the date on which they would be transferred to supervised release -- was available in habeas. See *411 U.S., at 487-488, 36 L. Ed. 2d 439, 93 S. Ct. 1827*.

It is one thing to say that permissible habeas relief, as our cases interpret the statute, includes ordering a "quantum change in the level of custody," *Graham v. Broglin, 922 F.2d 379, 381 (CA7 1991)* [*23] (Posner, J.), such as release from incarceration to parole. It is quite another to say that the habeas statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody. That is what is sought here: the mandating of a new parole hearing that may or may not result in release, prescription of the composition of the hearing panel, and specification of the procedures to be followed. A holding that this sort of judicial immersion in the administration of discretionary parole lies at the "core of habeas" would utterly sever the writ from its common-law roots. Cf. *Bell v. Wolfish, 441 U.S. 520, 526, n. 6, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)* (treating as open the question whether prison-conditions claims are cognizable in habeas). The dissent suggests that because a habeas court may issue a conditional writ ordering a prisoner released unless the State conducts a new *sentencing* proceeding, the court may also issue a conditional writ ordering release absent a new *parole* proceeding. See *post*, at 2-3, 4 (opinion of KENNEDY, J.). But the prisoner who shows that his sentencing was unconstitutional [*24] is actually entitled to release, because the judgment pursuant to which he is confined has been invalidated; the conditional writ serves only to "delay the release . . . in order to provide the State an opportunity to correct the constitutional violation." *Hilton v. Braunskill, 481 U.S. 770, 775, 95 L. Ed. 2d 724, 107 S. Ct. 2113 (1987)*; see *In re Bonner, 151 U.S. 242, 259, 262, 38 L. Ed. 149, 14 S. Ct. 323 (1894)* (conditional writ for proper resentencing). By contrast, the validly sentenced prisoner who shows only that the State made a procedural error in denying discretionary parole has *not* established a right to release, and so cannot obtain habeas relief -- conditional or otherwise. Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release. Conditional writs are not an all-purpose weapon with which federal habeas courts can extort from the respondent custodian forms of relief short of release, whether a new parole hearing or a new mattress in the applicant's cell.

Petitioners counter that we need not be concerned about this expansion of habeas relief because prisoners will naturally prefer [*25] § *1983* to habeas corpus, in light of the burdensome prerequisites attached to habeas relief by *28 U.S.C. § 2254*. But those prerequisites, such as exhaustion of state remedies, reliance on "clearly established Federal law," and deference to previous findings of fact, apply only to "a person in custody pursuant to the judgment of a State court," § § *2254(b)(1), (d)(1), (e)(1)*. By contrast, § *2243*'s delineation of the scope of permissible relief applies to *all* federal habeas proceedings, whether the petitioner is in federal or state custody, see § *2241(c)*. Thus, while § *2254* may shield petitioners and their fellow state wardens from the impact of the broadened writ they urge us to create, not every warden responding to a habeas petition can claim the same protection. And federal prisoners, whose custodians are not acting under color of state law and hence cannot be sued under § *1983*, have greater incentives to shoehorn their claims into habeas.

Finally, I note that the Court's opinion focuses correctly on whether the claims respondents pleaded were claims that may be pursued in habeas -- not on whether respondents can be successful in obtaining habeas [*26] relief on those claims. See, *e.g., ante*, at 6. Thus, for example, a prisoner who wishes to challenge the length of his confinement, but who cannot obtain federal habeas relief because of the statute of limitations or the restrictions on successive petitions, § § *2244(a), (b), (d)*, cannot use the unavailability of federal habeas relief in his individual case as grounds for proceeding under § *1983*. Cf. *Preiser, supra*, at 489-490, 36 L. Ed. 2d 439, 93 S. Ct. 1827 ("It would wholly frustrate explicit congressional intent to hold that [state prisoners] could evade [the exhaustion] requirement by the simple expedient of putting a different label on their pleadings").

With these observations, I join the Court's opinion.

**DISSENTBY:** KENNEDY

**DISSENT:**

JUSTICE KENNEDY, dissenting.

