# EXHIBIT 2

LEXSEE 1993 US DIST LEXIS 3580

SCOTT HOMEL, CHARLES SCHAFFER, SCOTT TOBIAS, and JEFF PRESSMAN Plaintiffs, v. THE SUN INSURANCE OFFICE, LTD., Defendant.

CIVIL ACTION No. 92-0442

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1993 U.S. Dist. LEXIS 3580*

**February 27, 1993, Decided**
**March 1, 1993, Filed**

**LexisNexis(R) Headnotes**

**COUNSEL:** For SCOTT HOMEL, PLAINTIFF: NORMAN R. SEGAL, MANCHEL, LUNDY & LESSIN, 42 SOUTH 15TH STREET, 8TH FL., ROBINSON BLDG., PHILA, PA 19102, USA. MARVIN I. LESSIN, MANCHEL, LUNDY & LESSIN, 42 S. 15TH STREET, 8TH FL., PHILA, PA 19102, USA. For CHARLES SCHAFFER, JR., PLAINTIFF: NORMAN R. SEGAL, MANCHEL, LUNDY & LESSIN, 42 SOUTH 15TH STREET, 8TH FL., ROBINSON BLDG., PHILA, PA 19102, USA. MARVIN I. LESSIN, MANCHEL, LUNDY & LESSIN, 42 S. 15TH STREET, 8TH FL., PHILA, PA 19102, USA. JEROME GAMBURG, 1760 MARKET STREET, SUITE 1100, PHILADELPHIA, PA 19103, USA. For SCOTT TOBIAS, PLAINTIFF: NORMAN R. SEGAL, MANCHEL, LUNDY & LESSIN, 42 SOUTH 15TH STREET, 8TH FL., ROBINSON BLDG., PHILA, PA 19102, USA. MICHAEL O. PANSINI, PANDINI & LESSIN, 1528 WALNUT STREET, STE. 1401, PHILA, PA 19102, USA. MARVIN I. LESSIN, MANCHEL, LUNDY & LESSIN, 42 S. 15TH STREET, 8TH FL., PHILA, PA 19102, USA. For JEFF PRESSMAN, PLAINTIFF: NORMAN R. SEGAL, MANCHEL, LUNDY & LESSIN, 42 SOUTH 15TH STREET, 8TH FL., ROBINSON BLDG., PHILA, PA 19102, USA. MEYER SIMON, GREEN & SIMON, 16 WEST GLENSIDE AVENUE, P.O. BOX 397, GLENSIDE, PA 19038, USA. MARVIN I. LESSIN, MANCHEL, LUNDY & LESSIN, 42 S. 15TH STREET, 8TH FL., PHILA, PA 19102, USA.

For SUN INSURANCE OFFICE, LTD., DEFENDANT: JAMES C. HAGGERTY, SWARTZ, CAMPBELL & DETWEILER, 100 SOUTH BROAD STREET, 1600 LAND TITLE BLDG., PHILADELPHIA, PA 19110, USA.

**JUDGES:** [*1] Gawthrop, III

**OPINIONBY:** BY THE COURT; ROBERT S. GAWTHROP, III

**OPINION:** OPINION AND ORDER

Gawthrop, J.

Plaintiffs seek a declaratory judgment from this court, ruling that defendant is obligated to provide coverage in excess of $1,000,000 to the collective plaintiffs for damages arising out of an April 22, 1989, automobile accident. The court, sitting without a jury, heard testimony and argument. Upon the following reasoning, I shall deny plaintiffs' prayer for relief.

 FINDINGS OF FACT

1. Plaintiffs, Scott Homel and Charles Schaffer, Jr., are citizens of Pennsylvania, and plaintiffs, Jeff Pressman and Scott Tobias, are citizens of New Jersey.

2. Defendant, Sun Insurance Office, Ltd. ("Sun"), is incorporated under the laws of England with its principal place of business in London, England.

3. The insurance policy in question was issued by defendant to Jerome and Judy Neff, and covered their

son Barry Neff. Plaintiffs are third-party beneficiaries of the Neff policy.

4. The present action arises out of an April 22, 1989, motor vehicle accident.

5. On that date, Barry Neff was the operator of a motor vehicle in which the plaintiffs, Scott Homel, Charles Schaffer, Scott Tobias, and [*2] Jeff Pressman were occupants.

6. The motor vehicle operated by Barry Neff was struck by a motor vehicle operated by Donald Marin, an uninsured driver.

7. Plaintiffs in the present action sustained serious injury in the accident.

8. As a result of Donald Marin's lack of insurance, the plaintiffs also made claim upon the defendant for recovery of uninsured motorist benefits.

9. At the time of the accident, the policy of insurance issued by the defendant to Jerome and Judith Neff, provided, inter alia, $ 1,000,000 in automobile liability coverage and $ 1,000,000 in uninsured/underinsured motorists coverage. (Defendant's Exhibit #2).

11. The policy in effect at the time of the accident did not provide for excess uninsured motorist coverage.

12. Defendant, Sun, instituted a declaratory judgment action seeking a declaration that plaintiffs had no further rights under the insurance contract beyond the $ 1,000,000 policy limit.

