# EXHIBIT 4

LEXSEE 1999 U.S. DIST. LEXIS 17380

MALCOLM EARL JACKSON, Plaintiff, vs. DANA CORP., Defendant.

CIVIL ACTION, NO. 98-5431

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1999 U.S. Dist. LEXIS 17380*

November 9, 1999, Decided
November 9, 1999, Filed

**DISPOSITION:** [*1] Defendant Dana Corporation's Motion for Summary Judgment GRANTED and judgment ENTERED in favor of defendant Dana Corporation and against plaintiff Malcolm Earl Jackson. Plaintiff's Request to Amend the Complaint DENIED. Plaintiff's Motion for Judgment on the Pleadings, treated as a Cross-Motion for Summary Judgment DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** MALCOLM EARL JACKSON, PLAINTIFF, Pro se, NEW ALBANY, PA.

For DANA CORP., DEFENDANTS: SCOTT F. COOPER, BLANK ROME COMISKY McCAULEY LLP, PHILDELPHIA, PA USA.

**JUDGES:** JAN E. DUBOIS, J.

**OPINIONBY:** JAN E. DUBOIS

**OPINION:** MEMORANDUM

DuBois, J.

    November 9, 1999

**I. INTRODUCTION**

    Plaintiff, Malcolm Earl Jackson, was an employee of defendant, Dana Corporation ("Dana" or "defendant"), in Pottstown, Pennsylvania, from 1976 to November, 1996. This case arises out of job-related injuries sustained by plaintiff and Dana's employment decisions in response to those injuries.

**II. PROCEDURAL HISTORY**

    Plaintiff filed his pro se Complaint on September 23, 1998. In the Complaint, plaintiff alleges violations of the Age Discrimination in Employment Act, *29 U.S.C.A. §§ 621*-634 (West Supp. 1999) ("ADEA") (Count I); the Americans with [*2] Disabilities Act of 1990, *42 U.S.C.A. § 12101* et seq. (West Supp. 1999) ("ADA") (Count II); the Rehabilitation Act of 1993, *29 U.S.C.A. § 701* et seq. (West Supp. 1999) (Count III); and, the Vietnam Era Veteran's Readjustment Assistance Act of 1974 *38 U.S.C.A. § 4214* (West. Supp. 1999) ("VEVRA") and the Veterans' Rehabilitation Act, *38 U.S.C.A. § 1500* (West Supp. 1999) ("VRA") (Count IV). On November 13, 1998, the Court granted defendant's motion to dismiss plaintiff's VEVRA and VRA claims without prejudice.

    Plaintiff filed motions for judgment on the pleadings on October 21, 1998, October 28, 1998, and February 8, 1999. Those motions were denied. Defendant filed a motion for summary judgment on March 19, 1999. Plaintiff filed an answer to defendant's motion on March 31, 1999, to which the defendant filed a reply on April 19, 1999. On April 27, 1999, plaintiff filed a reply and a cross motion for judgment on the pleadings. On May 13, 1999, defendant responded to plaintiff's cross motion.

    On August 25, 1999, plaintiff sent a letter to the Court, which included a request to amend his Complaint [*3] to include a claim under the Equal Pay Act, *29 U.S.C. §§ 201*-219 (1994) ("EPA") and the Civil Rights Act of 1991, *2 U.S.C.A. § 601* et seq. (West Supp. 1999). The Court will treat this request as a motion to amend the complaint. On September 27, 1999, defendant filed a memorandum in opposition to plaintiff's request.

For the reasons that follow, the Court will grant the defendant's motion for summary judgment as to plaintiff's claims under the ADEA, ADA, Rehabilitation Act, VEVRA, and VRA, and, accordingly, enter judgment in favor of defendant on those counts. The Court will deny plaintiff's request to amend his complaint, and will deny plaintiff's cross-motion for judgment on the pleadings.

### III. BACKGROUND

Dana operates a manufacturing facility in Pottstown, Pennsylvania, manufacturing driveshafts and joints for use in vehicle assembly. Dana hired Jackson as a broach operator in 1976 to work in its Pottstown facility. During his employment at Dana, plaintiff worked primarily as a broach operator. The job involved the drilling of pieces of metal in a broach machine. An operator is required to place the metal pieces in the [*4] machine and to remove them after they are drilled. Such work is covered by a collective bargaining agreement ("CBA") between Dana and the United Auto Workers.

