# EXHIBIT 6

2 of 2 DOCUMENTS

CURTIS G. JACKSON v. JAMES T. WYNDER, et al.

CIVIL ACTION NO. 04-4223

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 453

January 6, 2005, Decided

**SUBSEQUENT HISTORY:** Approved by, Adopted by, Writ of habeas corpus denied *Jackson v. Wynder*, 2005 U.S. Dist. LEXIS 573 (E.D. Pa., Jan. 6, 2005)

**DISPOSITION:** Recommended that petition for writ of habeas corpus be denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] CURTIS G. JACKSON, Petitioner, Pro se, DALLAS, PA.

For JAMES T. WYNDER, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, Respondents: JOHN O.J. SHELLENBERGER, OFFICE OF THE ATTORNEY GENERAL, PHILADELPHIA, PA.

**JUDGES:** JACOB P. HART, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** JACOB P. HART

**OPINION:**
REPORT AND RECOMMENDATION

JACOB P. HART

UNITED STATES MAGISTRATE JUDGE

This is a pro se petition for writ of habeas corpus filed pursuant to *28 U.S.C. § 2254*, by an individual currently incarcerated at the State Correctional Institution at Dallas, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

**FACTS AND PROCEDURAL HISTORY:**

In his four claims, Jackson complains about the denial of his parole. Jackson argues that the Parole Board utilized guidelines, adopted in 1996, to determine his eligibility for parole. Since the 1996-guidelines were not those in effect at the time he committed his crime and was convicted, Jackson contends that use of the 1996-guidelines violates the *Ex Post Facto clause*.

**DISCUSSION:**

In response, the Attorney General argues that the claims are unexhausted. [*2] Although Jackson filed an administrative appeal of his most recent denial of parole, he failed to present the claims to the state courts. See *Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287, 290 (Pa. 2001)*(mandamus action in Commonwealth Court was the proper avenue to appeal denial of parole). *Section 2254(b)(2)*, however, permits the federal court to deny a petition on its merits, notwithstanding the failure of the petitioner to exhaust his state court remedies. Because we find that Jackson's *Ex Post Facto* claims fail, we will proceed to address the merits of his allegations.

In 1996, *section 1 of the Parole Act* was amended and a new public policy statement was issued:

> In providing these benefits [relating to parole] to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

Case 2:02-cv-02687-ER    Document 85-7    Filed 03/15/2005    Page 3 of 4

Page 2
2005 U.S. Dist. LEXIS 453, *

*61 P.S. § 331.1.*

In *Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003)*, the Third Circuit [*3] held that retroactive application of the 1996 amendments to the Parole Act's statement of public policy violated the *Ex Post Facto Clause*. The amendments to which Mickens-Thomas took exception dealt with the emphasis placed on public safety concerns in the parole process. The Third Circuit agreed that the policy statement, as previously quoted, resulted in a substantive change to the parole criteria. As described by the Court:

> Pre-1996, release upon eligibility for parole was presumed, and any decision to deny parole based on public safety considerations had to be supported by specific reasons, which outweighed those factors favoring release. . . . Prior to 1996, the Board's concern for potential risks to public safety could not be the sole or dominant basis for parole denial under the existing Guidelines. Considerations of public safety were already incorporated into its Guidelines analysis; the board had to point to "unique" factors as a basis for its rejection of the Guidelines. Moreover, the Board had to weigh all factors, militating for and against parole, and make its decision on the totality of the factors pertinent to parole, and give appropriate weight to the interests [*4] of the inmate. Heavy foot application on one factor could not have been the basis for granting or rejecting parole. Policy declarations in and after 1996 demonstrate that Board stance shifted and that, indeed, post-1996 considerations of public safety became the dominant concern of the Board.

*Mickens-Thomas, at 386.* Thus, application of the 1996 guidelines in considering Mickens-Thomas's parole resulted in a violation of the *Ex Post Facto Clause.*

Jackson makes an identical contention. Yet, their cases are vastly different. n1 Most notably, the Parole Board considered Mickens-Thomas's parole prior to December 31, 2002, when the Pennsylvania Supreme Court decided *Winklespecht v. Pennsylvania Board of Probation and Parole, 571 Pa. 685, 813 A.2d 688 (Pa. 2002).* There, the Court held that the amendments to *61 P.S. § 331.1* did not change Pennsylvania policy regarding the criteria considered for parole eligibility. *Winklespecht, at 692.*

> The rewording of *61 P.S. § 331.1* did not create a substantial risk that parole would be denied any more frequently than under the previous wording, nor did [*5] the addition of this language create a new offense or increase the penalty for an existing offense. . . . Although the language concerning "protecting the safety of the public" and "assisting in the fair administration of justice" was added to § 331.1 in 1996, these concepts are nothing new to the parole process and have always been underlying concerns. Both versions of § 331.1 leave the decision regarding the grant of parole within the discretion of the Board; the fact that some language was added in 1996, which clarified the policy underlying the parole process, does nothing that increases Winklespecht's punishment.

