# EXHIBIT 7

LEXSEE 2004 U.S. DIST. LEXIS 21221

CHRISTOPHER C. OBST v. GEORGE PATRICK, et al.

CIVIL ACTION No. 04-1510

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2004 U.S. Dist. LEXIS 21221*

October 15, 2004, Decided
October 15, 2004, Filed; October 18, 2004, Entered

**SUBSEQUENT HISTORY:** Approved by, Adopted by, Writ of habeas corpus denied *Obst v. Patrick,* 2004 U.S. Dist. LEXIS 21223 (E.D. Pa., Oct. 15, 2004)

**DISPOSITION:** Magistrate recommended that petition for writ of habeas corpus be denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] CHRISTOPHER CHARLES OBST, Petitioner, Pro se, HOUTZDALE, PA.

For PENNSYLVANIA BOARD OF PROBATION AND PAROLE, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, Defendants: THEODORE E. LORENZ, OFFICE OF ATTORNEY GENERAL, PHILADELPHIA, PA.

**JUDGES:** PETER B. SCUDERI, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** PETER B. SCUDERI

**OPINION:**

### REPORT AND RECOMMENDATION

PETER B. SCUDERI UNITED STATES MAGISTRATE JUDGE

Before the court is a pro se petition for writ of habeas corpus filed pursuant to *28 U.S.C. § 2254* by Christopher C. Obst ("Petitioner"), a state prisoner currently incarcerated at the State Correctional Institution ("SCI") at Houtzdale, Pennsylvania. n1

n1 In a letter, dated August 21, 2004, Petitioner mistakenly asserts that because he filed a previous habeas petition regarding the underlying conviction, he needs a certificate of appealability to file the instant petition. However, because the instant habeas is challenging a parole denial, and not the underlying conviction, this Court will address the claims raised in the instant petition without certification by the Third Circuit.

[*2]

For the reasons that follow, we recommend that the petition be denied.

### I. FACTS AND PROCEDURAL HISTORY

In 1994 Petitioner pled guilty to burglary, and in 1995, he pled guilty to theft by deception. On March 29, 1995, petitioner was convicted in the Court of Common Pleas of Berks County, Pennsylvania of Arson Endangering Persons, Arson Endangering Property, and Burglary, after a jury trial. Petitioner was sentenced to a total term of eight and a half (8 1/2) to twenty-one (21) years of imprisonment. The Pennsylvania Department of Corrections calculated Petitioner's sentence to have a minimum expiration date of September 4, 2002, and a maximum expiration date of March 4, 2015. See Resp't Answer at Exhibit A.

Petitioner has been reviewed for parole by the Pennsylvania Board of Probation and Parole ("The Board") on two (2) occasions. n2 The Board refused to grant him parole following each review. See Id. at Exhibits B, F. In its most recent determination, on June

Case 2:02-cv-02687-ER   Document 85-8   Filed 03/15/2005   Page 3 of 9

Page 2
2004 U.S. Dist. LEXIS 21221, *

30, 2003, the Board reaffirmed its November 21, 2002 decision to deny Petitioner parole. n3 See Resp't Answer at Exhibit F. On November 21, 2002, the Board refused to grant Petitioner parole holding [*3] that "the fair administration of justice cannot be achieved through [Petitioner's] release on parole." See Id. at Exhibit B. The Board explained that at Petitioner's next interview, it would review Petitioner's file and consider "whether [Petitioner has] maintained a favorable recommendation for parole from the Department of Corrections; whether [Petitioner has] received a clear conduct record and completed the Department of Corrections' prescriptive program(s)." In addition, the Board explained that it would consider an "updated mental health evaluation which addresses propensity for aggressive behavior." Id. On December 10, 2002, Petitioner appealed this decision to the Board. Id. at Exhibit D. On February 19, 2003, in response to Petitioner's appeal, the Board wrote Petitioner a letter clarifying that its November 2002 decision was based on, but not limited to, "the recommendation made by the prosecuting attorney; [and Petitioner's] need to participate in and complete additional institutional programs." See Resp't answer at Exhibit E.

