# EXHIBIT 8

LEXSEE 2004 U.S. DIST. LEXIS 23179

TOM LESTER ADAMS, Petitioner, v. SUPERINTENDENT KELCHNER, Respondent.

CIVIL ACTION NO. 3:04-CV-799

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2004 U.S. Dist. LEXIS 23179

November 12, 2004, Decided

**DISPOSITION:** [*1] Magistrate Judge's Report and Recommendation adopted. Petition for writ of habeas corpus granted in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** Tom Lester Adams, Petitioner, Pro se, Camp Hill, PA.

For Superintendent Kelchner, Respondent: Lisa W. Basial, Office of the Attorney General of Pennsylvania, Harrisburg, PA.

**JUDGES:** Magistrate Judge Blewitt. RICHARD P. CONABOY, United States District Judge.

**OPINION:**

### MEMORANDUM AND ORDER

We consider in this Memorandum the Report and Recommendation of Magistrate Judge Thomas M. Blewitt, (Doc. 4), recommending that Petitioner Tom Lester Adams' ("Petitioner") petition for habeas corpus filed pursuant to 28 U.S.C. § 2254 be granted to the extent that the Court enter an Order directing the Pennsylvania Parole Board to re-adjudicate Petitioner's parole application. (Doc. 4 at 12.) As will be explained below, this is the second time we consider the Report and Recommendation and again conclude that the Petition should be granted to the extent recommended by the Magistrate Judge. (See Doc. 6.)

### Background

Petitioner filed his Petition on April 12, 2004, while incarcerated at the State Correctional Institution at Camp Hill, Camp Hill, Pennsylvania ("SCI-Camp Hill"). (Doc. 1.) The matter was assigned to United States Magistrate [*2] Judge Thomas M. Blewitt, who issued a Report and Recommendation, (Doc. 4), on April 20, 2004, recommending that the instant petition be granted to the extent that the Court should enter an Order directing the Pennsylvania Board of Probation and Parole (the Board) to re-adjudicate Petitioner's parole application applying the pre-1996 Pennsylvania Parole Act and rules," (Doc. 4 at 1).

In his Report and Recommendation, the Magistrate Judge set out a thorough history of the case: n1

> Petitioner states that he was arrested in May, 1996, and that he entered into a plea agreement on March 26, 1997. (Doc. 1).
>
> On May 18, 1998, following a guilty plea made pursuant to a plea agreement, Petitioner was convicted of five counts of solicitation regarding involuntary deviate sexual intercourse, sexual assault, and corruption of minors. Petitioner was sentenced to incarceration for a period of two and one-half (2 1/2) to twelve and one-half (12 1/2) years and twenty-five (25) years probation. Petitioner did not file any direct appeals of his judgment of sentence with the trial court or with either the Pennsylvania Superior Court or the Pennsylvania Supreme Court. Thus, as we found in our Report [*3] and

Recommendation in Petitioner's prior case (No. 3:CV-03-0188, M.D. Pa.), his judgment of sentence became final thirty (30) days after his May 18, 1998, sentence, i.e., June 17, 1998, since he did not directly appeal his sentence. See Pa. R.A.P. 903(a).

After serving over four (4) years of his sentence, on or about November 6, 2002, Petitioner had a parole hearing before the Board. The record reveals that the Board issued a decision on November 6, 2002, in which it held, in part, that:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, *61 P.S. § 331.1 et seq.*, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled.
> Therefore, you are refused parole/reparole at this time.

(*Id.* at Exhibit A).

The Board also included detailed reasons for its decision. (*Id.*). Thus, Petitioner was denied parole and his case was ordered to be reviewed in or after October, [*4] 2003. (*Id.*). Petitioner reappeared before the Board on or about November 21, 2003, and it again denied Petitioner parole. n2 (*Id.* at Exhibit B).

