IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INMATES OF THE PENNSYLVANIA          :          CIVIL ACTION
DEPARTMENT OF CORRECTIONS,

                Plaintiffs          :

    v.                                                    :

THE PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al.,                          :

                Defendants          :          No. 02-2687

## ORDER

      AND NOW, this          day of          , 2005, upon consideration of plaintiff Jessica

Elaine Wolfe's motion to amend his second amended complaint and Commonwealth defendants'

opposition thereto, it is hereby ORDERED that said motion is DENIED.

                              BY THE COURT:

                              _____

                              EDUARDO C. ROBRENO, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INMATES OF THE PENNSYLVANIA     :     CIVIL ACTION
DEPARTMENT OF CORRECTIONS,

        Plaintiffs     :

    v.     :

THE PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al.,     :

        Defendants     :     No. 02-2687

## COMMONWEALTH DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND HIS SECOND AMENDED COMPLAINT

Defendants Castor, Descher, Green, Imboden, Lucht, Martinez, Muller, Ryan, Shannon, Ward, Webster, White, and Wildenstein (collectively, "Commonwealth defendants"), by their attorney, hereby oppose plaintiff Jessica Elaine Wolfe's motion to amend his second amended complaint by adding a claim for injunctive relief. For the reasons set forth in the attached memorandum of law, Wolfe's motion should be denied because of Wolfe's undue delay and bad faith, the unfair prejudice his amendment would cause Commonwealth defendants, and because such amendment would be futile.

WHEREFORE, defendants request the Court to enter an order substantially in the form

attached hereto, denying plaintiff's motion for leave to amend.

THOMAS W. CORBETT, JR.
ATTORNEY GENERAL

BY:     s/ Beth Anne Smith
Beth Anne Smith
Senior Deputy Attorney General
Identification No. 47162

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INMATES OF THE PENNSYLVANIA          :          CIVIL ACTION
DEPARTMENT OF CORRECTIONS,

                Plaintiffs          :

      v.          :

THE PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al.,          :

                Defendants          :          No. 02-2687

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND SECOND AMENDED COMPLAINT**

INTRODUCTION

On August 26, 2004, the Court issued a Memorandum and Order (hereinafter, "August 26 Order") granting in part and denying in part defendants' motion to dismiss plaintiffs' second amended complaint. Consequently, the Court has dismissed the class claims and most of the named defendants from the case. All that remain are plaintiff Jessica Elaine Wolfe's claims for damages against defendants Castor, Descher, Green, Imboden, Lucht, Martinez, Muller, Ryan, Shannon,Ward, Webster, White, and Wildenstein (collectively, "Commonwealth defendants") for their alleged violation of the Ex Post Facto Clause and retaliation. The August 26 Order specifically noted that only Wolfe's claims for damages remained. Wolfe v. Pennsylvania Department of Corrections, 334 F.Supp. 2d 762, 776 n.10 (E.D. Pa. 2004)("at present the two remaining counts seek only damages").

Now, after *nearly seven months* have passed, and *after* the undersigned counsel took Wolfe's deposition, Wolfe moves for leave to amend his second amended complaint by adding a claim for injunctive relief against Commonwealth defendants. Wolfe maintains that the delay

was "inadvertent" and the amendment – which he does not provide or describe – is so simple there is no need for him to file a third amended complaint; rather, the Court may simple "deem" the second amended complaint to be amended to state a claim for injunctive relief.

Commonwealth defendants hereby oppose Wolfe's motion because of his undue delay and bad faith, the unfair prejudice to Commonwealth defendants that would result from allowing the amendment as proposed at this late stage in the litigation, and most important of all, because the proposed amendment would be futile.


