## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| "JESSICA ELAINE WOLFE©" on behalf of herself and all similarly situated INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : : : : | CIVIL CLASS ACTION |
| Plaintiff | : : : | |
| v. | : : | |
| JEFFREY BEARD, WILLIAM J. WOLFE, MARILYN S. BROOKS, DONALD KELCHER, MARTIN DRAGOVICH, FRANK D. GILLIS, HARRY E. WILSON, THOMAS LAVAN, ROBERT SHANNON, DAVID DiGUGLIELMO, LOUIS S. FOLINO, L.P. BENNING, GEORGE PATRICK, KENNETH D. KYLER, FREDRIC ROSENMEYER, JOSEPH F. DESUTA, SHIRLEY MOORE, BARRY JOHNSON, WILLIAM S. STICKMAN, RANDALL BRITTON, JOE CHESNEY, FRANK TENNIS, JOHN PALAKOVICH, RAYMOND J. SOBINA, RAYMOND J. COLLERAN, EDWARD KLEM, DONALD VAUGHN NEAL K. MECHLING, SR., WILLIAM WARD, BENJAMIN MARTINEZ, ALLEN CASTOR, BARBARA DESCHER, NICHOLAS MULLER, JEFFREY R. IMBODEN, GARY R. LUCHT, SEAN R. RYAN, MICHAEL M. WEBSTER, LLOYD A. WHITE, BRENDA WILDENSTEIN, MS. BORIS, and MICHAEL L. GREEN, in his official capacity as Acting Chairman of the Pennsylvania Board of Probation and Parole, | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |
| Defendants. | : | No. 02-2687 |

## THIRD AMENDED CLASS ACTION COMPLAINT

## INTRODUCTION

1.      JESSICA ELAINE WOLFE©; and all similarly situated, inmates in the custody and care of the Pennsylvania Department of Corrections (DOC), bring this action to benefit individually, and for each other, not excluding Jessica Elaine Wolfe©,[1] and to challenge the defendants deliberate, continuous deprivations of Constitutional and Civil Rights.

2.      Plaintiff avers that the DOC, the Pennsylvania Board of Probation and Parole (the "Board" or "Parole Board") and all of the Defendants identified herein have continuously, systematically and deliberately denied parole to, and retaliated against, Plaintiff and others similarly situated based on their refusal to participate in voluntary sex offender programs that require participants to disclose past sexual conduct where such disclosure may subject them to criminal prosecution, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

3.      In addition, Defendants have, through their retaliation against Plaintiff and their imposition of parole requirements and standards not applicable to her, violated the Ex Post Facto Clause and the First Amendment to the Constitution, without any justified State Interest.

4.      By this Complaint, Plaintiff petitions this Court for compensatory and punitive damages as well as injunctive and declaratory relief.  Based on personal knowledge, information and belief, Plaintiff alleges:

---

[1]      By filing this Third Amended Complaint, Plaintiff does not surrender or waive any of the rights claimed and/or reserved in Exhibit 1 to the Second Amended Class Action Complaint.

## PARTIES

5.     Plaintiff is a Pennsylvania citizen, currently an inmate at SCI-Graterford in Graterford, Pennsylvania, where her prisoner identification number is DB 0954.   She was housed previously at SCI-Pittsburgh, SCI-Camp Hill and SCI-Mahanoy.

6.     Defendant Jeffrey Beard (and/or his successor in office) is sued in both his individual and official capacities as Commissioner of the Pennsylvania Department of Corrections.  Upon information and belief, Defendant Jeffrey Beard, acting under color of state law, is responsible for the development, implementation and administration of all correctional policies and programs within the Commonwealth of Pennsylvania.  He is also responsible for the proper functioning correctional facilities under his command, which responsibilities include ensuring that each inmate is afforded his or her constitutional and civil rights.

7.     Defendant Edward Klem (and/or his successor in office) is sued in both his individual and official capacities as Superintendent of SCI-Mahanoy.  Upon information and belief, Defendant Edward Klem, acting under color of state law, is responsible for the implementation and administration of all correctional policies and programs at SCI-Mahanoy. He is also responsible for the proper functioning of the facility under his command, which responsibilities include ensuring that each inmate is afforded his or her constitutional and civil rights.

8.     Defendant Brenda Wildenstein is sued in both her individual and official capacities as A-Block Unit Manager at SCI-Mahanoy.  Upon information and belief, Defendant Brenda Wildenstein acted under the color of state law with respect to her actions and inactions complained of herein.

9.    Defendant Ms. Boris is sued in both her individual and official capacities as A-Block Counselor at SCI-Mahanoy.  Upon information and belief, Defendant Ms. Boris acted under color of state law with respect to her actions and inactions complained of herein.

10.    Defendant David DiGuglielmo (and/or his successor in office) is sued in both his individual and official capacities as Superintendent of SCI-Graterford.  Upon information and belief, Defendant David DiGuglielmo, acting under color of state law, is responsible for the implementation and administration of all correctional policies and programs at SCI-Graterford. He is also responsible for the proper functioning of the facility under his command, which includes ensuring that each inmate is afforded his or her constitutional and civil rights.

