IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| "JESSICA ELAINE WOLFE©" on behalf of herself and all similarly situated INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : : : : : | CIVIL CLASS ACTION |
| Plaintiff | : : | |
| v. | : : | |
| JEFFREY BEARD, et al., | : : | |
| Defendants. | : | No. 02-2687 |

**PLAINTIFF'S RESPONSE TO PAROLE OFFICIALS' OBJECTIONS
TO WRITTEN DEPOSITION QUESTIONS**

In denying Defendants' motion to dismiss with respect to Plaintiff's Ex Poste Facto and First Amendment retaliation claims, this Court determined that Plaintiff was entitled to conduct discovery in an effort to prove her claims.

*Introduction and Response to the Parole Officials' General Objections*

The first of those claims requires Plaintiff to establish, as the Third Circuit found in *Mickens-Thomas v. Vaughn,* "that the primary basis for the parole denials was the risk of potential harm to public safety" even though "[t]he pre-1996 policies suggest that no single factor should be controlling in a decision to deny parole to an applicant:"

> [I]t becomes evident that, although the risk of potential danger to the public has always been a factor, it became the controlling feature of the Board's decision after 1996.  The Board defaulted in its duty to consider factors other than the underlying offense and risk to public safety;  it has failed to address any of the factors favoring release.

*Mickens-Thomas v. Vaughn*, 321 F.3d 374, 387-88 (3d Cir.), *cert. denied sub. nom. Gillis v. Hollawell,* 540 U.S. 875 (2003) (*Mickens-Thomas I*).  As the Third Circuit's searching review of

the parole decisions in its two *Mickens-Thomas* decisions demonstrates, the parole officials cannot hide behind their "discretion:"

> We advised the Board that it could not shield itself from constitutional violations by relying on the "discretionary component" of its parole review. [*Mickens-Thomas I]* at 386-87…. "Although some discretion might still exist within the pre-1996 parameters, a parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside of the realm of the legitimate exercise of discretion under the pre-1996 policies." *Id.*

*Mickens-Thomas v. Vaughn*, 355 F.3d 294, 300-01 (3d Cir. 2004) (*Mickens-Thomas II*). Plaintiff seeks to have the parole officials who denied her requests for parole answer limited and narrow questions for the purpose of determining whether they, like the parole officials in *Mickens-Thomas*, "defaulted in [their] duty to consider factors other than the underlying offense and risk to public safety."

The second claim as to which the Court ordered discovery is Plaintiff's claim that parole officials and others took actions against her in retaliation for her exercise of her First Amendment right to protest what she felt to be unconstitutional actions by DOC and Parole Board personnel. Plaintiff contends that the Defendants took actions against her in retaliation for her two lawsuits against the DOC and for her use of the prison grievance process to object to the mandate that she complete the Sex Offender Treatment Program even though to do so would, in effect, require her to abandon her appeal of her conviction.

The Parole Officials argue that they are beyond the reach of even such limited questioning because (1) they are entitled to immunity from damages; (2) they are not the proper parties to provide the injunctive relief Plaintiff seeks; (3) they are "high ranking officials" whose "deliberative processes" are to sacred to be probed; (4) Plaintiff's counsel has the documentary record of her parole applications; and (5) Defendants are willing to provide a Rule 30(b)(6)

designee to testify generally about parole procedures.

These arguments are not new – indeed, the Parole Officials' brief in support of their objection is almost word-for-word the brief they submitted in support of their two motions for protective orders. As Plaintiff has explained before, she does not seek these depositions for the purpose of establishing a right to damages against the deponents, so whether those persons are immune to damage claims is irrelevant. Nor is it relevant that they are not the persons who can provide the injunctive relief Plaintiff seeks, so long as Plaintiff has named at least one defendant who can do so. In the Third Amended Complaint, Plaintiff, at the Court's direction, added as a defendant the Chair of the Board of Probation and Parole in his official capacity to ensure that there was a party before the Court who could provide such relief.

Nor can the Parole Officials hide behind their "high ranking positions". As the Third Circuit reminded the Board in *Mickens-Thomas II*, the discretion afforded parole officials does not shield them from examination of their decisions for the purpose of determining whether they violated the *ex poste facto* clause by applying an improper set of standards to Plaintiff's parole applications.

And, finally, neither the documents in Plaintiffs' parole file nor the testimony of other parole officials concerning general parole procedures can answer the questions posed by Plaintiff's claims: did the parole officials who considered Plaintiff's applications "default[] in [their] duty to consider factors other than the underlying offense and risk to public safety," and did they deny Plaintiff's parole applications or impose additional prerequisites upon her in retaliation for her exercise of her First Amendment rights? The limited testimony of the Parole Officials is necessary and irreplaceable because no one else can say what they thought and considered. Plaintiff has attempted to frame her questions to determine which factors and documents considered by the Parole Board related to the issue of public safety and which did

not. Plaintiff need not ask these questions if Defendants will stipulate that the Parole Officials did not consider non-safety related factors in deciding whether to grant Plaintiff parole. Otherwise, Plaintiff needs to know how the Parole Officials viewed the information provided and the scope of their review.

### *The Parole Officials' Specific Objections*

With two exceptions, the Parole Officials have responded to each of Plaintiff's proposed questions with a boilerplate reiteration of their general objections. In this section Plaintiff will respond to the specific objections raised by the Parole Officials and will withdraw certain questions that have, since they were propounded, been answered through depositions of other Parole Board employees.

1. The Parole Officials object that Plaintiff already has this information; however, counsel for Defendants has repeatedly mentioned that certain of the Parole Officials are retired from Board service. At any rate, it is hard to imagine how one would begin a deposition without identifying the deponent.

2. Plaintiff would, in fact, have this information of the review sheets used by the Parole Officials were consistently legible. Plaintiff will withdraw this question if Defendants will provide the information in a letter.

Plaintiff has obtained certain information through the deposition of Parole Agent Youngerman since submitting these questions. Plaintiff no longer needs to ask the Parole Officials the following questions:

8.b; 9; 9.a; and 10.b

Respectfully submitted,

Dated: August 12, 2005.  */s/ Mary Catherine Roper*
Mary Catherine Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106
(215) 592-1513 (Phone)
(215) 592-1343 (Fax)

Viktoriya Meyerov
Maresa Torregrossa
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700 (Phone)
(215) 988-2757 (Fax)

Attorneys for Plaintiffs