IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| "JESSICA ELAINE WOLFE©" on behalf of herself and all similarly situated INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, : : : : : Plaintiff : : v. : : THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., : : Defendants. : | CIVIL CLASS ACTION No. 02-2687 |

**PLAINTIFF'S OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Ms. Wolfe alleges that in evaluating her eligibility for parole, state parole officials used the parole guidelines first adopted after she began to serve her term, and that the officials' retroactive application of these new, harsher guidelines violated the Constitution's *ex post facto* clause. Ms. Wolfe also alleges that the officials have retaliated against her in violation of the First Amendment rights based on her filing of lawsuits and grievances. The Parole Board Defendants sought to dismiss these claims, but their motion was denied. The Court should likewise deny the Parole Board Defendants' motion for summary judgment as to Plaintiff's claims for injunctive relief.

**I.   PLAINTIFF IS ENTITLED TO PROCEED TO TRIAL ON HER CLAIM FOR INJUNCTIVE RELIEF AGAINST FURTHER VIOLATIONS OF THE EX POSTE FACTO CLAUSE.**

In Count V, Ms. Wolfe alleges that the Parole Board members violated the Ex Post Facto Clause because they applied an amended version of the Pennsylvania Parole Act to determine her parole eligibility notwithstanding the fact that she was convicted prior to the enactment of the

amendments. At the time of Wolfe's conviction (July 1996), the Pennsylvania parole statute focused on rehabilitation of prisoners:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their *rehabilitation, adjustment and restoration to social and economic life and activities* shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

61 P.S. § 331.1 (1995) (emphasis added). In December 1996, the Pennsylvania Parole Act was amended to make public safety the paramount factor in determining parole eligibility and to instruct Parole Board members to consider whether the "fair administration of justice" and particularly public safety could be served by granting parole to an individual inmate:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, *the board shall first and foremost seek to protect the safety of the public*. In addition to this goal, the board shall address input by crime victims and assist in the *fair administration of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (1996) (emphasis added).

Plaintiff has not been permitted to ask the Parole Board members who considered her applications for parole which standard they applied and therefore has no direct evidence that they, in fact, applied the post-1997 standard to her. There is, however, documentary evidence to support Plaintiff's position. Plaintiff's first parole hearing took place on March 14, 2001, at which time she was denied parole. The "Green Sheet," the Parole Board members' official record of their determination, stated that "*the fair administration of justice cannot be achieved*

*through your release on parole*" – a statement that explicitly invokes the post-1997 standard. Plaintiff's second parole hearing occurred on September 4, 2002, at which time she was against denied parole. Again, the Green Sheet stated that "the fair administration of justice cannot be achieved through your release on parole."[1]

A law violates the Ex Post Facto clause when it is retrospective, and results in a risk increasing the measure of punishment attached to the covered crimes. *Cal. Dept of Corrections v. Morales* 514 U.S. 499, 509 (1995). Alternatively, a law violates the ex post facto clause when a plaintiff can demonstrate "by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner v. Jones*, 529 U.S. 244, 247 (2000). It is the effect, not the form of the law, that determines whether it is ex post facto, and thereby unconstitutional. *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (citing *Cummings v. Missouri*, 71 U.S. 277, 326 (1867)).

The United States Court of Appeals for the Third Circuit has concluded that retroactive application of a Pennsylvania's post-1997 parole standards amounts to an ex post facto violation because the late 1996 amendments substantively changed the criteria for parole eligibility, and

---

[1] In denying Plaintiff's third application for parole – *after* the amendment of the complaint in this action by court-appointed counsel – the Board of Probation and Parole did not cite the "fair administration of justice" and specifically invoked some of the pre-1996 parole considerations. But it "is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citations omitted).

thereby increased the measure of punishment for an inmate convicted prior to the enactment of the amendments. *Mickens-Thomas v. Vaughn*, 321 F.2d 374, 391-393 (2003).

Defendants argue that Plaintiff is not entitled to an injunction compelling the application of the proper parole standard to her because she cannot prove that she would have been paroled but for the retroactive application of the post-1997 standards. While that may indeed be the test for an award of damages, the Third Circuit has ordered injunctive relief under *Mickens-Thomas* without such evidence:

> Second, the Commonwealth's contention that the *Mickens-Thomas* decision is predicated on a factual record not developed in this case, although true, does not have the effect that the Commonwealth urges. *Mickens-Thomas* clearly holds as a legal matter that the Pennsylvania statutory change violates the Ex Post Facto Clause. Moreover, to the extent that that holding is premised on factual evidence of the amendment's practical effect, Hollawell might rely on that same evidence and achieve the same result if we were to needlessly remand this case for factual development in the District Court….
>
> Accordingly, we vacate the decision of the District Court in *Hollawell II* and, as the *Mickens-Thomas* panel did, 321 F.3d at 393, remand for the District Court to order the Pennsylvania Board of Probation and Parole to re-adjudicate Hollawell's parole application applying the pre-1996 statute and corresponding rules.

