IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | No. 02-2687 |

**COMMONWEALTH DEFENDANTS' RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

Plaintiff Jessica Wolfe – a convicted rapist who refuses to participate in sex offender programming – claims that Parole Board officials violated his rights under the Ex Post Facto Clause by denying him parole. To succeed on an ex post facto claim, an inmate must show (1) that the Parole Board applied a new policy retroactively, and (2) that the inmate was disadvantaged as a result, i.e., the change in policy affected his own sentence detrimentally. Richardson v. Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 291 (3d Cir. 2005)(citing Mickens-Thomas v. Vaughn, 321 F.3d 374, 393 (3d Cir.2003)). To show that the retroactive application of the policy affected his own sentence detrimentally, the Third Circuit has suggested that an inmate "might compare the parole rates for prisoners with similar convictions before and after the 1996 Amendments, state whether the Parole Guidelines would indicate that the

petitioner was a good parole candidate, or draw inferences from the statement of reasons provided by the Parole Board regarding the criteria used for the parole determination in that individual's case." Richardson, 423 F.3d at 293.

In this case, Wolfe does not use either the Parole Guidelines or the Parole Board's "green sheets" to support his claim. Instead, he attempts to defeat summary judgment by relying exclusively on statistical data provided by the Pennsylvania Department of Corrections ("DOC").

Wolfe argues that a chart provided by Mark Emery, a DOC data analyst, "establishes that the change in parole standards embodied in the 1996 statutory change has lengthened the time that inmates with Plaintiff's primary offense code [i.e., rape] spend in prison." Plaintiff's Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Supplemental Brief"), at 1. But as Mark Emery explains, the chart does no such thing. Declaration of Mark Emery, attached hereto as Exhibit 1, ¶ 4.

Wolfe concedes that the raw numbers in the DOC's chart do not show a rate of parole, because the DOC does not know how many convicted rapists were even considered for parole during the years in question (1995 to 2006 YTD). See Plaintiff's Supplemental Brief, p. 7, n. 8. Without knowing how many convicted rapists were considered for parole in a given year, it is impossible to determine the rate of parole. See Emery Declaration, ¶ 5. The chart shows only the numbers of convicted rapists released on parole or at the end of their maximum sentences. It does not show the number of convicted rapists considered for but denied parole.

2

Wolfe, of course, was denied parole. But even as to convicted rapists who were granted parole, the DOC's chart does not show that they tended to serve more time in prison than inmates paroled prior to December 1996. The DOC's chart does not factor in sentence length or number of years served upon parole. Emery declaration, ¶ 6. Minimum and maximum sentences for rape can vary significantly. See, e.g., Commonwealth v. Mitchell, 902 A.2d 430, 433 (Pa. 2006)(8½ to 20 years for rape); Commonwealth v. Hitner, 910 A.2d 721, 728 (Pa.Super. 2006)(rapist sentenced to 10 to 20 years imprisonment); Commonwealth v. Charlton, 902 A.2d 554, 557 (Pa. Super. 2006)(10 years and 3 months to 32 years for rape); Commonwealth v. P.L.S., 894 A.2d 120, 122 (Pa. Super. 2006)(rapist sentenced to 26 to 52 years imprisonment); Commonwealth v. Lungin, 77 Pa. D&C4th 267, 298 (Pa. Com. Pl. 2005)(9 to 18 years for rape); Commonwealth v. Snyder, 870 A.2d 336, 339 (Pa.Super.2005) (15 to 30 years imprisonment for rape); Commonwealth v. Thompson, 673 A.2d 357, 359 (Pa. Super. 1996)(3 to 6 years for rape); Commonwealth v. Poindexter, 646 A.2d 1211, 1213 (Pa.Super. 1994)(5 to 15 years incarceration for rape conviction). Wolfe himself is serving a 5 to 15 year sentence for rape. See Wolfe deposition, at 4, 20, and 118.[1]

Therefore, an inmate paroled 5 years after the expiration of his 10 year minimum sentence has spent the same number of years in prison as an inmate paroled shortly after expiration of his 15 year minimum. An inmate who is

---

[1] Unless otherwise indicated, citations to exhibits refer to those attached to Commonwealth Defendants' Motion for Summary Judgment.

released at the expiration of his 10 year *maximum* sentence has served fewer years in prison that either of the first two inmates.

