IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA, PHILADELPHIA

| | | |
|---|---|---|
| JESSICA ELAINE WOLFE©, on behalf of herself and all similarly situated, INMATES OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS,<br>　　　　Plaintiffs | : : : : : : | Civil Class Action |
| Vs. | : : | No. <u>02-2687</u> |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et, al.<br>　　　　Defendants | : : : : | |

## PLAINTIFF'S RESPONSE TO THE COMMONWEALTH DEFENDANT'S MOTION IN OPPOSITION TO VACATE JUDGEMENT NUNC PRO TUNC

Now Comes, JESSICA ELAINE WOLFE©, the propria persona Plaintiff of this action, also known in any and all derivatives of, variations in the spelling of said name, except Jessica Elaine Wolfe©. Thus, moves this Honorable Court on behalf of the living, breathing, flesh-and-blood man, notable female gendered sui juris, who goes by the distinctive appellation, Jessica Elaine Wolfe©, who is no other, hereinafter Secured Party. In good faith, under the laws of God, reserving all rights, and represents:

1. Plaintiff, being a layman of the law, acting in good faith, moved this Honorable Court to Vacate Judgement Nunc Pro Tunc, to reinstitute the proceedings, invoked directly from the United States Constitution, under and by virtue of the supported discovered Official Document, that was issued or the act was done in compliance with the law.

2. Plaintiff, plead special matters in accordance with Rule 9(a)(b)(c)(d) and (g). Considering the nature of circumstances, all of DRINKER BIDDLE & REATH and their associates entries should get stricken from the record, but Plaintiff wishes to best serve the efficiency and the judicial economy of this case by addressing, amending whatever necessary to curing the defects. This

/

Honorable Court has a duty "to be watchful for Constitutional Rights of the citizens and against stealthy encroachments there on." Coolidge V. New Hampshire, 91 S.Ct. 2022 (1971); 42 U.S.C.A. § 1985; and 42 U.S.C.A. § 1986. I mean, an attorney by virtue of his or her employment as such, has no powers to compromise the claims of the client, nor has the authority to compromise a claim inferred from mere relationship as attorney, Redevelopment Authority of City of Phila. V. L & A Creative Art Studio, Inc., 294 A.2d. 606 (1972).

3. Accordingly, this Honorable Court surly would have to agree that this case is fundamentally disfunctional, suspect at the least. The way this case presently sits, it shows that this Honorable Court appointed counsel to represent the Plaintiff and the Class, the Court accepted all of appointed counsel's entries regardless of objections, denied Plaintiff discovery and disclosure, then ruled on the case subsequently right after Plaintiff fired counsel. This Honorable Court should have suspended the case to investigate. I mean, the polite in the entered attachments shows collusion, Willful misconduct, malfeasance, misfeasance, nonfeasance, among other things that a manifest of injustice has occurred.

4. Further, Plaintiff claims that appointed counsel's actions and inactions caused this Honorable Court to impinge upon privately secured vested rights of Secured Party. Moreover, counsel failed to inform all parties to observe and respect Secured Party's Common-law Copyrighted materials, nor did they raise vested right claims in support thereof, and this Honorable Court has an obligated duty to recognize, and uphold legitimate Vested Rights, SATTERLEE V. MATTHEWSON, 16 S. & R. 169 (1827); JENKINS V. HOSPITAL OF MEDICAL COLLEGE OF PA., 634 A.2d. 1099 (19  ); 42 U.S.C.A. § 1981.

5. The Assistant Deputy Attorney General claims that the 42 U.S.C.A. § 1981, was subsumed by 42 U.S.C.A. § 1983, not repealed, which would make it

proper to sight the statute when raising the specific claims. Accordingly, the Defendant's or said counsel assert a statement from case law that is fundamentally flawed, stating: "[t]here is nothing in the Uniform Commercial Code which would help plaintiff challenge the legality of his conviction or the conditions of his confinement."