In this case, the Court insists that an attack on parole proceedings brought under Rev. Stat. § 1979, *42 U.S.C. § 1983*, may not be dismissed on the grounds that habeas corpus is the exclusive remedy for such claims. The primary reason offered for the Court's holding is that an order entitling a prisoner to a new parole proceeding might not result in his early release. That reason, however, applies with equal [*27] logic and force to a sentencing proceeding. And since it is elementary that habeas is the appropriate remedy for challenging a sentence, something must be quite wrong with the Court's own first premise.

Everyone knows that when a prisoner succeeds in a habeas action and obtains a new sentencing hearing, the sentence may or may not be reduced. The sentence can end up being just the same, or perhaps longer. The prisoner's early release is by no means assured simply because the first sentence was found unlawful. Yet no one would say that an attack on judicial sentencing proceedings following conviction may be raised through an action under *§ 1983*. The inconsistency in the Court's treatment of sentencing proceedings and parole proceedings is thus difficult to justify. It is, furthermore, in tension with our precedents. For these reasons, I write this respectful dissent.

Challenges to parole proceedings are cognizable in habeas. Here respondents challenge parole determinations that not only deny release (or eligibility for consideration for release) but also guarantee continued confinement until the next scheduled parole proceeding. See ante, at 1-2 (majority opinion). If a parole [*28] determination is made in a proceeding flawed by errors of constitutional dimensions, as these respondents now allege, their continued confinement may well be the result of constitutional violation. Respondents thus raise a cognizable habeas claim of being "in custody in violation of the Constitution." *28 U.S.C. § 2241(c)(3)*; see also 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 9.1, pp. 431-437, and n. 33 (4th ed. 2001) (noting that "the range of claims cognizable in federal habeas corpus" includes challenges to "the duration of sentence (including on the basis of parole, good time, and other prison- or administratively, as opposed to court-administered rules)" and citing numerous cases to that effect). In recognition of this elementary principle, this Court and the courts of appeals have adjudicated the merits of many parole challenges in federal habeas corpus proceedings. See, *e.g., California Dep't of Corrections v. Morales, 514 U.S. 499, 131 L. Ed. 2d 588, 115 S. Ct. 1597 (1995); Mickens-Thomas v. Vaughn, 321 F.3d 374 (CA3 2003); Nulph v. Faatz, 27 F.3d 451 (CA9 1994) (per curiam); Fender v. Thompson, 883 F.2d 303 (CA4 1989)*. [*29]

My concerns with the Court's holding are increased, not diminished, by the fact that the Court does not seem to deny that respondents' claims indeed could be cognizable in habeas corpus proceedings. JUSTICE SCALIA's concurring opinion suggests otherwise, because respondents seek a form of relief (new parole hearings) unavailable in habeas. *Ante*, at 2. But the common practice of granting a conditional writ -- ordering that a State release the prisoner or else correct the constitutional error through a new hearing -- already allows a habeas court to compel the type of relief JUSTICE SCALIA supposes to be unavailable. See *Hilton v. Braunskill, 481 U.S. 770, 775, 95 L. Ed. 2d 724, 107 S. Ct. 2113 (1987)* ("Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief").

Because habeas is available for parole challenges like respondents', *Preiser v. Rodriguez, 411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973)*, thus requires a holding that it also provides the exclusive vehicle for them. In *Preiser*, the Court held that challenges to "the very fact or duration of [a prisoner's] confinement," as [*30] opposed to "the conditions of . . . prison life," must be brought in habeas, not under *42 U.S.C. § 1983*. *411 U.S., at 499-500, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. The language of *§ 1983*, to be sure, is capacious enough to include a challenge to the fact or duration of confinement; *Preiser*, nonetheless, established that because habeas is the most specific applicable remedy it should be the exclusive means for raising the challenge. *Id., at 489, 36 L. Ed. 2d 439, 93 S. Ct. 1827*. Respondents' challenges to adverse parole system determinations relate not at all to conditions of confinement but rather to the fact and duration of confinement. See *Butterfield v. Bail, 120 F.3d 1023, 1024 (CA9 1997)* ("[A] challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement"). Straightforward application of *Preiser* and the cases after it would yield the conclusion that these claims must be brought in habeas.