13. By order dated February 15, 1991, the initial declaratory judgment action was dismissed for lack of subject matter jurisdiction, and sent to arbitration.

14. The parties entered into a settlement agreement whereby defendant tendered $ 1,000,000 [*3] to the plaintiffs in partial satisfaction of all claims.

15. Under the settlement, plaintiffs specifically reserved the right to seek declaratory judgment regarding the existence of uninsured-motorist coverage in excess of the policy limits.

16. In the prior declaratory judgment action, the defendant, inadvertently, attached materials to the complaint which were not, in fact, part of the insurance policy in effect at the time of the accident. (Defendant's Exhibit #1)

17. These materials included: two commission statements, and the entire contract guide.

18. The commission statements were not part of the insurance policy, but, instead, were sent to the broker to explain how to calculate commissions.

19. The commission statements included the term "excess liability."

20. The reference "excess liability" in the commission statements refers only to payments of premiums to the broker on coverage in excess of $ 300,000; it does not refer to excess liability coverage for the insured. The defendant paid the broker a 15% commission on all coverage up to $ 300,000, and a 20% premium on all coverage in excess of $ 300,000. Coverage in excess of $ 300,000 was termed "excess liability" [*4] for purposes of commission calculations by the defendant.

21. The entire contract guide, also inadvertently appended, outlined all policy coverage endorsements that were potentially available to insureds in Pennsylvania; it did not confine itself to only those applicable to the policy issued to the Neffs.

22. The table of contents of the Neffs' insurance policy establishes the coverages available under the policy at the time of the accident. The table of contents does not contain any references to excess liability coverage.

23. The Neffs did not pay premiums for excess liability coverage.

24. Later, on November 2, 1990, Mr. Jerome Neff sought to increase his liability coverage from $ 1,000,000 to $ 2,000,000. He contacted his broker "concerning his $ 1,000,000 liability limit on both his Homeowners and his Automobile policies. He requested a quotation for additional $ 1,000,000 on both the Homeowners and Automobile." (Defendant's Exhibit #5).

25. The request was denied. (Defendants Exhibit #5).

DISCUSSION

Plaintiffs, in this diversity case, seek a declaration that the insurance policy issued to the Neffs provides excess uninsured motorist coverage. The insurance policy [*5] in effect at the time of the accident provided, inter alia, $ 1,000,000 in liability coverage and $ 1,000,000 in uninsured/underinsured motorist coverage, but no excess liability coverage. The plaintiffs' present claim is premised upon documents that defendant, Sun, mistakenly attached to its complaint in the prior declaratory judgment action (Sun Insurance Office, Ltd.

v. Neff, et al., C.A. No. 90-2395). The documents included a broker commission statement and a contract guide which were not part of the policy issued to the Neffs. The defendant also, inadvertently, failed to include relevant portions of the policy which were in effect at the time of the accident. The defense moved to amend its complaint under *Fed.R.Civ.P. Rule 15(a)*, which provides that leave to amend "shall be freely given when justice so requires." The defendant's error was made in good faith, and, over objections, the court permitted it to amend the complaint to include a correct copy of the insurance policy.

Plaintiffs, as third-party beneficiaries of the policy, are not entitled to excess uninsured motorist coverage, for four reasons. First, the Neffs' policy provides a maximum of $ 1,000,000 in liability [*6] coverage. The coverage summary, or declarations page, shows what coverage is provided and in what amounts. The Neffs' coverage summary states the following: "amount of liability coverage: $ 1,000,000." (Defendant's Exhibit #2). Therefore, the claim that the insurance policy provides more than $ 1,000,000 is not borne out by the clear, unambiguous language of the policy, which sets forth the one-million dollar limit. Second, the policy contains no "excess liability" coverage. The policy's table of contents includes only 8 of the 17 possible forms of coverage that could be potentially issued by the defendant. The forms of coverages are listed "B" to "X", "W" being denominated for excess liability coverage. Coverage "W" is not listed in the table of contents, and, coverage "W" is nowhere to be found in the policy. Therefore, coverage "W", i.e. excess liability coverage, is not part of the policy.

Thirdly, even arguendo, that the policy were ambiguous, unclear and does not show the parties' agreement (a legal conclusion I cannot draw), the court may then examine extrinsic evidence to determine the parties' intent. *DiFabio v. Centaur Insurance Co., 366 Pa.Super. 590, 531 A.2d 1141 (1987).* [*7] Here, no extrinsic evidence has been provided that shows the Neffs or the defendant intended for the policy to include excess liability coverage. The Neffs purchased the Sun policy through the Independent Underwriters Agency, Inc. ("IUAI"). IUAI served as the Neffs' broker. A broker's knowledge is imputed to the insured. See *Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co., 641 F. Supp. 297, 309 (E.D. Pa. 1986), aff'd, 833 F.2d 307 (3rd Cir. 1987).* Thus, IUAI's knowledge is imputed to the Neffs. An IUAI spokesperson testified that Sun provided $ 1,000,000 in coverage to the Neffs, and that Sun did not provide any excess coverage. Because a broker's knowledge is imputed to the insured, the Neffs are deemed to have been aware of those facts.