Plaintiff injured his neck while at work on or about March 31, 1993. On April 1, 1993, plaintiff was examined by Dr. Steven Evans, a doctor employed by defendant. At Dr. Evans' recommendation, Dana placed Jackson on restricted (light) duty on April 1, 1993, for a period of six weeks. n1 Subsequently, plaintiff was treated for this injury by Dr. William Shay, his primary care physician.

> n1 All of plaintiff's restricted duty was pursuant to Article 36 of the CBA.

While on light duty, one of plaintiff's responsibilities was "panning," a process which involved sorting various items and parts. While panning on May 6, 1993, plaintiff reported to Dana that he had injured his back. Thereafter, plaintiff continued on restricted duty for an additional six-week period, until mid-June, 1993. In mid-June, 1993, Dana granted plaintiff another six-week period of restricted [*5] duty. At the conclusion of the third six-week period of restricted duty, plaintiff was cleared to work, without restriction, by Dr. Christopher Lynch, a physiatrist. At that time, Dana told plaintiff to report to his regular workplace by August 2, 1993. Plaintiff returned to work as directed, on normal duty, until September 10, 1993.

On September 9, 1993, plaintiff requested a transfer to Department 41, a non-production department at defendant's Pottstown facility, under Article 60 of the Dana-Local 644 Collective Bargaining Agreement ("CBA"). n2 An Article 60 transfer allows mentally or physically handicapped personnel to forego the normal transfer procedure. n3 However, an employee requesting such a transfer can only replace a less senior employee, and only if the requesting employee can perform the duties required of the position. (Defendant's Motion for Summary Judgment, at 7.) On the same day he requested the transfer, plaintiff submitted a "Physical Capacities Evaluation" form completed by Dr. Shay, which reported that due to a cervical strain, plaintiff could not perform any repetitive actions, operate foot controls, or twist his spine. (Defendant's Motion for Summary Judgment, [*6] Exhibit I.)

> n2 Article 60 of the CBA provides, in relevant part:
>
> > "When an employee is physically or mentally handicapped and is unable to continue the operation on which he is employed, such an employee may be placed on any open job which he is capable of performing, notwithstanding the normal bidding or transfer procedure.
> >
> > In the event there is no available opening upon which to place a handicapped employee, he may replace the least senior employee in any department or classification where there is work he can perform, provided he has more plant-wide seniority than such employee. Placements under this paragraph must have the approval of the Bargaining Committee and the Company."
>
> n3 The normal transfer procedure, under Article 17 of the CBA, required that there be an "officially posted" opening in the target department; at all times relevant to Jackson's transfer requests, there were no openings in Department 41. (Defendant's Motion for Summary Judgment, at 8-9.)

On September 13, 1993, defendant [*7] reported to plaintiff that there were no positions in non-production departments which plaintiff could fill because he had insufficient seniority to claim these jobs under Article 60, and his transfer request was denied. At the same time, plaintiff was offered, and he accepted, unpaid sick leave under Article 50 of the CBA. n4 From September

13, 1993 through October 4, 1996, plaintiff remained on Article 50 sick leave. Pursuant to Article 50 of the CBA, defendant was required to grant only one six month sick leave; nonetheless, Dana approved eleven consecutive unpaid sick leaves for plaintiff, ranging in length from one month to six months. Each sick leave request was supported by a report signed by plaintiff's chiropractor, Dr. Virginia Fennelly. Dr. Fennelly's initial diagnosis was cervicobrachical syndrome, cervical myalgia, headache, cervical nerve root compression, lumbar plexus disorder, and radicular neuralgia. That diagnosis remained essentially unchanged during the period of time at issue in this case.

> n4 Article 50 of the CBA provides, in relevant part, "An employee with seniority who is unable to work because of injury or illness shall be granted a sick leave of absence with accumulated seniority for the duration of the disability but not to exceed six months without renewal."

[*8]

From September 10, 1993 to February 2, 1994, plaintiff was paid sickness and accident benefits by John Hancock Mutual Life Insurance Company ("John Hancock"), defendant's insurer. Thereafter, plaintiff sought additional benefits from John Hancock. On January 5, 1996, John Hancock requested that plaintiff be examined by an independent physician, Dr. Lawrence Tomack, in order to determine plaintiff's disability status, but that examination was delayed until June 19, 1996.