*Id, at 691-92.*

N1 Although we note that it appeared in Mickens-Thomas that the Third Circuit's holding was limited to prisoners serving life, whose sentences had been commuted, *Mickens-Thomas, at 393,* the Third Circuit, relying on its decision in Mickens-Thomas, ordered a new parole hearing on this issue in *McLaurin v. Larkins, 76 Fed.Appx. 415 (3d Cir. 2003).* In *McLaurin*, the petitioner was serving a 12 1/2 - 25 year sentence and commutation was not an issue.

[*6]

In Mickens-Thomas, the Third Circuit acknowledged the decision in Winklespecht, but explained that the decision in Winklespecht came after Mickens-Thomas's parole consideration. Thus, subsequent to the Winklespecht decision, the Parole Board had the benefit of the Supreme Court's analysis of the 1996 amendments to the Parole Act and knew that, in the state supreme court's opinion, no change had been made to the underlying parole policies and no additional weight was to be given to public safety concerns.

> This decision [Winklespecht], made *after* the Board's actions on Thomas's parole, came too late to alter the Board's view of

the statutory amendment on the outcome of this case. Not having the benefit of the Supreme Court decision, the evidence before us shows that the Board interpreted § 331.1 to mandate foremost the consideration of public safety. The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function.

*Mickens-Thomas, at 391.*

Here, Jackson was last reviewed for parole on July 16, 2004, well after the Parole Board had the benefit of the Winklespecht decision. Thus, the Parole [*7] Board was aware that it should not "demonstrate a marked added weight on public safety concerns." *Mickens-Thomas, at 391.* See Davis v. Pennsylvania Board of Probation and Parole, No. 03-3997 (E.D. Pa., Mar. 11, 2004) (Dubois, J.)

Moreover, review of the Parole Board's July 16, 2004 decision reveals that the denial of parole was based on Jackson's refusal to accept responsibility for his offenses, his lack of remorse, reports regarding his physical, mental, and behavior condition and history, his need to participate and complete additional programs, and his interview with the hearing examiner/board member. (Notice of Board Decision, July 16, 2004) n2

> n2 Not only did Jackson fail to accept responsibility for his crime, or show remorse, this statement in his appeal of the Parole Board's decision shows just how cavalierly he treats both of these subjects. "I did not understand all I had to do was admit to the crime and show remorsefulness to the victim or offenses." (Appeal Letter, Attached to Response, at 53).

[*8]

Unlike Mickens-Thomas, who had participated in the sex offenders' treatment program and obtained the recommendation of the entire institutional staff, when Jackson was denied parole, he was required to participate in such programs, and was also required to maintain a clear conduct record. In short, there is no indication that the Parole Board placed unnecessary weight on the issue of public safety. In denying Jackson parole, the Board relied on factors that have been a part of the Parole Act since its inception in 1941. See *61 P.S. § 331.19* (considerations include nature and circumstances of the offense, recommendations by judge and prosecutor, character and background of prisoner, participation in educational programs, institutional behavior, physical, mental, and behavioral conditions of the prisoner). Thus, we find no violation of the *Ex Post Facto Clause* in Jackson's most recent consideration for parole.

In his final claim, Jackson complains that the 1996 amendments to the Parole Act also increased the number of Board member votes necessary to obtain parole. What Jackson neglects to mention is that the amendments increased the number of Board [*9] members from five to nine. A majority of the votes is still necessary for parole. Thus, when parole is considered by the entire Board, five members must now favor parole rather than the three necessary before the Board was increased.

In order to establish an *Ex Post Facto* violation, the petitioner must prove: (1) the new law is retrospective - applying to events occurring before its enactment; and (2) the new law "disadvantages the offender affected by it." *Weaver v. Graham, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981).* With respect to the increase in the number of Board members, Jackson cannot establish that he was disadvantaged.

Although the Board increased in size, the manner in which it considered parole remained unchanged. *Section 331.4(a)* states, as it did prior to the amendments, that a majority of the entire membership must make parole decision. *Section 331.4(b)* states, as it did prior to the amendments, that the Board may make decisions on parole in panels of two persons. Thus, Jackson cannot establish that the increase in size created any disadvantage to him. See Davis v. Pennsylvania Board of Probation and Parole, No. 03-3997, Order and Memorandum (E. [*10] D. Pa.,

Mar. 11, 2004)(DuBois, J.). n3

> n3 Statistically speaking, the increase in the number of Board members favors the prisoner.

Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this 6th day of January, 2005, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be denied. There has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

JACOB P. HART

UNITED STATES MAGISTRATE JUDGE