> n2 As of July 15, 2004, after the Board's third review, the Board's decision to grant or deny Petitioner parole is pending. See Resp't Answer at Exhibit R. [*4]

> n3 Although Petitioner was not scheduled to be reviewed until at least June 2004, Petitioner submitted an application for early review in June 2003. See Ptr's motion to amend, at 7.

On December 4, 2003, Petitioner filed a petition for review in the Pennsylvania Commonwealth Court, alleging that the Board improperly: (1) violated the *ex post facto clause*; and (2) violated Petitioner's due process rights. See Resp't Answer at Exhibit G. Respondent filed preliminary objections, which were sustained, in part, and overruled, in part, by the Commonwealth Court on January 27, 2004. Petitioner's ex post facto claim was dismissed on the grounds that the courts have rejected Petitioner's claim. *Obst v. Pa. Bd. of Probation and Parole*, No. 0806 M.D. 2003 (Commw. Ct. Jan. 28, 2004) (citing *Finnegan v. Pa. Bd. of Prob. & Parole*, 576 Pa. 59, 838 A.2d 684 (2003); *Winklespecht v. Pa. Bd. of Prob. & Parole*, 571 Pa. 685, 813 A.2d 688 (2002); *Reynolds v. Pa. Bd. of Prob. & Parole*, 809 A.2d 426 (Pa. Cmwlth. 2002); *Byrd v. Pa. Bd. of Prob. & Parole*, 826 A.2d 65 (Pa. Cmwlth. 2003)*; [*5] and *Evans v. Pa. Bd. of Prob. & Parole*, 820 A.2d 904 (Pa. Cmwlth. 2003))*.

On February 23, 2004, the Board, by Notice of Board Decision, modified its November 2002 decision to read that "[Petitioner's] best interests do not justify or require [him] being paroled/reparoled; and, the interests of the Commonwealth will be injured if [Petitioner was] paroled/reparoled." Id. at Exhibit C. The Board gave the following reasons for its decision:

> The recommendation of the prosecuting attorney. [Petitioner's] need to participate in and complete additional institutional programs.

Id. The Board also explained that at Petitioner's next interview, it would review Petitioner's file and consider "whether [Petitioner has] maintained a favorable recommendation for parole from the Department of Corrections; whether [Petitioner has] received a clear conduct record and completed the Department of Corrections' prescriptive program(s)." In addition, the Board explained that it would consider an "updated mental health evaluation which addresses propensity for aggressive behavior." Id.

As a result of the Board's modification of its November 2002 decision, [*6] on February 26, 2004, Respondent filed an application for relief in the nature of a suggestion of mootness/application for a stay. See Resp't Answer at Exhibit. On March 15, 2004, Petitioner's due process claim was denied as moot. See Resp't Answer at Exhibit O.

On March 30, 2004, Petitioner filed a petition for writ of habeas corpus. n4 The initial petition raised only an ex post facto claim, but this Court, by Order dated September 30, 2004, granted Petitioner's motion to amend to include a due process claim. Therefore, Petitioner is claiming that the Board improperly denied him parole by: (1) violating the *ex post facto clause*; and (2) violating the due process clause. Respondent filed an Answer to the petition arguing that Petitioner's claims are without merit. n5 On August 23, 2004, Petitioner filed a Traverse in support of his petition.

> n4 Generally, a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court. *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (citing *Houston v. Lack*, 487 U.S. 266, 101 L. Ed. 2d 245, 108 S. Ct. 2379 (1988)). Although the habeas petition was docketed on April 6, 2004, Petitioner signed his original habeas petition on March 30, 2004; therefore, we

will assume that he presented his petition to prison authorities on March 30, 2004. [*7]

n5 Petitioner appealed the Orders dismissing his ex post facto and due process claims, which were affirmed by the Supreme Court of Pennsylvania on June 3, 2004. See Resp't Answer at Exhibit Q. As Respondents concede in their answer, Petitioner has exhausted his state court remedies. Id. at 3.