The Board recorded a Notice of Board Decision on November 21, 2003, in which it set a new parole hearing in or after March, 2005. The Board, in its November 21, 2003, decision stated, in part, the following reasons for denying Petitioner parole:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, *61 P.S. § 331.1 et seq.*, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled.
> Therefore, you are refused parole/reparole at this time.

(*Id.* at Exhibit B).

The Board also included detailed reasons for its decision. (*Id.*).

In both of the stated decisions, the Board utilized the requirements of the 1996 amended Pa. Parole Act in denying Petitioner parole. (Doc. 1, Exhibits A & B).

There is no indication that Petitioner [*5] filed a Petition for Administrative Relief with the Board, requesting the Board to reconsider its November 21, 2003, decision. Nor is there any indication that the Petitioner filed a Petition for Review with the Pennsylvania Commonwealth Court. However, the Petitioner states in the attached Grounds to his Petition that he appealed the decisions of the Board "in a timely fashion, but was denied." (Doc. 1, attached Grounds One and Two). In any event, subsequent to the Board's decisions, the Petitioner filed the instant Habeas Corpus Petition with this Court on April 12, 2004. (Doc. 1).

Petitioner avers that he filed this Petition for habeas relief with this Court, challenging the decisions of the Board as unconstitutional since the Board applied the 1996 parole amendments retroactively to his case for his 1996 arrest (1998

conviction). Thus, he claims that the Board violated the *ex post facto clause.* Petitioner appears to request this Court to direct the Board to conduct a new a parole hearing in which it applies the parole standards that existed before the 1996 amendments. n3 (Doc. 1, attached Grounds).

Petitioner primarily contends that he is entitled to habeas relief due to [*6] the Board's application of amended parole standards which were not in effect at the time he was arrested in May, 1996, and "at the time his crimes were committed" (as opposed to the time he was sentenced and convicted) and which resulted in the Board's denial of his parole, in violation of the constitutional protection against *ex post facto* laws. (Doc. 1, attached Grounds). In essence, Petitioner claims that his denial of parole violated the constitution, since the 1996 parole standards were applied retroactively to his 1995-1996 crimes. (*Id.*).

(Doc. 4 at 2-5.)

n1 The Magistrate Judge noted that portions of Petitioner's procedural history were derived from his present Habeas Corpus Petition, Document 1 of M.D. Pa. Civil Action No. 3:CV-04-0799, as well as from his former habeas petition, No. 3:CV-03-0188, M.D. Pa. (Doc. 4 at 2 n.2.)

n2 The Magistrate Judge noted here that while Petitioner refers to both of the Board's November 6, 2002, and November 21, 2003, decisions as Exhibit A, the Magistrate Judge refers to them as Exhibits A and B, respectively. (Doc. 4 at 3. n.3.)

n3 The Magistrate Judge noted that Petitioner's present Petition was timely filed under the AEDPA statute of limitations period, unlike his prior habeas petition filed with this Court, which attacked his state court judgment and was well over one year after the judgment became final. The present petition was filed within one year of the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. *See 28 U.S.C. § 2244(d)(1)(D).* In this case, Petitioner filed his habeas petition on April 12, 2004, which was within one year of the Board's challenged November 21, 2003, decision. (Doc. 4 at 4 n.4.)

[*7]