ARGUMENT

Applicable Standards

After an answer is served, a plaintiff may amend his complaint only by leave of court and "when justice so requires." Fed.R.Civ.P. 15(a). Although Rule 15(a) states that leave to amend should be "freely given," id., the district court may deny such leave where the amendment would cause undue delay or prejudice, or where the amendment would be futile. In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 153 (3d Cir.2004)(citing Oran v. Stafford, 226 F.3d 275, 291 (3d Cir.2000)). Leave may also be denied where there is bad faith on the part of the movant or repeated failure to cure amendments previously allowed. Foman v. Davis, 371 U.S. 178, 182 (1962).


The Court Should Deny Wolfe's Motion for Leave to Amend

*Undue Delay and Prejudice; Bad Faith; Previous Amendments*

As mentioned above, Wolfe waited seven months, and after his own deposition had taken place, before seeking leave to amend his second amended complaint, even though the Court's

2

August 26 Order made it clear that only the damages claim remained in the case. His only proffered "reason" for the seven month delay is that his failure to amend earlier was "inadvertent." Wolfe's undue delay has in fact prejudiced Commonwealth defendants. The undersigned counsel had only the barest notice that Wolfe intended to seek leave to amend. Wolfe never submitted the text of the proposed amendment much less a third amended complaint. Moreover, Wolfe's counsel flatly refused to stipulate that Commonwealth defendants could reopen Wolfe's deposition for the limited purpose of questioning him about any amendments; instead, attorney Viktoriya Meyerov indicated that the undersigned counsel would have to seek and obtain a Court order to have Wolfe's deposition reopened.

While leave to amend ordinarily shall be freely given, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir.1984). The district court is obliged to consider the prejudice caused by the delay as well as the reasons for the delay. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988). In the context of Rule 15(a), "prejudice" means "undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." Winer Family Trust v. Queen, 2005 WL 102936, *3 (E.D.Pa. 2005)(citing, inter alia, Deakyne v. Comm'rs of Lewes, 416 F.2d 290, 300 (3d Cir.1969)).

Wolfe's delay is "undue" for several reasons. Wolfe and his counsel have known since August 2004 that only remaining claim for relief was one for damages. At all times in this case, Wolfe has had at least two attorneys of record -- and now four or five -- any of whom could have filed the motion now before the Court. Yet, Wolfe waited almost seven months, and after his own deposition had been taken, before filing his motion. Even so, Wolfe did not go to the

trouble to prepare a third amended complaint or even submit the text of the proposed claim for injunctive relief. (As more fully discussed below, this omission presents its own problems in terms of notice to the defendants.)

When the undersigned counsel took Wolfe's deposition, she asked his counsel, Viktoriya Meyerov, to stipulate that should Wolfe amend his complaint, the deposition could be reopened to question Wolfe about any new allegations or claims. Attorney Meyerov flatly refused to agree. Instead, she replied that the undersigned counsel would have to obtain leave of Court in order to have the deposition. Given Wolfe's counsel's flat refusal to allow the deposition to be reopened to question Wolfe about the claim for injunctive relief, Wolfe's suggestion that Commonwealth defendants can still take additional discovery rings hollow.

Wolfe's bad faith in making his motion so late in the day is manifest not only by his counsel's flat refusal to agree to reopen his deposition but also by his request that the second amended complaint be "deemed" amended by adding his vague claim for injunctive relief, without giving any indication as to the specific relief being sought or against whom it should be imposed. Wolfe does not allege in either his second amended complaint or his motion for leave to amend just what illegal conduct the Court should enjoin. In his second amended complaint, the only conduct that Wolfe alleges was unlawful was the Parole Board's consideration of his refusal to participate in the prison's sex offender treatment program. But a convicted rapist's refusal to participate in sex offender treatment was a factor *before* 1996. See, e.g., <u>Weaver v. Pennsylvania Bd. of Probation and Parole</u>, 688 A.2d 766, 768 (Pa.Commw. 1997)(regarding 1995 Board decision to deny parole to rapist who refused to participate in prison's sex offender treatment program).