11.    Defendant Donald T. Vaughn was, at times material to this action, Superintendent of SCI-Graterford.  He is sued in both his individual and official capacities.  Upon information and belief, Defendant Donald Vaughn, acting under color of state law, was responsible for the implementation and administration of all correctional policies and programs at SCI-Graterford. He also was responsible for the proper functioning of the facility under his command, which responsibilities include ensuring that each inmate is afforded his or her constitutional and civil rights.

12.    The following Defendants (and/or their successors in office) are sued both in their individual and in their official capacities as Superintendents of the Pennsylvania State Correctional institutions: William J. Wolfe (SCI-Albion); Marilyn S. Brooks (SCI-Cambridge Springs); Donald Kelcher (SCI-Camp Hill); Martin Dragovich(SCI-Chester); Frank D. Gillis (SCI-Coal Township); Harry E. Wilson (SCI-Cresson); Thomas Lavan (SCI-Dallas); Neal K. Mechling (SCI-Fayette); Robert Shannon (SCI-Frackville); Louis S. Folino (SCI-Greene); L.P. Benning (SCI-Greensburg); George Patrick (SCI-Houtzdale); Kenneth D. Kyler (SCI-Huntingdon); Fredric Rosenmeyer (SCI-Laurel Highland); Joseph F. Desuta (SCI-Mercer);

Shirley Moore (SCI-Muncy); Barry Johnson (SCI-Pine Grove); William S. Stickman (SCI-Pittsburgh); Randall Britton (SCI-Quehanna Boot Camp); Joe Chesney (SCI-Retreat); Frank Tennis (SCI-Rockview); John Palakovich (SCI-Smithfield); Raymond J. Sobina (SCI-Somerset); Raymond J. Colleran (SCI-Waymart). Upon information and belief, these Defendants, acting under color of State law, are responsible for the implementation and administration of all correctional policies and programs within their institutions. They also are responsible for the proper functioning of the facilities under their command, which includes ensuring that each inmate is afforded his or her constitutional and civil rights.

13.     Defendant William Ward (and/or his successor in office) is sued in both his individual and official capacities as Chairman of the Pennsylvania Board of Probation and Parole. Upon information and belief, Defendant William Ward, acting under color of state law, was responsible for the implementation and administration of all Parole Board policies until the expiration of his term on February 14, 2003. He also was responsible for the proper functioning of the Parole Board, which responsibilities include ensuring that each inmate is afforded his or her constitutional and civil rights.

14.     Defendant Benjamin Martinez (and/or his successor in office), is sued in both his individual and official capacities as Chairman of the Pennsylvania Board of Probation and Parole and a member of the Board. Upon information and belief, Defendant Benjamin Martinez, acting under color of State law, is responsible for the implementation and administration of all Parole Board policies. He is also responsible for the proper functioning of the Parole Board, which includes ensuring that each inmate is afforded his or her constitutional and civil rights.

15.     Defendant Allen Castor (and/or his successor in office), is sued in both his individual and official capacities as a Parole Board member. Upon information and belief,

Defendant Allen Castor acted under the color of state law with respect to his actions and inactions complained of herein.

16.    Defendant Jeffrey R. Imboden (and/or his successor in office), is sued in both his individual and official capacities as a Parole Board member.  Upon information and belief, Defendant Jeffrey R. Imboden acted under color of State law with respect to his actions and inactions complained of herein.

17.    Defendant Gary R. Lucht (and/or his successor in office), is sued in both his individual and official capacities as Parole Board member.  Upon information and belief, Defendant Gray R. Lucht acted under color of state law with respect to his actions and inactions complained of herein.

18.    Defendant Sean R. Ryan (and/or his successor in office), is sued in both his individual and official capacities as a Parole Board member.  Upon information and belief, defendant Sean R. Ryan acted under color of state law with respect to his actions and inactions complained of herein.

19.    Defendant Michael M. Webster (and/or his successor in office), is sued in both his individual and official capacities as a Parole Board member.  Upon information and belief, Defendant Michael M. Webster acted under color of state law with respect to for his actions and inactions complained of herein.

20.    Defendant Lloyd A. White (and/or his successor in office), is sued in both his individual and official capacities as a Parole Board member.  Upon information and belief, defendant Lloyd A. White acted under color of state law with respect to his actions and inactions complained of herein.

21.    Defendant Barbara K. Descher (and/or her successor in office), is sued in both her individual and official capacities as a Parole Board member.  Upon information and belief,

Defendant Barbara K. Descher acted under color of state law with respect to her actions and inactions complained of herein.

22.    Defendant Nicholas P. Muller (and/or his successor in office), is sued in both his individual and official capacities as a Parole Board member.  Upon information and belief, Defendant Nicholas P. Muller acted under color of state law with respect to his actions and inactions complained of herein.

23.    Defendant Michael L. Green (and/or his successor in office), is sued in his official capacity as Acting Chairman of the Pennsylvania Board of Probation and Parole.  Upon information and belief, Defendant Michael L. Green acted under the color of state law with respect to his actions and inactions complained of herein.