*Hollawell v. Gillis*, 65 Fed. Appx. 809, 816 (3d Cir. Apr. 23, 2003), *cert. denied*, 540 U.S. 875 (2003).

Moreover, should the Court require evidence that the change in parole standard has adversely affected Plaintiff's chances for a reduced sentence, that evidence is supplied by the Department of Corrections' statistics on early release of inmates whose primary offense, like Plaintiff, is rape. In response to this Court's order, Defendants produced the chart submitted herewith, which sets forth the total number of DOC inmates serving time for a primary offense of rape in each year from 1995 through 2004, the number of those inmates who were paroled

within a year of becoming eligible for parole, and the number who served their maximum sentences. These numbers are expressed as percentages in the chart below:

|  | 1995 | 1996 | 1997 | 1998 | 2000 | 1999 | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|---|---|---|---|---|---|
| # serving time for rape | 89 | 48 | 84 | 110 | 171 | 153 | 137 | 129 | 117 | 118 |
| % paroled w/in year of minimum | 30.34 | 8.33 | 11.91 | 3.64 | 3.51 | 5.88 | 7.3 | 6.98 | 7.69 | 11.02 |
| % who served maximum | 40.45 | 68.75 | 53.57 | .6 | 45.03 | 47.71 | 53.28 | 55.81 | 61.54 | 57.63 |

Not surprisingly, the numbers vary from year-to year. Therefore, it is necessary to average the percentages to determine whether the DOC's information suggests that the change in law made parole less available for inmates serving time for rape. The average number of inmates who served their full sentences did not change significantly from the 1995-1996 time period to the 1997-2004 time period: before the change in parole guidelines, 54.6% of inmates serving time for rape would complete their maximums, compared with 54.3% after the change.

But the statistics show a significant change in how soon inmates who obtained parole did so. In the 1995-1996 time period, 19.34% of the inmates serving time for rape were paroled within a year of completing their minimum sentence, while in that 1997-2004 time period, that percentage dropped to 7.24%.

The Defendants did not provide sufficient information to determine how much longer inmates serving time for rape served, on average, after the change in the parole law, but the information available clearly shows that such inmates are likely to spend more time in prison prior to parole than they were before the statutory change. This is more than a "scintilla" of evidence that Defendants applied the wrong parole standard to Plaintiff's applications for parole

and that their actions disadvantaged Plaintiff.  Plaintiff is entitled to proceed with her claim for injunctive relief under the Ex Poste Facto Clause.

## II. PLAINTIFF IS ENTITLED TO PROCEED TO TRIAL ON HER CLAIM FOR INJUNCTIVE RELIEF AGAINST FURTHER RETALIATION AGAINST HER FOR EXERCISING HER FIRST AMENDMENT RIGHTS.

Ms. Wolfe alleges that the parole board denied her applications for parole in retaliation for her pursuit of administrative and legal relief.  In order to recover under a § 1983 retaliation claim, Plaintiff must first prove that "the conduct which led to the alleged retaliation was constitutionally protected."  *Booth v. Pence*, 354 F. Supp. 2d 553, 560 (E.D. Pa. 2005) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).  Then, she must demonstrate that she suffered some "adverse action" at the hands of the parole board members.  *Id*.  Lastly, she must prove "a causal link between the exercise of [her] constitutional rights and the adverse taken against [her]."  *Id* (quoting *Rauser* at 333).  A causal link is established if the exercise of a constitutional right was a "substantial and motivating factor" in the adverse action.  *Id* (quoting *Rauser* at 334).  Once a causal link is shown, the burden will shift to the parole board me mbers to prove "by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." [2]  *Id*.

It is undisputed that Plaintiff has a constitutionally-protected right to seek administrative and legal relief.  U.S. Const. amend. I (Individuals have the right "to petition the Government for redress of grievances.")  It is also undisputed that she suffered "adverse action," in the form of denial of parole, at the hands of the Defendants.  The primary question is whether Plaintiff

---

[2] Although the ultimate question of causation must be decided by the fact–finder, at the summary judgment phase, the plaintiff needs only to meet his burden of proof but must do so by providing "more than a mere scintilla of evidence."  *Booth v. Pence*, 354 F. Supp. 2d 553, 560 (E.D. Pa. 2005) (citing *Big Apple BMW, Inc.*, 974 F.2d at 1363; *Liberty Lobby, Inc.*, 447 U.S. at 252))

has established the requisite causal link between the denial of parole and her constitutionally protected activities.