Wolfe's apparent assumption that each convicted rapist in DOC custody is serving the same sentence warps his interpretation of the DOC's chart. The Court should disregard the erroneous conclusion that results from his flawed analysis.

Mark Emery points out a number of other problems with Wolfe's analysis. Emery declaration, ¶¶ 7-8, 10-11. Most remarkably, even if one accepts the validity of Wolfe's comparison between the 1995-96 period and the 1997-2005 period – comparing a period of two years with a period of nine -- the numbers show that during 1995-96, 1.85% of inmates serving time for rape were paroled, and during 1997-2005, 2.74% of inmates serving time for rape were paroled – <u>an increase of 48%</u>. Emery declaration, ¶ 9.

Wolfe also states that "In the 1995-1996 time period, 39% of the inmates serving time for rape were paroled within a year of completing their minimum sentence, while in [the] 1997-2005 time period, that percentage was cut, by more than half, to 16%." But as Mark Emery explains, Wolfe's statement is not true. Emery declaration, ¶ 10. In 1995, a total of 1,816 inmates were serving time for rape. Of that number, 53 were paroled, i.e., 2.9% of the total number. Of the 53 inmates paroled in 1995, 27 were paroled within a year of completing their minimum sentences, i.e., <u>1.4%</u> of inmates serving time for rape – <u>not</u> 39% as Wolfe states. Emery declaration, ¶ 10.

4

Also, using Wolfe's percentages, if Wolfe's claim were correct, one would expect that the years would demonstrate a trend, i.e., that the percentage of convicted rapists paroled would be smaller after 1996. But that is not the case:

| % of inmates with code CC3121 paroled | Year |
| --- | --- |
| .8 | 1996 |
| 1.8 | 2005 |
| 1.9 | 1997 |
| 2.0 | 2006 |
| 2.1 | 2003 |
| 2.1 | 1998 |
| 2.4 | 2004 |
| 2.7 | 2002 |
| 2.9 | 1995 |
| 3.1 | 2001 |
| 3.9 | 1999 |
| 4.7 | 2000 |

Emery declaration, ¶ 11. There is no trend. In 2001, when Wolfe was first considered for parole, 3.1% of convicted rapists were paroled, which is an increase over the 2.9% of convicted rapists paroled in 1995, *prior* to the 1996 amendments.

In short, Wolfe's reliance on the DOC's chart is misplaced. The chart does not support his ex post facto claim. Moreover, the undisputed or indisputable facts of record show that Wolfe, a convicted rapist, has been denied parole for a number of reasons, not the least of which is his repeated refusal to participate in sex offender programming. *See* Martinez declaration, Exhibit B, Notice of Parole Board Decision ("Green Sheet") dated March 20, 2001; Exhibit C, Green Sheet dated September 24, 2002; Exhibit D, Green

Sheet dated July 22, 2004. It is undisputed that Wolfe has consistently refused to participate in the sex offender program: he admits it. *See, e.g.,* Wolfe deposition, at 53-54.

As Commonwealth defendants noted in their motion for summary judgment, a sex offender's refusal to participate in sex offender programming was a reason the Parole Board denied parole *prior* to the December 1996 amendments.[2] *See also* Shaffer v. Myers, 163 Fed.Appx. 111 (3d Cir. 2006)(denial of parole was not ex post facto violation where record showed that inmate had been convicted of sexual assault but failed to complete sex offender programming, a factor prior to 1996 amendments); Burkholder v. Wolfe, 2007 WL 90427, *10 (M.D. Pa. 2007)(same). Accordingly, Wolfe cannot show that "under the pre-1996 Parole Act, the Board would likely have paroled [him]." Richardson, 423 F.3d at 291 (quoting Cimaszewski v. Board of Probation and Parole, 868 A.2d 416, 427 (Pa.2005)).