This couldn't be further from the truth, House Joint Resolution 192, June 5, 1933, provides over Presidential Debate, that all Public Debt to be dischargeable, changing American standards from gold and silver to Bills of Exchange, Promissory Notes, Instruments and the like to create and discharge Public Debt, adopting the Uniform Commercial Code to control and clarify the provisions of standards. When someone is born naturalized in the United States, their parents are informed that they are required to register a birth certificate in the name of the child. The government cannot impinge upon the child's sovereign christen name that comprises upper and lower case lettering, so the government creates a resembling all capital letter name called a strawman, placing it on the Birth Certificate, accepting it for value as a Document of Title, which the government takes loans out against, creating Bonds and such to bring the "PERSON" up under the National Debt and up under all Jurisdiction within the United States. The Bonds are used for the General Welfare to pay for a number of things including commitments and confinements.

6. The protected Fourteenth Amendment Liberty Interest may derive from one of two sources: (1) the interest may have such a Fundamental Nature that it inheres in the Constitution itself; or (2) it may be created by State Law., McGrath V. Johnson, 67 F.Supp.2d. 499 (1999).

This is true because **(a)** All laws are by contract - UCC § 1-103; **(b)** All contracts are by commerce - Title 27 C.R.F. § 72.11; **(c)** All commerce is by consent - UCC § 1-201(39); § 3-401(b); **(d)** All consent is by agreement - UCC

§ 1-201(3); **(e)** All agreements are by disclosure; **(f)** All disclosure is by good faith - UCC § 9-102(a)(43); **(g)** All good faith is by intent; and **(h)** All intent resides in man, if it didn't, trust wouldn't possess a will. The Defendant's allegations are denied and must fail.

7. Plaintiff, claims the Uniform Commercial Code Laws are of such Fundamental Nature that they inhere in the Constitution itself, and to such extent that it provides a Liberty Interest. Secured Party has a perfected security interest in all property, of JAMES [E.]LLIOT WOLFE, [JR.],[III]©; JESSICA [E.]LAINE WOLFE©, etc., namely but not limited to, "All claims of ownership and certificate of titles involving corporeal and incorporeal hereditaments, hereditary successions, and all innate aspects of being, i.e. mind, body, soul, free will, and self. Security Agreement- JEW-011396-SA, Uniform Commercial Code Certified Filing No. 20030815615. The U.S. Article I, Section 10, provides the government cannot make Laws impairing the obligation of contracts; U.S. Fifth Amendment provides that no private property be taken for public use without just compensation; The Fourteenth Amendment provides that No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law. Thus, showing entitlement to a protected Liberty Interest.

8. Plaintiff, claims a protected Liberty Interest created by State Law. Plaintiff entered into a Plea Agreement, providing incarcerated time that is graded as a single count Felony of the third degree, in Pennsylvania is a sentence with a maximum of not more then 7 years, Secured Party served and performed over 4½ years past plaintiffs statutorily prescribed classification of sentence, and still can't make parole. **Exhibit A.**

9. Defendant's claim on page 4, No. 4, that "the Parole Board has

4

adjudicatory function including their ability to affect the length and term of imprisonment, as well as the times when convicts may be paroled or discharged). Adjudicatory acts that entitle a parole official to absolute immunity.". . None of these cases gives the Parole Board, nor any of it's officials the authority to violate the Supremacy Clause, nor to impinge upon the Separation of Powers. Further, none of these cases authorized the Parole Board, nor the DOC, nor any of their officials to make laws impairing the obligation of contracts, nor authorized an act of trade-name/trademark copyright infringement. In fact, the April 25, 07, Memorandum Page 8, 21 lines down, specifically informs the current members of the Parole Board that they have the power to remedy any constitutional or statutory violations. The Parole Board and it's members chose to not only ignore this Honorable Court, but has ignored all of Plaintiff notices of serving and preforming past the statutorily prescribed classification of sentence.

Senator Trumbull, states:

"[The Doctrine of Immunity] places officials above the law. It is the very Doctrine out of which the Rebellion was hatched."

Congressional Globe, 39th Cong., 1st Session 1758 (1866)

Senator Johnson, states:

"Who is called upon to decide whether the State Law is in force because this law is unconstitutional, shall hold it to be in force notwithstanding this law, is to be punished. . . You, a Judge of the State Court who think proper to enforce as against any of the parties, a judgment inconsistent with the Rights secured by the first section of this Bill, in consequence of any law or regulation of a State, Shall be liable to an indictment in the Court of the United States, and punished by fine, or imprisonment, or both.". .