The majority's contrary holding, permitting parole determination challenges to go forward under *§ 1983*, is not based on any argument that these claims should be characterized [*31] as challenges to conditions of confinement rather than to its fact or duration. That

argument is unavailable to the Court. The majority must say instead that respondents' claims do not fall into the "'core of habeas.'" *Ante*, at 8. For this, it gives two reasons.

The first is that success on the claims will not necessarily entitle respondents to immediate release. *Ante*, at 7. This, as noted at the very outset, proves far too much. If the Court's line of reasoning is sound, it would remove from the "core of habeas" any challenge to an unconstitutional sentencing procedure.

The second reason, that success on the claims does not necessarily imply the invalidity of respondents' convictions or sentences, *ante*, at 7-8, is both misplaced and irrelevant. It is misplaced, because it takes out of context the test employed in *Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)*, and in *Edwards v. Balisok, 520 U.S. 641, 137 L. Ed. 2d 906, 117 S. Ct. 1584 (1997)*. In both those cases there was a temptation to seek only relief unavailable in habeas, such as damages (and declaratory relief serving as a predicate to damages), and thus to do an end run around *Preiser*. *Heck, supra, at 481, 129 L. Ed. 2d 383, 114 S. Ct. 2364*; [*32] *Balisok, supra, at 643-644, 137 L. Ed. 2d 906, 117 S. Ct. 1584*; see also *Muhammad v. Close, 540 U.S. 749, 158 L. Ed. 2d 32, 124 S. Ct. 1303 (2004) (per curiam)* (recognizing that damages are unavailable in habeas). Today's case does not present that problem. The fact that respondents' claims do not impugn the validity of their convictions or sentences is also irrelevant. True, respondents' contentions have nothing to do with their original state-court convictions or sentencing determinations. Stating this fact, however, gets the Court no closer to resolving whether parole determinations themselves are subject to direct challenge only in habeas. That is why we have held that administrative decisions denying good-time credits are subject to attack only in habeas. *Preiser, supra, at 477, 500, 36 L. Ed. 2d 439, 93 S. Ct. 1827*; *Balisok, supra, at 643-644, 137 L. Ed. 2d 906, 117 S. Ct. 1584*.

The Court makes it a point to cite a sentence fragment from *Close*, observing that "'the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction,'" *ante*, at 9 (quoting *540 U.S., at 751, n. 1, 158 L. Ed. 2d 32, 124 S. Ct. 1303*). That statement, however, is inapplicable even on its own terms, because it addresses the [*33] *Heck* problem, not this one. Furthermore, even apart from *Heck*'s inapplicability to this case, the full sentence from which the majority takes the quotation makes clear that the Court in *Close* was contrasting confinement *per se* with "special disciplinary confinement for infraction of prison rules," *540 U.S., at 751, n. 1, 158 L. Ed. 2d 32, 124 S. Ct. 1303*. That simply is not at issue here. In sum, neither of the majority's stated principles can justify its deviation from the holding *Preiser* demands.

Today's ruling blurs the *Preiser* formulation. It is apparent that respondents' challenges relate not at all to conditions of confinement but solely to its duration. Notwithstanding *Preiser*'s direction that challenges to the fact or duration of confinement should be restricted to habeas, the Court's decision will allow numerous § 1983 challenges to state parole system determinations that do relate solely to the duration of the prisoners' confinement.

It is unsurprising, then, that 18 States have filed an *amicus* brief joining with Ohio in urging the opposite result, see Brief for Alabama et al. as *Amici Curiae*. Today's decision allows state prisoners raising parole challenges [*34] to circumvent the state courts. Compare *28 U.S.C. § 2254(b)(1)(A)* (providing that a person in custody pursuant to a state-court judgment must in general exhaust all "remedies available in the courts of the State" before seeking federal habeas relief) with *42 U.S.C. § 1997e(a)* (requiring only that a prisoner exhaust administrative remedies before bringing a § 1983 action to challenge "prison conditions"). Parole systems no doubt have variations from State to State. It is within the special province and expertise of the state courts to address challenges to their own state parole determinations in the first instance, particularly because many challenges raise state procedural questions. Today the Court, over the objection of many States, deprives the federal courts of the invaluable assistance and frontline expertise found in the state courts.

For the reasons given above, I would reverse.