In addition, other extrinsic evidence demonstrates that the parties did not intend for the policy to include excess liability coverage. As detailed by a IUAI memorandum, Jerome Neff sought, unsuccessfully, in November of 1990 to increase the liability limits on the policy from $ 1,000,000 to $ 2,000,000. Sun denied the Neffs' request. (Defendant's Exhibit #5). Had the [*8] Neffs intended that the policy include excess liability coverage, they could have been called so to testify. The Neffs were not called, however, and their absence is unexplained. One infers that the meaning of the memorandum is testimonially irrebuttable: the Neffs realized that this policy was for but a $ 1,000,000.

Fourth, even were I to speculate that the policy as written had included excess liability coverage, plaintiffs would still not be entitled to any benefits under coverage "W". Coverage "W" defines "covered persons" as "you or a family member; any other person or organization with respect to liability because of acts or omissions of you or a family member; or any combination of the above." (Defendant's Exhibit #1). The language would, of course, include the Neffs, a member of the Neff family or a person liable because of the Neffs' actions. It does not include "any person in your covered vehicle," as is true with coverage "P", which pertains to uninsured/underinsured motorists coverage. Under coverage "W", uninsured motorist benefits can be owed only to "a covered person." Here, plaintiffs are not covered persons as defined in coverage "W". Thus, they would not be entitled [*9] to uninsured motorist benefits under the policy as written, even if coverage "W" had been part of the policy.

Finally, plaintiffs, having unsuccessfully objected to defendant's request to amend its complaint to include a correct copy of the insurance policy, nevertheless assert that the doctrines of judicial admission and judicial estoppel require that defendant be bound by its earlier, errant allegation. Judicial admissions are factual assertions in pleadings that bind the party who made them only in the cause of action in which they are filed. See *Glick v. White Motor Company, 458 F.2d 1287 (3rd Cir. 1972).* The proceedings in the prior action did not conclusively establish excess motorist coverage. Here, defendant Sun's procedural solecism in the earlier case does not constitute a judicial admission in this second, separate action, and thus immutably bind defendant to that earlier miscue.

As for plaintiffs' judicial estoppel argument, they assert that that doctrine prevents the defendant from denying that excess coverage is provided by the Neff insurance policy. It is true that the doctrine of judicial estoppel acts as a rule of consistency which prevents [*10] litigants from maintaining inconsistent positions as their interests change. See *Delgrosso v. Spang & Co.,*

*903 F.2d 234 (3rd Cir. 1990)*. It is applied where parties have "knowingly and intentionally" changed their positions for their own benefit. See *Selected Risks Insurance Co. v. Kobelinski, 421 F. Supp. 431, 434 (E.D. Pa. 1976)*. As a general rule, parties are bound by their initial pleadings. The rule is not absolute, however. It applies only to assertions which are admitted, it being the view that to permit a party in its pleadings to get away with being a prevaricating chameleon would visit an injustice on the other party, and make such a mockery of the sanctity of judicial pleadings, rendering meaningless the letter and spirit of Rule 11. Here, the defendant mistakenly attached documents to the complaint in the prior declaratory judgment, upon which the plaintiffs now rely. At no time in the previous or present action has the defendant genuinely maintained the position that excess coverage exists. To apply the doctrine here, would not restore justice, but visit an injustice.

Plaintiffs essentially argue that the defendant [*11] is estopped to deny coverage by reason of the attachments to the complaint in the prior declaratory judgment action. In Pennsylvania, however, plaintiffs may not establish coverage by estoppel. See *Kitchen v. Automobile Insurance Co. of Hartford, 299 Pa.Super. 256, 445 A.2d 552 (1982)*. With respect to the defendant's erroneous appendage to its earlier complaint, I shall not require this case to remain permanently epoxied to a falsehood, so that its result would turn on obvious untruth. That untrue course would truly not serve the cause of justice.

CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this action, under *28 U.S.C. § 1332*, based on diversity of citizenship.

2. Under *Erie Railroad v. Tompkins, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)*, this case is governed by Pennsylvania law.

3. Under Pennsylvania law, when the language of an insurance contract clearly reflects the parties' intent, the court must give effect to that language. *DiFabio v. Centaur Ins. Co., 366 Pa.Super. 590, 531 A.2d 1141 (1987)*.

4. The language [*12] of the insurance policy unambiguously stating that $ 1,000,000 is provided in automobile liability coverage, $ 1,000,000 in uninsured/underinsured motorist coverage, and no excess uninsured motorist coverage, the policy's maximum coverage is $ 1,000,000.00.

5. The doctrine of judicial estoppel does not bar defendant from amending its complaint from the prior action, or from denying that the policy includes excess liability coverage.

An order follows.

DECISION

It is hereby declared and adjudicated that the insurance policy which is the basis of the lawsuit has the maximum automobile liability coverage of $ 1,000,000.00 per accident, and no more. Judgment is entered in favor of defendant, Sun Insurance Office, Ltd.

BY THE COURT:

Robert S. Gawthrop, III J.