Plaintiff also filed a workers' compensation claim against Dana. The first hearing was held on October 27, 1993, and several hearings were held thereafter. In connection with this claim, plaintiff was examined by Dr. Stephen Smith on January 25, 1996. With respect to plaintiff's lower back, Dr. Smith's diagnosis was degenerative disc disease at the L4-5 and L5-S1 levels, with bulging discs and perhaps small herniations at each of these levels. According to Dr. Smith, the diagnosis was not causally related to plaintiff's employment at Dana Corporation, but "encompassed the normal spectrum of degenerative disc disease with gradual disc bulging and protrusion." Examination of plaintiff's neck and upper back revealed [*9] that plaintiff's condition was essentially within normal limits. "Both the MRI scan ..., which failed to reveal any cervical disc pathology of significance, and reports of the cervical plain film x-rays would indicate only mild to moderate degenerative changes consistent with the claimant's age."

Dr. Tomack's examination of June 19, 1996 disclosed no "evidence of a cervical radiculopathy involving both right and left upper extremities. Additionally, there [was] no evidence of a lumbosacral radiculopathy involving the lower extremities, " or of a cervical or lumbosacral strain. It was Dr. Tomack's opinion, based on his examination of plaintiff, that plaintiff had no ongoing disability resulting from neck or back injuries.

Drs. Smith and Tomack cleared plaintiff to return to work as a broach operator without restrictions, submitting diagnoses which were in conflict with those submitted by Dr. Fennelly. After defendant became aware of this conflict, it requested that plaintiff be evaluated by an independent physician to resolve the conflict, pursuant to Article 50 of the CBA n5 . That examination was originally scheduled with Dr. Stephen Valentino for August 27, 1996. However, plaintiff [*10] failed to keep this appointment. The examination was then rescheduled for September 11, 1996 with Dr. Lewis Sharps. Dr. Sharps opined that plaintiff had regained full motion of the cervical spine and had no objective residua of his injury. Dr. Sharps found no evidence to support a diagnosis of a herniated cervical disc syndrome, and no objective abnormalities with respect to plaintiff's shoulder or lumbar spine. Accordingly, on September 11, 1996, Dr. Sharps submitted a report which cleared plaintiff to work without restriction.

> n5 Article 50 of the CBA provides, in relevant part, "The Company may, at its discretion, require that a Company doctor examination and a statement of findings support a sick leave or renewal of a sick leave. Should a determination by a Company doctor that the employee is able or unable to return to work be in contradiction to a determination by the employee's doctor that he is able or unable to return to work due to sickness, the dispute shall be referred to an impartial third doctor or clinic, whose determination shall be final and binding."

[*11]

Defendant ordered plaintiff to return to work on September 18, 1996. He did not do so, and on September 24, 1996, plaintiff filed an Article 17 transfer request to Department 41. Under Article 17 of the CBA, the normal transfer procedure, applicants for a transfer must express a preference for a specific department. No request is granted if there are no posted openings in the preferenced department, although the company may hold an application indefinitely. A transfer, if approved by the Union and by Dana, is awarded to the most senior employee who has a transfer request pending when a position becomes available. At the time of plaintiff's

request, there were no openings for any position in Department 41. Accordingly, pursuant to Article 17 of the CBA, Dana denied plaintiff's transfer request. However, Dana told plaintiff that it would keep his transfer request in a holding file, and, if a position became available, Dana would reconsider plaintiff's request. Subject to that proviso, plaintiff was directed to return to his position as a broach operator.

Plaintiff returned to work on September 25, 1996 for three days. On September 27, plaintiff requested one week of vacation time. [*12] Defendant gave plaintiff vacation time through October 6, 1996. On October 10, 1996, plaintiff again requested sick leave. The request was supported by an application for sick leave signed by Dr. Fennelly. After meeting with plaintiff on October 14, 1996, defendant rejected plaintiff's request for sick leave, but agreed to have Dr. Evans re-evaluate plaintiff to ensure that his condition had not changed since Dr. Sharps' examination. Defendant also rejected another transfer request made by plaintiff at the October 14, 1996, meeting. On October 15, 1996, Dr. Evans cleared plaintiff to return to work without restriction.