## II. APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under *28 U.S.C. § 2254*. *Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000)*. The AEDPA increases the deference federal courts must give to the factual findings and legal determinations of the state courts. *Id. at 196* (citing *Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996))*. Pursuant to *28 U.S.C. § 2254(d)*, as amended by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved [*8] an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *28 U.S.C. § 2254(d)(1)-(2)*. Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts, 228 F.3d at 196* (citing *28 U.S.C. § 2254(e)(1))*.

The Supreme Court expounded upon this language in *Williams v. Taylor, 529 U.S. 362, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000)*. In Williams, the Court explained that "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Hameen v. State of Del., 212 F.3d 226, 235 (3d Cir. 2000)* (citing *Williams, 529 U.S. at 389-390*). [*9] The Court in Williams further stated that "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. (citing *Williams, 529 U.S. at 388-389*). "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." *Werts, 228 F.3d at 196* (citing *Williams, 529 U.S. at 389*).

## II. DISCUSSION

It is well established that under Pennsylvania law, a prisoner's sentence is his maximum sentence, not his minimum sentence, and that [*10] prisoners have no right, constitutional or otherwise, to be released upon the expiration of their minimum sentences. *Cohen v. Horn, 1998 U.S. Dist. LEXIS 19167, 1998 WL 834101, at *6* (citing *Brown v. Pennsylvania Bd. of Probation & Parole, 668 A.2d 218, 220 (Pa. Commw. 1995); Reider v. Commonwealth, 100 Pa. Commw. 333, 514 A.2d 967, 971 (Pa. Commw. 1986); Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 483 A.2d 1044, 1047 (Pa. Commw. 1984))*. Notwithstanding, Petitioner asserts that the Board has denied him parole in violation of the *ex post facto clause* and due process clause of the United States Constitution.

### A. *Ex Post Facto Clause*

Petitioner alleges that the Board violated the *Ex Post Facto Clause* by applying the amended parole guidelines and 1996 amended parole statute, *61 Pa. Stat. Ann. § 331.1*, both of which were not in effect at the time he was sentenced.

Article 1, § 10 of the United States Constitution provides that "no State . . . pass any . . . ex post facto law." See *U.S. Const. art. I, § 10, cl. 1*. The Supreme Court of the United States has ruled that a law is ex post facto if it "punishes [*11] as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with crime of any defense available according to law at the time when the act was committed." *Hameen, 212 F.3d at 239* (citing *Beazell v. Ohio, 269 U.S. 167, 169, 70 L. Ed. 216, 46 S. Ct. 68 (1925))*. The Supreme Court has also held, however, that it is improper to interpret the *Ex Post Facto Clause* to include a reading which states that "any change which 'alters the situation of a party to his disadvantage'" is an ex post facto violation. *Collins v. Youngblood, 497 U.S. 37, 50, 111 L. Ed. 2d 30, 110 S.*

*Ct. 2715 (1990)*; see, e.g., *Dobbert v. Fla., 432 U.S. 282, 293-294, 53 L. Ed. 2d 344, 97 S. Ct. 2290 (1977)* (upholding a procedural change even though application of the new rule operated to a defendant's disadvantage in the particular case); *Hameen, 212 F.3d at 242* (the infringement of a "substantial right" or a showing of a mere "disadvantage" as a result of a new law is insufficient to establish a violation of the *Ex Post Facto Clause*).

The Third Circuit has held [*12] that *61 Pa. Stat. Ann. § 331.1* constitutes a law for ex post facto purposes. *Hollawell v. Gillis, 65 Fed.Appx. 809, 814 (3d Cir. 2003)*. The Court held:

> it is legislation that clearly directs which factors the Parole Board must consider in exercising its discretion to grant or deny parole. Although one does not have a constitutional right to parole, and a decision to grant or deny parole to a Pennsylvania inmate is a discretionary one that is not subject to direct judicial review . . ., a parole decision can be collaterally attacked on constitutional grounds, including the *Ex Post Facto Clause*.