First, the Magistrate Judge determined this case presented an exception to the exhaustion requirement both because Petitioner maintains he timely appealed the Board's decisions but was denied and because Third Circuit Precedent is at odds with the Pennsylvania Supreme Court's decisions on the *ex post facto* issue presented in this case. (Doc. 4 at 6.) Second, on the *ex post facto* issue, the Magistrate Judge agreed with Petitioner's claim that the Pennsylvania Board of Probation and Parole violated the *Ex Post Facto Clause of the United States Constitution* by applying amended standards to his parole application. (Doc. 1 Attachment.) The Magistrate Judge concluded that the proper resolution of this matter is for the Court to order the Pennsylvania Board of Probation and Parole to re-adjudicate Petitioner's parole application applying the pre-1996 statute and corresponding rules. See, *Mickens-Thomas v. Vaughn, 321 F.3d 374, 393 (3d Cir.),* cert. denied, U.S. , *157 L. Ed. 2d 165, 124 S. Ct. 229 (2003).*; *Hart v. Pennsylvania Board of Probation and Parole, 82 Fed. Appx. 276, 277 (3d Cir. 2003)*; *Hollawell v. Gillis, 65 Fed. Appx. 809, 816* [*8] *(3d Cir.)* (not precedential), cert. denied, U.S. , *157 L. Ed. 2d 136, 124 S. Ct. 229 (2003).*

Neither party filed objections within the required filing time. Therefore, finding no clear error in the Magistrate Judge's determination, we adopted his Report and Recommendation on May 18, 2004. (Doc. 6.) The Pennsylvania Board of Probation and Parole was served with copies of Petition and Report and Recommendation on May 24, 2004. (Doc. 7.)

Respondent filed a Motion for Reconsideration on June 2, 2004, (Doc. 9), and a supporting brief on June 16, 2004, (Doc. 11). Respondent's counsel argued that reconsideration was proper because, through inadvertence, she thought the case was a civil rights case which allowed sixty days for a response. (Id.) She therefore did not immediately review the Petition and Report and Recommendation and missed the deadline for filing objections. (Id.)

The Court requested supplemental briefing, (Doc. 14), which Respondent filed on August 25, 2004, (Doc. 15). Respondent was allowed to file objections by Order of September 29, 2004, (Doc. 17). He filed objections, (Doc. 18), and a supporting brief, (Doc. 19), on October 13, 2004.

Respondent [*9] objects to the Magistrate Judge's Report and Recommendation on two bases: 1) "Petitioner failed to timely exhaust his available state

Case 2:02-cv-02687-ER    Document 85-9    Filed 03/15/2005    Page 5 of 9

Page 4
2004 U.S. Dist. LEXIS 23179, *

court remedies and exhaustion is not properly excused," (Doc. 18 P1); and 2) "Petitioner has been reviewed for parole since the Pennsylvania Supreme Court rendered its decision clarifying the impact of the 1996 amendments to the Parole law, *Winklespecht v. Pennsylvania Board of Probation and Parole, 571 Pa. 685, 813 A.2d 688, (Pa. 2002),* so no ex post facto claim exists," (id. P2).

**Discussion**

*A. Standard of Review*

If a party files objections to a magistrate judge's Report and Recommendation, the district court reviews *de novo* those portions of the Report and Recommendation to which objection has been made. *28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 141-42, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985).*

*B. Exhaustion of State Court Remedies*

Respondent maintains Petitioner's admitted failure to exhaust his state remedies should not be excused because the Pennsylvania Supreme Court has established that he has an avenue of exhaustion in the state courts. (Doc. 19 § C(1). [*10] ) Respondent states *Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287, 290 (Pa. 2001),* "made it unmistakably clear that an action in mandamus challenging parole decisions is available to pursue ex post facto claims based on a change in statutory requirement." (Id.)

As noted above, the Magistrate Judge determined that exhaustion in this case should be excused. We agree. Pursuant to *2254(b)(1)* exhaustion of state court remedies is excused if there is "an absence of available State corrective process[,] or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." Courts use the term "futile" or "futility" in referring to these exceptions to exhaustion. See, e.g., *Lines v. Larkins, 208 F.3d 153, 162-63 (3d Cir. 2001).* In Lines, the Third Circuit Court of Appeals identified four situations where futility exists. Id. One situation is "where a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergirding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field." *Lines, 208 F.3d at 162* [*11] (quoting *Allen v. Attorney General of Maine, 80 F.3d 569, 573 (1st Cir. 1996)).* The second is "where the state provides no means of seeking the relief sought." *Id. at 162-63* (citations omitted). Futility also exists where "the state courts have failed to alleviate obstacles to state review presented by such circumstances such as the petitioner's pro se status, poor handwriting, and illiteracy." Id. At 163 (citations omitted). Finally, futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Id.