4

The Court should also consider the reason proffered by Wolfe for the seven month delay in filing his motion. Wolfe claims that the failure was "inadvertent." But that explanation does not hold water, given the clear statement by the Court in its August 26 Order that only a damages claim remained. Moreover, Wolfe has had the assistance of a number of attorneys. Their "inadvertent" failure to seek leave to add the claim for injunctive relief before now – particularly in light of their two previous amendments and flat refusal to allow Wolfe's deposition to be reopened for limited questioning -- should be seen as a transparent effort to "sandbag" or otherwise prejudice the defendants.

*Futility*

An amendment to a complaint is futile if it would fail to state a claim upon which relief may be granted. In re Alpharma, 372 F.3d at 153. Thus, the same standard of legal sufficiency under Rule 12(b)(6) applies to a motion for leave to amend. *Id.* at 153-54. In other words, the Court must accept as true all well-pleaded allegations in the complain and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.1985). An amendment is futile if the plaintiff cannot prove any set of facts, consistent with the allegations of the amended complaint, that would entitle him to relief. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988). The Court may also consider documents "integral to or explicitly relied upon in the complaint" and related matters of public record. Winer Family Trust v. Queen, 2005 WL 102936, *4 (E.D.Pa. 2005)(citing In re Burlington Coat Factory, 114 F.3d at 1426)).

As discussed above, Wolfe has not revealed the text of his proposed amendment beyond a bare claim for "injunctive relief to prevent defendants from continuing to engage in their

unconstitutional acts in the future." Wolfe Mem., at 2. Thus, a scrutiny of the Second Amended Complaint and the identity and current position of the remaining defendants is necessary.

As the Court is aware, there are two sets of defendants: officials of the Pennsylvania Department of Corrections ("DOC") and officials of the Pennsylvania Board of Probation and Parole ("Parole Board").

The only two remaining DOC defendants are Brenda Wildenstein and Robert Shannon. Wildenstein and Shannon both worked at the State Correctional Institution at Mahanoy ("Mahanoy") where Wolfe was once incarcerated and where he claims Wildenstein and Shannon violated his constitutional rights. See Second Amended Complaint, ¶¶

Today, none of these three individuals is at Mahanoy. Wolfe is incarcerated at the State Correctional Institution at Graterford ("Graterford"). Since his transfer to Graterford, his prescriptive program plan has been written by a Graterford counselor (who is not a defendant and whom Wolfe does not seek leave to add). Wildenstein and Shannon are, respectively, a Unit Manager and Superintendent at the State Correctional Institution at Frackville ("Frackville"). Wolfe does not and cannot allege that either Wildenstein or Shannon has any involvement in his current treatment at Graterford. Thus, any claim for prospective injunctive relief against Wildenstein and Shannon, in either their individual or official capacities, would be moot and therefore futile.[1]

---

[1]The Eleventh Amendment would bar any claim for retrospective declaratory or injunctive relief against any of the Commonwealth defendants. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)(Young exception "does not permit judgments against state officers declaring that they violated federal law in the past"); Blanchiak v. Allegheny Ludlum Corp., 77 F.3d 690, 697 (3d Cir.1995)(11th amendment bars "relief that essentially serves to compensate a person injured in the past by an action of a state official, even though styled as something else").

Of the eleven Parole Board defendants, only one – Allen Castor – both (a) participated in any of the three parole decisions that Wolfe challenges and (b) is still a member of the Parole Board. His term expires this year.[2] Barbara Descher, the only other Parole Board defendant who participated in any of the parole decisions regarding Wolfe, is no longer with the Board. Therefore, any claim for injunctive relief against any of the Parole Board defendants in their official capacities – with the arguable exception of Castor, until his term expires – would be moot and therefore futile.

But even aside from the futility of adding a claim for injunctive relief against persons who have no power to comply with an injunction, and even assuming that Wolfe had sought leave to add one or more new defendants, the Court should not grant him leave to amend in the manner he requests, by "deeming" the second amended complaint "to state a claim for injunctive relief," particularly where Wolfe has neither described the unlawful conduct he wishes to enjoin, nor furnished the text of the claim for injunctive relief.