## JURISDICTION AND VENUE

24.    This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

25.    Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because actions giving rise to this case occurred in this District.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff has brought this action on her own behalf, and under Federal Rules of Civil Procedure, Rule 23(a) and (b)(2) as the representative of the following class:

> All the inmates currently confined within the Pennsylvania Department of Corrections who have served their minimum terms of imprisonment, and who have been denied parole or otherwise retaliated against for declining participation in a sex offender program requiring full disclosure of, and admission to, past sexual behavior, including: (a) uncharged, potentially prosecutable conduct; and (b) crimes for which the inmate has been sentenced

but which are still the subject of an appeal or petition for collateral relief in either state or federal court.

27.    Upon information and belief, the class is so numerous that it is impracticable to join all members as plaintiffs.

28.    There are questions of law and fact common to the class.

29.    Plaintiff's claims are typical of the claims of the class.  All claims are based on the same legal and remedial theories and are based upon the defendants' policies and systematic conduct.

30.    Plaintiff will adequately and fairly protect the interests of the class.  Plaintiff's interests are not antagonistic of those of the class.

31.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief and/or corresponding declaratory relief with respect to the class as a whole.

## SUBSTANTIVE CLASS ALLEGATIONS

32.    Plaintiff incorporates herein by reference the averments set forth in paragraphs 1 through 33 above.

33.    Plaintiff and Class members, presently incarcerated in Pennsylvania state correctional institutions operated by the DOC, have served their minimum sentences and are therefore eligible for parole.

34.    After sentencing. inmates are placed or sent to a specific classification center; upon arrival, they are put through weeks of intensive interviews by numerous medical and non-medical staff for reasons that are not explained to them.

35.     Each inmate is required to sign all documentation cumulated from each interview performed and without advisement of any rights or the legal ramifications that might result from signing the unknown documentation.

36.     Upon arriving at their designated correctional institutions, inmates are introduced to the specific rules, regulations and the policies that apply, which policies include providing each inmate with a "Prescriptive Program Plan" detailing a series of DOC "Recommended Actions."

37.     The Prescriptive Program Plan form utilized by the DOC provides an explanatory comment further defining "Recommended Actions" as "suggested programs and/or kinds of behavior which may help you with weakness and/or problem areas."

38.     Inmates are told that all "Recommended Actions" listed in their "Prescriptive Program Plan," are voluntary, but must be completed before the expiration of their minimums or they face not making parole, as if the programs were legal statutory sentencing requirements.

39.     One such "Recommended Action" is listed as the Sex Offender Treatment Program, and known to the inmates as the "SOP Program." Per the Sex Offender Treatment Program Manual, the Program consists of three different phases and states as an objective: "[T]o require participants to accept responsibility for all their deviant offenses . . . ."

40.     The first phase, or Orientation Phase, is referred to by the inmates as the "non-admitters group" because participants are not required to share or admit information about past sexual conduct. This phase must be completed before the inmate is accepted into phase two, meaning that by the end of phase one, the inmate must admit to sexual misconduct.

41.     Phase two, known as the Core Treatment Phase, requires "Full Disclosure; official version specific."

42.    Upon information and belief, full disclosure requires inmates to discuss past sexual behavior in the presence of other inmates—from first sexual encounters through the present, including any uncharged, potentially prosecutable conduct that could subject inmates to further criminal prosecution—as well as conduct underlying conviction, even when there is an appeal or petition for collateral relief pending.

43.    The Sex Offender Program manual provided to the participants during the initial day of the Orientation Phase states "there is no known cure for sexual deviancy" and that the program "was not designed and developed for you to 'make parole'".

44.    Plaintiff and the Class have declined to participate in the SOP requiring full disclosure of self-incriminating conduct.

45.    Upon information and belief, it is DOC policy to withhold recommendations for parole to those inmates who refuse to participate in or fails to complete prescriptive programs, specifically the SOP Program.

46.    Plaintiff and the Class systematically and arbitrarily have been denied parole because of their failure or refusal to complete prescriptive programs, specifically the SOP Program.

47.    Upon information and belief, it is the Pennsylvania Board of Probation and Parole's policy to deny parole to inmates who exercise their rights not to attend the programs prescribed by the Department of Corrections, specifically sex offender treatment programs.

## SUBSTANTIVE INDIVIDUAL ALLEGATIONS

48.    Plaintiff incorporates herein by reference the averments set forth in paragraphs 1 through 49 above.

49.    Plaintiff came under the custody and care of the Pennsylvania Department of Corrections as a result of a plea agreement in July of 1996, and was sentenced in accordance with the guidelines in place at that time.

50.    The DOC uses an inmate's initial commitment information to create what is called a "DC-16, Inmate Status Summary" form, which prescribes the inmate's provisions of incarceration. Plaintiff's form was marked incorrectly as "indefinite" sentencing.

51.    Plaintiff's incarceration commenced at SCI-Pittsburgh and, after three subsequent transfers, presently continues at SCI-Graterford. Plaintiff was transferred on August 6, 1996, to SCI Camp Hill; was again transferred, on November 19, 1996, to SCI Mahanoy; and lastly, arrived at SCI Graterford in December of 2001.