Because of the Court's refusal to allow Plaintiff to depose or otherwise question the Defendants about the reasons that they denied her parole, including whether they considered or discussed her legal and administrative actions, Plaintiff does not have direct evidence that her constitutionally protected actions were a factor in any actions taken by the Defendants. It is admitted that Plaintiff's parole file made mention of her successful suit against DOC officials to obtain access to sexual reassignment therapy during her incarceration. It is notable that the file did not mention the filing of her suit against DOC officials, but of her unusually successful settlement of that claim. There are so many inmate lawsuits that there is no reason to believe that the filing of such a suit, alone, would engender retaliation. But Plaintiff's suit was, itself, unusual, and brought her the added distinction of a substantial monetary settlement. The presence of that information in her parole file in 2002 and 2004 was undoubtedly notable. The Court should not penalize Plaintiff for its decision not to permit her to question the Defendants about the role that fact played in their deliberations.[3]  The Court should find that Plaintiff has made out a prima facie case of retaliation.

Defendants contend that, even if Plaintiff is able to meet her burden, they are nonetheless entitled to summary judgment because they would have denied her parole applications anyway because of her refusal to complete the sex offender training program that would effectively have

---

[3] Defendants contend that the only reason the information was in Plaintiff's file is that she provided it to the parole agent who prepared the report to the Board. Even assuming it to be true, as Defendants appear to argue, that a parole agent will report everything to the Parole Board, whether or not he considers it relevant to the parole consideration, that says nothing at all about the use that the parole board members who considered Plaintiff's application then made of the information.

required her to abandon her efforts to have her conviction reversed. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). That rule makes sense when applied to actions for damages, but it has no logical connection to a claim, like Plaintiff's, for an injunction against further retaliatory action. The Third Circuit's decision in *Rauser* does not address this point, but its discussion of the claims at issue there suggests strongly that the plaintiff sought only damages. In that context, given the court's careful deference to state parole board decisions, it makes sense to say that an inmate cannot recover damages for a denial of parole if the defendants can prove that she would have been no better off in the absence of the retaliation. But the existence of an independent reason for the denial of parole should not make Parole Board officials immune to corrective equitable relief when they consider and give all-but-determinative weight to unconstitutional factors.

   The Court should deny Defendants' motion for summary judgment as to Plaintiff's claim for injunctive relief against further retaliatory action.

### III. PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF ARE PROPERLY PLEADED AGAINST AND NOT "MOOT" AS TO THE CHAIR OF THE BOARD OF PROBATION AND PAROLE.

   Defendants argue that there can be no injunctive relief ordered against the chair of the Board of Probation and Parole because the current chair has not considered any of Plaintiff's applications for parole and Plaintiff cannot prove that she is likely to do so. Defendants ignore the well-established law that a state official may be sued in her individual capacity for injunctive relief to prevent future violations of constitutional rights. *See, e.g.,* 13 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 3524 (1971) (discussing the "fiction" of *Ex parte Young*, 209 U.S. 123 (1908)). The head of the Board of Probation and Parole was named in the Third Amended Complaint at this Court's suggestion because, as the head of the Board,

she is responsible for the Board's adjudication of Plaintiff's parole applications and an injunction against her will serve as an injunction against the Board. Therefore, Ms. McVey may be ordered to reconsider Plaintiff's parole application under the constitutionally proper standard and to cease any retaliatory actions toward Plaintiff.

### III.     Conclusion

For all the foregoing reasons, the Parole Board Defendants' Motion for Summary Judgment should be denied with respect to Plaintiff's claims for injunctive relief.

Respectfully submitted,

_____
Mary Catherine Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106

Viktoriya Meyerov
Maresa Torregrossa
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700 (Phone)
(215) 988-2757 (Fax)
Attorneys for Plaintiffs

Dated: December 15, 2005.

CERTIFICATE OF SERVICE

**I certify that I filed the foregoing document using the Court's ECF system and that the following is a ECF user such that she will receive service automatically:**

> Beth Anne Smith
> Office of Attorney General
> 21 S. 12th Street, 3rd Floor
> Philadelphia, PA 19107-2130
> (215) 560-2130 (phone)
> Attorney for Defendants

>> **/s/ Mary Catherine Roper**
>> **Mary Catherine Roper**

Dated:  December 15, 2005.