Therefore, for all the foregoing reasons as well as those set forth in their

---

[2] *See* Memorandum of Law in Support of Commonwealth Defendants' Motion for Summary Judgment, at 17. In each of these cases, the Parole Board decided, *prior to the December 1996 amendments*, to deny parole to a convicted sex offender based on his refusal to participate in sex offender programming: Weaver v. Pennsylvania Board of Probation and Parole, 688 A.2d 766 (Pa. Commw. 1997)(Aug. 31, 1995 parole board decision); Eldridge v. Pennsylvania Board of Probation and Parole, 688 A.2d 273 (Pa. Commw. 1997)(Sept. 14, 1995 parole board decision); Ramos v. Vaughn, No. 94-2596, 1995 WL 386573 (E.D. Pa. Jun. 27, 1995)).

6

motion for summary judgment and reply brief, the Court should grant summary judgment in Commonwealth defendants' favor.

                              Respectfully submitted,

                              THOMAS W. CORBETT, JR.
                              ATTORNEY GENERAL

BY:    <u>s/Beth Anne Smith</u>
         Beth Anne Smith
         Senior Deputy Attorney General
         Identification No. 47162

         Susan J. Forney
         Chief Deputy Attorney General
         Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | No. 02-2687 |

### DECLARATION OF MARK EMERY

I, Mark Emery, hereby declare under penalty of perjury that the following facts are true and correct.

1. I have been employed by the Pennsylvania Department of Corrections ("DOC"), Office of Planning, Research, Statistics and Grants since 2002. Since 2005, I have held the position of state and county data analyst.

2. I prepared the chart attached as Exhibit A to Plaintiff's Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Supplemental Brief"). The chart shows the number of inmates serving time for the controlling (i.e., primary) offense of rape ("code CC3121") in each year from 1995 to 1996 YTD, and the number of those inmates released either on parole or because they have completed their maximum sentences.

3. I have reviewed Plaintiff's Supplemental Brief. For the reasons set forth below, plaintiff's analysis of the information contained in the chart is incorrect.

4. Plaintiff states that defendants' statistical data "establishes that the change in parole standards embodied in the 1996 statutory change has lengthened the time that inmates with Plaintiff's primary offense code [rape] spend in prison." Plaintiff's Supplemental Brief, p. 1. Plaintiff is wrong: the chart does no such thing.

5. As plaintiff recognizes, the raw numbers in the chart do not show a "rate of parole." Plaintiff's Supplemental Brief, p. 7, note 8. The DOC does not know the specific number of convicted rapists <u>considered</u> for parole by the Parole Board in each year from 1995 to 2006. Therefore, it is not possible to establish a ratio or percentage of the number of inmates serving time for rape who were considered for parole and either paroled or not paroled in any given year.

6. Plaintiff's statement that "[t]hese statistics show a significant change in how soon inmates who obtained parole did so" (Plaintiff's Supplemental Brief, p. 7) is incorrect. Plaintiff overlooks the fact that rape sentences in Pennsylvania are not uniform: they vary, and the chart does not take that factor into account. By way of illustration, assume three inmates are incarcerated for the primary offense of rape but serving sentences of different lengths:

Inmate A was sentenced to 10-20 years.

Inmate B was sentenced to 15-30 years.

Inmate C was sentenced to 5-10 years.

2

If Inmate A is paroled five years after expiration of his 10 year minimum sentence, he has spent the same number of years in prison as Inmate B who is paroled shortly after expiration of his 15 year minimum sentence. If Inmate C is released at the end of his 10 year *maximum* sentence, he has spent 5 fewer years in prison than either Inmate A or Inmate B, even though he has maxed out. Because my chart does not factor in sentence length or number of years served upon parole, it does not show that convicted rapists are serving longer periods of incarceration.