Congressional Globe, 39th Cong., 1st Section 1778 (1866)

Representative Lawrence, states:

"It is better to invade the Judicial power of the State then permit it to invade, strike down, and destroy the Civil Rights of Citizens. A Judicial power perverted to such uses should be speedily invaded. . . and if an officer shall intentionally deprive a Citizen of a Right, knowing him to be entitled to it, then he is guilty of a willful wrong which deserves punishment." Congressional Globe, 39th Cong., 1st Session 1837 (1866).

Accordingly, Congress never intended for a State Judge to enjoy Immunity, nor any Legislative body. Further, in 1880, The Supreme Court decided that a Judge was not immune from criminal sanctions under the Civil Rights Act, Ex Parte Commonwealth of Virginia, 100 U.S. 339 (1879). Although, Judges acting within the course and scope of their judicial duties are immune from damages, Pierson V. Ray, 386 U.S. 547 (1967). Depriving plaintiff of Constitutional rights is not within the scope of any Judicial Duty. When a Judge exceeds his Jurisdiction and grants or denies that beyond his lawful authority, he has perpetrated a non-judicial act, Yates V. Hoffman Estates, 209 F.Supp. 757 (1962). Generally, a judge's decision is appealable, and therefore, the party need not sue the Judicial Officer to vindicate his rights. But, decisions of Judicial Officers are not necessarily appealable, such as in decisions of prosecuting attorneys, prison wardens or [Parole Board]. "emphases added" Yale Law Journal, 79, Pages 326, 327 (1969). Accordingly, some Judicial Officers enjoy limited Immunity only if their actions are appealable. Neither, the Parole Board, nor the DOC's actions and inactions can be vindicated on appeal, therefore they are not entitled to immunity. The Defendant's allegations are denied and must fail.

10. Plaintiff, claims that even if the Defendant's enjoyed qualified immunity, they can only enjoy it for the duration of a single count Felony of

the Third Degree, i.e. for not more then 7 years. Secured Party has been incarcerated for over 11½ years, and entitled to relief for every minute over the seven years, and in accordance with Secured Party's perfected security interest, $ 500,000.00 per each and every occurrence, plus triple damages.

Further, the Defendants seek newly Discovered Evidence, Please See: **Exhibits B; C; D,** Attached.

11. Finally, Plaintiff avers that Secured Party is a Holder-In-Due-Course of, namely but not limited to: "All related identifying information, applications, registrations, correspondence, filings, trusts, accounts, endorsements, instruments, permits, licenses, passports, marks, images, analyses, processed algorithms, materials, documents, records, and record numbers, held by any purpose, however acquired, no matter how analyzed, classified, compared, compressed, displayed, identified, stored and transmitted, any use thereof, of any information and images contained therein, regardless the creator, method, location, process or storage form." Anyone, who believes that they have a more supreme claim of custom and usage then Secured Party, must act and provide proof of claim within (72) hours midnight of the date of receipt or waive all claims. Regulation Z, Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq.

Wherefore, Plaintiff respectfully prays for the relief sought, Vacating the Judgment Nunc Pro Tunc. When Vacate of Judgment is sought, the moving party is entitled to an Evidentary Hearing, Doe V. U.S., 51 F.3d. 693 (1995).

Respectfully Submitted,
JESSICA ELAINE WOLFE©
Plaintiff's Signature

*Jessica Elaine Wolfe Auth. Rep.*
/Secured Party's Signature /Auth. Rep.

7

see BACK

4

technical matter, Judge, the informations read on or about August 3, 1995. The complaint and the information filed subsequent to that complaint, the dates of the alleged crimes were from summer of 1994 through spring of 1995.

THE COURT: Do you have any objections to the amendment as to the dates in the information, counsel?

MS. DeLONG: No, Your Honor, we do not.

COLLOQUY

BY THE COURT:

Q   Mr. Wolf, do you understand at Criminal Action 9604260 the Commonwealth is going to move to withdraw Counts 2, 3, 4, 5, 6 in return for your plea to Count 1, rape, graded as a felony of the third degree, carries a maximum incarceration of up to 20 years and a $25,000 fine; specifically in this information it states on or about the date in question, August 3, 1995, that you engaged in sexual intercourse with one Katie Dickman, who was less than 13 years of age, and in violation of Section 3121.6 of the Pennsylvania Crimes Code.