Plaintiff briefly returned to work on October 18, 1996, but on that date, plaintiff decided to accept sick leave until October 31, 1996. Defendant agreed to this sick leave only on condition that plaintiff see a psychologist on or before November 1, 1996. Plaintiff failed to make such an appointment, submit papers for extension of sick leave, or return to work. Defendant terminated plaintiff on November 8, 1996.

On December 31, 1997, Judge Joseph Hakun issued findings of fact and conclusions of law in plaintiff's workers' compensation claim. Judge Hakun found that [*13] plaintiff was "disabled from work for the limited period from September 4, 1993 through July 27, 1994, and that he fully recovered from any and all work related injuries as of July 28, 1994 ...." As a result of this finding, Judge Hakun awarded disability benefits to plaintiff for the period September 4, 1993 through July 27, 1994, less the amount that plaintiff had received in sickness and accident benefits from John Hancock.

### IV. STANDARD OF REVIEW

#### A. Summary Judgment

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law[,]" summary judgment shall be granted. *Fed. R. Civ. P. 56(c)*; see *Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The Supreme Court has explained that Rule 56(c) requires "the threshold inquiry of determining whether there is the need for a trial--whether, in other words there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably [*14] be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 618 (3d Cir. 1987)* (citing Anderson and Celotex Corp.).

In considering a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party. *Adickes v. S.H. Kress and Co., 398 U.S. 144, 159, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)* (quoting *United States v. Diebold, 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962)*). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. Therefore, "if the evidence [offered by [*15] the non-moving party] is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson, 477 U.S. at 249-50* (citations omitted). On the other hand, if reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted. n6

> n6 When considering the sufficiency of a *pro se* plaintiff's pleading, the Court must be mindful that *pro se* plaintiffs are not held to as high a pleading standard as other litigants, and that *pro se* pleadings must be construed liberally. See *Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)*; *Lumumba v. Philadelphia Dept. of Human Services, 1999 U.S. Dist. LEXIS 7904, No. CIV.A. 98-5195, 1999 WL 345501 (E.D. Pa. May 21, 1999)*. With respect to motions for summary judgment, the Court views the facts in the light most favorable to the non-moving party, regardless of representation. Thus, with respect to the motion for summary judgment, a Haines analysis is unnecessary.

[*16]

#### B. Request to Amend the Complaint

A party may amend his pleading once as a matter of course before any responsive pleadings have been filed. See *Fed.R.Civ.P. 15(a)*. If a responsive pleading has been served, a party may amend his pleading only with

leave of the court, and such leave "shall be freely given when justice so requires." Id. Denial of a motion for leave to amend is within the discretion of the district court. See *Averbach v. Rival Mfg. Co., 879 F.2d 1196, 1203 (3d Cir. 1989)*. "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment." Id. (citing *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962))*; see *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997)*.

In the present case, defendants argue that amendment would be futile. "An amendment is futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted. In determining whether the amendment would be futile, the district court applies [*17] the same standard of legal sufficiency as under *Fed.R.Civ.P. 12(b)(6)*." *Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998)*. A motion to dismiss for failure to state a cause of action under rule 12(b)(6) admits the allegations of the complaint, but denies their legal sufficiency. See *Hospital Building Co. v. Trustees of the Rex Hospital, 425 U.S. 738, 740, 48 L. Ed. 2d 338, 96 S. Ct. 1848 (1976)*. The court must accept as true all factual allegations that the plaintiff sets forth in his complaint, as well as all reasonable inferences from those allegations. See *Jordan v. Fox, Rothschild, O'Brien, & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)*. A court should refuse to dismiss a case unless it appears that no relief can be granted under any set of facts that the plaintiff can prove consistently with his pleadings. See id. (citing *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984))*.

### V. ANALYSIS

Plaintiff has asserted claims under the ADEA, the ADA, and the Rehabilitation Act of 1993. n7 "In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same [*18] purpose--to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Newman v. GHS Osteopathic Inc., Parkview Hospital Division, 60 F.3d 153, 157 (3d Cir. 1995)*.

n7 Plaintiff also initially filed a claim under VEVRA and the VRA. However, this Court dismissed such claims without prejudice in an Order dated November 12, 1998. See IV.C., infra.

In *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*, the Supreme Court announced a basic framework for courts to follow in considering summary judgment motions under Title VII of the Civil Rights Act. That framework has been summarized as follows:

> "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, [*19] the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Newman*, 60 F.3d at 156, n. 3 (internal citation omitted); see *Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)*.