*Hollawell, 65 Fed.Appx. at 814-815*.

Petitioner attacks amendments made to *61 Pa. Stat. Ann. § 331.1*, "Public Policy as to Parole." When Petitioner committed his crime, the relevant 1941 parole statute, *61 Pa. Stat. Ann. § 331.1*, stated:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for a crime shall, [*13] on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Act 1941, Aug. 6, P.L. 861 § 1 (West 1995).

In 1996, this statute was amended to state:

> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

Amended Dec. 18, 1996, P.L. 1098, No. 164, § 1.

Petitioner bases his argument on *Mickens-Thomas v. Vaughn, et al., 321 F.3d 374, (3d Cir. 2003)*. In Mickens-Thomas, the Third Circuit held that retroactive application of the 1996 Amendments to the Parole Act's statement of public policy violated the *Ex Post Facto Clause*. [*14] Id. Mickens-Thomas took exception with the emphasis placed on the public safety concerns in the parole process. The Third Circuit agreed that the policy statement resulted in a substantive change to the parole criteria. As described by the Court:

> Pre-1996, release upon eligibility for parole was presumed, and any decision to deny parole based on public safety considerations had to be supported by specific reasons, which outweighed those factors favoring release. . . . Prior to 1996, the Board's concern for potential risks to public safety could not be the sole or dominant basis for parole denial under the existing Guidelines. Considerations of public safety were already incorporated into its guidelines analysis; the board had to point to "unique" factors as a basis for its rejection of the Guidelines. Moreover, the Board had to weigh all factors, militating for and against parole, and make its decision on the totality of the factors pertinent to parole, and give appropriate weight to the interests of the inmate. Heavy foot application on one factor could not have been the basis for granting or rejecting parole. Policy declarations in and after 1996 demonstrate that the [*15] Board stance shifted, and that, indeed, post-1996 considerations of public safety became the dominant concern of the Board.

*Mickens-Thomas, 321 F.3d at 386*. Thus, the Court concluded that application of the 1996 guidelines in

Case 2:02-cv-02687-ER     Document 85-8     Filed 03/15/2005     Page 6 of 9

Page 5
2004 U.S. Dist. LEXIS 21221, *

considering Mickens-Thomas' parole resulted in a violation of the *Ex Post Facto Clause. Id. at 393.*

Petitioner has made an identical argument. However, these cases are different. Foremost, the Board considered Mickens-Thomas' parole *prior* to December 31, 2002, when the Pennsylvania Supreme Court decided *Winklespecht v. Pa. Bd. of Prob. & Parole, 571 Pa. 685, 813 A.2d 688 (Pa. 2002).* There, the Pennsylvania Supreme Court held that the amendments to *61 Pa. Stat. Ann. § 331.1* did not change Pennsylvania policy regarding criteria considered for parole eligibility. *Id. at 692.* As described by the Court:

> The rewording of *61 Pa. Stat. Ann. § 331.1* did not create a substantial risk that parole would be denied any more frequently than under the previous wording, nor did the addition of this language create a new offense or increase the penalty for an [*16] existing offense. . . . Although the language concerning "protecting the safety of the public" and "assisting in the fair administration of justice" was added to *§ 331.1* in 1996, these concepts are nothing new to the parole process and have always been underlying concerns. Both versions of *§ 331.1* leave the decision regarding the grant of parole within the discretion of the Board; the fact that some language was added in 1996, which clarified the policy underlying the parole process, does nothing that increases Winklespecht's punishment.