In Long v. Pennsylvania Board of Probation and Parole, Civil No. 1:CV-04-0699, slip. op. at 6-7 (M.D. Pa. July 1, 2004), a recent decision on the same exhaustion issue presented here, Judge Caldwell rejected the Parole Board's position, quoting Lines first futility exception. Thus, he concluded that the petitioner's failure to exhaust his *ex post facto* claim regarding the 1996 parole amendments should be excused as futile because Pennsylvania's highest court has ruled unfavorably on materially the same claim under consideration and there is no plausible reason [*12] to believe that the court will reverse its decision. *Lines, 208 F.3d at 162* (quotation omitted). Judge Caldwell's determination is based on the recent Pennsylvania Supreme Court decision in *Finnegan v. Pennsylvania Board of Probation and Parole, 576 Pa. 59, 838 A.2d 684 (Pa. 2003),* in which the court held that the 1996 statutory changes in Pennsylvania parole law did not violate the federal constitutional ban on *ex post facto* laws.

The *Finnegan* holding is contrary to the Third Circuit decision in *Mickens-Thomas* upon which Petitioner bases his *ex post facto* claim. As will be discussed in greater detail below, Mickens-Thomas held that the 1996 amendments to the Pennsylvania Parole laws violated the *Ex Post Facto Clause of the United States Constitution* when applied retroactively. *Mickens-Thomas, 321 F.3d at 386.*

The *Finnegan* holding was first announced in *Winklespecht* where at least three justices agreed that the 1996 amendments to the Parole Act did not violate the *ex post facto clause* when applied to inmates sentenced prior to the promulgation of the amendments. See *Hall v. Pennsylvania Board of Probation and Parole, 851 A.2d 859, 861 (Pa. 2004).* [*13] In Hall, the Pennsylvania Supreme Court did not review the substantive merits of the petitioner's arguments - arguments basically the same as those presented here. *Hall, 851 A.2d at 861.* Rather, the court confirmed that Finnegan is controlling: "a clear majority of this Court explicitly held that application of the 1996 amendments to the Parole Act to individuals incarcerated prior to the effective date of those amendments did not violate the *ex post facto clause.*" Id. (citing *Finnegan, 576 Pa. 59, 838 A.2d 684*).

Looking at the three Pennsylvania Supreme Court cases addressing the *ex post facto* issue, "there is no plausible reason to believe that a replay will persuade the court to reverse its field." *Lines, 208 F.3d at 162.* Therefore, we conclude that the futility exception to the exhaustion requirement applies in this case.

Case 2:02-cv-02687-ER   Document 85-9   Filed 03/15/2005   Page 6 of 9

Page 5
2004 U.S. Dist. LEXIS 23179, *

Respondent's argument to the contrary is not persuasive for two reasons. First, Respondent's cited authority focuses on the procedural basis for finding a futility exception. "The Third Circuit has noted that to excuse exhaustion, 'state *procedure* must 'clearly foreclose' state court review of the [*14] unexhausted claims.'" (Doc. 19 § C(1) (quoting *Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002)* (emphasis added by Respondent) (other citation omitted)). We do not doubt Respondent's assertion that mandamus is an available process for bringing Petitioner's claim. *Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287, 290 (Pa. 2001)*. However, our conclusion is not founded on the procedural basis for finding futility - it is based on the fact that we find the situation at bar is one "where a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergirding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field." *Lines, 208 F.3d at 162*.