Under the doctrine of Ex parte Young, a plaintiff may sue a state official in his official capacity for prospective injunctive relief in order to prevent a continuing violation of federal law. Papasan v. Allain, 478 U.S. 265, 277-78 (1986)(focus of Young exception is on addressing ongoing violations of federal law). However, the second amended complaint does not suggest any unlawful conduct by any defendant that could be enjoined. All defendants have a right to fair notice of the claims against them. In this case, Wolfe alleges only that the Parole Board defendants should not have considered his refusal to participate in sex offender treatment and that they imposed "parole requirements and standards not applicable to [him]." Second Amended Complaint, ¶ 3. Later, Wolfe adds that the Parole Board defendants unlawfully

---

[2] Defendant Castor's term on the Parole Board is scheduled to expire in June 2005, but will likely be extended for 90 days until his replacement is appointed.

applied the 1996 amendment of 61 P.S. § 331.1, which designates public safety as the paramount concern. Id., ¶ 128.

Only the most recent Parole Board decision denying Wolfe parole has any relevance here. Johnson v. Lavan, 2004 WL 1291973, *4 n.4 (E.D. Pa. 2004), *report and recommendation adopted by* Johnson v. Lavan, 2004 WL 1622051 (E.D. Pa. 2004). In that decision, made in July 2004, the Parole Board (per defendant Castor and non-defendant Hearing Examiner Anthony DiBernardo) denied Wolfe parole, based on his refusal to accept responsibility for the offense(s) committed; his lack of remorse for the offense(s) committed; the [negative] recommendation by the DOC; his need to participate in and complete additional institutional programs; and his interview with the Hearing Examiner and/or Board member. See July 22, 2004 Notice of Board Decision, a true and correct copy of which is attached as Exhibit 1. Nothing in this list suggests that Castor and DiBernardo applied the amended version of Section 331.1. And, at his deposition, Wolfe admitted that the list was accurate: he did not accept responsibility for the crimes for which he was sentenced, he did not feel remorse for said crimes, the DOC did give him a negative recommendation for parole; and he refused to participate in sex offender treatment, even though he is a convicted rapist. Wolfe dep., attached as Exhibit 2. Moreover, none of the listed reasons is an unlawful basis upon which to deny parole. The General Assembly has long vested the Parole Board with discretion to grant or deny parole for numerous reasons, including the nature and character of the offense for which the prisoner was sentenced; the character, mental characteristics, habits, antecedents, and environment of the prisoner; the conduct of the prisoner while in prison and his physical, mental and behavior condition and history; and the prisoner's complete criminal record, and any recommendation made by the trial judge and the prison superintendent who has had charge of the prisoner. See, e.g., Gahagan v.

Pennsylvania Bd. of Probation and Parole, 444 F.Supp. 1326, 1333 (E.D. Pa. 1978)(citing 61 P.S. § 331.19).

Interestingly, Wolfe never articulates just what factors the Parole Board improperly considered when they denied him parole. In his original and amended pleadings, the only factor that appears to have any significance to Wolfe is the Parole Board's consideration of his refusal to participate in the prison's sex offender treatment program. That alleged conduct does not support either his Ex Post Facto or retaliation claim, because as noted above, a Parole Board has long had the discretion to refuse parole based on a prisoner's failure or refusal to participate in sex offender treatment. Shaffer v. Meyers, 338 F.Supp.2d 562, 565 (M.D.Pa.2004)(dismissing prisoner's ex post facto claim, stating that he was denied parole "not because a more stringent standard in evaluating parole has been applied in his case, but because of his repeated refusal to participate in a rehabilitative prison program"). Such failure or refusal to participate in treatment is a legitimate, non-retaliatory reason to deny parole. Compare Wilson v. Wilson, 2005 WL 331487, *6 (E.D.Pa. 2005)(citing Shaffer, 338 F.Supp.2d at 566 (requirement that an inmate participate in sex offender treatment programs to obtain parole was rationally related to a legitimate state interest); Carter v. Muller, 45 F.Supp.2d 453, 457 (E.D.Pa.1999)(consideration of whether prisoner completed relevant treatment programs before being released into the community is not at all arbitrary and is entirely consistent with the Parole Board's statutory duty to consider character, mental characteristics, habits, antecedents, connections and environment of the prospective parolee).