52.    Plaintiff received her first individualized Prescriptive Program Plan at SCI-Mahanoy. The November 20, 1996 Plan, titled "Recommended Actions," was initiated by the acting counselor and suggested that a number of programs be completed.

53.    Included among Plaintiff's "Recommended Actions" was the Pennsylvania Department of Corrections Sex Offender Treatment Program.

54.    Plaintiff exercised her rights not to participate in the Sex Offender Program because of its full disclosure requirement.

55.    Plaintiff informed Ms. Brenda Wildenstein that she did not wish to participate in any of the DOC applied Prescriptive Programs, especially the Sex Offender Program, because of a pending appeal.

56.    On July 25, 1997, Plaintiff had her first Prescriptive Program Plan review at SCI-Mahanoy, which states that the plaintiff maintained a misconduct-free record during the review period, but declined participation in the Sex Offender Program.

57.     On February 23, 1998, Plaintiff was forced to give DNA and blood pursuant to Megan's Law and was, upon information and belief, illegally classified as a violent offender.

58.     On July 23, 1998, Plaintiff had her second Prescriptive Program Plan review at SCI-Mahanoy, which states that the plaintiff once again maintained a misconduct-free record during the review period, but that Plaintiff refused involvement with the Sex Offender Program.

59.     Before her third review, Unit Manager Wildenstein approached Plaintiff and asked if, out of respect for her, Plaintiff would at least agree to sit in on an Orientation Phase, non-admitter's meeting for the SOP.

60.     On July 16, 1999, Plaintiff had her third Prescriptive Program Plan review at SCI-Mahanoy, which states that Plaintiff maintained a clear conduct record during the review period and that she had been placed on the Basic Sex Offender Education Class's waiting list.

61.     Plaintiff attended about three Orientation Phase, non-admitter's sessions, during which information about the entire phase process of the Sex Offender Program was provided.

62.     Once the information was distributed and explained, some inmates elected to shared details about why they were incarcerated.  Plaintiff did not offer any information about herself during any of the meetings, and left halfway through the last session she attended.

63.     In October of 1999, Plaintiff sent Unit Manager Wildenstein an "Inmate's Request to Staff Member" form addressing a problem in Mr. Johnson's SOP.  Plaintiff stated that she did not plan to re-enter any sex offender treatment programs.

64.     In response to Plaintiff's Inmate Request, Unit Manager Wildenstein informed the Plaintiff in writing that "if you do not participate—irregardless of where—your likelihood of being granted parole is narrowed."

65.     Plaintiff, once again told her Unit Manager that she would not be participating in the Sex Offender Program.

66.     On July 19, 2000, Plaintiff had her fourth Prescriptive Program Plan review at SCI-Mahanoy, which states the Plaintiff maintained a misconduct-free record during the review period, but refused participation in the Sex Offender Program.

67.     Upon completion of her minimum term of incarceration, Plaintiff was put through several different interviews, staff meetings and psychological evaluations, by both medical and non-medical staff.

68.     Upon the completion of the psychological evaluations, Plaintiff was told to sign what is called a "Mental Health Consent Document" to complete the pre-parole process.  She was told that if she did not sign the document, she would be denied parole.

69.     On January 8, 2001, Plaintiff had a Staff Hearing for institutional recommendation for parole; the hearing was held by Unit Manager Wildenstein, who was accompanied by Ms. Boris (new counselor); Ms. Chapman (psychologist); and Mr. Glormley (block officer).  These Defendants refused to give a favorable recommendation until Plaintiff completed the Sex Offender Program.

70.     Plaintiff was told at the Staff Hearing that she was expected to complete the assigned Prescriptive Programs, and if she did not, she would not be paroled.  Plaintiff reiterated concerns about her appeal, objecting to the full disclosure requirements of the Sex Offender Program.

71.     On March 14, 2001, Plaintiff was seen by the Parole Board for the first time.

72.     On March 22, 2001, Plaintiff received her first ambiguous "Green Sheet" denial, which states that "the fair administration of justice cannot be achieved through your release on parole."  It set her next review for parole in or after April 2002, and explained that completion of Prescriptive Programs would be considered at that next review.

- 13 -

73.     On July 16, 2001, Plaintiff had her fifth Prescriptive Program Plan review at SCI-Mahanoy, which states Plaintiff had no misconducts during the review period, but refused involvement in the Sex Offender Program.

74.     Plaintiff was informed by her counselor at the yearly review that her level 2 security status ("custody level") would be replaced with a level 3 status for failure to participate in the Sex Offender Program  Custody level 1 is assigned to inmates requiring the least amount of security and custody level 5, the maximum security, so changing a custody level from a 2 to a 3 was and is harmful to the plaintiff, as well as punitive and retaliatory.

75.     Pennsylvania correctional institutions are designed to provide security by the custody level or classification of the inmates within each section of the correctional institution. An inmate's custody level, or classification, determines the level of security in which she must be held.

76.     Plaintiff's daily living conditions are substantially affected by this change.  As a level 2 inmate, Plaintiff was entitled to 30 minute phone calls (on a daily basis at SCI-Mahanoy and every other day at SCI-Graterford); a more comfortable cell; residence on the "honor block" which allows the use of a refrigerator and cooking supplies; clearance to work outside the confines of the prison; and eligibility to transfer closer to family and friends.  As a level 3 status inmate, Plaintiff is denied all of these advantages and opportunities.