7. Other limiting factors include:

a. The narrowly defined offense code. The chart deals with one offense code: the code for rape. But there are several offense codes and varying definitions of rape/sexual assault not included in the chart, including but not limited to rape of a child, rape of a child with serious bodily injury, statutory rape, involuntary deviant sexual intercourse, sexual assault, institutional sexual assault, aggravated indecent assault, aggravated indecent assault of a child, and spousal sexual assault.

b. No notation for changes in sentencing guidelines.

c. No indication of inmate rehabilitation programming/ success/ failure/participation/refusal.

d. No indication of inmate misconduct history.

e. No indication of other qualitative factors used in parole consideration, such as inmate mental capacity and home plan suitability.

3

f. The parole subset includes only first time paroles and does not include reparoles.

g. The data tables were not originally designed as database tables. They are raw information tables and, as such, many edit checks that keep database tables "clean" (i.e., accurate) may not have been in place. For example, some minimum sentence expiration dates precede the effective date of the sentence – which is illogical. Such inaccurate data results from typing errors. Such errors are very rare, but they do exist.

8. Plaintiff's table on page 7 of Plaintiff's Supplemental Memorandum is problematic because the date ranges (two years vs. nine years) are not consistent; therefore the chart does not show a justified comparison.

9. But even using plaintiff's division of 1995-96 and 1997-2005, the chart shows that during 1995-96, 1.85% of inmates serving time for the controlling offense of rape were paroled, while during 1997-2005, 2.74% of inmates serving time for the controlling offense of rape were paroled: <u>an increase of 48%</u>. (Please note that this is not a true "rate of parole" because it includes all inmates serving time for the controlling offense of rape, and not just those who were eligible for parole consideration).

10. Also on page 7, plaintiff states that "In the 1995-1996 time period, 39% of the inmates serving time for rape were paroled within a year of completing their minimum sentence, while in [the] 1997-2005 time period, that percentage was cut, by more than half, to 16%." Plaintiff's statement is not true. In 1995, a total of 1,816 inmates were serving time for rape. Of that

4

number, 53 were paroled, i.e., 2.9% of the total number. Of the 53 inmates paroled in 1995, 27 were paroled within a year of completing their minimum sentences, i.e., 1.4% of inmates serving time for rape – not 39% as plaintiff states.

11. Also, using plaintiff's percentages, if plaintiff's claim were correct, one would expect that the years would demonstrate a trend, i.e., that the percentage of convicted rapists paroled would be smaller after 1996. But that is not the case:

| % of inmates with code CC3121 paroled | Year |
| --- | --- |
| .8 | 1996 |
| 1.8 | 2005 |
| 1.9 | 1997 |
| 2.0 | 2006 |
| 2.1 | 2003 |
| 2.1 | 1998 |
| 2.4 | 2004 |
| 2.7 | 2002 |
| 2.9 | 1995 |
| 3.1 | 2001 |
| 3.9 | 1999 |
| 4.7 | 2000 |

12. A number of variables affect whether an inmate is paroled, including but not limited to the severity of the crime, and whether the inmate admits his guilt, expresses remorse for his crime, and completes or makes a good faith attempt at completing offender programming, whether the inmate has a support system in the community in which he is to be released, and institutional behavior. As noted above, the chart I prepared does not take into

5

account any of these factors.

    I hereby declare under penalty of perjury that the foregoing facts are true and correct.

*(signature)*
Mark Emery
Office of Planning, Research,
Statistics and Grants
Penna. Dep't of Corrections
Camp Hill, PA

Dated: __Feb. 20, 2007__

CERTIFICATE OF SERVICE

I, Beth Anne Smith, Senior Deputy Attorney General, hereby certify that the foregoing response was filed electronically on February 20, 2007 and is available for viewing and downloading from the ECF system. I further certify that a true and correct copy of said document was served on the same date by electronic mail notification to registered ECF users Mary Catherine Roper, Esquire at Mroper@ACLUPA.ORG and Viktoriya Meyerov, Esquire at Viktoriya.Meyerov@dbr.com.

          THOMAS W. CORBETT, JR.
          ATTORNEY GENERAL

BY:   s/ Beth Anne Smith
       Beth Anne Smith
       Senior Deputy Attorney General
       Identification No. 47162

       Susan J. Forney
       Chief Deputy Attorney General
       Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2130

8