At Criminal Action 9604239 the Commonwealth is

EXHIBIT A

"Whoever." Includes any person.

1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973. Amended 1978, April 28, P.L. 202, No. 53, § 7(1), effective June 27, 1978; 1995, Nov. 22, P.L. 621, No. 66, § 1, effective in 60 days.

¹ 53 P.S. § 740 et seq. (repealed).

## § 104. Purposes

The general purposes of this title are:

(1) To forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interest.

(2) To safeguard conduct that is without fault from condemnation as criminal.

(3) To safeguard offenders against excessive, disproportionate or arbitrary punishment.

(4) To give fair warning of the nature of the  ct declared to constitute an offense, and of   ntences that may be imposed on conviction of an offense.

(5) To differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization in their treatment.

1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

## § 105. Principles of construction

The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved. The discretionary powers conferred by this title shall be exercised in accordance with the criteria stated in this title and, in so far as such criteria are not decisive, to further the general purposes stated in this title.

1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

## § 106. Classes of offenses

(a) **General rule.**—An offense defined by this title for which a sentence of death or of imprisonment is authorized constitutes a crime. The classes of crime are:

(1) Murder of the first degree, of the second degree or of the third degree, first degree murder of an unborn child, second degree murder of an unborn child or third degree murder of an unborn child.

(2) Felony of the first degree.

(3) Felony of the second degree.

(4) Felony of the third degree.

(5) Misdemeanor of the first degree.

(6) Misdemeanor of the second degree.

(7) Misdemeanor of the third degree.

(b) **Classification of crimes.**—

(1) A crime is a murder of the first degree, of the second degree or of the third degree if it is so designated in this title or if a person convicted of criminal homicide may be sentenced in accordance with the provisions of section 1102 (relating to sentence for murder and murder of an unborn child). A crime is first degree murder of an unborn child, second degree murder of an unborn child or third degree murder of an unborn child if it is so designated in this title or if a person convicted of criminal homicide of an unborn child may be sentenced in accordance with the provisions of section 1102.

(2) A crime is a felony of the first degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is more than ten years.

(3) A crime is a felony of the second degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than ten years.

(4) A crime is a felony of the third degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than seven years.

(5) A crime declared to be a felony, without specification of degree, is of the third degree.

(6) A crime is a misdemeanor of the first degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than five years.

(7) A crime is a misdemeanor of the second degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than two years.

(8) A crime is a misdemeanor of the third degree if it is so designated in this title or if a person convicted thereof may be sentenced to a

EXHIBIT H



**Pennsylvania Department of Corrections**
**DC 43 Correctional Plan**

8/20/2007 2:28:35 PM                                                                                                            Production

Inmate Name: WOLFE, JAMES ELLIOT                    Inmate Number: DB0954
Location: A-A-2049-01                                                Counselor: Prasch, Dave R
Annual Review Date : 07/2007                                  Time eligible for Pre-release : 09/13/1999

**General Expectations:**

| Expectation | Recommended | Comment |
|---|---|---|
| Academic Education | 07/23/2003 | |
| Maintain Personal Hygiene | 07/23/2003 | |
| Maintain positive work reports | 07/23/2003 | |
| Misconduct Free Behavior | 07/23/2003 | |
| Positive Housing Reports | 07/23/2003 | |

**Recommended Programming:**

| Program | Recommended | Recommended By | Refuses to Participate |
|---|---|---|---|
| No Current Recommended Programming | | | |

**Currently Enrolled In:**

| Program | Facilitator | Start Date | End Date |
|---|---|---|---|
| No Current Enrollments | | | |

**Programs Previously Enrolled In:**

| Program | Evaluated By | Completion | Status |
|---|---|---|---|
| No Previously Completed Programs | | | |

No further AOD programs required – All AOD programs were completed at SCI-Mahanoy   Ka[?]inch 6-20-07
PATM

[ Your Correctional Plan is subject to be re-evaluated at any time during your incarceration. ]

Counselor's Signature/Date                                                                          Inmate's Signature/Date

Page 1 of 1

EXHIBIT B

August 16, 2007

## PSYCHIATRIC EVALUATION
James (Jessica) Wolfe – DB0954

This 43 year old white male has been my patient since 121801 when he was admitted to the Mental Health Unit do to feelings of depression and anxiety do to having his hormone treatment for Gender Identity Disorder, (302.85) abruptly stopped. He remained in MHU and hormone medication (Depolupron) was initiated. Patient was discharged to general population on 2/7/02. He has been in outpatient treatment with the undersigned up to the time I left the inpatient unit in semiretirement (October, 2006).