Within this burden-shifting framework, a plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could "reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes, 32 F.3d at 764*. If the plaintiff fails to point to such evidence, then summary judgment is appropriate. See id. Although this test was developed under the rubric of Title VII, courts have consistently applied it to other federal employment discrimination statutes, including [*20] the ADEA, see e.g., *Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997)* (en banc), the ADA, see e.g., *Walton v. Mental Health Association of Southeastern Pennsylvania, 168 F.3d 661, 667-68 (3d Cir. 1999)*, and the Rehabilitation Act of 1973, see, e.g., *Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157*. Thus, it is this framework that will apply to each of plaintiff's claims.

Plaintiff does not specify in the Complaint which of the enumerated employment decisions are the basis of his discrimination claims. It appears from the Complaint that plaintiff was denied transfer on September 13, 1993, on or about September 24, 1996, and on October 14, 1996; he was denied an additional six month sick leave on October 14, 1996; and, he was terminated on Nov. 8,

1996. The Court will consider each of these employment decisions in its analysis of the case.

### A. Age Discrimination in Employment Act (ADEA)

Plaintiff alleges discrimination under the ADEA in Count I of his Complaint. In order to establish a prima facie case under the ADEA, plaintiff must show that he (1) belongs to a protected class, i.e., is at least forty [*21] (40) years of age; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) he was ultimately replaced or the position was filled by someone younger. See *Connors v. Chrysler Financial Corp., 160 F.3d 971, 973-74 (3d Cir. 1998)*.

Plaintiff has offered evidence which, if believed, is sufficient to establish a prima facie case under the ADEA with regard to his termination. Plaintiff was forty-six years old at the time of his injuries; was qualified for the position he had occupied for nearly seventeen years; was both denied transfers and ultimately terminated; and was allegedly replaced by younger personnel, including D. Witman, K. Master, and J. Santiago. (P. Cross Motion at 3.)

Although arguing that plaintiff was not terminated, but rather quit voluntarily n8, defendant offers a lengthy, well-documented factual summary of the reasons for the employment decisions against plaintiff. Plaintiff was denied transfer based strictly on procedure. He did not have the seniority to transfer under Article 60 of the CBA, and there were no posted openings allowing for a transfer under Article 17 of the CBA. Plaintiff was denied further sick [*22] leave on October 14, 1996 because Dr. Fennelly's findings were disputed by the medical examinations of Drs. Smith, Tomack, Sharps, and Evans. And, finally, plaintiff was terminated when he failed to comply with the conditions that Dana placed upon his accepting sick leave on October 18, 1996. Plaintiff did not return to work, did not contact Dana, and did not schedule an appointment with a psychologist, as Dana had directed him to do. Thus, Dana has presented a legitimate, non-discriminatory reason for each of its actions.

---

n8 Under Article 26 of the CBA, defendant considers plaintiff's termination a voluntary quit. (D. Motion at 19.)

---

Given that Dana came forward with a legitimate, non-discriminatory reason for its actions, plaintiff, to avoid summary judgment, is required to provide some evidence that Dana's articulated reasons are either false, or that Dana had some invidious motive for its actions. See *Fuentes, 32 F.3d at 764*. However, plaintiff has failed to present any evidence which either [*23] casts doubt on the defendant's explanation for its actions, or even suggests, much less establishes, that age-related discrimination was the cause of defendant's employment decisions. Thus, defendant's motion for summary judgment will be granted as to plaintiff's ADEA claim. See *Keller, 130 F.3d at 1108*.

### B. Americans with Disabilities Act of 1990 (ADA) and Rehabilitation Act of 1973

Plaintiff sets forth claims alleging discrimination under the ADA in Count II and under the Rehabilitation Act of 1973 in Count III of his Complaint. The ADA and the Rehabilitation Act serve essentially the same purpose: eliminating discrimination in the workplace based on disabilities. See *Santiago v. Temple Univ., 739 F. Supp. 974 (E.D. Pa. 1990)*. Complaints filed under the ADA or the Rehabilitation Act are to be "dealt with in a manner that avoids duplication of effort and prevents imposition of inconsistent or conflicting standards for the same requirements under" either law. *42 U.S.C. 12117(b)*. Thus, Congress intended that the same legal standard would apply to both. See *McDonald v. Commonwealth of Pa., Dept. of Public Welfare, 62 F.3d 92, 95 (3d Cir. 1995)* [*24] (citing *Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995))*. For purposes of this analysis, plaintiff's claims made under the ADA and Rehabilitation Act will be discussed as a single claim.