*Id. at 691-692*; see also *Finnegan v. Pa. Bd. of Prob. & Parole, 576 Pa. 59, 838 A.2d 684 (Pa. 2003); Hall v. Pa. Bd. of Prob. & Parole, 851 A.2d 859, 2004 WL 1385937 (Pa. 2004).*

In Mickens-Thomas, the Third Circuit acknowledged the decision in Winklespecht, but explained that the Winklespecht decision came *after* Mickens-Thomas's parole consideration. Therefore, subsequent to the Winklespecht decision, the Board had the benefit of the Supreme Court's analysis of the 1996 amendments to the *Parole Act* and knew that, according to the state supreme court, no change [*17] had been made to the underlying parole policies. The Third Circuit stated the following:

> This decision [Winklespecht], made *after* the Board's actions on Thomas's parole, came too late to alter the Board's view of the statutory amendment on the outcome of this case. Not having the benefit of the Supreme Court decision, the evidence before us shows that the Board interpreted *§ 331.1* to mandate foremost the consideration of public safety. The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function.

*Mickens-Thomas, 321 F.3d at 391.*

Here, Petitioner was last reviewed for parole in June 2003, well after the Board had the benefit of the Winklespecht decision. In June 2003, the Board reaffirmed its November 21, 2002 decision. See Resp't Answer at Exhibit F. Therefore, the Board was aware that it should not "demonstrate a marked weight on public safety concerns." Id. To the extent Petitioner complains about the denial of his parole in November 2002, after review of this decision (which was clarified in the February 19, 2003 letter and modified in a February 2004 Notice of Board Decision), [*18] it reveals that Petitioner was denied parole because of a recommendation of the prosecuting attorney, as well as Petitioner's need to participate in and complete additional institutional programs. See Resp't Answer at Exhibit C. There is no indication that the Board placed unnecessary weight on public safety, nor does it appear that public safety proved dispositive in the Board's decision. It appears that the combination of concerns outweighed Petitioner's interest in parole. Accordingly, I conclude that the facts of this case do not give rise to a valid ex post facto claim.

**B.** *Due Process Clause*

Petitioner claims that his due process rights were violated when the Board abused its power and denied his parole. n6 Specifically, Petitioner argues that the Board improperly denied him parole because (1) the Board required Petitioner to attend additional institutional programs, which Petitioner alleges he already completed, and such a requirement is arbitrary and capricious; and 2) the Board retaliated against him. n7 See Ptr's motion to amend at 4-8.

n6 In an effort to construe Petitioner's claims in his favor, I believe that the grounds outlined constitute a fair and adequate representation of all the issues raised in his motion to amend his habeas petition, which the Court granted on September 30, 2004. [*19]

Case 2:02-cv-02687-ER   Document 85-8   Filed 03/15/2005   Page 7 of 9

Page 6
2004 U.S. Dist. LEXIS 21221, *

n7 Petitioner also claims that his due process rights were violated when a victim impact statement was sent to a non-victim. See Ptr's motion to amend, at 5. Petitioner is referring to a three-(3)-page document that was sent to Brian Obst, in February 2002. See Resp't Answer at Exhibit G. As a result, Brian Obst sent an Affidavit to the Board explaining that he was not a "victim" of any crimes committed by Petitioner. Id. In addition, Petitioner alleges that in considering his parole, he "suspects the Board may have made more than one illegal request of this nature to other NON-victims." See Ptr's motion to amend, at 5. However, there is no evidence that such requests were made by the Board. As a result, I find that Petitioner has failed to demonstrate any evidence that the Board deprived him of his due process rights through the use of victim impact statements. Therefore, to the extent that Petitioner raises a separate due process claim related to the victim impact statement, the claim is meritless.

### 1. Procedural Due Process

Petitioner's interest in a fair [*20] and impartial determination of his parole eligibility raises an issue of procedural due process. The *Fourteenth Amendment* reads in part: "nor shall any state deprive any person of life, liberty, or property without due process of law," *U.S. Const. amend. XIV*, and protects "the individual against arbitrary action of government." *Wolff v. McDonnell, 418 U.S. 539, 558, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974)*. In order to establish that the state has violated an individual's right to procedural due process, a petitioner must (1) demonstrate the existence of a protected interest in life, liberty, or property that has been interfered with by the state, *Board of Regents v. Roth, 408 U.S. 564, 571, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)*; *Goldberg v. Kelly, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970)*; and then, (2) establish that the procedures attendant upon that deprivation were constitutionally insufficient. *Hewitt v. Helms, 459 U.S. 460, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983)*.