Second, although the petitioner in Coady raised the same *ex post facto* claim raised here and the Third Circuit Court of Appeals concluded that it could not reach the merits because he had failed to exhaust his state remedies, Coady was decided before the Pennsylvania Supreme Court decided Winklespecht and Finnegan.*Coady v. Vaughn, 251 F.3d 480 488-90*. Therefore, in *Coady* [*15] the Third Circuit Court looked only at the procedural basis for finding futility and not at the issue basis upon which we rely. Now that there is no doubt how the Pennsylvania Supreme Court would rule on the *ex post facto* claim, examination of only the procedural basis for finding futility is too narrow and misses the impact of current Pennsylvania law on the issue. n4

n4 We recognize that in at least two cases within the Middle District the court determined under facts similar to ours that exhaustion was not excused under the futility exception. See Simmons v. Pennsylvania Board of Probation and Parole, No. 04-1001, slip. op. at 6-7 (M.D. Pa. July 1, 2004); Barnhart v. Kyler, 318 F. Supp. 2d 250 (M.D. Pa. 2004). Like Respondent here, Judges Jones in Simmons and Judge Conner in *Barnhart* focus on the procedural basis for finding a futility exception. In Simmons the court stated that a prisoner must exhaust his state judicial remedies "unless state law *clearly forecloses* state court review of claims which have not previously been presented to a state court." Simmons, No. 04-1001 at 6 (quoting *Coady v. Vaughn, 251 F.3d 480, 489 (3d Cir. 2001)* (quoting *Lines, 208 F.3d at 163*)).

*Barnhart* extensively analyzed the exhaustion and procedural default doctrines, but did not consider futility on the issue basis identified in Lines. As discussed in the text, our conclusion regarding exhaustion is grounded on the issue basis for finding futility which is appropriate given the post-Coady decisions of the Pennsylvania Supreme Court on the *ex post facto* issue. We also note that the Lines quote does not apply to *all* methods of establishing futility when read in context: "The [petitioner's] assertion of **futility here is based upon availability of further state process**. We do not excuse exhaustion **in this context** unless state law *clearly forecloses* state court review . . . ." *Lines, 208 F.3d at 163* (bold emphasis added). Thus, when the availability of further state process is not the basis upon which futility is asserted, whether state law procedurally *clearly forecloses* state court review is not at issue.

[*16]

### C. Ex Post Facto Claim

Respondent contests Petitioner's argument that the 1996 amendments to the Parole Act violate the *Ex Post Facto Clause*, asserting that he misinterprets the Third Circuit's holding in *Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003)*.

Article 1, § 10 of the United States Constitution provides that "no state shall . . . pass any . . . ex post facto Law." "The *Ex Post Facto clause* . . . applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" *Mickens-Thomas, 321 F.3d at 383* (quoting *California Dep't of Corrections v. Morales, 514 U.S. 499, 506 n.3, 131 L. Ed. 2d 588, 115 S. Ct. 1597 (1995))*. The Mickens-Thomas court further explained that "a new law or policy violates the *Ex Post Facto clause* (1) when it is retrospective, i.e., when it 'applies to events occurring before its enactment,' and (2) when it 'disadvantage[s] the offender affected by it.'" *Id. at 384* (quoting *Weaver v. Graham, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981))*.

The new law at issue here is the 1996 amendment of the parole laws and policies, specifically the [*17] language inserted into the introductory provision of the Pennsylvania parole statutes. *61 P.S. § 331.1*, "Public policy as to parole," provides as follows:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while

protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.

In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

*61 P.S. § 331.1; Mickens-Thomas, 321 F.3d at 377.*

Before the 1996 amendments, the statute in effect provided:

The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period [*18] of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Act 1941, Aug. 6, P.L. 861, § 1; *Mickens-Thomas, 321 F.3d at 377-78.* Mickens-Thomas further noted that the Board's 1989 Manual of Operations and Procedures identified numerous factors "'relevant to the welfare of the client and the safety of the community to be weighted in considering an inmate for parole.'" *Id. at 378.* These factors include:

the seriousness of the offense; length of the sentence; institutional adjustment (behavior and program adjustment); and assessment of the effect of rehabilitation services while incarcerated. Whether the individual can be safely supervised in the community, personality characteristics, any history of family violence, strength of the parole plan (home and employment), testimony from victims, and opinions of the sentencing judge and prosecuting attorney must also be considered.