Wolfe argues in his motion that he is challenging the Parole Board's use of parole guidelines, claiming that such guidelines violated his rights under the Ex Post Facto Clause. This claim, too, is unavailing and futile. Pennsylvania parole guidelines are not "laws" for ex

post facto purposes. <u>Johnson v. Lavan</u>, 2004 WL 1291973, *4 (E.D. Pa. 2004), *report and recommendation adopted by* <u>Johnson v. Lavan</u>, 2004 WL 1622051 (E.D. Pa. 2004); <u>Stewart</u>, 714 A.2d at 509. Parole "guidelines," as their very name reveals, are "for the Board's assessment of a prisoner's parole application, and are purely an aid for the Board's exercise of its discretion." <u>See</u> <u>Finnegan v. Pennsylvania Bd. of Probation and Parole</u>, 838 A.2d 684, 690 (Pa. 2003), *overruled, in part, on other grounds*, <u>Cimaszewski v. Board of Probation and Parole</u>, __ A.2d __ 2005 WL 442157 (Pa. 2005); <u>Stewart v. Pennsylvania Bd. of Probation and Parole</u>, 714 A.2d 502, 509 (Pa.Commw. 1998)("the Parole Board has a statutory mandate to exercise its discretion"). "As long as a factor considered by the parole board is within the discretion vested in the board by the legislature, a parole decision relying upon it is immune from judicial interference." <u>DeVyver v. Warden, U. S. Penitentiary</u>, 388 F.Supp. 1213, 1219 (E.D. Pa. 1974).

Unquestionably, the Parole Board is vested with discretion, by statute, to consider many factors in deciding whether to grant or deny parole. Long before 1996, the pertinent Pennsylvania statute, 61 P.S. § 331.19, expressly provided that the Parole Board should consider the nature and character of the offense for which the prisoner was sentenced; the character, mental characteristics, habits, antecedents, and environment of the prisoner; the conduct of the prisoner while in prison and his physical, mental and behavior condition and history; and the prisoner's complete criminal record, and any recommendation made by the trial judge and the prison superintendent who has had charge of the prisoner. <u>See, e.g.</u>, <u>Gahagan v. Pennsylvania Bd. of Probation and Parole</u>, 444 F.Supp. 1326, 1333 (E.D. Pa. 1978)(citing 61 P.S. § 331.19).

In this case, Wolfe maintains that in its decision to deny him parole, the Parole Board improperly considered his refusal to participate in the Sex Offender Treatment Program (and apparently, the prison's negative recommendation for parole for the same reason). Second

amended complaint, ¶¶ 71-74, 86-88. He also admits that his refusal to participate in sex offender programming was the deciding factor in the negative recommendation for and subsequent denial of parole. Id., ¶ 89. Plainly, even before 1996, considering a prisoner's refusal to participate in a prescribed program -- particularly a convicted rapist's refusal to participate in a sex offender program – was well within the discretion vested in the Parole Board by the General Assembly. See, e.g., Weaver v. Pennsylvania Bd. of Probation and Parole, 688 A.2d 766, 768 (Pa.Commw. 1997)(regarding 1995 Board decision to deny parole to rapist who refused to participate in prison's sex offender treatment program); Eldridge v. Pennsylvania Board of Probation and Parole, 688 A.2d 273 (Pa. Commw. 1997)(claims relating to Sept. 14, 1995 parole board decision); Ramos v. Vaughn, No. 94-2596, 1995 WL 386573 (E.D. Pa. Jun. 27, 1995).