77.     Plaintiff submitted an Inmate Request to Staff member, inquiring why, after three years as a level 2, that designation was being changed, Ms. Boris stated in writing, "It is not the DOC policy to punish inmates for doing good, but you are non-compliant with your Prescriptive Program Plan and therefore your custody level is affected."

78.    Plaintiff filed an Official Inmate Grievance regarding the negative change in her custody level; Superintendent Robert Shannon responded in writing, "You must maintain Program Compliance to be a CL-2 inmate."

79.    The Pennsylvania Department of Corrections-issued Inmate Handbook states that an inmate's custody level can only be changed for reasons related to misconduct.

80.    Upon information and belief, Plaintiff's custody level was changed solely because plaintiff declined to participate in the voluntary Sex Offender Program.

81.    On July, 2002, Plaintiff was scheduled to have her sixth Prescriptive Program Plan review at SCI-Mahanoy, but it did not take place due to her transfer to SCI-Graterford.

82.    Once at Graterford, plaintiff was assigned a new counselor named Mr. Kelljcheair, who maintained the custody level 3 recommended by SCI-Mahanoy.

83.    On July 22, 2002, Plaintiff had her seventh Prescriptive Program Plan review at SCI-Graterford, which states that plaintiff did not receive any misconducts, but refused participation in the Sex Offender Program.

84.    On July 23, 2002, Plaintiff had a staffing interview for Graterford's recommendation for parole.  Plaintiff was told her institutional records were remarkable, but that they would not be recommending approval because of plaintiff's failure to participate in the Sex Offender Program.

85.    On September 4, 2002, Plaintiff was seen by the Parole Board and given a "two year hit" without providing a review or reason.

86.    On September 24, 2002, Plaintiff received another ambiguous "Green Sheet" denial, which states that "the fair administration of justice cannot be achieved through your release on parole."  It also stated that Plaintiff's next review for parole would occur in or after

September 2004 and explained that completion of Prescriptive Programs would be considered at the next review.

87.    Upon information and belief, parole denial was based solely on Plaintiff's refusal to participate in the Sex Offender Program.

88.    Upon information and belief, Defendants have sought to impose new prerequisites for parole upon Plaintiff because of Plaintiff's pursuit of administrative and legal relief from Defendants' efforts to compel her to participate in the sex offender's program in violation of her constitutional rights.

89.    As a direct result of Plaintiff exercising her right not to participate in the Pennsylvania Department of Corrections Sex Offender Program, Plaintiff repeatedly has been denied parole.

90.    As a result of Plaintiff's extended incarceration, Plaintiff has been denied contact with her family and friends. In particular, Plaintiff has been deprived of contact with her three children and of the opportunity to participate in their lives and to help raise and guide them; Plaintiff's eldest son was recently been arrested, sentenced to probation and is now living in a group home. The physical disconnect with her family, and the inability to meaningfully participate in her children's lives, has caused Plaintiff and her family to suffer great mental anguish and emotional distress.

91.    As a result of this extended incarceration, Plaintiff has been forced to endure excessive hardships associated with living as a transsexual who identifies as a woman in an all-male prison. Such hardships cause her unnecessary stress, mental anguish and emotional distress.

92.     As a result of this extended incarceration, Plaintiff continues to be exposed to the everyday dangers and hardships faced by all inmates.  As a result, plaintiff suffers great stress, mental anguish and emotional distress.

93.     As a result of this extended incarceration, Plaintiff has been denied all the broader freedoms accompanying parole such as the opportunity of having an outside residence, gainful employment, personal medical and psychiatric treatment for Transsexualism, self-expression and to the ability to self-identify outside a correctional facility, among other aspects of life.  As a result, plaintiff has suffered great stress, mental anguish and emotional distress.

94.     Plaintiff has also suffered extended incarceration as a result of newly implemented laws that were retroactively applied to her, resulting in additional stress, mental anguish and emotional distress.

95.     In 1941 the Legislature created the Pennsylvania Board of Parole via the Parole Act, P.L. 861, No. 323 § 1, as amended 61 P.S. §§ 331.1 et seq.  The Pennsylvania Board of Parole, and its subsequent successor the Pennsylvania Board of Probation and Parole, was empowered with the exclusive authority for the administration of parole to any person sentenced to a maximum term of imprisonment of two or more years.

96.     Pursuant to the Parole Act between its passage in 1941 and its amendment in 1996, a prisoner could be denied parole for public safety concerns but only if those concerns together with other relevant factors outweighed, by a preponderance, the liberty interests of the inmate.  The Board was required to issue "a brief statement of the reasons for the board's action shall be filed of record in the offices of the board and shall be at all reasonable times open to public inspection" (former 61 P.S. § 331.22).

97.     On December 18, 1996, the Parole Act was amended to place first and foremost the public safety, to the disadvantage of the remaining liberty interest of inmates.