Jessica Wolfe attended every outpatient session. The patient always complied with hormone treatments and would make appointments for any unseen problems.

To my knowledge, there have been no sexual acting out or deviation from his treatment with. Depolupron . He has worked with the Painting Department as a valuable worker. He has incurred no write ups or disciplinary actions while in SCI – Graterford.

Patient presents no danger to society as he is chemically castrated. He has intentions of completing sex reassignment surgery.

I can highly recommend him for parole.

Gender Identity Disorder-Adult (302.85)
Medication: Depolupron 7.5 grams – 30 days
         Premarium 1.25 mg

Sincerely,

*N. E. Holland-Hull* (signature)
_____
N. E. Holland-Hull, MD
SCI-Graterford Mental Health Unit

EXHIBIT C

JESSICA ELAINE WOLFE
DB 0954
S.C.I.-Graterford
Box 244
Collegeville, Pa. 19426

Date: 10/12/07

PENNSYLVANIA BOARD OF
PROBATION AND PAROLE
1101 S. Front Street, Suite 5300
Harrisburg, Pa. 17104-2519

RE: PAROLE NO. 83620

## VICTIM INPUT STATEMENT

Dear Chairman, Parole Board Staff,

My name is: LARRY THOMAS DICKMAN, II, I am over the age of 21, of sound mind, one of the said Victims in these matters, the unreconcilable differences between JESSICA and my mother should not have involved me. I don't consider myself as ever being victimized by JESSICA ELAINE WOLFE.

Neither my family, nor have I suffered any Physical harm, Psychological harm, Emotional harm, nor suffered any trauma from the acts said committed by the above accused. Neither my family, nor have I suffered loss of earnings, nor suffered the ability to work because of the acts said committed by the accused above. Neither my family, nor have I suffer any continuing effects from the acts said committed by the accused above, nor do I for see any situations or problems in the future.

In my opinion, JESSICA has always acted as a parent figure when watching us, my brothers, sisters and I always played and eat together, we were always properly dressed, the boys in boy clothing and the girls in girl clothing. JESSICA was always dressed one way or the other, I have never seen JESSICA unclothed, nor otherwise improper.

I'm asking for, JESSICA ELAINE WOLFE to be released, and I wish to be notified of all future developments. Thank you.

_Larry T. Dickman II 10-12-07_
Signature
Address: 414 east Lincoln ave.
McDonald, PA, 15057

WITNESSED AT
CARNEGIE, PA.

Oct 12, 2007

_Deborah B. Moretti_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Deborah B. Moretti, Notary Public
Carnegie Boro, Allegheny County
My Commission Expires Dec. 2, 2010
Member, Pennsylvania Association of Notaries

Certified Mail No. 7007 0710 0001 4112 4490

EXHIBIT D

## PROOF OF SERVICE

I, JESSICA ELAINE WOLFE©, hereby certifies that the foregoing documents have been served upon the following in the manner of United States First class Mail.

BETH ANNE SMITH
SENIOR DEPUTY ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, Pa. 19107-3603

ANDREA L. D'AMBRA, Esq.
DRINKER BIDDLE & REATH, LLP.
ONE LOGAN SQUARE
18th and Cherry Streets
Philadelphia, Pa. 19103-6996

MARY CATHERINE ROPER, Esq.
AMERICAN CIVIL LIBERTIES
FOUNDATION OF PENNSYLVANIA
P.O. Box 40008
Philadelphia, Pa. 19106

MICHAEL E. KUNZ
U.S. CLERK OF COURTS
U.S. EASTERN DISTRICT COURT
601 Market Street
Philadelphia, Pa. 19106-1797

Certified No. 7007 0710 0001 4114 1084

Respectfully Submitted,
"JESSICA ELAINE WOLFE"
Plaintiff's Signature

Secured Party accepts Plaintiff's Signature in accordance with UCC § 1-201(39) § 3-401(b).

Secured Party's Signature    Auth. Rep.

Dated: 10/30/2007.