To establish a prima facie case under the ADA or the Rehabilitation Act, plaintiff must show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville School Dis., 184 F.3d 296, 306 (3d Cir. 1999)* (quoting *Gaul v. Lucent Tech., 134 F.3d 576, 580 (3d Cir. 1998))*; see *42 U.S.C. § 12112(a); 29 U.S.C. § 794(a)*.

For purposes of the ADA, a plaintiff is considered disabled if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" "a record of such impairment;" or is "regarded as having such an impairment." *42 U.S.C. § 12102(2)*; see *29 U.S.C. § 706* [*25] *(8)(B); Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 2144, 144 L. Ed. 2d 450 (1999)*. An impairment is considered a disability based on the type and severity of the injury, the duration or permanence of such injury, and the long term impact of the injury. See *29 C.F.R. 1630.2(j)(2)*; see also *Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)*. Under the EEOC regulations, a physical impairment includes "any physiological disorder, or condition, cosmetic

disfigurement, or anatomical loss affecting one or more" body system, including the neurological and musculoskeletal systems. *29 C.F.R. § 1630.2(h)(1)*. There is no doubt that neck and back injuries, if sufficiently serious, could constitute a disability. See *Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 785 (3d Cir. 1998)*

Although the ADA does not define the term "substantially limits," courts typically look to the EEOC's regulations for guidance. See *Taylor, 184 F.3d at 306; Mondzelewski, 162 F.3d at 782-83*. A disability is substantially limiting where an individual is "significantly restricted as to the condition, manner or duration under which [he] [*26] can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *29 C.F.R. § 1630.2(j)*. Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *29 C.F.R. § 1630.2(i)*.

When the major life activity at issue is working, the plaintiff "must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton, 1999 WL 407488,* at *14. In considering whether an individual is substantially limited in his ability to work, courts consider a variety of factors, including: (1) the geographical area to which the individual has access; (2) job from which the individual has been disqualified, and the similar jobs, based on training, experience, knowledge, and skills from which the individual is also disqualified; and, (3) the job from which the individual has been disqualified, and the number of jobs not using the same experience, training, knowledge, and skills from which the individual has also been disqualified. [*27] See *29 C.F.R. § 1630.2(j)(3)(ii)*.

A qualified individual is an employee who is fully capable of performing the essential functions of any given position. The employee can meet this standard with or without reasonable accommodation by the employer. See *42 U.S.C. § 12111(8)*. "Reasonable accommodation is . . . that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *McDonald, 62 F.3d at 97* (quoting *Myers, 50 F.3d at 283*). If an employer is, without undue burden, capable of providing such an accommodation, failure to make such a provision may be grounds for liability under the ADA. See *Antol, 82 F.3d 1291 at 1299* (citing *Americans Disabled for Accessible Pub. Transp. v. Skinner, 881 F.2d 1184, 1192 (3d Cir. 1989))*.

Plaintiff has offered evidence which, if believed, is sufficient to establish a prima facie case under the ADA and the Rehabilitation Act. Plaintiff suffered neck and back injuries, as documented by Drs. Fennelly and Shay. According to plaintiff's evidence, that physical impairment substantially limited plaintiff's [*28] ability to perform a major life activity--work. Drs. Fennelly and Shay also opined that plaintiff is capable of doing some less strenuous work for Dana. Such opinions support plaintiff's contention that he is "otherwise qualified" under the ADA. Finally, plaintiff suffered several adverse employment decisions, including denial of transfer, denial of sick leave, and termination.

Defendant argues that there is no evidence that it discriminated against plaintiff based on any disability. In addition, defendant relies on the same evidence discussed in the ADEA context in offering a legitimate, non-discriminatory reason, under the ADA and Rehabilitation Act, for the adverse employment decisions involving plaintiff. Specifically, defendant argues that plaintiff's unwillingness to work or to comply with the terms of his October 18, 1996 sick leave, his lack of seniority, and the lack of openings with regard to plaintiff's transfer requests, constitute legitimate, non-discriminatory reasons for the employment decisions involved in this case. Once plaintiff was injured, defendant contends that it made every accommodation to allow plaintiff to continue in his job, including eleven grants of [*29] extended sick leave. Following procedure under the CBA, when medical examinations revealed that plaintiff was able to return to work, defendant gave plaintiff the opportunity to do so. Termination only occurred when plaintiff failed to report to work, contact defendant, or comply with the terms of the October 18, 1996 sick leave.