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope, or expectation of [*21] it. *Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989)*. Such an interest may arise from two (2) sources, namely, the *Due Process Clause of the United States Constitution*, or the laws of the states. *Hewitt, 459 U.S. at 466*. The United States Constitution does not explicitly create a legitimate claim of entitlement to parole, nor has such an entitlement been implicitly read into the Constitution. *Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa. 2000)*; *Board of Pardons v. Allen, 482 U.S. 369, 373, 96 L. Ed. 2d 303, 107 S. Ct. 2415 (1987)*; *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979)* (holding that there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence and distinguishing parole revocation which implicates a liberty interest, from parole release decisions which do not). Furthermore, both the federal and Pennsylvania state courts have held that parole is not a constitutionally protected liberty interest under Pennsylvania law. *Burkett v. Love, 89 F.3d 135, 139 (3d Cir. 1996)*; [*22] *Rauso, 79 F. Supp. 2d at 551*; *Rogers v. Pa. Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319, 323 (Pa. 1999)*. Because Petitioner cannot establish that there is a liberty interest in parole, we find that he has not demonstrated a violation of a protected constitutional right which would allow him to present a procedural due process claim. Accordingly, the Board's written decision cannot violate any federal constitutional right to procedural due process.

Even if Pennsylvania's parole statute created a "protectible expectation of parole," no more procedural due process is constitutionally required than giving Petitioner the opportunity to be heard, and when parole is denied, informing the inmate in what respect he or she falls short of qualifying for parole. *Greenholtz, 442 U.S. at 16*. In the present case, Petitioner was given an opportunity to be heard prior to the Board's decision. He was also provided with a statement of reasons as to why he has fallen short of qualifying for parole and what corrective steps he will need to take in order to put himself in a better position for parole consideration.

I find that the reasons provided [*23] by the Board in support of the denial of Petitioner's parole clearly identified the basis for its decision and were statutorily and constitutionally adequate. See *61 Pa. Stat. Ann. § 331.22* (requiring brief statement of reasons for Board's action). Accordingly, the Board's written decision not to release Petitioner on parole did not constitute a violation of Petitioner's procedural due process rights.

### 2. Substantive Due Process

To the extent that Petitioner argues that his substantive due process rights were violated by the Board's denial of parole, I find such a claim to be meritless. The Third Circuit has recognized a cause of

Case 2:02-cv-02687-ER    Document 85-8    Filed 03/15/2005    Page 8 of 9

Page 7
2004 U.S. Dist. LEXIS 21221, *

action under substantive due process that is distinct from procedural due process. *Burkett v. Love, 89 F.3d 135, 139-40 (3d Cir. 1996); Block v. Potter, 631 F.2d 233, 236, 17 V.I. 623 (3d Cir. 1980).* Even if no liberty interests or rights exist to a government benefit, there are certain reasons upon which the government may not rely in exercising its discretion. *Perry v. Sindermann, 408 U.S. 593, 597, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972).* Under substantive due process, as the [*24] term has been construed by the courts, a state may not deny parole on constitutionally impermissible grounds, such as race or in retaliation for exercising constitutional rights. *Burkett, 89 F.3d at 140.* Similarly, the Board may not base a parole decision on factors bearing no rational relationship to the interests of the Commonwealth. *Block, 631 F.2d at 237.*

Essentially, the duty of the Board when reviewing applications for parole is to act in a manner that avoids making the parole process arbitrary, even though the granting of parole is a discretionary matter under § 331.21 of the Pennsylvania Parole Act. *Wolff, 418 U.S. at 558.* In other words, the mere presence of a large measure of discretion in the system does not alter the "fundamental due process limitation against capricious decision making." *Block 631 F.2d at 236.* As such, when a court is faced with the review of a decision of a parole board, it must "insure that the Board followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious nor based on impermissible considerations." *Id. at 236* [*25] (citing *Zannino v. Arnold, 531 F.2d 687, 690 (3d Cir. 1976)).*

Pennsylvania law grants the Board vast discretion to refuse or deny parole. State law authorizes the Board:

> to release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to the board . . . whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby.