[*19] *Id.* Significantly, Mickens-Thomas stated that the modification of the statute must be assessed beyond the statute on its face: the changes must be assessed in the context of "recent policy statements issued by the Board and other government officials [and] other events coincident with the 1996 revision." *Id.* The important inquiry is whether, "in practice, the parole policies of the Commonwealth have undergone any substantive changes." *Id.*

The essential matter before us is not whether the statute on its face pertains to parole decisionmaking, but whether, *in practice,* the new language has altered the fundament for reviewing parole applications. . . . We look beyond the language of the statute and examine the Board's pronouncements of policy and its public statements that shed light on the interpretation of its statutory mandate.

*Id. at 384.* The court agreed with the Parole Board's argument that "the potential risk to safety in granting parole has always been a consideration in the decisional process," but concluded this "does not mean that the Board gave it the same weight after 1996 in the decisional equation." *Mickens-Thomas, 321 F.3d at 384.* [*20] After reviewing Board policy pronouncements, statistical data and the Board's position, the court determined that "the record is convincing that after 1996, the Board applied to the public safety interest far greater weight." *Id. at 385.* "Policy declarations in and after 1996 demonstrate that Board stance shifted and that, indeed, post-1996 considerations of public safety became the dominant concern of the Board." *Id. at 386.* And well the Board should have made public safety the dominant concern post-1996: the statute itself states that "the board shall *first and foremost* seek to protect the safety of the public." *61 P.S. § 331.1* (emphasis added.)

Although *Mickens-Thomas* specifically addressed the *ex post facto* issue in the context of an inmate whose life sentence had been commuted, the Third Circuit Court of Appeals has clearly held that the rationale applied to cases where the inmate was serving a lesser sentence and commutation was not an issue. See *Hart, 82 Fed. Appx. 276; Hollawell, 65 Fed. Appx. 809.*

The Magistrate Judge concludes that *Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003)*, [*21] controls in this case because it involved the same *ex post facto* consideration at issue here and is factually analogous. He therefore recommends the Court resolve this matter by ordering the Pennsylvania Board of Probation and Parole to re-adjudicate Petitioner's parole application applying the pre-1996 statute and corresponding rules. (Doc. 4 at 12.) See, *Mickens-Thomas, 321 F.3d at 393*; *Hart, 82 Fed. Appx. at 277*; *Hollawell, 65 Fed. Appx. at 816*.

Respondent disagrees that the case at bar is factually analogous to Mickens-Thomas. (Doc. 19 § C(2).) First, Respondent maintains that "Mickens-Thomas did not hold that the 1996 amendments changed the standards for parole." (Id.) Respondent finds significant the Circuit Court's recognitions "that in Winklespecht . . ., the Pennsylvania Supreme Court held the amendments did not change the criteria for parole." (Id. (citing *Mickens-Thomas, 321 F.3d at 391*).) The significance of this recognition is that Respondent sees it as an implicit acknowledgment by the Third Circuit Court that "state courts are the ultimate arbiters of state law" because the [*22] court neither disputed nor contradicted Winklespecht's reading of the statute. (Id.) Respondent concludes that the only reason Winklespecht did not impact the court's decision in Mickens-Thomas is that the Parole Board did not have the benefit of the Pennsylvania Supreme Court's Winklespecht decision when it made the decision on the petitioner's parole application. (Id.) As support, Respondent cites the following:

> This [Winklespecht] decision, made *after* the Board's actions on Thomas's parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case. Not having the benefit of the Supreme Court decision, the evidence before us shows that the Board interpreted § 331.1 to mandate foremost the consideration of public safety. The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function.