Because Wolfe's claim for injunctive relief would not withstand a motion to dismiss, his proposed amendment to the second amended complaint would be futile. Accordingly, the Court should deny his motion for leave to amend the complaint.


CONCLUSION

For all the reasons stated above, defendants respectfully request the Court to deny plaintiff's motion for leave to amend his second amended complaint.

<div style="margin-left:40%">

THOMAS W. CORBETT, JR.
ATTORNEY GENERAL

BY:    s/ Beth Anne Smith
       Beth Anne Smith
       Senior Deputy Attorney General
       Identification No. 47162

       Susan J. Forney
       Chief Deputy Attorney General
       Chief, Litigation Section

</div>





# COMMONWEALTH OF PENNSYLVANIA
# BOARD OF PROBATION AND PAROLE

1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

### NOTICE OF BOARD DECISION

NAME: JAMES ELLIOT WOLFE                    PAROLE NO:  8362O
INSTITUTION:   SCI - GRATERFORD           INSTITUTION NO:   DB0954
  JESSICA WOLFE

AS RECORDED ON JULY 22, 2004 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HASDETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME.THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSE(S) COMMITTED.

YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.

YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.

YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOU WILL BE REVIEWED IN OR AFTER JULY, 2006.

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

(CONTINUE ON PAGE 2)

FILE COPY

ACTION RELEASED

Notice of Board Decision
PBPP 15(08/02) 1 of 2



PAROLE NO: 83620

(CONTINUED FROM PAGE 1)
WHETHER YOU HAVE PARTICIPATED IN A TREATMENT PROGRAM FOR:

SEX OFFENDERS.

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE
DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE RECEIVED A CLEAR CONDUCT RECORD AND COMPLETED THE DEPARTMENT
OF CORRECTIONS' PRESCRIPTIVE PROGRAM(S).

KLS  07/22/2004

FILE COPY

Lawrence F. Murray

Lawrence F. Murray
Board Secretary

Notice of Board Decision
PBPP 15(08/02) 2 of 2

ORIGINAL

1     UNITED STATES DISTRICT COURT
    FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2        * * *

3
  INMATES OF THE    : CIVIL ACTION
4 PENNSYLVANIA DEPARTMENT OF:
  CORRECTIONS,     :
5      Plaintiffs  :
            :
6    vs.      :
            :
7 THE PENNSYLVANIA   :
  DEPARTMENT OF CORRECTIONS,:
8 et al.,      :
      Defendants  : NO. 02-2687
9
        * * *
10

11     Video conference deposition of

12 JESSICA WOLFE, taken at the FEDERAL

13 COURTHOUSE, 6th and Market Streets,

14 Courtroom 3I, Philadelphia, Pennsylvania,

15 19106, on Thursday, February 10, 2005,

16 beginning at approximately 11:00 a.m.,

17 before Michele Matteo, RPR, Certified

18 Shorthand Reporter, License Number XI01712.

19
        * * *
20
     PRECISION REPORTING, INC.
21  230 South Broad Street - 11th Floor
     Philadelphia, PA  19102
22      (215) 731-9847
      1-800-528-3060
23 2149 Galloway Road   1134 Parliament Way
  Bensalem, PA  19020  Thorofare, NJ  08086
24 (215) 731-9847    (856) 848-4978

COMMONWEALTH'S
EXHIBIT
1

```
 1        A P P E A R A N C E S :

 2

 3              VIKTORIYA MEYEROV, ESQUIRE
                ANDREA L. D'AMBRA, ESQUIRE
                DRINKER, BIDDLE & REATH, LLP
 4              One Logan Square
                18th & Cherry Streets
 5              Philadelphia, Pennsylvania  19103

 6              -- Representing the Plaintiffs

 7

 8

 9              BETH A. SMITH, ESQUIRE
                DEPUTY ATTORNEY GENERAL
                OFFICE OF ATTORNEY GENERAL
10              21 South 12th Street, 3rd Floor
                Philadelphia, Pennsylvania  19107
11
                -- Representing the Defendants
12
                        *  *  *
13

14

15

16

17

18

19

20

21

22

23

24
```