98.    Plaintiff was sentenced in July, 1996, before the Parole Act's amendment.  Upon information and belief, the Parole Board retroactively applied the new 1996 provisions to Plaintiff in denying her parole.

99.    The DOC and the Parole Board lack the authority to retroactively apply or enhance sentences.

100.    Defendants have violated Plaintiff's constitutional rights by retroactively applying the new parole guidelines to her, or attempting to do so.

## COUNT I

**Pursuant to 42 U.S.C. § 1983 for Declaratory and Injunctive Relief from Violations of the Prohibition Against Self-Incrimination as Protected by the Fifth and Fourteenth Amendments to the U.S. Constitution**

**(Plaintiff, JESSICA ELAINE WOLFE©, on behalf of herself and all others similarly situated, Against Defendants Beard, Klem, Vaughn, DiGuglielmo, Wolfe, Brooks Kelchner, Dragovich, Gillis, Wilson, Lavan, Mechling, Folino, Benning, Patrick, Kyler, Rosenmeyer, Desuta, Moore, Johnson, Shannon, Stickman, Britton, Chesney, Tennis, Palakovich, Sobina, Colleran, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster, and White).**

101.    Plaintiff incorporates herein by reference the averments set forth in paragraphs 1 through 102 above.

102.    Acting under color of state law, Defendants have deprived members of the Class of their Fifth Amendment right against self-incrimination by seeking to compel participation in sex offender programs requiring full disclosure of past sexual behavior, including both uncharged, potentially prosecutable, conduct, and crimes for which the inmate has been sentenced but which remain the subject of appellate or collateral relief proceedings.

103.    Defendants' conduct has resulted in injury to members of the Class; such injuries include denial of parole and extended incarceration.

- 18 -

104.    Such penalties are so significant that they are capable of coercing participation in a sex offender program and are tantamount to compulsion.

105.    This use of compulsion violates Class members' rights against self-incrimination as protected by the Fifth and Fourteenth Amendments to the United States Constitution.

WHEREFORE Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendants named in this Count jointly and severally, and:

A.    That the Court determine that this action may be maintained as a class action under the Federal Rules of Civil Procedure 23(a) and (b)(2), that Plaintiff is an adequate and appropriate representative of the Class, and that the Court appoint class counsel pursuant to Federal Rule of Civil Procedure 23(g);

B.    That the Court declare the actions and inactions of the Defendants, as described above, violative of Class members' rights under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

C.    That the Court enjoin Defendants, their officers, agents, employees, and those in active concert or participation with them, from denying parole, recommending the denial of parole, or imposing any other penalty because an of inmate's decision to decline participation in any sex offender program that requires full disclosure of past sexual behavior including uncharged, potentially prosecutable, conduct, and crimes for which the inmate has been sentenced but which remain the subject of appellate or collateral relief proceedings, or from engaging in such other conduct having a similar purpose or effect;

D.    That the Court award reasonable attorney's fees; and,

E.    Such other relief as the Court deems just and proper.

## COUNT II

**Pursuant to 42 U.S.C. § 1983 for Declaratory and Injunctive Relief from
Retaliation for the Exercise of Rights Under the Fifth Amendment
in Violation of the Fourteenth Amendment to the U.S. Constitution
(Substantive Due Process)**

**(Plaintiff, JESSICA ELAINE WOLFE©, on behalf of herself and all others similarly
situated, Against Defendants Beard, Klem, DiGuglielmo,  Vaughn, Wolfe, Brooks
Kelchner, Dragovich, Gillis, Wilson, Lavan, Mechling, Folino, Benning, Patrick, Kyler,
Rosemeyer, Desuta, Moore, Johnson, Shannon, Stickman, Britton, Chesney, Tennis,
Palakovich, Sobina, Colleran, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp,
Lucht, Muller, Ryan, Webster, and White).**

106.    Plaintiff incorporates herein by reference the averments set forth in paragraphs 1
through 107 above.

107.    Acting under color of state law, Defendants have denied members of the Class
rights under the Fourteenth Amendment to the United States Constitution by retaliating against
Class members for their refusal to participate in sex offender programs requiring full disclosure
of past sexual conduct, including both uncharged, potentially prosecutable, conduct, and crimes
for which the inmate has been sentenced but which remain the subject of appellate or collateral
relief proceedings.

108.    Refusal to participate in sex offender programs that require full disclosure of past
sexual behavior where such disclosure may subject the inmate to criminal prosecution is the
exercise of a constitutionally-protected right against self-incrimination, protected by the Fifth
Amendment to the United States Constitution.

109.    Defendants have taken adverse action against members of the Class in retaliation
for Class members' refusal to participate in sex offender programs that require full disclosure of
past sexual behavior where such disclosure may subject the Class Members to criminal
prosecution.  Such adverse action includes denial of parole and extended incarceration.

110.    The Class members' refusal to participate in sex offender programs was a substantial or motivating factor in all adverse actions taken by Defendants.

111.    Basing denial of parole on refusal to incriminate oneself constitutes retaliation in violation of the Fourteenth Amendment to the United States Constitution.