Plaintiff is required to rebut defendant's legitimate, non-discriminatory employment decisions. Plaintiff offered no evidence permitting a factfinder to disbelieve defendant's reasons for its employment decisions, or to believe that defendant's legitimate, non-discriminatory reasons were a pretext for some invidious discrimination. Plaintiff failed to meet his burden of rebutting defendant's legitimate, non-discriminatory reason for its employment decisions. Thus, defendant's motion for summary judgment will be granted as to plaintiff's ADA and Rehabilitation Act claims.

### C. Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRA) and Veterans' Rehabilitation Act (VRA)

In an Order dated Nov. 12, 1998, this Court granted defendant's motion to dismiss Count IV of the Complaint, in which plaintiff asserted claims under VEVRA and the VRA. [*30] The motion was granted without prejudice.

To make a claim under VEVRA or the VRA, a litigant must file a complaint with the Secretary of Labor, who is charged with the responsibility of investigating the matter and pursuing litigation if appropriate. See *38 U.S.C. § 4212*(b) (1991); *38 U.S.C. § 1500* et seq. There is no implicit private right of action under either VEVRA or the VRA. See *Antol v. Perry, 82 F.3d 1291, 1298 (3d Cir. 1996); Harris v. Adams, 873 F.2d 929, 932 (6th Cir. 1989)*. Plaintiff failed to proceed with these claims as required by the statute. Thus, defendant's motion for summary judgment will be granted as to plaintiff's VEVRA and VRA claims.

### D. Plaintiff's Request to Amend the Complaint

Plaintiff seeks to amend his Complaint to add a claim under the EPA and the Civil Rights Act of 1991. He argues that, because a form letter he received from the EEOC contained language referring to the EPA, he has the right to sue under the EPA. See Plaintiff's Request to amend the Complaint, at 1.

The evidence discloses that on June 28, 1999, plaintiff received a form letter from the [*31] EEOC, titled "Dismissal and Notice of Rights," stating that, because this action was already pending in federal court, the EEOC was closing its file on plaintiff's Complaint. At the bottom of this form letter are basic summaries of rights under Title VII, the ADA, the ADEA, and the EPA. None of these summaries constitute opinions by the EEOC that the recipient has a claim under any of these statutes. They are summaries of the rights guaranteed by each of those statutes. As such, plaintiff has misinterpreted the EEOC's letter.

In relevant part, the EPA provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions... *29 U.S.C. § 206*(d)(1).

A plaintiff establishes a prima facie case under the EPA by [*32] demonstrating that employees of the opposite sex were paid differently for performing work of substantially equal skill, effort, and responsibility under similar working conditions. See *EEOC v. Delaware Dept. of Health and Human Servs., 865 F.2d 1408, 1413-14 (3d Cir. 1989)* (citing *Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974))*.

Plaintiff has not set forth any facts in his request to amend the Complaint which suggest that he can establish a prima facie case of a violation of the EPA. The basis of plaintiff's EPA claim is that defendant attempted to dismiss him as a result of plaintiff's injury. In his request to amend the Complaint, plaintiff states,

> My basic contention is that a firing was attempted in 1993 post injury under the attendance program by a calculation of days biased to cause a firing which was again attempted in 1996 under the same attendance program causing the firing which was a willful choice rather than to allow the transfer request to be granted or to proceed with an article # 60 transfer to any dept. where there was work I could do.

Plaintiff's Request to amend the Complaint, at 2.

Neither in his [*33] original Complaint nor in his request to amend does plaintiff allege that men are paid less than women for doing the same, or substantially similar, work at Dana. Instead, in the Complaint, plaintiff focuses exclusively on the adverse job actions that he suffered as a result of his injury. Thus, the EPA claim would not withstand a motion to dismiss under Rule 12(b)(6). See *Fed. R. Civ. P. 12(b)(6)*.