*61 Pa. Stat. Ann. § 331.21(a).*

Under Pennsylvania law, the Board's consideration encompasses many different factors, all relevant to the discretionary task of granting or denying parole. See *61 Pa. Stat. Ann. § 331.19.* Specifically:

> It shall be the duty of the board . . . to consider the nature and circumstances of the offense committed . . . the general character and background of the prisoner. . . . The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history . . . to be reported and investigated.

*61 Pa. Stat. Ann. § 331.19* [*26] ("Investigation of circumstances of offenses and character and history of prisoner; matters considered in granting parole"). Section 22 of the Pennsylvania Board of Parole Act ("Act") also provides that "whenever an application for parole is refused by the board, a brief statement of the reasons for the board's action shall be filed of record in the offices of the board . . ." *61 Pa. Stat. Ann. § 331.22.*

### a. Institutional Programs

As previously stated, the Board determined that Petitioner was ineligible for parole, provided Petitioner with the reasons for the denial, and indicated what factors the Board would consider at Petitioner's next parole interview. Although Petitioner alleges that he completed institutional programs in the past, the Board clearly stated that one (1) of the reasons for its decision to deny parole was "[Petitioner's] need to participate in and complete *additional* institutional programs." Id. (emphasis added). Moreover, contrary to what Petitioner asserts, the Board's decision that Petitioner may require continued participation in a prescriptive program, does not constitute an arbitrary or capricious decision. [*27] *Carter v. Muller, 45 F. Supp. 2d 453, 456-57 (E.D. Pa. 1999)* (finding a prisoner's participation in treatment programs not arbitrary because it is entirely consistent with the Board's duty to "procure information as full and complete as may be obtainable with regard to the character, mental characteristics, habits, antecedents, connections and environment" of the prospective parolee). Accordingly, I conclude that the facts of this case do not give rise to a valid substantive due process claim. *Block, 631 F.2d at 236.*

### b. Unconstitutional Retaliation

Petitioner also alleges that, in denying him parole, the Board retaliated against him because Petitioner's victim was a judge, and because Petitioner exercised his constitutional rights by challenging the parole process. See Ptr's Motion to Amend, at 5-8. n8

---

n8 Petitioner alleges that "denial of Petitioner's parole was politically/judicially motivated. . . . [Petitioner's] 'victim was a judge.' . . . according to the Board, a victim who is a judge is more valued and is given more rights than any other victim." See Ptr's motion to amend, at 5-6.

Case 2:02-cv-02687-ER    Document 85-8    Filed 03/15/2005    Page 9 of 9

Page 8
2004 U.S. Dist. LEXIS 21221, *

In addition, Petitioner alleges that the Board retaliated against him because he filed "court actions against the Board." Id. at 7-8.

[*28]

To the extent Petitioner challenges the basis for the Board's decision denying him parole release, I conclude that the factors considered by the Board in denying Petitioner parole were permissible and did not violate Petitioner's substantive due process rights. *The Pennsylvania Parole Act* grants the Board broad discretion in making parole decisions. The factors considered by the Board in denying Petitioner parole bear a rational relation to rehabilitation or the interests of the public. Nothing in Petitioner's habeas petition supports a claim that the Board acted in an arbitrary or capricious manner or with vindictiveness, bias, or prejudice. Therefore, I find that the Board did not abuse its broad discretion under the *Pennsylvania Parole Act* and the Board did not violate Petitioner's substantive due process rights by relying on the factors set forth in their decision in denying Petitioner parole.

Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this    day of October, 2004, it is RESPECTFULLY RECOMMENDED that the petition for Writ of Habeas Corpus be DENIED. There is no probable cause for issuing a certificate of appealability.

BY THE COURT:

PETER [*29] B. SCUDERI

UNITED STATES MAGISTRATE JUDGE