*Mickens-Thomas, 321 F.3d at 391*.

We agree with Respondent that the facts of our case are distinguishable in that the Parole Board made its decision regarding Petitioner's parole following the Pennsylvania Supreme Court's decisions in *Winklespecht* and [*23] *Finnegan*. Since Mickens-Thomas, no Third Circuit opinion has addressed the situation where the Parole Board's decision came *after* the Pennsylvania Supreme Court's decision. However, several district court cases have addressed the situation and, adopting the reasoning urged by Respondent, have determined that the timing distinction is dispositive. See, e.g., *Murphy v. Pennsylvania Board of Probation and Parole*, No. Civ. A. 04-2064, (E.D. Pa. Nov. 3, 2004) (adopting Report and Recommendation, *2004 U.S. Dist. LEXIS 18546, 2004 WL 2040502 (E.D. Pa. Sept. 13, 2004)*); *Dunston v. Chesney, 2004 U.S. Dist. LEXIS 22429*, No. Civ. A. 04-1873 (E.D. Pa. Nov. 2, 2004) (adopting Report and Recommendation, *2004 U.S. Dist. LEXIS 19902, 2004 WL 2203725 (E.D. Pa. Sept. 29, 2004)*); *Johnson v. Lavan, 2004 U.S. Dist. LEXIS 14245*, No. Civ. A. 04-00860 (E.D. Pa. July 19, 2004) (adopting Report and Recommendation, *2004 U.S. Dist. LEXIS 10697, 2004 WL 1291973 (E.D. Pa. June 11, 2004)*). Our research reveals that cases within the Middle District which have been presented with the issue either have not yet been decided, or have not addressed the impact of Winklespecht and Finnegan. In two cases not yet decided, the Magistrate Judge has filed his Report and Recommendation but the court [*24] has not ruled. See *Benchoff v. Colleran*, Civ. A. No. 3:CV-03-0740 (M.D. Pa. filed May 2, 2004) (Report and Recommendation filed June 23, 2004, Docket Entry 40); *Long v. Pennsylvania Board of Probation and Parole*, Civ. A. No. 1:CV-04-0699 (M.D. Pa. filed Apr. 1, 2004) (Report and Recommendation filed Sept. 22, 2004, Docket Entry 6). In both cases, the Magistrate Judge concluded the fact that the Parole Board's last parole decision came after Winkelspecht did not mean that the Parole Board had properly decided the petitioner's parole application. To the contrary, in both instances the Magistrate Judge recommended remand pursuant to Mickens-Thomas. In *Shaffer v. Meyers, 338 F. Supp. 2d 562, 2004 U.S. Dist. LEXIS 20172*, No. Civ. A. 3:03-0829, *2004 WL 2280113 (M.D. Pa. 2004)*, the case was adjudicated by a magistrate judge who did not address the Winklespecht issue. Rather, he found the case distinguishable from Mickens-Thomas in that the petitioner had been denied parole because of his repeated refusal to participate in a rehabilitative program, not because a more stringent standard had been used in evaluating parole. *Id. 338 F. Supp. 2d 562, 2004 U.S. Dist. LEXIS 20172, [WL] at *2*.

We are not persuaded that *Mickens-Thomas* dicta should [*25] be read as broadly or the holding applied as narrowly as the cases which have found the Winklespecht timing issue dispositive. Mickens-Thomas did not analyze Winklespecht. Winklespecht and *Finnegan* did not address many of the Mickens-Thomas court's concerns but looked at the statute on its face and determined that the 1996 statutory changes "did not create a substantial risk that parole would be denied any

more frequently than under the previous wording." *Winklespecht, 813 A.2d at 691*. The court explained that although the language about "protecting the safety of the public" and "assisting in the fair administration of justice" was added, the concepts were nothing new and had always been underlying concerns - the additional language merely clarified the policy underlying parole. *Id. at 692*. Following this observation, Winklespecht cites *Prater v. U.S. Parole Commission, 802 F.2d 948, 952 (7th Cir. 1986)* ("If . . . the Parole Commission takes a more jaundiced view of applications for parole, the ex post facto prohibition is not violated, even though a criminal's punishment may end up being longer or harsher than [*26] he hoped when he committed the crime."), and concludes "reordering of considerations for necessary decisions within an unchanged penalty do not rise to an ex post facto violation." *Winklespecht, 813 A.2d at 692*.