PRECISION REPORTING, INC. (215) 731-9847

JESSICA WOLFE

 1                        MS. MEYEROV:  Objection.
 2                        THE WITNESS:  I have no idea.
 3      BY MS. SMITH:
 4      Q.      Okay.  Do you have any idea why Skip
 5      Fields was under the impression that you had
 6      completed the first phase of sex offender
 7      treatment programming?
 8                        MS. MEYEROV:  Objection.
 9                        THE WITNESS:  I have no idea.
10      BY MS. SMITH:
11      Q.      Okay.  Is it safe to say that after
12      you walked out of that last session, that
13      you referred to in your Complaint, you have
14      not attended any sex offender treatment
15      programs at either Mahanoy or Graterford?
16                        MS. MEYEROV:  Objection.
17                        THE WITNESS:  Well, as I was
18               explaining to you before, that Dr.
19               Holland-Hull explained it, he felt
20               that I was being treated now.
21      BY MS. SMITH:
22      Q.      Okay.  But would you agree with me
23      that no one else at Graterford feels that
24      you attended sex offender treatment


        PRECISION REPORTING, INC. (215) 731-9847

JESSICA WOLFE

1     programming?

2                     MS. MEYEROV:  Objection.

3     BY MS. SMITH:

4     Q.      Well, let me put it another way.

5                     Are you aware of anyone else

6     at Graterford, other than Dr. Holland-Hull,

7     who believes that you have completed the sex

8     offender treatment program?

9                     MS. MEYEROV:  Objection.

10    BY MS. SMITH:

11    Q.      Can you answer that for me?

12            A.      Well, let me say it this way.

13    There is documentation to the effect that I

14    didn't attend what they felt was the

15    appropriate sex offender group.

16    Q.      Okay.  And would you agree that you

17    have not attended what they felt was the

18    appropriate sex offender group?

19            A.      Right.

20    Q.      Okay.

21            A.      Might I add that none of those

22    individuals are psychiatrists.

23    Q.      Did you see a psychiatrist at

24    Mahanoy?


PRECISION REPORTING, INC. (215) 731-9847

1      Wildenstein or Shannon told you that?

2            A.      That's --

3                    MS. MEYEROV:   Objection.

4      BY MS. SMITH:

5      Q.      Do you understand my question?

6            A.      Yeah.  I -- I don't believe

7      they have.

8      Q.      Okay.  And I think I exhausted this

9      before, but I just want to make certain.

10     Getting back to the individual parole

11     members, other than what you've already

12     testified to, is there -- do you have any

13     reason to believe that had you completed a

14     sex offender treatment program they would

15     have -- that they would have still denied

16     your request for parole?

17           A.      I ain't sure.

18     Q.      Okay.  Did Brenda Wildenstein or

19     Robert Shannon ever give you new

20     prerequisites for parole?

21                   MS. MEYEROV:   Objection.

22                   THE WITNESS:   There's been

23           different add-ons to my -- like I was

24           saying, on my complete plan, right?

JESSICA WOLFE

1          A.      Right.

2     Q.      Okay.  And I think you testified

3     earlier that you were seen within two years

4     by the parole board, sometime in July of

5     2004, correct?

6          A.      Yeah, that's after -- that was

7     the -- she accepted -- or the parole board

8     had approved my January 28th, 2003 -- or

9     2004 for administrative review.

10    Q.      I'm sorry, you did get administrative

11    review?

12         A.      Yeah, they -- they never

13    contacted me directly.  It was I put it in,

14    and they just like -- I never heard nothing,

15    and then all at once in July, I was seen.

16    So they -- they evidently granted me early

17    review.