WHEREFORE Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendants named in this Count jointly and severally, and:

A.    That the Court determine that this action may be maintained as a class action under the Federal Rules of Civil Procedure 23(a) and (b)(2), and that Plaintiff is an adequate and appropriate representative of the Class, and that the Court appoint class counsel pursuant to federal Rule of Civil Procedure 23(g);

B.    That the Court declare that the actions and inactions of the Defendants, as described above, violated Class members' rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

C.    That the Court enjoin Defendants, their officers, agents, employees, and those in active concert or participation with them, from denying parole or imposing any other penalty in retaliation for an inmate's decision to decline participation in any sex offender program that requires full disclosure of past sexual behavior including both uncharged, potentially prosecutable, conduct, and crimes for which the inmate has been sentenced but which remain the subject of appellate or collateral relief proceedings, or from engaging in such other conduct having a similar purpose or effect;

D.    That the Court award reasonable attorney's fees; and,

E.    Such other relief as the Court deems just and proper.

## COUNT III

**Pursuant to 42 U.S.C. § 1983 for All Damages Permitted Under the Statute
and Punitive Damages for
Violation of the Prohibition Against Self-Incrimination
as Protected by the Fifth and Fourteenth Amendments to the U.S. Constitution**

**(Plaintiff JESSICA ELAINE WOLFE© Against Defendants Beard, Klem, Boris, Vaughn, DiGuglielmo, Wildenstein, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster, and White).**

112.    Plaintiff incorporates herein by reference the averments set forth in paragraphs 1 through 113 above.

113.    Acting under color of state law, Defendants have deprived Plaintiff, who has a pending appeal, of her Fifth Amendment right against self-incrimination by seeking to compel her participation in a sex offender program requiring her to admit to past sexual behavior including both uncharged, potentially prosecutable, conduct, and the crime for which she has been sentenced but which remain the subject of appellate or collateral relief proceeding.

114.    Defendants' conduct has resulted in injuries to Plaintiff, including denial of parole and extended incarceration.

115.    Such penalties are so significant that they effectively coerce participation in the Sex Offender Program and are tantamount to compulsion.

116.    This use of compulsion violates Plaintiff's right against self-incrimination as protected by the Fifth and Fourteenth Amendments to the United States Constitution.

117.    Each of said Defendants acted intentionally and maliciously to deprive Plaintiff of her Fifth Amendment right against self-incrimination by denying parole based on the exercise of those rights, in violation of 42 U.S.C. § 1983.

WHEREFORE Plaintiff, individually, respectfully requests that the Court enter judgment in her favor and against defendants named in this Count jointly and severally, and:

A.    That the Court declare that the actions and inactions of the Defendants, as described above, violated Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

B.    That the Court award all damages permitted under 42 U.S.C. § 1983, for injuries suffered by Plaintiff as a result of Defendants' unconstitutional conduct;

C.    That the Court award punitive damages to punish Defendants' willful and malicious violation of Plaintiff's rights and to deter future outrageous conduct;

D.    That the Court award reasonable attorney's fees; and,

E.    Award such other relief as the Court deems just and proper.

## COUNT IV

**Pursuant to 42 U.S.C. § 1983 for All Damages Permitted Under the Statute and Punitive Damages for
Retaliation for the Exercise of Rights Under the Fifth Amendment
in Violation of the Fourteenth Amendment to the U.S. Constitution
(Substantive Due Process)**

**(Plaintiff JESSICA ELAINE WOLFE© Against Defendants Beard, Klem, Wildenstein, Vaughn, DiGuglielmo, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Ryan, Webster, and White).**

118.    Plaintiff incorporates herein by reference the averments set forth in paragraphs 1 through 119 above.

119.    Acting under color of state law, Defendants have deprived Plaintiff, who has a pending appeal, of her rights under the Fourteenth Amendment by retaliating against Plaintiff for her refusal to participate in the Sex Offender Program which requires participants to disclose fully their past sexual history.

120.    Plaintiff's refusal to participate in the Sex Offender Program is the exercise of a constitutionally-protected right.

121.     Defendants have taken adverse action against Plaintiff, who has an appeal pending, in retaliation for her refusal to participate in the Sex Offender Program.  Such adverse action includes denial of parole, extended incarceration, and a negative change in custody level.

122.     Plaintiff's refusal to participate in the Sex Offender Program was a substantial or motivating factor in all adverse actions taken by Defendants.

123.     Basing denial of parole on refusal to incriminate oneself constitutes retaliation in violation of the Fourteenth Amendment to the United States Constitution.

124.     Each of said Defendants acted intentionally and maliciously to deprive Plaintiff of her substantive due process rights secured by the Fourteenth Amendment by retaliating against Plaintiff for the exercise of Plaintiff's right against self-incrimination as protected by the Fifth Amendment, all in violation of 42 U.S.C. § 1983.