The Civil Rights Act of 1991 revised, among other things, *42 U.S.C.A. § 1981* (West Supp. 1999). n9 One change made to the statute was to add subsection (c), which explicitly provides a cause of action for private, rather than state, discrimination in making and enforcing contracts. See *42 U.S.C.A. § 1981*(c). However, § 1981 applies only to discrimination in making and enforcing contracts based on race. See *King v. Township of East Lampeter, 17 F. Supp. 2d 394, 417 (E.D.Pa. 1998)* (citing *Runyon v. McCrary, 427 U.S. 160, 49 L. Ed. 2d 415, 96 S. Ct. 2586 (1976))*. Section 1981 does not apply to discrimination based on age or disability. See *Duncan v. AT&T Communications, 668 F. Supp. 232, 235 (S.D.N.Y. 1987)* [*34] (disability); *Boddorff v. Publicker Industries, 488 F. Supp. 1107, 1109-10 (E.D.Pa. 1980)* (age). Plaintiff has not said anything in his request to amend the Complaint that suggests that his race, white, played any role in any of the adverse employment decisions involved in this case. As such, he has no claim under § 1981. Therefore, a complaint under the Civil

Rights Act of 1991 would not survive a motion to dismiss under Rule 12(b)(6). See *Fed. R. Civ. P. 12(b)(6)*.

n9 § 1981 provides, in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." *42 U.S.C.A. § 1981*(a).

It is clear [*35] that neither the plaintiff's EPA claim nor his Civil Rights Act claim would survive a motion to dismiss under Rule 12(b)(6). See *Jordan, 20 F.3d at 1261*. Where a complaint would not survive such a motion, a court should deny the plaintiff leave to amend a complaint to include such a claim. See *Smith, 139 F.3d at 190*. Therefore, plaintiff's request to amend his Complaint will be denied.

### E. Plaintiff's Motion for Judgment on the Pleadings

The Court has granted defendant's motion for summary judgment as to all claims. Thus, plaintiff's motion for judgment on the pleadings, treated as a cross-motion for summary judgment under *Federal Rule of Civil Procedure 12(c)*, will be denied as moot.

### V. CONCLUSION

Defendant's motion for summary judgment on the claims based on the ADEA, the ADA, the Rehabilitation Act of 1973, the VEVRA, and the VRA will be granted. Plaintiff's request to amend the Complaint will be denied. Plaintiff's cross-motion for judgment on the pleadings, treated as a cross-motion for summary judgment under *Rule 12(c) of the Federal Rules of Civil Procedure*, will be denied. Judgment will be entered in favor of defendant [*36] and against plaintiff.

An appropriate Order follows:

### ORDER

AND NOW, to wit, this 9th day of November, 1999, upon consideration of defendant Dana Corporation's Motion for Summary Judgment (Doc. No. 23, filed March 19, 1999), Plaintiff's Answer to Defendant's Motion for Summary Judgment (Doc. No. 24, filed March 31, 1999), the Reply Brief in Further Support of Defendant Dana Corporation's Motion for Summary Judgment (Doc. No. 26, filed April 19, 1999), Plaintiff's Reply to Defenses Motion [sic] and Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 27, filed April 27, 1999), Defendant Dana Corporation's Opposition to Plaintiff Jackson's Cross-Motion for Judgment on the Pleadings (Doc. No. 28, filed May 13, 1999), Plaintiff's Request to Amend the Complaint n1, and Defendant's Opposition to Plaintiff's Request to Assert Claims under the Equal Pay Act (Doc. No. 31, filed September 28, 1999), **IT IS ORDERED**, for the reasons set forth in the attached Memorandum:

(1) Defendant Dana Corporation's Motion for Summary Judgment is **GRANTED**, and judgment is **ENTERED** in favor of defendant Dana Corporation and against plaintiff Malcolm Earl Jackson; [*37]

(2) Plaintiff's Request to Amend the Complaint is **DENIED**.

(3) Plaintiff's Motion for Judgment on the Pleadings, treated as a Cross-Motion for Summary Judgment under *Federal Rule of Civil Procedure 12(c)*, is **DENIED**.

n1 Plaintiff's Request to Amend the Complaint was included in plaintiff's letter to the Court dated August 23, 1999. The original of the letter shall be docketed.

BY THE COURT:

JAN E. DUBOIS, J.