Given the basis upon which Mickens-Thomas was decided - the determination that the *ex post facto clause* was violated where policy statements and statistical data showed "Pennsylvania's change to the parole statute altered the manner in which the Parole Board weighed public safety in making parole decisions," *Hollawell, 65 Fed. Appx. at 815-16* (citing *Mickens-Thomas, 321 F.3d at 385*) - we cannot say that the Third Circuit Court of Appeals would agree with Winklespecht that "reordering of considerations for necessary decisions within an unchanged penalty do not rise to and ex post facto violation," *Winklespecht, 813 A.2d at 692*. In other words, because the important inquiry is whether, "in practice, the parole policies of the Commonwealth have undergone any substantive changes," *Mickens-Thomas, 321 F.3d at 378*, and because, based on statistical data and policy statements, Mickens-Thomas [*27] determined the Parole Board policies had undergone substantive changes, *id. at 385-86*, *Winklespecht's* and *Finnegan's* failure to look at the 1996 statutory changes from a similar perspective cautions against adopting Respondent's argument.

Our finding is reinforced by the Third Circuit Court of Appeals decisions in *Hollawell* and *Hart.* In Hollawell, the court stated "Mickens-Thomas clearly holds as a legal matter that the Pennsylvania statutory change violates the *Ex Post Facto Clause*," and the holding "is premised on factual evidence of the amendment's practical effect." *Hollawell, 65 Fed. Appx. at 816*. Hollawell identified the Mickens-Thomas holding without limitation and in the context of reviewing the effect of Winklespecht on the Mickens-Thomas holding. The court also observed "Mickens-Thomas is a precedent of this court, binding unless overruled *en banc* or by the Supreme Court of the United States." Id. Hart, decided seven months after Hollawell, noted that the Third Circuit Court of Appeals *en banc* denied rehearing and the United States Supreme Court denied the Pennsylvania Parole Board's petition [*28] for certiorari. *Hart, 82 Fed. Appx. at 278*. Hart concluded: "Mickens-Thomas, therefore is the law of this Circuit." Id. Thus, although not precedential, *Hollawell* and *Hart* indicate that a broad reading of the Mickens-Thomas holding is appropriate.

Based on this determination, we conclude that the most prudent action here is to apply Third Circuit precedent and grant the Petition insofar as we require the Pennsylvania Board of Probation and Parole to re-adjudicate Petitioner's parole application applying the pre-1996 statute and corresponding rules. *Mickens-Thomas, 321 F.3d at 393*; *Hollawell, 65 Fed. Appx. at 816*.

**Conclusion**

For the reasons set forth above, the Petition is granted to the extent identified. An appropriate Order follows.

RICHARD P. CONABOY

United States District Judge

DATED: 11/12/04

**ORDER**

AND NOW, THIS 12 DAY OF NOVEMBER 2004, FOR THE REASONS SET FORTH IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

> 1. The Magistrate Judge's Report and Recommendation, (Doc. 4), is **ADOPTED**;
>
> 2. Petitioner's habeas corpus petition, (Doc. 1), is **GRANTED** [*29] to the extent that we hereby order the Pennsylvania Board of Probation and Parole to re-adjudicate Petitioner's parole application applying the pre-1996 statute and corresponding rules;
>
> 3. The Clerk of Court is directed to close this case.

RICHARD P. CONABOY

United States District Judge