18    Q.      Okay.  So you did not think that this

19    was taking place because of that -- that

20    last green sheet which said you would be

21    seen in September of 2004, you thought this

22    was done pursuant to your administrative

23    complaint?

24         A.      Right.


PRECISION REPORTING, INC. (215) 731-9847

JESSICA WOLFE

1    Q.      Okay.  Now, I think -- I think -- I'm
2    sorry.  Go ahead.
3          A.      Right now -- now, after they
4    seen me on the 2004 here in July, I put in
5    for a petition in rank, and -- to be seen.
6    They said they're going to see me upon
7    receiving information, and I haven't yet
8    seen them.  I filed a thing in the court on
9    that.
10   Q.      Which court did you file that in?
11         A.      Commonwealth.
12   Q.      And am I correct in understanding
13   that you put that in because you wanted to
14   be seen before July 2006?
15         A.      Well, I think I should be seen
16   now, because they reviewed me on
17   impermissible criteria.
18   Q.      Okay.  And the impermissible criteria
19   is your refusal to accept responsibility,
20   your lack of remorse, and so forth?
21         A.      Right.
22   Q.      Okay.  Now, it's your position that
23   you didn't even commit the crimes that
24   they've said you committed, correct?

PRECISION REPORTING, INC. (215) 731-9847

JESSICA WOLFE

1    A.  Right.

2  Q.  Okay.  So you don't have any remorse

3 for that, am I right?

4    A.  Right.

5  Q.  Okay.  You also refused to accept

6 responsibility for those crimes -- I'll just

7 leave it at rape at this point.

8    A.  Right.

9  Q.  Okay.  And I just want to make

10 absolutely sure I understand, when in

11 paragraph 90 you say that defendants have

12 sought to impose new prerequisites for

13 parole, you're referring to the

14 prerequisites that are set forth in the

15 green sheets by the parole board?

16    A.  That and the responses to my

17 administrative review request.

18  Q.  Okay.  You're not referring to

19 anything that Wildenstein or Shannon did?

20      MS. MEYEROV:  Objection.

21      THE WITNESS:  Not necessarily,

22   you're right.

23 BY MS. SMITH:

24  Q.  Well, don't put it that way.

```
 1                        Am I right?
 2              A.        Yeah, basically.
 3     Q.       Okay.   Is there any way I'm not
 4     right?
 5              A.        Well, to my knowledge, you're
 6     right.
 7     Q.       Okay.   Now, in paragraph 92, you
 8     indicate that you have three children,
 9     correct?
10              A.        Yes, ma'am.
11     Q.       Could you just state their names and
12     ages.
13              A.        Yeah, there's James Elliott
14     Wolfe, III.  He turned 17 on February 7th.
15     Q.       Okay.
16              A.        And then we have John Stephen
17     Wolfe, okay.
18     Q.       Is Stephen -- I'm sorry, is Stephen
19     his middle name?
20              A.        Yes, Stephen, S-T-E --
21     S-T-E-P-H-E-N.
22     Q.       How old is he?
23              A.        He's going to be 15 April 2nd.
24     Q.       Okay.
```

<u>CERTIFICATE OF SERVICE</u>

I, Beth Anne Smith, Senior Deputy Attorney General, hereby certify that defendants' response in opposition to plaintiff's motion for leave to amend his second amended complaint was filed electronically on March 21, 2005 and is available for viewing and downloading from the ECF system. I further certify that a true and correct copy of said document was served on the same date by electronic mail notification to:

> Andrea D'Ambra, Esquire
> Drinker Biddle & Reath LLP
> 18th & Cherry Streets
> One Logan Square
> Philadelphia, Pa 19103-6996

                                       THOMAS W. CORBETT, JR.
                                       ATTORNEY GENERAL

                              BY:      <u>s/ Beth Anne Smith</u>
                                       Beth Anne Smith
                                       Senior Deputy Attorney General
                                       Identification No. 47162

                                       Susan J. Forney
                                       Chief Deputy Attorney General
                                       Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

12