WHEREFORE Plaintiff, individually, respectfully requests that the Court enter judgment in her favor and against defendants named in this Count jointly and severally, and:

A.     That the Court declare that the actions and inactions of the Defendants, as described above, violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

B.     That the Court award all damages permitted under 42 U.S.C. § 1983, for the resulting injuries to Plaintiff;

C.     That the Court award punitive damages to punish Defendants' willful and malicious violation of Plaintiff's rights and to deter future outrageous conduct;

D.     That the Court award reasonable attorney's fees; and,

E.     Award such other relief as the Court deems just and proper.

## COUNT V

**Pursuant to 42 U.S.C. § 1983 for Injunctive Relief and All Damages Permitted Under Law
for Violation of Article I of the U.S. Constitution
("Ex Post Facto Clause")**

**(Plaintiff JESSICA ELAINE WOLFE© Against Defendants Beard, Klem, Boris, Vaughn,
DiGuglielmo, Wildenstein, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp,
Lucht, Muller, Ryan, Webster, and White).**

125.    Plaintiff incorporates herein by reference the averments set forth in paragraphs 1 through 126 above.

126.    The December, 1996 amendment of section 331.1 of Pennsylvania's parole statute, designating public safety as the paramount concern when making parole determinations, altered the Pennsylvania Board of Probation and Parole's standards for determining parole.  Pub. L. No. 164, § 1 (codified as amended at 61 Pa. Stat. Ann. § 331.1 (1996).

127.    The Board's altered standard was applied to an event occurring before its enactment—Plaintiff's July, 1996 incarceration.

128.    Plaintiff was disadvantaged and adversely affected by this retroactive application of section 331.1 as amended because she was denied parole, and forced to endure extended incarceration.

129.    Acting under color of state law, Defendants retroactively applied Pennsylvania's new parole law to Plaintiff's disadvantage, and thereby have deprived Plaintiff of her rights under the Ex Post Facto clause of the U.S. Constitution.

130.    Each of said Defendants acted intentionally and maliciously to deprive Plaintiff of her ex post facto protections, in violation of 42 U.S.C. § 1983.

WHEREFORE Plaintiff, individually, respectfully requests that the Court enter judgment in her favor and against defendants named in this Count jointly and severally, and:

A.      That the Court declare that the actions and inactions of the Defendants, as described above, violated Plaintiff's rights under the Ex Post Facto Clause of the United States Constitution and 42 U.S.C. § 1983;

B.      That the Court enjoin Defendants, their officers, agents, employees, and those in active concert or participation with them, from retroactively applying Pennsylvania's new parole law to Plaintiff's disadvantage, and order Defendants to consider Plaintiff's request for parole under the proper legal standard;

C.      That the Court award all damages permitted under 42 U.S.C. § 1983, for injuries suffered by Plaintiff as a result of Defendants' unconstitutional conduct;

D.      That the Court award punitive damages to punish Defendants' willful and malicious violation of Plaintiff's rights and to deter future outrageous conduct;

E.      That the Court award reasonable attorney's fees; and,

F.      Award such other relief as the Court deems just and proper.

## COUNT VI

**Pursuant to 42 U.S.C. § 1983 for Injunctive Relief and All Damages Permitted Under Law for**
**Retaliation in Violation of the First Amendment to the U.S. Constitution**

**(Plaintiff JESSICA ELAINE WOLFE© Against Defendants Beard, Klem, Boris, Vaughn, DiGuglielmo, Wildenstein, Ward, Martinez, Castor, Descher, Green, Imboden, Kipp, Lucht, Muller, Ryan, Webster, and White).**

131.     Plaintiff incorporates herein by reference the averments set forth in paragraphs 1 through 132 above.

132.     Acting under color of state law, Defendants have taken adverse action against Plaintiff in retaliation for her protestation against the conduct of all named defendants and for filing a lawsuit concerning the same.  Defendants have thereby injured Plaintiff by continuing to

erect barriers to the grant of parole in the form of additional prescriptive programs, and forcing her to endure extended incarceration.

133.    Defendants have acted intentionally and maliciously to deprive Plaintiff of her First Amendment rights to protest the conduct of all named defendants and to file a lawsuit concerning the same, by retaliating against her for the exercise of those rights, all in violation of 42 U.S.C. § 1983.

134.    Plaintiff has thereby been subjected to emotional pain and suffering, mental distress and humiliation.

WHEREFORE Plaintiff, individually, respectfully requests that the Court enter judgment in her favor and against defendants named in this Count jointly and severally, and:

A.    That the Court declare that the actions and inactions of the Defendants, as described above, violated Plaintiff's rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

B.    That the Court enjoin Defendants, their officers, agents, employees, and those in active concert or participation with them, from taking or continuing any adverse action against Plaintiff in retaliation for her exercise of her First Amendment rights through filing of grievances and seeking legal redress;

C.    That the Court award all damages permitted under 42 U.S.C. § 1983, for the resulting injuries to Plaintiff;

D.    That the Court award punitive damages to punish Defendants' willful and malicious violation of Plaintiff's rights and to deter future outrageous conduct;

E.    That the Court award reasonable attorney's fees; and,

F.    Award such other relief as the Court deems just and proper.

## **REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury of all issues so triable raised in this Second Amended

Complaint.

 /s/ Mary Catherine Roper _____
Mary Catherine Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 1161
Philadelphia, PA 19105


Viktoriya Meyerov
Andrea D'Ambra
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700 (Phone)
(215) 988-2757 (Fax)
Attorneys for Plaintiffs

Dated:  April 4, 2005.